# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**IN RE KINGATE MANAGEMENT LIMITED LITIGATION**

This Document Relates To: All Actions

Master File No. 09 Civ. 5386 (DAB)

## MEMORANDUM OF LAW IN SUPPORT OF JOHN EPPS, GRAHAM COOK AND CHARLES SEBAH'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND 12(b)(6)

DAVIS & GILBERT LLP
Howard J. Rubin (hrubin@dglaw.com)
Bruce M. Ginsberg (bginsberg@dglaw.com)
Cheryl M. Plambeck (cplambeck@dglaw.com)
Sean P. Cameron (scameron@dglaw.com)
1740 Broadway
New York, New York 10019
(212) 468-4800

*Attorneys for Defendants Graham Cook,*
*John Epps and Charles Sebah*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ........................................................................... 1

SUMMARY OF RELEVANT FACTS ................................................................ 4

ARGUMENT ....................................................................................................... 6

I.    APPLICABLE STANDARDS ................................................................... 6

    A.   PLEADING STANDARDS ................................................................. 6

    B.   STANDARD FOR MOTION TO DISMISS FOR
        LACK OF PERSONAL JURISDICTION ............................................. 7

    C.   STANDARD FOR MOTION TO DISMISS FOR
        FAILURE TO STATE A CLAIM UPON WHICH
        RELIEF CAN BE GRANTED ............................................................. 7

II.   THIS ACTION MUST BE DISMISSED AGAINST
    COOK, EPPS AND SEBAH FOR LACK OF
    PERSONAL JURISDICTION ................................................................... 9

    A.   PLAINTIFFS' JURISDICTIONAL ALLEGATIONS
        ARE CONCLUSORY ......................................................................... 9

    B.   COOK, EPPS AND SEBAH LACK SUFFICIENT
        MINIMUM CONTACTS WITH NEW YORK FOR
        GENERAL PERSONAL JURISDICTION ........................................... 10

    C.   COOK, EPPS AND SEBAH LACK SUFFICIENT
        MINIMUM CONTACTS WITH NEW YORK FOR
        SPECIFIC PERSONAL JURISDICTION ........................................... 12

    D.   JURISDICTION OVER COOK, EPPS AND SEBAH
        ALSO FAILS FOR LACK OF CONSTITUTIONAL
        DUE PROCESS ................................................................................ 15

III.  DISMISSAL PURSUANT TO RULE 12(B)(6) IS
    WARRANTED AS PLAINTIFFS FAIL TO STATE
    A CLAIM AGAINST COOK, EPPS OR  SEBAH ................................... 16

    A.   BVI LAW GOVERNS ALL OF PLAINTIFFS'
        CLAIMS AGAINST COOK, EPPS AND SEBAH ............................... 16

    B.   PLAINTIFFS' CLAIMS FAIL BECAUSE THE
        REQUISITE RELATIONSHIP BETWEEN COOK,
        EPPS AND SEBAH AND THE PLAINTIFFS IS
        LACKING ........................................................................................ 18

| | C. | PLAINTIFFS' CLAIMS ARE DERIVATIVE AND MUST BE DISMISSED | 20 |
|---|---|---|---|
| | D. | IT WOULD BE FUTILE FOR PLAINTIFFS TO REPLEAD THIS AS A DERIVATIVE ACTION | 21 |
| V. | | PLAINTIFFS' CLAIMS ARE BARRED BY THE MARTIN ACT AND SLUSA | 23 |
| | A. | ALL OF PLAINTIFFS' CLAIMS ARE PREEMPTED BY SLUSA | 23 |
| | B. | ALL OF PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE MARTIN ACT | 24 |
| VI. | | PLAINTIFFS' CLAIMS ARE TIME-BARRED | 24 |
| | | CONCLUSION | 24 |

## TABLE OF AUTHORITIES

### FEDERAL CASES

@Wireless Enters., Inc. v. AI Consulting, LLC,
No. 05-CV-6176 CJS(P), 2006 WL 3370696 (W.D.N.Y. Oct. 30, 2006) ............................ 8-9

Arochem Int'l, Inc. v. Buirkle,
968 F.2d 266 (2d Cir. 1992).................................................................................................16

Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009)..................................................................................................8, 21

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
171 F.3d 779 (2d Cir. 1999)..................................................................................................7

Barberan v. Nationpoint,
No. 07-CV-11595 (KMK), 2010 WL 1529324 (S.D.N.Y. Mar. 2, 2010) ......................... 17-18

Barron v. Igolnikov,
No. 09 Civ. 4471 (TPG), 2010 WL 882890 (S.D.N.Y. Mar. 10, 2010) ............................23, 24

BBS Norwalk One, Inc. v. Raccolta, Inc.,
60 F. Supp. 2d 123 (S.D.N.Y. 1999) aff'd, 205 F. 3d 1321 (2d Cir. 2004)............................17

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007).................................................................................................7, 8

Bensusan Rest. Corp. v. King,
126 F.3d 25 (2d Cir. 1997)..................................................................................................12

Bournias v. Atl. Mar. Co.,
220 F.2d 152 (2d Cir. 1955)..................................................................................................7

Burger King Corp. v. Rudzewicz,
471 U.S. 462 (1985)...........................................................................................................15

Calder v. Jones,
465 U.S. 783 (1984)............................................................................................................7

C.B.C. Wood Prods., Inc. V. IMD Integrated Logistics Servs., Inc.
455 F. Supp. 2d 218 (E.D.N.Y. 2006) ...................................................................................9

DC Comics v. Kryptonite Corp.,
No. 00 Civ. 5562 AGS, 2002 WL 1303110 (S.D.N.Y. June 13, 2002)....................................6

Druck Corp. v. Macro Fund (U.S.) Ltd., IIU,
No. 02 Civ. 6164 (RO), 2007 WL 258177 (S.D.N.Y. Jan. 29, 2007).......................................17

Duravest, Inc. v. Viscardi, A.G.,
  581 F. Supp. 2d 628 (S.D.N.Y. 2008).......................................................................... 11-12, 13

Ellington Mgmt. Group, LLC v. Ameriquest Mortgage. Co.,
  No. 09 Civ. 0416 (JSR), 2009 WL 3170102 (S.D.N.Y. Sept. 29, 2009)....................................9

Exxon Mobil Corp. v. Allapattah Servs., Inc.,
  545 U.S. 546 (2005).....................................................................................................................9

First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.,
  218 F. Supp. 2d 369 (S.D.N.Y. 2002)......................................................................................11

First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba,
  462 U.S. 611 (1983)...................................................................................................................16

Galef v. Alexander,
  615 F.2d 51 (2d Cir. 1980)...................................................................................................16, 17

Hausman v. Buckley,
  299 F.2d 696 (2d Cir. 1962)..................................................................................................16, 17

Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,
  763 F.2d 55 (2d Cir. 1985)...................................................................................................10, 11

In re AstraZeneca Sec. Litig.,
  559 F. Supp. 2d 453 (S.D.N.Y. 2008) aff'd sub nom, State Univers. Ret. Sys. of Ill. v.
  Astrazeneca PLC, 334 F. App'x 404 (2d Cir. 2009) ..........................................................13, 14

In re BP P.L.C. Derivative Litig.,
  507 F. Supp. 2d 302 (S.D.N.Y. 2007).......................................................................................17

In re Rhodia S.A. Sec. Litig.,
  531 F. Supp. 2d 527 (S.D.N.Y. 2007).......................................................................................14

In re Royal Ahold N.V. Sec. & ERISA Litig.,
  351 F. Supp. 2d 334 (D. Md. 2004)...........................................................................................14

In re Tremont, Sec. Law,
  No. 08 Civ. 11117 (TPG) 2010 WL 1257580 (S.D.N.Y. Mar. 30, 2010) ...............................24

Int'l Shoe Co. v. State of Wash.,
  326 U.S. 310 (1945)...................................................................................................................15

Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG, ,
  160 F. Supp. 2d 722 (S.D.N.Y. 2001)................................................................................. 10-11

Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,
  918 F.2d 1039 (2d Cir. 1990)...............................................................................................10, 11

Langenberg v. Sofair,
    No. 03 CV 8339 KMK, 2006 WL 2628348 (S.D.N.Y. Sept. 11, 2006)...................................12

Levinson v. PSCC Servs., Inc.,
    No. 3:09-CV-00269 (PCD), 2009 WL 5184363 (D. Conn. Dec. 23, 2009)...................... 23-24

Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc.,
    Case No. 09 Civ. 3708 (TPG) 2010 WL 1257567 (S.D.N.Y. Mar. 31, 2010) ........................24

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,
    547 U.S. 71 (2006)...............................................................................................................23

Metro. Life Ins. Co. v. Robertson-Ceco Corp.,
    84 F.3d 560 (2d Cir. 1996)...............................................................................................7, 15

NCA Holding Corp. v. Ernestus,
    1998 WL 388562 No. 97 CIV. 1372 (LMM), 1998 WL 388562 (S.D.N.Y. July 13,
    1998) ...................................................................................................................................13

PDK Labs, Inc. v. Friedlander,
    103 F.3d 1105 (2d Cir. 1997)................................................................................................12

Pilates, Inc. v. Current Concepts,
    No. 96 CIV. 0043 (MGC), 1996 WL 599654 (S.D.N.Y. Oct. 18, 1996) ................................14

Rush v. Savchuk,
    444 U.S. 320 (1980).................................................................................................................1

Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC.,
    Case No. 08-1789-BRL (Bankr. S.D.N.Y.) ..............................................................................1

Seybold v. Groenink,
    No. 06 Civ. 772 (DLC), 2007 WL 737502 (S.D.N.Y. Mar. 12, 2007).....................................17

Stephenson v. Citco,
    No. 09 CV 00716 (RJH), 2010 WL 1244007 (S.D.N.Y. Apr. 1, 2010) ...................................24

Stern v. Gen. Elec. Co.,
    924 F.2d 472 (2d Cir. 1991)................................................................................................ 6-7

## STATE CASES

Bruhl v. Kingate Mgmt., Ltd. et al., Index No. 601526/2009 (Supreme Court, N.Y.
    County) ............................................................................................................... 2, 21-22

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

15 U.S.C. §§ 77p(b), 78bb(f)(1) ....................................................................................................3

15 U.S.C. § 78..............................................................................................................................1

Pub.L. 109-2, 119 Stat. 4 ............................................................................................................9

**STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

CPLR § 301...................................................................................................................7, 10, 11

CPLR § 302(a)(1) ...................................................................................................... 7, 12-13

N.Y. Gen. Bus. Law § 352 et seq..................................................................................................3

**OTHER AUTHORITIES**

Restatement of Conflict of Laws § 585 .........................................................................................7

Defendants Graham Cook ("Cook"), John Epps ("Epps") and Charles Sebah ("Sebah") (collectively, "Defendants"), by and through their attorneys, respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Amended Consolidated Class Action Complaint (the "Complaint") filed by Plaintiffs pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The discovery that Bernard L. Madoff ("Madoff"), once a respected investment advisor, operated the largest Ponzi scheme in history for decades through his company, Bernard L. Madoff Investment Securities, LLC ("BMIS"), has set off a firestorm of litigation around the world. With no viable recourse against Madoff himself, and with the investor claims in the liquidation of Madoff and BMIS's assets under the Securities Investor Protection Act[1] far exceeding the funds available to pay, many investors are attempting to pursue claims against anyone and everyone.

Madoff stole billions not only from investors who invested directly through BMIS, but also from investment funds, including foreign funds like the Kingate Global Fund, Ltd. ("Kingate Global") and the Kingate Euro Fund, Ltd. ("Kingate Euro") (together, the "Kingate Funds"), which are investment companies in the British Virgin Islands ("BVI") whose assets were entrusted to Madoff. The Kingate Funds are now in liquidation in the BVI. (Def. Ex. 1 and Ex. 2.)[2]

---

[1] 15 U.S.C. §78 aaa et seq. ("SIPA"). The liquidation proceeding is Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC., Case No. 08-1789-BRL, pending in the United States Bankruptcy Court for the Southern District of New York.

[2] All references to defendants' exhibits herein ("Def. Ex. __") refer to exhibits to the accompanying Declaration of Cheryl M. Plambeck ("Plambeck Dec."). The Declarations of Cook, Epps and Sebah are referred to as the "Cook Dec.," "Epps Dec.," and "Sebah Dec.", respectively.

Critically, the Kingate Funds were foreign entities that were never marketed in the U.S. because they were explicitly intended for non-U.S. investors. None of the named Plaintiffs and no member of the proposed class of Plaintiffs were in the U.S. (Pl. Exs. 1-6; Complaint, ¶¶14-23.)[3]  Plaintiffs are all foreign investors who sought the perceived benefits of Madoff's management, but also sought to avoid the application of U.S. laws (most notably U.S. federal income tax laws) by investing in a BVI fund rather than a U.S. fund or directly with Madoff. Ironically, having specifically chosen to invest in a foreign fund to avoid the burdens of U.S. law, Plaintiffs now seek the protection of U.S. laws by filing claims in New York courts and relying on federal and state law.

One of the Kingate Funds' alleged investors attempted to pursue a derivative action on the Funds' behalf. Bruhl v. Kingate Mgmt., Ltd. et al., Index No. 601526/2009 (Supreme Court, N.Y. County) ("Bruhl v. KML"), alleged claims for breach of fiduciary duty, negligent misrepresentation, and unjust enrichment on behalf of the Kingate Funds against various defendants including Epps and Cook. (Def. Ex. 3.)  However, since this investor made no attempt to comply with the prerequisites to such a suit under BVI law, which applied to his case under the "internal affairs" doctrine (see Part III(A), infra), that action was dismissed. (Def. Ex. 4, p. 9.)

Likely realizing that this derivative suit would fail, other investors filed purported class actions in this Court, attempting to re-cast similar or identical claims as direct rather than derivative. The first was filed six months after Madoff's fraud was reported, followed by four more. These actions, now consolidated under the above caption, allege essentially the same causes of action against the Kingate Funds' directors, including Cook, Epps and Sebah, as were alleged in the derivative action. Plaintiffs' Complaint in this case is fatally flawed, and all of Plaintiffs' claims against Cook, Epps and Sebah should be dismissed for the following reasons:

---

[3] All references to plaintiffs' exhibits ("Pl. Ex. __") refer to exhibits annexed to the Complaint.

First, this Court lacks personal jurisdiction over Cook, Epps and Sebah. They are foreign directors of foreign funds intended for foreign investors, and none of these defendants have any jurisdictional contact with New York. On the face of the Complaint, Plaintiffs do not allege facts coming anywhere close to establishing personal jurisdiction over Cook, Epps or Sebah under New York law, or the "minimum contacts" necessary to comport with due process under the U.S. Constitution. Thus, Plaintiffs' claims against Cook, Epps and Sebah should all be dismissed for lack of personal jurisdiction.

Second, Plaintiffs fail to state a claim against Cook, Epps or Sebah. All of Plaintiffs' claims against these three defendants are governed by BVI law and every count fails under BVI law for lack of the requisite relationship between Cook, Epps and Sebah and any of the Plaintiffs. Notably, the Complaint contains no specific allegations concerning acts or omissions by Cook, Epps or Sebah, or concerning any relationship between any of these defendants and any of the Plaintiffs. In fact, no such relationship ever existed.

Third, Plaintiffs' claims for breach of fiduciary duty, negligence, gross negligence, constructive fraud, constructive trust, mutual mistake and unjust enrichment are all plainly derivative in nature. If these claims belong to any person or entity, they belong to the Kingate Funds. Moreover, Plaintiffs' injury – loss in value of their shares – is derivative of injury sustained by the Kingate Funds. Plaintiffs' strategic ploy to cast derivative claims as direct does not prevent this Court from treating them as derivative for purposes of this motion to dismiss.

Fourth, even if this Court had jurisdiction over Cook, Epps and Sebah and these claims were governed by New York law, they would be barred by the Martin Act (New York's blue sky law), N.Y. Gen. Bus. Law § 352 et seq., and the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. §§ 77p(b), 78bb(f)(1).

Fifth, Plaintiffs agreed, in subscribing for shares of the Kingate Funds, to waive all claims not brought within six months from the alleged act or omission. Thus, Plaintiffs' claims are time-barred.

Finally, there is no basis to grant leave to amend the Complaint. Over a year and a half has passed since Madoff's fraud was discovered, and Plaintiffs as a group have had time to develop and plead their jurisdictional and substantive allegations. However, the 141-page Complaint merely lumps Cook, Epps and Sebah in the vague, general and undifferentiated allegations against all of the other defendants in a vain attempt to gloss over the deficiencies in their pleading concerning these three foreign individuals. No further repleading is warranted here.

## SUMMARY OF RELEVANT FACTS

The Complaint devotes only a single paragraph to each of Cook, Epps and Sebah, identifying each as a resident of a foreign country and each as a director of the Kingate Funds. (Complaint, ¶¶ 34, 35, 37.) They are not mentioned again except as part of a group of 15 defendants Plaintiffs call the "Kingate Defendants."

Cook is a citizen of the United Kingdom and resident of the British Virgin Islands. ( (Cook Dec., ¶ 3; Complaint, ¶ 34.) Epps is a citizen of the United Kingdom and a resident of Bermuda. (Epps Dec., ¶ 3; Complaint, ¶ 35.) Sebah is a resident and citizen of France. (Sebah Dec., ¶ 4; Complaint, ¶ 37.) Sebah was a director of Kingate Global beginning in 1994 and of Kingate Euro beginning in 2000. (Sebah Dec., ¶ 2-3.) He resigned his directorships of both Kingate Funds in April, 2006 and was paid a flat fee by each of the Kingate Funds upon his resignation. (Sebah Dec., ¶ 15.) Cook and Epps were directors of the Kingate Funds beginning in 2002 and 2006, respectively, and were each paid a flat annual fee in accordance with the

4

Kingate Funds' Information Memoranda. (Cook Dec., ¶¶ 2, 14; Epps Dec., ¶¶ 2, 14; Pl. Ex. 1, p. vi.)

None of the Plaintiffs reside or are domiciled in New York or the U.S. (Complaint, ¶¶ 15-23.) In fact, none of the proposed class members are in New York or the U.S. There were many other funds such as the Kingate Funds whose assets were managed by Madoff, including many New York or U.S.-based funds. However, Plaintiffs chose to invest in BVI funds, presumably for reasons that included avoidance of U.S. federal income taxes.[4] The Kingate Funds' investors understood that they would not be accorded the protections of U.S. law, as they had chosen to invest in funds that, as explicitly stated in their Information Memoranda, were not registered as investment companies under applicable U.S. laws, with shares that were not registered under the U.S. Securities Act of 1933, managed by an entity that was not registered with the U.S. Securities and Exchange Commission as a registered investment adviser under the U.S. Investment Advisers Act of 1940. (Pl. Ex. 1, pp. v, 7, S-8; Pl. Ex. 2, p. v-vi, 8.)

All investors, including Plaintiffs, were advised that the Kingate Funds were high-risk investments, open only to those individual and institutional investors who could bear the risk of total loss of their investments. (Pl. Ex. 1, pp. vii, S-8; Pl. Ex. 2, pp. vii, S-9.) All were sophisticated investors, capable of evaluating the merits and risks of investing in the Kingate Funds. (Pl. Ex. 1, pp. S-8-9; Pl. Ex. 2, pp. S-8-9.) All were well aware that Madoff was the investment advisor for the Kingate Funds, and that KML had delegated all management responsibility for the Kingate Funds' assets to Madoff. All acknowledged that representatives of the investment advisor (Madoff) had been made available to them. (Pl. Ex. 1, pp. ii, 6, S-8; Pl.

---

[4] One of the benefits of investing in a foreign fund that these non-U.S. investors presumably sought was that these BVI Funds were not subject to U.S. federal income taxes on income or gains from trading, and shareholders not otherwise subject to U.S. taxes by reason of domicile would not have to pay U.S. taxes by reason of ownership, transfer or redemption of shares in the Kingate Funds. (Pl. Ex. 1, pp. 25-26; Pl. Ex. 2, pp. 26-27.)

Ex. 2 pp. iii, 6, S-9; Complaint, ¶ 67.)[5] All were warned that Madoff had custody of the Kingate

Funds' assets, and of the risk that Madoff could misappropriate the funds, or supply inaccurate or

fraudulent information. (Pl. Ex. 1, p. 9; Pl. Ex. 2, p. 10; Complaint ¶ 102.) Prospective investors

were told they should consult their own legal, tax and financial advisors prior to investing in the

Kingate Funds. (Pl. Ex. 1, p. 10; Pl. Ex. 2, p. 11.) Nothing in the Information Memoranda

distributed to investors or the Subscription Agreements they signed indicates that the Kingate

Funds' directors assumed any duties or responsibilities to shareholders of the Kingate Funds.

(Pl. Ex. 1-6.)

The Kingate Funds are now in liquidation in the BVI. William Tacon and Richard

Fogerty of Zolfo Cooper were appointed as Joint Liquidators on June 4, 2009. (Def. Ex. 1-2.)

## ARGUMENT

## I.    APPLICABLE STANDARDS

### A.    PLEADING STANDARDS

Plaintiffs assert no federal statutory claims against Cook, Epps or Sebah. The Complaint

sets forth only common law claims against them. It is well established that federal standards of

pleading apply to state law claims asserted in federal court. See DC Comics v. Kryptonite Corp.,

No. 00 Civ. 5562 AGS, 2002 WL 1303110, at *5 (S.D.N.Y. June 13, 2002) (federal

pleading rules apply on motion to dismiss state law fraud claim brought in federal court); Stern

v. Gen. Elec. Co., 924 F.2d 472, 476 n.6 (2d Cir. 1991) ("Although the requirement that a

shareholder derivative plaintiff allege fraud or bad faith is a matter of state law, the Federal

Rules of Civil Procedure govern the degree of particularity with which such an allegation must

---

[5] Although Plaintiffs state in ¶ 67 of the Complaint that the Information Memoranda did not state that Madoff was
the investment advisor, they do not -- and cannot -- allege they were unaware of the identity of the investment
advisor for the Funds. In fact, all subscribers to the Kingate Funds acknowledged having been given the opportunity
to verify information, including meeting representatives of the Funds, their manager, and their investment advisor
(Madoff). (Pl. Ex. 1, p. S-8.)

be made in a federal complaint.")

As explained below, BVI law governs all of Plaintiffs' claims against Cook, Epps and Sebah. The standards of pleading under the Federal Rules of Civil Procedure also apply to foreign law claims asserted in federal court. As the Second Circuit explained in Bournias v. Atl. Mar. Co., 220 F.2d 152, 154 (2d Cir. 1955), in cases "where the rights of the parties are grounded upon the law of jurisdictions other than the forum, it is a well-settled conflict-of-laws rule that the forum will apply the foreign substantive law, but will follow its own rules of procedure." Id., citing Restatement of Conflict of Laws § 585.

### B.    STANDARD FOR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

On a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of demonstrating that the Court has jurisdiction over the defendant. Calder v. Jones, 465 U.S. 783, 790 (1984); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). To establish personal jurisdiction against each of Cook, Epps or Sebah, Plaintiffs must allege non-conclusory facts sufficient to establish a *prima facie* case that personal jurisdiction is proper under sections 301 or 302 of New York's Civil Practice Law and Rules ("CPLR"), and that the exercise of jurisdiction over these foreign defendants comports with due process under the U.S. Constitution. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996). Plaintiffs' jurisdictional allegations, which are entirely conclusory, accomplish neither. Moreover, it is clear from the Declarations of Cook, Epps and Sebah that no basis for personal jurisdiction exists.

### C.    STANDARD FOR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the applicable pleading standards for motions to dismiss under Rule 12(b)(6) of the Federal Rules of

Civil Procedure, stating that a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Id. at 570. This requires "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do." Id. at 555. The Supreme Court reiterated this point in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949, citing Twombly, 550 U.S. at 555.

The Court then set forth a two-pronged approach for addressing a pleading's sufficiency. First, courts should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. The Court further explained that, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. Second, courts should assume the veracity of only "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement of relief." Id. For a claim to be plausible, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, the standard of pleading for a claim sounding in fraud, such as Plaintiffs' constructive fraud claim (Count 8), is much higher. Such claims must be pled with specificity, which Plaintiffs failed to do. Broad allegations that fail to identify fraudulent statements made by a defendant, or factual allegations that fail to differentiate between groups of defendants, such as the allegations in this case, do not meet the Rule 9(b) standard. @Wireless Enters., Inc. v. AI Consulting, LLC, No. 05-CV-6176 CJS(P), 2006 WL 3370696, at *10 (W.D.N.Y. Oct. 30, 2006) (constructive fraud claim dismissed under Rule 9(b) where complaint failed to identify any fraudulent statements made by

defendant); see also Ellington Mgmt. Group, LLC v. Ameriquest Mortgage. Co., No. 09 Civ. 0416 (JSR), 2009 WL 3170102, at *1 n.3 (S.D.N.Y. Sept. 29, 2009) (factual allegations that fail to differentiate between groups of defendants do not comport with Rule 9(b)).

Plaintiffs' claims against Cook, Epps and Sebah, which consist of undifferentiated allegations against a large group of defendants and merely track the elements of causes of action as set forth in case law, do not satisfy the applicable standards outlined above.

## II.    THIS ACTION MUST BE DISMISSED AGAINST COOK, EPPS AND SEBAH FOR LACK OF PERSONAL JURISDICTION

### A.    PLAINTIFFS' JURISDICTIONAL ALLEGATIONS ARE CONCLUSORY

This case concerns foreign directors of foreign funds intended for non-U.S. investors. Plaintiffs utterly fail to meet their burden of alleging non-conclusory facts sufficient to support this Court's exercise of jurisdiction over Cook, Epps or Sebah. In fact, other than identifying them as directors of the Funds and residents of the BVI, Bermuda and France, respectively, the Complaint is devoid of any allegations specifically relating to these three defendants. (Complaint, ¶¶ 34, 35, 37.) Instead, Plaintiffs group Cook, Epps or Sebah with all of the other defendants, and allege in conclusory fashion that this Court has jurisdiction over all of them. (Complaint, ¶¶ 10-11.) However, Plaintiffs' allegations concerning jurisdiction merely parrot the requirements of New York's statutes and case law for the exercise of personal jurisdiction and are insufficient to defeat the instant motion.[6]

First, Plaintiffs broadly allege that all defendants have "systematic and continuous contact with New York" sufficient to warrant the exercise of general jurisdiction, but fail to

---

[6] Plaintiffs allege that this Court has jurisdiction over all defendants in this matter pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub.L. 109-2, 119 Stat. 4. Subject to certain limitations, CAFA merely confers federal diversity jurisdiction over class actions where the aggregate amount in controversy exceeds $5 million. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 571 (2005). However, the issue of personal jurisdiction over a non-resident defendant in such a federal diversity action is determined by the law of the forum state. C.B.C. Wood Prods., Inc. V. IMD Integrated Logistics Servs., Inc., 455 F. Supp. 2d 218, 222 (E.D.N.Y. 2006).

identify a single contact – let alone systematic or continuous contacts – that Cook, Epps or Sebah had with New York. (Complaint, ¶ 10.) Next, in an equally conclusory manner, Plaintiffs allege that all defendants transacted business in New York, but fail to identify any specific acts in New York by Cook, Epps or Sebah. (Complaint, ¶ 11.) Indeed, the only acts that Plaintiffs allege against Cook, Epps or Sebah are through the Kingate Funds themselves. Cook, Epps and Sebah are broadly alleged to have had knowledge of and participated in the Kingate Funds' "transaction of business in New York." (Complaint, ¶¶ 34, 35, 37.) Even if these bare, conclusory allegations were sufficient to establish a *prima facie* case for jurisdiction, the Declarations of Cook, Epps and Sebah are sufficient to rebut it.

### B.   COOK, EPPS AND SEBAH LACK SUFFICIENT MINIMUM CONTACTS WITH NEW YORK FOR GENERAL PERSONAL JURISDICTION

General personal jurisdiction is authorized under CPLR § 301 over natural persons who were domiciliaries of the state or physically present in the state. General personal jurisdiction over a person or entity doing business in New York under CPLR § 301 requires a continuous, regular presence in the state. Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990).

Cook, Epps and Sebah plainly lack sufficient contacts for this Court to exercise general jurisdiction over them. None were continuously, regularly present in New York. Each has had only brief, sporadic visits to New York. Such occasional visits to New York do not suffice to bring defendants under the general jurisdiction of the U.S. courts. Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985) (fifty-four visits to New York to discuss business with plaintiff insufficient); Landoil, 918 F.2d at 1043 (thirteen business trips by defendants' employees during eighteen-month period insufficient); Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG, 160 F. Supp. 2d 722, 733 (S.D.N.Y. 2001) (multiple business trips

per year insufficient basis for jurisdiction) (collecting cases).[7]   While Sebah has one bank account in New York, which contains less than $200 and which he rarely uses, it is well established that maintenance of New York bank accounts is not alone sufficient to give rise to jurisdiction under CPLR § 301.  First Capital Asset Mgmt., Inc. v. Brickellbush, Inc., 218 F. Supp. 2d 369, 393 (S.D.N.Y. 2002) (no personal jurisdiction where defendant's multi-million dollar bank accounts in New York did not "alter her aggregate state activities to such an extent that the Court can say that she is present in the State not occasionally or casually, but with a fair measure of permanence and continuity") (internal quotations and citations omitted).  Otherwise, Cook, Epps and Sebah had no contacts at all with New York.  The Declarations of Cook, Epps and Sebah setting forth their lack of jurisdictionally relevant contacts with New York are sufficient to rebut  the Complaint's wholly conclusory allegations that "all defendants" have systematic and continuous contact with New York.

Tacitly acknowledging that Cook, Epps and Sebah lack the requisite contacts and give rise to general personal jurisdiction, Plaintiffs attempt to impute contacts that the Kingate Funds allegedly had with the U.S. to Cook, Epps and Sebah.  However, even if the non-party Kingate Funds themselves have sufficient contacts, this does not provide a basis for exercising personal jurisdiction over their current and former directors.  Rush v. Savchuk, 444 U.S. 320, 331-332 (1980) (requisite minimum contacts must be met as to each defendant over whom a court exercises jurisdiction); Duravest, Inc. v. Viscardi, A.G., 581 F. Supp. 2d 628, 634-635 (S.D.N.Y. 2008) (individual acting in corporate capacity can only be subject to specific jurisdiction, not

---

[7] As noted by the Hoffritz court, it is not clear that an individual defendant, as opposed to a corporate defendant, could be subject to general jurisdiction under a "doing business" test; however, as in that case, Plaintiffs here cannot make out even a *prima facie* case that Cook, Epps and Sebah have sufficient contacts with New York to meet that test.  Hoffritz for Cutlery, Inc., 763 F.2d at 58.

general, upon a showing that the corporation acted as its agent) (see subsection C, below); Langenberg v. Sofair, No. 03 CV 8339 KMK, 2006 WL 2628348, at *6 (S.D.N.Y. Sept. 11, 2006) (dismissing claims for lack of personal jurisdiction and holding that "jurisdiction cannot be implied or imputed from one defendant to another").

## C.    COOK, EPPS AND SEBAH LACK SUFFICIENT MINIMUM CONTACTS WITH NEW YORK FOR SPECIFIC PERSONAL JURISDICTION

Likewise, Cook, Epps and Sebah's respective limited contacts with New York do not support the exercise of specific personal jurisdiction in this case. In diversity cases, the court must look first to the long-arm statute of the forum state, in this instance, New York. PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997); Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997). "If the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process." Id.

The only ground on which Plaintiffs even allege this Court has personal jurisdiction over any of the defendants is CPLR § 302(a)(1), the "transacting business" prong of New York's long-arm statute. (Complaint, ¶ 10(b).) Plaintiffs simply allege, without explanation or factual support, that all defendants transacted business in New York. Presumably because none of the Plaintiffs are located in New York (Complaint, ¶¶ 15-23), they do not even attempt to allege long-arm jurisdiction under CPLR § 302(a)(2) (where a defendant's tortious activities cause injury in New York). Nor are any facts plead to support long-arm jurisdiction under CPLR § 302(a)(3) (tortious conduct by a defendant in New York), and as discussed below, no allegations concerning the Funds' alleged activities in New York can be imputed to these individuals. Nor do they allege that statements of the Kingate Funds that they attribute to Cook, Epps or Sebah found their way into the United States which, in any event, would not be enough

to sustain a claim of jurisdiction over Cook, Epps or Sebah.[8]

Pursuant to CPLR § 302(a)(1), "a court may exercise personal jurisdiction over a non-domiciliary when: (1) the defendant has transacted business in New York; and (2) the cause of action arises out of the subject matter of the transacted business." NCA Holding Corp. v. Ernestus, No. 97 CIV. 1372 (LMM), 1998 WL 388562, at *4 (S.D.N.Y. July 13, 1998). Critically, the Complaint is devoid of any allegations that Cook, Epps or Sebah transacted any business in New York related to Plaintiffs' claims. Lacking the ability to make any allegations about these defendants, Plaintiffs resort to making allegations about the Funds. However, the law is clear that these allegations do not save Plaintiffs' Complaint since allegations concerning transaction of business in New York by the Kingate Funds themselves cannot be imputed to Cook, Epps or Sebah for purposes of jurisdiction. As this Court explained in Duravest, Inc.:

> [An] individual defendant may be subject to specific personal jurisdiction (but not general jurisdiction) based on his actions in his corporate capacity only where the plaintiff can show that the corporation was acting as the agent of the officer (rather than vice versa, as would usually be the case). For a corporation to be considered an agent of an officer for personal jurisdiction purposes, a plaintiff must allege: (1) that the corporation engaged in purposeful activities in New York in relation to the transaction; (2) that the corporation's activities were performed for the benefit of the individual defendant; (3) that the corporation's activities were performed with the knowledge and consent of the individual defendant; and (4) that the individual defendant exercised some control over the corporation.

581 F. Supp. 2d at 634-635 (internal quotations and citations omitted) (emphasis added).

There are no allegations in the Complaint that would support an inference that the Kingate Funds were agents of Cook, Epps or Sebah. There are no allegations that the Funds'

---

[8] In In re AstraZeneca Sec. Litig., 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008) aff'd sub nom, State Univers. Ret. Sys. of Ill. v. Astrazeneca PLC, 334 F. App'x 404 (2d Cir. 2009), this Court granted individual defendants' motion to dismiss because the complaint contained "merely conclusory statements applicable to all individual defendants as a result of their positions within the Company" concerning allegedly false and misleading statements distributed to company's investors in the U.S. and the individuals' knowledge concerning the misleading nature of those statements. In NCA Holding Corp., 1998 WL 388562, at *1, the court declined to exercise jurisdiction where plaintiffs alleged defendants made fraudulent statements in Germany that allegedly made their way into New York.

activities directed at the United States were for the benefit of Cook, Epps or Sebah.  Other than a vague, conclusory allegation that a group of twelve individuals and entities that Plaintiffs labeled the "Kingate Defendants" controlled the Funds, Plaintiffs have not alleged that Cook, Epps or Sebah exercised control over Kingate Funds.  Even if Plaintiffs' allegations were plausible, "a general allegation that an officer controls a corporation is not sufficient to establish personal jurisdiction."  Pilates, Inc. v. Current Concepts, No. 96 CIV. 0043 (MGC), 1996 WL 599654, at *3 (S.D.N.Y. Oct. 18, 1996).

Nor does Epps, Cook and Sebah's status as former directors of the Kingate Funds give rise to personal jurisdiction, regardless of any jurisdictional allegations against the Funds.  An individual defendant's "status as a board member is not alone sufficient to establish jurisdiction." In re AstraZeneca, 559 F. Supp. 2d at 467; In re Royal Ahold N.V. Sec. & ERISA Litig., 351 F. Supp. 2d 334, 355 (D. Md. 2004) (personal jurisdiction not established where plaintiffs failed to note a single specific act undertaken by any individual defendant directed at the United States). In re Rhodia S.A. Sec. Litig., 531 F. Supp. 2d 527, 542-543 (S.D.N.Y. 2007), sufficient minimum contacts were not alleged as to two French citizens and residents who were executives of the defendant company.  In that case, this Court found that the Plaintiffs failed to make a *prima facie* showing of personal jurisdiction, noting that "[b]eing a corporation's control person of itself does not, as Lead Plaintiffs contend, merit personal jurisdiction, nor does being a corporation's board member." (Internal citations omitted.)  Reliance on conclusory allegations of their status as "control persons" was simply insufficient.  Id.

**D.    JURISDICTION OVER COOK, EPPS AND SEBAH ALSO FAILS FOR LACK OF CONSTITUTIONAL DUE PROCESS**

Not only do Cook, Epps and Sebah lack sufficient minimum contacts with New York for the exercise of general or specific personal jurisdiction, but the exercise of such jurisdiction would be unconstitutional. The due process analysis requires that courts evaluate several factors to determine whether the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice -- that is, whether it is reasonable under the circumstances of the particular case. See Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945) (internal quotations and citations omitted). The Supreme Court has held that the court must evaluate the following factors as part of this "reasonableness" analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. Thus, even if a plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, personal jurisdiction may be defeated where the defendant presents "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).

Even if Cook, Epps or Sebah had any claim-related contacts with New York, which they do not, this Court should decline to exercise jurisdiction because doing so would not accord with "fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 316; Metro. Life Ins., 84 F.3d at 567-568. This case involves foreign directors of a foreign fund that, by the terms of the Information Memoranda on which Plaintiffs rely for their claims, were marketed to sophisticated, non-U.S. investors. It would impose an unreasonable burden on these foreign

Defendants to face this class action lawsuit by foreign plaintiffs in the United States based solely on conclusory allegations concerning their status as directors of foreign investment funds.

## III.  DISMISSAL PURSUANT TO RULE 12(B)(6) IS WARRANTED AS PLAINTIFFS FAIL TO STATE A CLAIM AGAINST COOK, EPPS OR SEBAH

Plaintiffs assert nine causes of action against Cook, Epps and Sebah, all of which are governed by BVI law, and all of which fail to state a claim. Plaintiffs' claims for gross negligence (Count 5), negligence (Count 6), breach of fiduciary duty (Count 7), constructive fraud (Count 8), constructive trust (Count 11), mutual mistake (Count 12) and unjust enrichment (Count 28) all fail because they are truly derivative claims belonging to the Funds and therefore barred, and also for lack of the requisite contractual or special relationship between Cook, Epps or Sebah to the Kingate Funds' shareholders. Plaintiffs' claims for negligent misrepresentation (Counts 3 and 4) also fail for lack of the requisite relationship between these defendants and the Funds' shareholders.

### A.  BVI LAW GOVERNS ALL OF PLAINTIFFS' CLAIMS AGAINST COOK, EPPS AND SEBAH

In diversity jurisdiction actions, questions of shareholder standing and the legal relationship between a corporation and its shareholders are governed by state law. Galef v. Alexander, 615 F.2d 51, 58 (2d Cir. 1980); accord First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 621 (1983). "A federal court, sitting in diversity, must look to the choice-of-law rules of the state in which it sits . . . to resolve conflict-of-laws questions," Arochem Int'l, Inc. v. Buirkle, 968 F.2d 266, 269-70 (2d Cir. 1992), including the "substantive question of [a] stockholder's right to sue," Galef, 615 F.2d at 58. Whether a shareholder has standing to assert claims directly or whether those claims belong to the corporation is determined by the law of the state or country in which the company is incorporated. Hausman v. Buckley, 299 F.2d 696, 700 (2d Cir. 1962) (applying Venezuelan law

to shareholder standing issue); In re BP P.L.C. Derivative Litig., 507 F. Supp. 2d 302, 308 (S.D.N.Y. 2007) (applying English law to shareholder standing issue); Seybold v. Groenink, No. 06 Civ. 772 (DLC), 2007 WL 737502, at *5-6 (S.D.N.Y. Mar. 12, 2007) (applying Dutch law to shareholder standing issue).

Furthermore, New York courts recognize that the state of incorporation has an interest superior to that of other states in regulating the directors' and officers' conduct of the internal affairs of its own corporations. Druck Corp. v. Macro Fund (U.S.) Ltd., IIU, No. 02 Civ. 6164 (RO), 2007 WL 258177, at *1 (S.D.N.Y. Jan. 29, 2007) (applying Cayman Islands law to a breach of contract claim) aff'd, 290 Fed. App'x (2d Cir. 2008); see also BBS Norwalk One, Inc. v. Raccolta, Inc., 60 F. Supp. 2d 123, 129 (S.D.N.Y. 1999) (New York's internal affairs doctrine "is really a specialized application of the New York rule…that the law of the state with the greatest interest in the issue governs") aff'd, 205 F. 3d 1321 (2d Cir. 2004).

Clearly, the only relevant law with respect to the common law claims asserted against Cook, Epps and Sebah is BVI law, because, as alleged by Plaintiffs, none of these three defendants or Plaintiffs is located in or does business in New York (Complaint, ¶¶ 15-23, 34-35, 37), and the Funds are BVI corporations (Pl. Ex. 1-2).

In fact, Plaintiffs assert no basis for any argument that New York law should govern their claims against Cook, Epps and Sebah. Plaintiffs' allegations that "all Defendants" have "systematic and continuous contacts with New York" (Complaint, ¶ 10) are conclusory. Such allegations, therefore, are not entitled to a presumption of truth by this Court. Barberan v. Nationpoint, No. 07-CV-11595 (KMK), 2010 WL 1529324, at *3 (S.D.N.Y. Mar. 2, 2010) (courts "need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the

complaint itself or by documents upon which its pleadings rely") (citation and internal quotation marks omitted).

Applying BVI law to each of the common law claims that Plaintiffs assert against Cook, Epps and Sebah, it is clear that all must be dismissed for failure to state a claim.

### B.    PLAINTIFFS' CLAIMS FAIL BECAUSE THE REQUISITE RELATIONSHIP BETWEEN COOK, EPPS AND SEBAH AND THE PLAINTIFFS IS LACKING

Plaintiffs' claims against Cook, Epps and Sebah must be dismissed because they all require allegations of a fiduciary or contractual relationship that Plaintiffs do not, and, in any event, cannot plead. As Defendants' expert in BVI law, David Chivers, explains in his Affidavit (see Affidavit of David Chivers, QC, filed by co-defendant KML ("Chivers Aff.")), Plaintiffs' negligent misrepresentation, negligence, gross negligence, breach of fiduciary duty, constructive fraud, and constructive trust claims fail because each requires an allegation of a duty running from Cook, Epps and Sebah to the Kingate Funds' shareholders. (Chivers Aff., ¶¶ 59, 62, 67, 69(b), 91-92, 95, 100, 106.) Under BVI law, however, directors and officers of a company only owe duties to the company of which they are directors and/or officers – not to the corporation's individual shareholders. (Chivers Aff., ¶¶ 60, 62.) Accordingly, BVI courts do not recognize any duty – fiduciary or otherwise – running from the officers and/or directors of a corporation to the corporation's shareholders absent a special relationship of direct and close contact or an assumption of a duty. (Chivers Aff., ¶¶ 64-67, 69, 73, 75-100, 106.)

The Complaint, however, fails to set forth allegations sufficient to establish either a special relationship between Plaintiffs and Cook, Epps and Sebah or an assumption of any duty by them beyond their duties to the Kingate Funds. (Chivers Aff., ¶¶ 59, 61, 65, 67, 71, 83-84, 87, 90, 92, 98.) Specifically, Plaintiffs fail to allege any circumstances which brought Cook, Epps and Sebah into "direct and close contact" with them in a manner capable of generating

fiduciary obligations. (Chivers Aff. ¶¶ 64, 67.) The bare allegation that Cook, Epps and Sebah possessed greater expertise than the Plaintiffs is not sufficient to plead a special relationship for the purposes of negligent misrepresentation. (Chivers Aff., ¶ 79.) Although a fiduciary relationship not imposed by law may be assumed by contract or the performance of a gratuitous service (Chivers Aff., ¶¶ 80-81), neither of these bases is pled by Plaintiffs in support of their negligent misrepresentation claim. [9] (Chivers Aff., ¶¶ 91-92.) Plaintiffs similarly fail to plead a special relationship or assumption of a duty by Cook, Epps and Sebah in support of their claims for negligence (Chivers Aff., ¶¶ 95, 97-98), constructive fraud (Chivers Aff., ¶ 100) or constructive trust (Chivers Aff., ¶ 106). Thus, these claims must be dismissed.

Moreover, Plaintiffs lack any contractual relationship with Cook, Epps or Sebah, which precludes their claims for mutual mistake (Count 12) and unjust enrichment (Count 28). These claims seek the return of fees paid to Cook, Epps and Sebah by the Kingate Funds, which Plaintiffs incorrectly state were based on the Funds' returns. (Complaint, ¶¶ 308, 396.) Critically, Plaintiffs do not allege that they paid any fees to Cook, Epps and Sebah. In fact, Cook, Epps and Sebah only received flat fees pursuant to their contractual relationship with the Funds. (See Section C below.) Under BVI law, a suit to enforce a corporation's rights under a contract to which the corporation is a party can be maintained only by the corporation itself, not by a shareholder individually as a third-party beneficiary. (Chivers Aff., ¶¶ 109, 117(b).) Because Plaintiffs are not parties to the contracts by which the Funds paid Cook, Epps and Sebah, Plaintiffs' mutual mistake and unjust enrichment claims must be dismissed. (Id.)

---

[9] Neither the Funds' Subscription Agreements nor Information Memoranda set forth any fiduciary obligations assumed by Cook, Epps or Sebah. Furthermore, such an assumption would be unusual where, as here, the relevant contracts interpose a third party – namely, the Funds. (See Chivers Aff. ¶ 82.)

### C.   PLAINTIFFS' CLAIMS ARE DERIVATIVE AND MUST BE DISMISSED

Plaintiffs' claims for negligence, gross negligence, breach of fiduciary duty, constructive fraud, constructive trust, mutual mistake and unjust enrichment all fail because they are truly derivative claims. Plaintiffs cannot bring these claims against Cook, Epps or Sebah directly, and for the reasons set forth in subsection D below, any attempt to replead these claims as derivative claims would fail.

Under BVI law, where a corporation suffers loss as a result of an actionable wrong, only the corporation – not its shareholders – may assert a cause of action to vindicate the wrong. (Chivers Aff., ¶ 17.)  Pursuant to the proper plaintiff principle, "if a claim is vested in a company, both the right of action and any relevant loss are attributable to the company." (Chivers Aff., ¶ 14.)   Similarly, where a plaintiff's losses are merely reflective of losses sustained by the corporation, such as when the loss suffered results from the diminution in value of the plaintiff's shares in the corporation, the plaintiff lacks standing to assert claims directly against those accused of harming the corporation. (Chivers Aff., ¶¶ 13-14, 20-21.)  The proper plaintiff and reflective loss principles therefore require a shareholder seeking to vindicate a loss or harm suffered by a corporation to pursue its claims in a derivative action. (Chivers Aff., ¶¶ 20-21.)   Following from these well-established principles, the injury and harm alleged by Plaintiffs is entirely derivative of injury and harm to the Funds.   Indeed, the gravamen of the claims against Cook, Epps and Sebah is that their alleged mismanagement of the Funds caused the loss of the value of Plaintiffs' shares in the Funds, and that none deserved payments of fees. (Complaint, ¶¶ 3-5, 69, 279, 283.)  Although Plaintiffs style their claims as direct, the damage they allege arises solely from harm to the Funds themselves, and "[a]ny loss suffered by the Plaintiffs has been suffered in their capacity as shareholders in the Funds." (Chivers Aff., ¶ 20.)

The majority of Plaintiffs' claims, therefore, must be dismissed for lack of standing. Plaintiffs' claims for gross negligence, negligence and breach of fiduciary duty turn on the alleged failure of Cook, Epps and Sebah to properly manage the Funds. Even if true, such allegations would only give rise to claims by the Funds, not its shareholders. (Chivers Aff., ¶ 35.) Similarly, to the extent that the constructive fraud claim – which is not even cognizable under BVI law (Chivers Aff., ¶ 99) – arises from Cook, Epps and Sebahs' acts of mismanagement in their role as directors of the Funds, the claim belongs to the Funds. (Chivers Aff., ¶ 31.)

Moreover, although Plaintiffs seek "the return of all fees paid to the Kingate Defendants" (Complaint, ¶ 283), the Complaint is devoid of any allegation that the Plaintiffs paid any fees to Cook, Epps and Sebah. The Court may, based on judicial experience and common sense, conclude that any fees or other compensation paid to Cook, Epps and Sebah were paid by the Funds. Ashcroft, 129 S.Ct. at 1950 ("Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.") (citations omitted) Accordingly, any claims for constructive trust, mutual mistake and unjust enrichment belong solely to the Funds, and cannot be asserted by Plaintiffs pursuant to the proper plaintiff and reflective loss principles. (Chivers Aff., ¶¶ 42-44, 109-111, 117, 122.)

Consequently, Plaintiffs lack standing to assert direct common law claims against Cook, Epps and Sebah, and these claims must be dismissed.

### D.    IT WOULD BE FUTILE FOR PLAINTIFFS TO REPLEAD THIS AS A DERIVATIVE ACTION

There has already been one failed attempt by a shareholder to pursue an action on behalf of the Funds, now in liquidation, in New York state court, Bruhl v. KML. That case was

dismissed on the grounds that the plaintiff did not comply with BVI law.  Section 184C of the BVI Business Companies (Amended) Act 2005 ("Section 184C") sets forth the procedural framework for shareholders of BVI corporations to seek leave to file a derivative action. (Chivers Aff., ¶ 18.)  Section 184C requires shareholders seeking to pursue derivative claims to obtain leave of the BVI High Court first, which Bruhl failed to do.  (Def. Ex. 4, p. 9.)

Furthermore, a BVI court would likely deny Plaintiffs leave to assert their claims in a derivative action, because the Funds are in liquidation.  (Def. Ex. 4, pp. 10-11; Chivers Aff., ¶ 18.)  Additionally, the BVI High Court would find that Plaintiffs' claims are not likely to succeed.  Plaintiffs' claims here are not cognizable under BVI law, and the Information Memoranda for the Funds expressly exculpates Cook, Epps and Sebah from the kinds of liability to the Funds that Plaintiffs would presumably assert in a derivative action.[10]

The Funds are now in liquidation and thus, the Joint Liquidators of the Funds are the sole persons authorized to bring proceedings in relation to the Funds' assets.  As one of the Liquidators explained to the New York state court that dismissed the purported shareholder derivative action against many of the same defendants named here:

> Potential claims that the company may have are part of the company's assets, and under BVI law, the liquidator is charged with assessing and pursuing such claims as appropriate.  Unless the High Court of the BVI otherwise orders, no person other than the liquidator may cause the company to bring proceedings, or commence or proceed with any action or proceeding "in relation to its assets."

Def. Ex. 5, ¶ 12, citing BVI Insolvency Act § 174(1).

---

[10]See Pl. Ex. 1, p. 12 ("the Directors shall not be liable to the Fund for any acts or omissions in the performance of their duties if such person acted honestly and in good faith with a view to the best interests of the Fund").

## V.   PLAINTIFFS' CLAIMS ARE BARRED BY THE MARTIN ACT AND SLUSA

Even if Plaintiffs' claims were governed by New York law, they would fail.  All of the claims against Cook, Epps and Sebah are preempted by the SLUSA, the Martin Act, or both.[11]

### A.   ALL OF PLAINTIFFS' CLAIMS ARE PREEMPTED BY SLUSA

SLUSA preempts class actions based on state or local law in which plaintiffs allege that the defendant "misrepresented or omitted a material fact or employed a manipulative device or contrivance" in connection with the purchase or sale of a "covered security."  Each factor for SLUSA preemption is clearly present here.  First, this is a "covered class action."  Second, Plaintiffs allege only New York common law claims against Cook, Epps and Sebah.  Third, all such claims are based on alleged misrepresentations or omissions of material facts in connection with the purchase of, or the failure to purchase, "covered securities."  (Complaint, pp. 22-32.) Thus, Plaintiffs' claims against Cook, Epps and Sebah are preempted by SLUSA.

In other Madoff-related class actions, courts have held that SLUSA preempts common law claims such as those asserted in the instant case.  In <u>Barron v. Igolnikov</u>, No. 09 Civ. 4471 (TPG), 2010 WL 882890, at *4 (S.D.N.Y. Mar. 10, 2010), concerning various funds invested with Madoff, the Court explained that SLUSA preemption applies even though Madoff allegedly never purchased any securities at all with Plaintiffs' money.  Thus, Judge Griesa dismissed the plaintiffs' state law claims including those for breach of fiduciary duty, gross negligence, and unjust enrichment.[12]  <u>See also</u> <u>Levinson v. PSCC Servs., Inc.</u>, No. 3:09-CV-00269 (PCD), 2009

---

[11] Cook, Epps and Sebah incorporate by reference the more detailed analysis of SLUSA and Martin Act preemption in the brief submitted by KML in support of its motion to dismiss, Section IV(F)(2).

[12] Citing the Supreme Court's decision in <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit</u>, 547 U.S. 71, 85 (2006), Judge Griesa explained that SLUSA "must be read broadly to cover not only purchasers and sellers of covered securities but also claims where the fraud alleged coincides with a covered securities transaction with someone else."  As in <u>Barron</u>, it is enough here that Madoff told investors he would purchase and sell securities in the S&P 100 Index, "particularly as Madoff used prices from public markets in the trade documentation he sent to customers."

WL 5184363 (D. Conn. Dec. 23, 2009) (SLUSA preempted plaintiffs' RICO claims in Madoff-related case).

**B.    ALL OF PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE MARTIN ACT**

The Martin Act, which prohibits fraudulent and deceitful practices in the distribution, exchange, sale and purchase of securities but does not require proof of intent to defraud or scienter, also preempts all of Plaintiffs' claims against Cook, Epps and Sebah. Under the Martin Act, only the New York Attorney General has authority to prosecute state-law securities violations sounding in fraud. There is no implied private right of action. Thus, in every case in this District concerning Madoff feeder funds, all non-fraud causes of action have been dismissed as preempted by the Martin Act. See Barron, 2010 WL 882890, at *6 (dismissing breach of fiduciary duty, gross negligence and unjust enrichment claims based on Martin Act preemption as well as SLUSA preemption);[13]  Stephenson v. Citco, No. 09 CV 00716 (RJH), 2010 WL 1244007 (S.D.N.Y. Apr. 1, 2010) (dismissing claims for breach of fiduciary duty, negligence and gross negligence based on Martin Act preemption); Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc., Case No. 09 Civ. 3708 (TPG), 2010 WL 1257567 (S.D.N.Y. Mar. 31, 2010) (all non-fraud claims preempted by Martin Act); In re Tremont, Sec. Law, No. 08 Civ. 11117 (TPG), 2010 WL 1257580 (S.D.N.Y. Mar. 30, 2010) (same).

**VI.    PLAINTIFFS' CLAIMS ARE TIME-BARRED**

By signing the Subscription Agreement, Plaintiffs agreed to a six-month statute of limitations for any claims against "the Fund, its Board of Directors and other officers." (Pl. Ex. 1, S-11, ¶ y; Pl. Ex. 2, S-11, ¶ y.)  Under that provision, Plaintiffs' claims accrued when the

---

[13] As noted in Barron, the New York Attorney General has taken over the litigation concerning certain Madoff-related funds managed by Ezra Merkin, originally commenced by New York University, which "underscores the appropriateness of Martin Act preemption here." Id.

alleged wrongdoing occurred or upon redemption of their shares.[14]  For example, Plaintiffs'

claims against Cook, Epps or Sebah occurred when they allegedly made statements, neglected

their alleged duties to monitor Madoff's trades, and received fees from the Kingate Funds.

(Complaint, ¶¶ 67-69, 83-105, 254-292, 303-308, 392-396.)  Sebah has not been a director of the

Kingate Funds since April 2006.  Thus, claims against Sebah are clearly time-barred.  As far as

Cook and Epps are concerned, each of these allegedly actionable acts and omissions must have

occurred more than six months before the filing of the first of the class action complaints

consolidated under the above caption on June 10, 2009, because, as acknowledged by Plaintiffs,

Madoff's fraud was discovered on December 11, 2008.  (Complaint, ¶ 1.)

## CONCLUSION

For the foregoing reasons, defendants Cook Epps and Sebah's Motion to Dismiss

Plaintiffs' Claims pursuant to Rule 12(b)(2) and Rule 12(b)(6) of the Federal Rules of Civil

Procedure should be granted in its entirety.

Dated:      New York, New York
            July 19, 2010

                        Respectfully submitted,

                        DAVIS & GILBERT LLP

                        By:  /s/ Howard J. Rubin
                            Howard J. Rubin, Esq.
                            Bruce M. Ginsberg, Esq.
                            Cheryl M. Plambeck, Esq.
                            Sean P. Cameron, Esq.

---

[14] "Each investor in the Fund agrees to have waived, to the maximum extent permissible under law, the right to bring any legal claim, action or other proceeding against the Fund, its Board of Directors and other officers unless such claim, action or proceeding is commenced within six (6) months from the date of the first to occur of (i) the original occurrence allegedly giving rise to such claim, action or proceeding or (ii) the Shareholders' redemption of any Shares." (Pl. Ex. 1, p. S-11.)

1740 Broadway
New York, New York 10019
(212) 468-4800

*Attorneys for Defendants Graham Cook,
John Epps and Charles Sebah*