UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE KINGATE MANAGEMENT LIMITED
LITIGATION

This Document Relates To:  All Actions

Master File 09 Civ. 5386 (DAB)

**<u>MEMORANDUM OF LAW IN SUPPORT OF FIM ADVISORS LLP, FIM LIMITED,
FIM(USA) INC., CARLO GROSSO AND FEDERICO CERETTI'S MOTION TO
DISMISS THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................1

FACTUAL BACKGROUND..............................................................................3

ARGUMENT....................................................................................................6

I. THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS LACK ARTICLE III CONSTITUTIONAL STANDING ....................................6

II. PLAINTIFFS DO NOT HAVE STANDING UNDER BVI LAW TO ASSERT CLAIMS BELONGING TO KML........................................................7

III. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO PLEAD SPECIFIC FACTS AGAINST THE FIM DEFENDANTS ............................9

IV. PLAINTIFFS' STATE LAW CLAIMS AGAINST THE FIM DEFENDANTS ARE PREEMPTED BY THE SECURITIES LITIGATION UNIFORM STANDARDS ACT (SLUSA)...................................................................11

V. THE NON-SCIENTER CLAIMS ARE PREEMPTED BY THE MARTIN ACT.........14

VI. EVEN IF NOT PREEMPTED BY SLUSA OR THE MARTIN ACT, ALL OF PLAINTIFFS' STATE LAW CLAIMS STILL FAIL ....................................16

    A. PLAINTIFFS' THIRD-PARTY BENEFICIARY "CONTRACT" CLAIM UNDER THE CSA FAILS AS A MATTER OF LAW ......................................16

    B. PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM FAILS AS A MATTER OF LAW..............................................................................17

    C. PLAINTIFFS FAIL TO STATE VIABLE NEGLIGENCE, GROSS NEGLIGENCE OR NEGLIGENT MISREPRESENTATION CLAIMS............18

    D. PLAINTIFFS' COMMON LAW FRAUD CLAIM SUFFERS FROM THE SAME DEFICIENCIES AS THEIR FEDERAL SECURITIES CLAIM ............................................................................................19

    E. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS AS A MATTER OF LAW...............................................................................20

    F. PLAINTIFFS HAVE NO CLAIM FOR PUNITIVE DAMAGES ......................20

    G. PLAINTIFFS HAVE NO VIABLE STATE LAW CLAIMS AGAINST GROSSO OR CERETTI ...................................................................20

VII. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE SECURITIES LAWS.........21

    A. PLAINTIFFS FAIL TO ALLEGE A MISREPRESENTATION OR OMISSION..................................................................................22

    B. PLAINTIFFS DO NOT ALLEGE SCIENTER .................................................22

    C. PLAINTIFFS DO NOT ALLEGE RELIANCE..................................................24

D.      PLAINTIFFS DO NOT ALLEGE LOSS CAUSATION.......................................24

CONCLUSION .............................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aboushanab v. Janay,*
   2007 WL 2789511 (S.D.N.Y. Sept. 26, 2007) .......................................................................8

*Accusystems, Inc. v. Honeywell Info. Sys., Inc.,*
   580 F. Supp. 474 (S.D.N.Y. 1984) .......................................................................................18

*Adelphia Recovery Trust v. Bank of Am., N.A.,*
   2010 U.S. Dist. LEXIS 50209 (May 14, 2010), *aff'd by* 2010 U.S. App. LEXIS 10682
   (2d Cir. May 26, 2010) ..........................................................................................................6

*Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.,*
   521 F.3d 1278 (10th Cir. 2008) ...........................................................................................13

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009)........................................................................................................3, 9

*ATSI Commc'ns v. Shaar Fund, Ltd.,*
   493 F.3d 87 (2d Cir. 2007) ..................................................................................................22

*Backus v. Conn. Cmty. Bank, N.A.,*
   2009 WL 5184360 (D. Conn. Dec. 23, 2009) .......................................................................14

*Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.,*
   2003 U.S. Dist. LEXIS 23062 (S.D.N.Y. Dec. 29, 2003) ..............................................16, 17

*Barron v. Igolnikov,*
   2010 WL 882890 (S.D.N.Y. Mar. 10, 2010)....................................................12, 13, 14, 15

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ...............................................................................................................9

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,*
   98 F.3d 13 (2d Cir. 1996) .....................................................................................................19

*City of Harper Woods Employees' Retirement System v. Olver,*
   577 F. Supp. 2d 124 (D.D.C. 2008)........................................................................................8

*Common Fund for Non-Profit Orgs. v. KPMG Peat Marwick L.L.P.,*
   951 F. Supp. 498 (S.D.N.Y. 1997) .......................................................................................16

*Consol. Edison, Inc. v. Northeast Utils.,*
   426 F.3d 524 (2d Cir. 2005) .................................................................................................16

*Creditsights, Inc. v. Ciasullo,*
   2008 WL 4185737 (S.D.N.Y. Sept. 5, 2008) ............................................................24

*CRT v. Merkin,*
   No. 601052/09 (N.Y. Sup. Ct. May 5, 2010) ...........................................................15

*DeBlasio v. Merrill Lynch & Co., Inc.,*
   2009 WL 2242605 (S.D.N.Y. Jul. 27, 2009).............................................................11

*DiVittorio v. Equidyne Extractive Indus., Inc.,*
   822 F.2d 1242 (2d Cir. 1987) ....................................................................................11

*Druck Corp. v. Macro Fund (U.S.) Ltd.,*
   2007 WL 258177 (S.D.N.Y. Jan. 29, 2007). ............................................................17

*Dura Pharms., Inc. v. Broudo,*
   544 U.S. 336 (2005) ..................................................................................................24

*ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.,*
   553 F.3d 187 (2d Cir. 2008) ................................................................................21, 22

*Edison Fund v. Cogent Inv. Strategies Fund, Ltd.,*
   551 F. Supp. 2d 210 (S.D.N.Y. 2008) ......................................................................24

*Foss v. Harbottle,*
   67 ER 189 (1843) ........................................................................................................8

*Eshelman v. OrthoClear Holdings, Inc.,*
   2008 WL 171059 (N.D. Cal. Jan. 18, 2008), *aff'd*, 2009 WL 506864 (N.D. Cal. Feb.
   27, 2009)......................................................................................................................7

*Eurycleia v. UBS Sec., LLC,*
   2008 N.Y. Slip Op. 32073(U) (N.Y. Sup. Ct. July 1, 2008) ....................................18

*Fellows v. Citimortgage, Inc.,*
   2010 WL 1857243 (S.D.N.Y. May 11, 2010) ..........................................................16

*Field v. Trump,*
   850 F.2d 938 (2d Cir. 1988) ......................................................................................21

*Filler v. Hanvit Bank,*
   2003 WL 22110773 (S.D.N.Y. Sept. 12, 2003) .......................................................11

*First Nat'l Bank v. Gelt Funding Corp.,*
   27 F.3d 763 (2d Cir. 1994) ........................................................................................24

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.,*
   66 N.Y.2d 38 (1985)..................................................................................................16

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*,
   17 F. Supp. 2d 275 (S.D.N.Y. 1998) ...................................................................................20

*Gray v. Seaboard Sec., Inc.*,
   126 Fed. Appx. 14 (2d Cir. 2005)........................................................................................13

*Heller v. Goldin Restructuring Fund, L.P.*,
   590 F. Supp. 2d 603 (S.D.N.Y. 2008) .................................................................................14

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.*,
   2005 WL 2677753 (S.D.N.Y. Oct. 19, 2005)........................................................................7

*In re Bayou Hedge Fund Litig.*,
   534 F. Supp. 2d 405 (S.D.N.Y. 2007) ...............................................................14, 15, 20, 23

*In re Citigroup Auction Rate Sec. Litig.*,
   2009 WL 2914370 (S.D.N.Y. Sept. 11, 2009) .....................................................................24

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   2008 WL 2594819 (S.D.N.Y. June 26, 2008) .......................................................................9

*In re Openwave Sys. Sec. Litig.*,
   528 F. Supp. 2d 236 (S.D.N.Y. 2007) .................................................................................23

*In re Ramp Corp. Sec. Litig.*,
   2006 U.S. Dist. LEXIS 49579 (S.D.N.Y. Jul. 21, 2006)......................................................25

*In re Rhodia S.A. Securities Litigation*,
   531 F. Supp. 2d 527 (S.D.N.Y. 2007) .................................................................................23

*In re September 11 Litigation*,
   640 F. Supp. 2d 323 (S.D.N.Y. 2009) .................................................................................18

*In re Tremont Sec. Law*,
   2010 WL 1257580 (S.D.N.Y. March 30, 2010) ..................................................................23

*Jordan (Bermuda) Inv. Co. v. Hunter Green Investments LLC*,
   2007 WL 2948115 (S.D.N.Y. Oct. 3, 2007)........................................................................17

*Kassover v. UBS AG*,
   619 F. Supp. 2d 28 (S.D.N.Y. 2008) ...................................................................................15

*Landy v. Mitchell Petroleum Tech. Corp.*,
   734 F. Supp. 608 (S.D.N.Y. 1990) ......................................................................................19

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005) ................................................................................................25

*Levinson v. PSCC Services, Inc.*,
  2009 WL 5184363 (D. Conn. Dec. 23, 2009) ................................................................12, 13

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .................................................................................................................6

*M+J Savitt, Inc. v. Savitt*,
  2009 WL 691278 (S.D.N.Y., Mar. 17, 2009)........................................................................18

*Martin v. W.B. Rest. Inc.*,
  703 N.Y.S.2d 212 (2d Dep't 2000) .......................................................................................19

*Meisel v. Grunberg*,
  651 F.Supp.2d 98 (S.D.N.Y. 2009) ...................................................................................6, 18

*Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc.*,
  2010 WL 1257567 (S.D.N.Y. March 31, 2010) ..............................................................15, 23

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
  547 U.S. 71 (2006) ................................................................................................................12

*Mobile Data Shred, Inc. v. United Bank of Switz.*,
  2000 WL 351516 (S.D.N.Y. April 5, 2000)...........................................................................21

*Morrison, et al. v. National Australia Bank Ltd., et al.*,
  __ U.S. __ (June 24, 2010) ...................................................................................................25

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) ................................................................................................23

*Novak v. Scarborough Alliance Corp.*,
  481 F. Supp.2d 289 (S.D.N.Y. 2007) ..................................................................................21

*Outside Connection, Inc. v. DiGennaro*,
  795 N.Y.S.2d 669 (2d Dep't 2005) ......................................................................................20

*Port Auth. of N.Y. & N.J. v. Arcadian Corp.*,
  189 F.3d 305 (3d Cir. 1999) ................................................................................................19

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) ......................................................................................9, 10, 25

*S. Cherry St., LLC v. Hennessy Group LLC*,
  573 F.3d 98 (2d Cir. 2009) ..................................................................................................22

*Sedona Corp. v. Ladenburg Thalmann & Co.*,
  2005 WL 1902780 (2005) ....................................................................................................15

*Seghers v. Thompson,*
    2006 WL 2807203 (S.D.N.Y. Sept. 26, 2006) ........................................................7

*Simon v. Castello,*
    172 F.R.D. 103 (S.D.N.Y. 1997) ..........................................................................19

*Simon v. Eastern Ky. Welfare Rights Org.,*
    426 U.S. 26 (1976) ................................................................................................6

*Smith v. Waste Mgmt. Inc.,*
    407 F.3d 381 (5th Cir. 2005) .................................................................................8

*Solutia, Inc. v. FMC Corp.,*
    385 F. Supp. 2d 324 (S.D.N.Y. 2005) ................................................................16

*Stephenson v. Citco Group, Ltd.,*
    2010 U.S. Dist. LEXIS 32321 (S.D.N.Y. March 31, 2010) ...........................14, 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)................................22, 23

*Thomas H. Lee Equity Fund V, L.P. v. Grant Thornton LLP,*
    586 F. Supp. 2d 119 (S.D.N.Y. 2008) ................................................................18

*United States v. Acorn Tech. Fund, L.P.,*
    429 F.3d 438 (3d Cir. 2005) ..................................................................................8

*Wright v. Ernst & Young LLP,*
    152 F.3d 169 (2d Cir. 1998) ................................................................................22

*Xpedior Creditor Trust v. Credit Suisse First Boston,*
    341 F. Supp. 2d 258 (S.D.N.Y. 2004) ................................................................13

**STATUTES**

15 U.S.C. § 77p ............................................................................................................12

15 U.S.C. § 77p(f)(3) ....................................................................................................12

15 U.S.C. § 77r(b) .........................................................................................................12

15 U.S.C. § 78bb(f) .......................................................................................................12

15 U.S.C. § 78bb(f)(5)(B)(i)(I) ....................................................................................12

15 U.S.C. § 78bb(f)(5)(E) .............................................................................................12

15 U.S.C. § 78j(b) ......................................................................................................5, 21

N.Y. Gen. Bus. Law § 352 .......................................................................................................... 14

**RULES**

Fed. R. Civ. P. 9(b)..............................................................................................................passim

Fed. R. Civ. P. 23(a) ................................................................................................................. 12

Fed. R. Civ. P. 44.1.................................................................................................................... 7

Fed. R. Civ. P. 8(a)(2) ............................................................................................................... 9

## PRELIMINARY STATEMENT

Plaintiffs' Amended Consolidated Class Action Complaint ("Complaint") is over 140 pages long, with 447 numbered paragraphs and a total of 32 causes of action. Its prolixity, however, cannot mask its complete failure to state a cause of action against the "FIM Defendants" – FIM Advisers LLP, FIM Limited and FIM (USA) Incorporated (collectively, the "FIM Entities"), as well as FIM Advisers executives Carlo Grosso and Federico Ceretti.

On December 11, 2008, the FIM Defendants learned, along with the rest of the world, that Bernard L. Madoff Investment Securities LLC ("BMIS") had been operating an extremely well-disguised Ponzi scheme. The Kingate Global Fund and Kingate Euro Fund (the "Kingate Funds"), in which plaintiffs allegedly were investors, had invested in BMIS and lost everything. Plaintiffs now seek to impose responsibility for their Madoff-related losses not on Madoff, who confessed to a massive fraud that wiped out billions, but on virtually everyone that had any connection – direct or indirect – to the Kingate Funds. This includes the manager of the funds, Kingate Management Limited ("KML"); the former co-manager, Tremont (Bermuda) Limited and related entities; the auditor, PriceWaterhouseCoopers; the administrator, Citi Hedge Fund Services Ltd.; a number of individuals affiliated with these various entities; and finally, the FIM Entities (one of which served as a consultant to the fund manager KML) and Grosso and Ceretti.

The essence of plaintiffs' claims is that "Defendants" – undifferentiated – represented to plaintiffs that they would conduct due diligence of Madoff and BMIS, and failed adequately to do so, thereby missing "red flags" that should have alerted Defendants to Madoff's fraud. Plaintiffs do not allege a single fact, however, to suggest that any such representation was made by any of the FIM Defendants. *In fact, not a single "representation" or statement of any kind (let alone a misstatement) is attributed to any FIM Defendant in the entire Complaint or in any of the many Information Memoranda and other documents attached to it.* Regardless of whether

the Complaint states a cause of action against anyone else, the glaring absence of any substantive allegations against the FIM Defendants confirms that they have no business in this case.

The legal deficiencies in the claims against the FIM Defendants are abundant. First, there is no allegation that anything the FIM Defendants said or wrote was received or relied on by plaintiffs, and no facts alleged that would establish that the FIM Defendants were the proximate cause of plaintiffs' Madoff-related losses. As a result, plaintiffs lack standing under Article III of the U.S. Constitution to pursue any cause of action against the FIM Defendants. Plaintiffs also lack standing because the claims they seek to assert belong to the Kingate Funds, not the shareholders of those funds – plaintiffs' alleged injury (loss in value of their shares) is derivative of injury to the funds. All of plaintiffs' claims against the FIM Defendants should be dismissed as a matter of law on standing grounds alone.

Second, rather than pleading facts about the FIM Defendants, plaintiffs simply lump the FIM Defendants into groups with multiple other parties – either as the "Defendants," or with labels such as the "Kingate Defendants" and the "Kingate Fraud Claim Defendants." But under Rule 9(b) of the Federal Rules of Civil Procedure, which applies to all of plaintiffs' claims, the Complaint must set forth specific, factual allegations against *each* defendant in order to state a claim. The Complaint does not begin to do that with respect to the FIM Defendants. The only specific mentions of the FIM Defendants consist of identifying information such as place of incorporation, principal place of business, and ownership structure; the allegation that Madoff met with or had telephone numbers for Grosso and Ceretti in his "Pocket Book;" and the allegation that Grosso occasionally traveled to New York. That is it – there is not one fact alleged suggesting that any FIM Defendant made any misrepresentation, somehow knew of Madoff's fraud and hid it, or otherwise did anything improper. Plaintiffs rely instead on group pleading, insinuation, or conclusory allegations that simply parrot legal standards. Rule 9(b)

2

exists for just this reason – to protect against false fraud claims that damage a defendant's reputation without any facts to support the accusation. This is a second, independent ground for dismissal of all the claims against the FIM Defendants.

Plaintiffs' state law claims fail for two additional reasons: (i) they are preempted under both the federal Securities Litigation Uniform Standards Act of 1998 ("SLUSA") and New York's "blue sky" securities law (the "Martin Act"), and (ii) each state law claim fails to plead essential elements of such claims.

Finally, plaintiffs' federal securities claims fail for four additional reasons: (i) no misstatements or omissions are alleged to have been made by or attributed to the FIM Defendants; (ii) no facts are alleged establishing a strong inference of scienter on the part of the FIM Defendants; (iii) plaintiffs fail to plead reliance on anything the FIM Defendants said or did; and (iv) plaintiffs fail to plead any facts establishing loss causation.

The FIM Defendants are simply an afterthought in this case. The Complaint fails to state any viable cause of action against them, and it should be dismissed with prejudice.

## FACTUAL BACKGROUND[1]

On May 18, 2010, plaintiffs filed the Complaint[2] asserting claims on behalf of themselves and a putative class of investors in the Kingate Funds. The Kingate Funds are organized under the laws of the British Virgin Islands ("BVI"). Cplt. ¶¶ 48-49.

Central to plaintiffs' claims is that Information Memoranda ("IMs") issued by the Kingate Funds, on which plaintiffs allegedly relied, contained "uniform misrepresentations and material omissions." Cplt. ¶ 84; ¶¶ 43, 83, 85-91, 99-105, 400. Plaintiffs focus on three categories of misrepresentations: (1) failure to detect indicators of Madoff's Ponzi scheme (Cplt.

---

[1] For the purposes of a motion to dismiss, only well-pleaded factual allegations are assumed to be true. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). There is no presumption of truthfulness for conclusory allegations. Id. at 1940.

[2] Attached as Exhibit 1 to the Declaration of Jodi Kleinick dated July 19, 2010 (the "Kleinick Decl.").

¶¶ 77-82, 285-86); (2) misrepresentations that plaintiffs' assets were being invested by Madoff using a "split-strike conversion strategy" (Cplt. ¶¶ 85, 89-91, 404-05, 286); and (3) misrepresentations regarding due diligence and monitoring of Madoff's operations (Cplt. ¶¶ 85, 92-98, 406-09).

There is no allegation in the Complaint or the IMs suggesting that any such alleged misstatements or omissions were made by or attributed to the FIM Defendants.  The FIM Defendants are not alleged to have made any false or misleading statements (or statements of any kind, for that matter) to plaintiffs.  Nor is there any allegation that the FIM Defendants were parties to any agreements or had any other arrangements with plaintiffs.  Plaintiffs simply assert that the FIM Defendants, along with the other Defendants, "conducted and/or failed to conduct the requisite due diligence in New York with respect to Madoff." Cplt. ¶ 231.

Plaintiffs allege that KML, the fund manager, entered into a Consulting Services Agreement ("CSA") initially with FIM Limited, and later with FIM Advisers, pursuant to which the FIM entity "rendered consulting advice and service to KML with respect to the Funds' investment, operational, administrative, marketing, accounting, and legal matters." Cplt. ¶¶ 29(b), 28, 228.  Plaintiffs also conclusorily assert, without any facts in support, that FIM Advisers "accordingly" was KML's "agent." Cplt. ¶ 228.  The Complaint claims that the FIM Entities breached the CSA with KML by failing to "provide competent management and consulting services to the Funds" (Cplt. ¶¶ 302), but pleads no facts to support such a claim.  As to Grosso and Ceretti, no facts are pled to suggest they were parties to the CSA or personally undertook any obligations to KML.  Nor are there any facts alleged to suggest that plaintiffs were intended third party beneficiaries of the CSA – plaintiffs do not even allege that they ever saw, let alone relied on, the CSA.

The Complaint seeks to cast a pall over the FIM Defendants by asserting that they met with Madoff on occasion and that Madoff had contact information for Grosso and Ceretti. Cplt. ¶¶ 73-76, 230. But when it comes to any allegation that any FIM Defendant was "in on" or had any knowledge of Madoff's fraud, the silence is deafening – there is no such allegation. Instead, plaintiffs attempt to disguise the limited allegations against the FIM Defendants by lumping them in with other groups. Cplt. ¶¶ 2, 4, 6, 9, 60, 69, 77, 105, 393-96 ("Defendants"), Cplt. ¶¶ 48(a), 68, 77-91, 95, 101-04, 255-92, 303-08 ("Kingate Defendants"), and Cplt. ¶¶ 43, 242-53, 397-419 ("Kingate Fraud Claim Defendants").) The remaining allegations are non-substantive, *i.e.*, that FIM Advisors is a U.K.-based partnership that manages and advises portfolios of hedge funds; that FIM Limited is a company established under the laws of England and Wales and is the predecessor-in-interest to FIM Advisers; that FIM (USA), Inc. is a Delaware subsidiary of FIM Advisors; and that Grosso is the executive chairman and chief investment officer, and Ceretti the chief executive officer, of FIM Advisers. Cplt. ¶¶ 28-32.

Despite the lack of any factual allegations of wrongdoing against the FIM Defendants, plaintiffs sweep the FIM Defendants into a virtual "kitchen sink" of causes of action: fraud (Counts 1 and 2); negligent misrepresentation (Counts 3 and 4); gross negligence (Count 5); negligence (Count 6); breach of fiduciary duty (Count 7); constructive fraud (Count 8); third party beneficiary breach of contract (Count 10, as to the FIM Entities only); constructive trust (Count 11); mutual mistake (Count 12); unjust enrichment (Count 28); violations of § 10(b) and Rule 10b-5 (Count 29) and § 20(a) under the Exchange Act, 15 U.S.C. § 78j(b) (Count 30, as to Grosso and Ceretti only). All of these claims fail as a matter of law.

## ARGUMENT

**I.**    **THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS LACK ARTICLE III CONSTITUTIONAL STANDING**

"The irreducible constitutional minimum of standing" has three elements: (1) an *injury in fact* – an invasion of a legally protected interest that is concrete and particularized; (2) there must be a *causal connection* between the injury and the conduct complained of; and (3) it is likely, rather than merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

The Complaint fails on the second prong of this test because it does not demonstrate any causal connection between plaintiffs' losses and the FIM Defendants. In order to establish standing, "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560-61 (internal citations and quotations omitted); *see also Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 45 (1976) (plaintiff must establish that "the asserted injury was the consequence of the defendants' actions"); *Meisel v. Grunberg*, 651 F.Supp.2d 98 (S.D.N.Y. 2009). It cannot be disputed that plaintiffs' losses were directly caused by Madoff's fraud. Moreover, plaintiffs do not allege that they had or relied on any communications with the FIM Defendants – all that is alleged of substance is that FIM Advisers had a consulting agreement with the fund manager KML. That does not establish proximate causation against FIM Advisers, let alone the other FIM Entities or Grosso or Ceretti, with respect to losses caused by Madoff. Standing is therefore lacking and the Complaint should be dismissed. *Adelphia Recovery Trust v. Bank of Am., N.A.*, 05 CIV 9050(LMM)(related to 03 MDL 1529), 2010 U.S. Dist. LEXIS 50209, at *51, *54 (S.D.N.Y. May 14, 2010), *aff'd*, 2010 U.S. App. LEXIS 10682 (2d Cir. May 26, 2010) (more than "but for" causation is necessary to allege Article III standing; to allege losses resulting from an "attenuated chain of causation," plaintiffs must demonstrate that

6

defendants' actions had a "determinative or coercive effect" on the independent third parties
whose actions directly resulted in the injury).

## II.     PLAINTIFFS DO NOT HAVE STANDING UNDER BVI LAW TO ASSERT CLAIMS BELONGING TO KML

Plaintiffs also lack standing to bring their state law claims (Counts 1-8, 10-12, and 28)
because their alleged injury is derivative of injury to the Kingate Funds in which they invested.

Where, as here, the question of standing focuses on whether plaintiffs' injuries are
derivative of an injury to a corporation or limited partnership, the issue is governed by the law of
the state of incorporation. *See In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04
Civ. 4885 (SWK), 2005 WL 2677753, at *3 (S.D.N.Y. Oct. 19, 2005). The law of the BVI
applies because the Kingate Funds are organized in the BVI. Cplt. ¶¶ 48-49. The applicable
BVI "Reflective Loss Principle" establishes that a shareholder lacks standing to sue for alleged
injuries that "reflect" losses suffered by the corporation. Affidavit of David Chivers sworn to on
July 19, 2010 (the "Chivers Aff.") ¶¶ 20-32.[3]

Under BVI law, causes of action based on allegations of mismanagement, as plaintiffs
allege here, represent harm to the corporate entity. Chivers Aff. ¶¶ 35-39, 128, 130. As such,
claims for breach of fiduciary duty, negligence, gross negligence and fraud belong to the
company – Kingate Funds – and must be brought by the company or derivatively. *Eshelman*,
2008 WL 171059, at *9-10 (applying BVI law); *Seghers v. Thompson*, No. 06-CV-308 (RMB)
(KNF), 2006 WL 2807203, at *1 (S.D.N.Y. Sept. 26, 2006). Chivers Aff. ¶¶ 45-68, 93-100.

Further, a shareholder may not bring a direct suit claiming breach of a corporate contract
or seek his or her share of money due to the company as a result of that breach. Chivers Aff. ¶¶

---

[3]  Under Federal Rule of Civil Procedure 44.1, a federal court may take judicial notice of the law of a foreign
country. *Eshelman v. OrthoClear Holdings, Inc.*, No. C 07-1429 (JSW), 2008 WL 171059, at *4 (N.D. Cal. Jan. 18,
2008), *aff'd*, No. C 07-1429, 2009 WL 506864 (N.D. Cal. Feb. 27, 2009) (taking judicial notice of BVI Business
Companies Act of 2004).

13-18; *City of Harper Woods Employees' Ret. Sys. v. Olver*, 577 F.Supp.2d 124, 132,

n.10 (D.D.C. 2008) (applying *Foss v. Harbottle,* 67 ER 189 (1843)).  Plaintiffs' contract-based

claims (unjust enrichment, mutual mistake, constructive trust, and third party beneficiary breach

of contract) are all based on contracts allegedly entered into by KML and cannot be brought by

plaintiffs in their individual capacities.  Chivers Aff. ¶¶ 41-44, 103-10, 112-13, 117(b), 122, 134,

136-37, 139-40, 142-43.

This is particularly important here because the BVI courts already issued an order

appointing official joint liquidators for the Kingate Funds (the "Joint Liquidators"), in whom the

court has granted broad powers to take the steps necessary to maintain the assets owned or

managed by the Kingate Funds, including the power to take appropriate steps in Bermudian and

United States proceedings on behalf of the Kingate Funds.  Chivers Aff. ¶¶ 14, 18;  *see also*

*Bruhl v. Kingate Mgmt. Ltd.*, Supreme Court of New York, New York County Index No.

601526/09, Jan. 25, 2010 at 10-11 (Kapnick, J.)(dismissing Madoff-related claim brought by

shareholder in Kingate Global Fund Limited; Kleinick Decl. Exh. 2); Kleinick Decl. Exhs. 3

(Order dated May 8, 2009 appointing Joint Liquidators) and 4 (Affidavit of William Tacon

sworn to on June 9, 2009 (the "Tacon Aff.") ¶¶ 1-14, 20).  Allowing plaintiffs here to usurp the

role of the Joint Liquidators by asserting claims belonging to the funds would defeat the entire

purpose of the BVI court's order and the role of the Joint Liquidators.

To succeed as an individual claimant, claims for fraudulent or negligent

misrepresentation must allege a wrong "independent of the general wrong to the partnership

from mismanagement, and separate from any other investor." *United States v. Acorn Tech. Fund,*

*L.P.*, 429 F.3d 438, 447 (3d Cir. 2005).  *See, e.g., Smith v. Waste Mgmt. Inc.*, 407 F.3d 381, 384

(5th Cir. 2005); *Aboushanab v. Janay*, No. 06 Civ. 13472 (AKH), 2007 WL 2789511, at *6

(S.D.N.Y. Sept. 26, 2007).  Plaintiffs do not allege any such individual wrong.  Nor can

plaintiffs' claims survive as derivative claims – a shareholder seeking to assert derivative claims under BVI law must comply with Section 184C of the BC Act, which requires, among other things, that the shareholder obtain leave from a BVI court to bring a derivative action. Chivers Aff. ¶¶ 14, 18; *Bruhl, supra,* at 11; Kleinick Decl. Exh. 4 (Tacon Aff. ¶¶ 16-18). Plaintiffs do not allege that they ever sought or obtained such leave.

**III.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO PLEAD SPECIFIC FACTS AGAINST THE FIM DEFENDANTS**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" and present "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal,* 129 S. Ct. at 1949. Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic,* 550 U.S. at 555 (citations omitted).

Fraud claims must be pled with even more specificity. Such claims must meet the heightened pleading standard of Rule 9(b), which applies to all claims (including negligence) based on allegations of fraud, regardless of their denomination. *See Rombach v. Chang,* 355 F.3d 164, 171 (2d Cir. 2004) (observing that Rule 9(b) "is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action"); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* No. 02 Civ. 8472 (JFK), 2008 WL 2594819, at *8 (S.D.N.Y. June 26, 2008) (applying Rule 9(b) to non-fraud claims that "indisputably [were] based on plaintiffs' allegations of Defendant's fraudulent conduct").

Here, all of plaintiffs' causes of action against the FIM Defendants sound in fraud. Indeed, a fraudulent Ponzi scheme is the entire basis of the Complaint. The word "fraud" and its variants appear 171 times in the Complaint. Each and every cause of action in the Complaint, including those asserted against the FIM Defendants, alleges fraudulent activity:

- •Common Law Fraud (Counts 1 and 2): Plaintiffs allege the Kingate Fraud Claim Defendants "made [] false and misleading misrepresentations and omissions knowingly or recklessly, without regard for their truth or falsity, and with the intent to induce Plaintiffs and the Class to rely upon them by investing assets in the Funds." Cplt. ¶¶ 242, 244.
- •Negligent Misrepresentation (Counts 3 and 4): In addition to incorporating the common law fraud allegations, plaintiffs allege various "false and misleading" representations made by the Kingate Defendants in connection with their purchase of shares in the Funds. Cplt. ¶¶ 256, 257.
- •Gross Negligence, Negligence, Breach of Fiduciary Duty (Counts 5, 6 and 7): These claims recite and incorporate by reference the previously alleged paragraphs of common law fraud and misrepresentations. Cplt. ¶¶ 268, 273, 278.
- •Constructive Fraud (Count 8): Plaintiffs incorporate all of the prior allegations into this count as well, and further allege the Kingate Fraud Claim Defendants "made [] false and misleading misrepresentations and omissions knowingly or recklessly, without regard for their truth or falsity, and with the intent to induce Plaintiffs and the Class to rely upon them by investing assets in the Funds." Cplt. ¶¶ 285, 287.
- •Third Party Beneficiary Breach of Contract (Count 10): Plaintiffs recite and incorporate by reference the previously alleged paragraphs of common law fraud, constructive fraud, and misrepresentations. Cplt. ¶ 293.
- •Constructive Trust (Count 11): Plaintiffs incorporate all of the prior fraud allegations, and further allege the receipt of "fictitious profits and assets." Cplt. ¶ 305.
- •Mutual Mistake (Count 12): This claim recites and incorporates by reference the previously alleged paragraphs of common law fraud, constructive fraud, and various misrepresentations. Cplt. ¶ 306.
- •Unjust Enrichment (Count 28): Plaintiffs incorporate all of the prior fraud allegations. Cplt. ¶¶ 393, 396.
- •Securities Fraud (Counts 29 and 30): Plaintiffs incorporate all of the prior fraud allegations, and add additional allegations of fraud in connection with the purchase or sale of securities under the federal securities laws. Cplt. ¶¶ 399-419, 423-24.

Thus, plaintiffs must plead all of their causes of action with particularity or have them dismissed. *Rombach*, 355 F.3d at 171. The Complaint does not come close to meeting this standard with respect to the FIM Defendants. The specific factual allegations relating to the FIM Defendants consist of identifying information and job functions; allegations of sporadic meetings and the presence of certain contact information, but no substance suggesting anything nefarious;

and the assertion that the FIM Defendants were not "competent" in their role as consultant to

KML.  Cplt. ¶¶ 28-33, 41-43, 73-76, 104, 228-231, 299-302, 421, 423-24.

When it comes to allegations of wrongdoing, plaintiffs' *modus operandi* is to plead action

on the part of others, and then lump in all of the FIM Defendants.  This is insufficient – fraud

allegations must be pleaded specifically against *each* defendant, and the Complaint fails to do so

against any of the FIM Defendants.  *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d

1242, 1247 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of

fraud, the complaint should inform each defendant of the nature of his alleged participation in the

fraud."); *DeBlasio v. Merrill Lynch & Co., Inc.*, No. 07 Civ 318 (RJS), 2009 WL 2242605, at

*13 (S.D.N.Y. Jul. 27, 2009) ("Plaintiffs 'may not rely upon blanket references to acts or

omissions by all of the defendants, for each defendant named in the complaint is entitled to be

[apprised] of the circumstances surrounding the fraudulent conduct with which he individually

stands charged.'"); *Filler v. Hanvit Bank*, No. 01 Civ. 9510, 02 Civ. 8251(MGC), 2003 WL

22110773, at *3 (S.D.N.Y. Sept. 12, 2003) (plaintiffs failed to meet the requirements of Rule

9(b) because they failed to "make allegations with respect to each defendant, but instead

refer[red] only generally to the defendants as 'the Banks' or 'the Korean Banks'").[4]  All of the

claims against the FIM Defendants fail for this reason and must be dismissed.

## IV.    PLAINTIFFS' STATE LAW CLAIMS AGAINST THE FIM DEFENDANTS ARE PREEMPTED BY THE SECURITIES LITIGATION UNIFORM STANDARDS ACT (SLUSA)

SLUSA preempts state law claims where, as here, state statutory or common law is the

basis for a class action covered by SLUSA.  15 U.S.C. § 77p; 15 U.S.C. § 78bb (f).  SLUSA

mandates dismissal of state law claims when the following four-part test is met: (1) the suit must

---

[4] The only specific references to any FIM Defendant in the Complaint (*i.e.*, excluding allegations against larger groups such as "Defendants," "Kingate Defendants," "Kingate Fraud Defendants" or "Foreign Defendants") are in paragraphs 28-33, 41-43, 73, 75-76, 104, 228-31, 299-302, 421, 423-24 and 426.

be a "covered class action"; (2) the action must be based on state or local law; (3) the action must concern a "covered security"; and (4) the defendant must have misrepresented or omitted a material fact or employed a manipulative device or contrivance "in connection with the purchase or sale" of that security. *Id.*; *Barron v. Igolnikov*, No. 09 Civ. 4471(TPG), 2010 WL 882890, at *4 (S.D.N.Y. Mar. 10, 2010). All of plaintiffs' state law claims, Counts 1-8, 10-12 and 28, are preempted by SLUSA. Cplt. ¶¶ 241-292, 298-308, 392-396.

First, plaintiffs' suit is a "covered class action." Such actions include class actions pleaded under Fed. R. Civ. P. 23(a) and (b)(3), as plaintiffs purport to do here. Cplt. ¶¶ 6, 238-40; 15 U.S.C. §§ 77p(f)(2)(A)(i)(I), 78bb(f)(5)(B)(i)(I); *see also Levinson v. PSCC Services, Inc.*, No. 3:09-CV-00269 (PCD), 2009 WL 5184363, at *11 (D. Conn. Dec. 23, 2009). Second, all of plaintiffs' claims, other than the federal securities claims, are based on state law and therefore meet the second SLUSA requirement.

Third, plaintiffs' claims involve "covered securities" under SLUSA. Plaintiffs themselves allege that securities are at the heart of their claims: the S&P 100 securities alleged to have been part of Madoff's Ponzi scheme. Cplt. Counts 29-32. *See* 15 U.S.C. § 77p(f)(3); 15 U.S.C. § 78bb(f)(5)(E); 15 U.S.C. § 77r(b) (a "covered security" is any security listed on the New York Stock Exchange, the American Stock Exchange, or the Nasdaq); *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85, 89 (2006) (SLUSA applies where the misrepresentation alleged "coincides" with a securities transaction). SLUSA applies regardless of whether or not Madoff actually made the trades. *Barron v. Igolnikov*, No. 09-CV-4471, 2010 WL 882890, at *4-5 (S.D.N.Y. March 10, 2010) ("[I]t is not necessary that the purchase or sale actually transpired; claims based on the alleged failure to buy or sell covered securities fall squarely within SLUSA's ambit . . . . It is not essential that Madoff actually performed any trades or acquired any securities."); *see also Levinson*, 2009 WL 5184363, at *11.

Fourth, it is readily apparent from the Complaint that plaintiffs allege misrepresentations and omissions of materials facts in connection with their investment in the Kingate Funds. Plaintiffs contend, for example, that Defendants falsely represented the legitimacy of the Funds' investment with Madoff, falsely represented the Funds' historically consistent profits, and falsely represented their own intent to oversee, monitor, and verify Madoff's investment. Cplt. ¶¶ 242, 248, 256 & 263; *see also* Cplt. ¶¶ 268, 273, 278, 284, 298, 303, 306, & 392. The essence of the Complaint is the alleged perpetuation of Madoff's fraudulent and manipulative scheme through misstatements and omissions of material facts. *See Gray v. Seaboard Sec., Inc.*, 126 Fed. Appx. 14, 16 (2d Cir. 2005); *Xpedior Creditor Trust v. Credit Suisse First Boston (USA), Inc.*, 341 F. Supp. 2d 258, 268 (S.D.N.Y. 2004); *see also Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1287 (10th Cir. 2008) (holding incorporation by reference allegations of misrepresentation elsewhere in the complaint is sufficient for SLUSA preemption).

In *Barron v. Igolnikov*, 2010 WL 882890, at *3, the court held that SLUSA preempted claims of breach of fiduciary duty, aiding and abetting breach of fiduciary duty, gross negligence and unjust enrichment against an asset management company stemming from fund losses due to investments with Madoff. Likewise, in *Levinson v. PSCC Services, Inc.*, 2009 WL 5184363, at *1, another Madoff-related case, the court held that SLUSA preempted plaintiffs' fraud, negligent misrepresentation, breach of contract, breach of fiduciary duty, negligence, unjust enrichment, and constructive trust claims. Both these cases involve the same state law claims alleged by plaintiffs here. *See also Backus v. Conn. Cmty. Bank, N.A.*, Civ. No. 3:09-CV-1256, 2009 WL 5184360, at *1 (D. Conn. Dec. 23, 2009) (holding SLUSA preempted plaintiffs' breach of contract claim). The same holding should also apply, and plaintiffs' state law claims (Counts 1-8, 10-12 and 28) should be dismissed on this ground as well.

## V.    THE NON-SCIENTER CLAIMS ARE PREEMPTED BY THE MARTIN ACT

Plaintiffs' state law claims that do not have a scienter requirement, Counts 3-7, 10-12, and 28, are also preempted by New York's Martin Act. *See* N.Y. Gen. Bus. Law, at 23-A, §§ 352 *et seq.* (New York's "blue sky" law covering misrepresentations "engaged in to induce or promote the issuance, distribution, exchange, sale, negotiation or purchase within or from [New York] of any securities or commodities . . ."); *Barron v. Igolnikov*, No. 09-CV-4471, 2010 WL 882890, at *5-6 (S.D.N.Y. March 10, 2010) (granting defendants' motion to dismiss class action suit on behalf of investors in a Madoff feeder fund).

The Martin Act gives the New York State Attorney General exclusive enforcement power over state law-based securities fraud claims that do not allege intent. *See Heller v. Goldin Restructuring Fund, L.P.*, 590 F. Supp. 2d 603, 610-12 (S.D.N.Y. 2008) (Martin Act preempts plaintiffs' alleged breach of fiduciary duty claims that arise from securities fraud). Courts liberally construe the Martin Act to cover acts other than fraud that "arises . . . in the securities context" and that relate generally to "investment advice." *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 421-22 (S.D.N.Y. 2007).

Courts have dismissed non-scienter based claims arising in the securities context in numerous cases related to Ponzi schemes (including two recent cases dealing specifically with Madoff), finding Martin Act preemption. *See, e.g., Stephenson v. Citco Group, Ltd.*, No. 09-CV-00716, 2010 U.S. Dist. LEXIS 32321, at *45 (S.D.N.Y. March 31, 2010) ("[O]verwhelming weight of authority supports Martin Act preemption of negligence and breach of fiduciary duty claims arising in the securities context. This is not the only court dealing with state law claims related to the Madoff fraud to recently so find."); *Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc.*, No. 09 Civ. 3708 (TPG) 2010 WL 1257567, at *1 (S.D.N.Y. March 31, 2010) (granting KPMG's motions to dismiss on Martin Act preemption grounds and failure to allege

scienter with particularity); *CRT v. Merkin*, No. 601052/09 (N.Y. Sup. Ct. May 5, 2010) (finding

negligent and gross negligent misrepresentation claims preempted by the Martin Act); *Barron*,

2010 WL 882890, at *6; *Bayou Hedge Fund*, 534 F. Supp. at 407, 421-22 (S.D.N.Y. 2007)

(dismissing breach of fiduciary duty claim where defendant recommended investments that

turned out to be a Ponzi scheme); *Kassover v. UBS AG*, 619 F. Supp. 2d 28 (S.D.N.Y. 2008).

Plaintiffs' claims "arise . . . in the securities context." *See Bayou Hedge Fund*, 534 F.

Supp. 2d at 421-22. Moreover, the relevant conduct alleged in the Complaint satisfies the Martin

Act's geographic component because Madoff himself was based in the New York. *See Barron*,

2010 WL 882890, at *6 (finding the "geographic prong . . . easily fulfilled" because plaintiff was

a New York resident, and defendant's fund and Madoff's fraud were both based in New York).

Only a "substantial portion" of the events giving rise to the claim must occur in New York. *See,

e.g.*, *Stephenson*, 2010 U.S. Dist. LEXIS, at *47-49 (plaintiff's complaint details the "substantial

connection" between New York and the relevant sale of securities); *Bayou Hedge Fund*, 534 F.

Supp. 2d at 422. *See also Sedona Corp. v. Ladenburg Thalmann & Co., Inc.*, No. 03-Civ-3120

(LTS)(THK), 2005 WL 1902780, at *22 (S.D.N.Y. Aug. 9, 2005) (finding a "sufficient nexus

with New York," and that Martin Act applies, where plaintiff alleged in complaint that New

York venue was proper). Cplt. ¶¶ 10-11, 25(c), 26(d), 29(c), 30, 34-41, 45, 46(c), 48(b), 49(c),

50, 54, 65, 67-68, 70-76, 223, 225, 229-30.

In light of the weight of authority finding that the Martin Act preempts the very claims

plaintiffs assert here, Counts 3-7, 10-12, and 28 should be dismissed on this basis as well.

## VI. EVEN IF NOT PREEMPTED BY SLUSA OR THE MARTIN ACT, ALL OF PLAINTIFFS' STATE LAW CLAIMS STILL FAIL

### A. PLAINTIFFS' THIRD-PARTY BENEFICIARY "CONTRACT" CLAIM UNDER THE CSA FAILS AS A MATTER OF LAW

A non-party to a contract must be an "intended beneficiary" of the contract, as opposed to

an "incidental beneficiary," to assert rights under the contract. *Consol. Edison, Inc. v. Northeast*

*Utils.*, 426 F.3d 524, 527 (2d Cir. 2005); *Fourth Ocean Putnam Corp. v. Interstate Wrecking*

*Co., Inc.*, 66 N.Y.2d 38, 44 (1985). A non-party is an intended beneficiary only if the benefit of

a contract is "sufficiently immediate" to the non-party. *See Fellows v. Citimortgage, Inc.*, No. 07

Civ 2261 (DLC), 2010 WL 1857243 (S.D.N.Y. May 11, 2010). For example, in *Common Fund*

*for Non-Profit Orgs. v. KPMG Peat Marwick L.L.P.*, 951 F. Supp. 498, 500 (S.D.N.Y. 1997),

despite the court's finding that an auditing agreement required KMPG to take steps for the

benefit and protection of the fund, the plaintiff was "at most an incidental beneficiary of the

contract" and could not state any claim under the contract. *See also Solutia, Inc. v. FMC Corp.*,

385 F. Supp. 2d 324 (S.D.N.Y. 2005) (holding plaintiffs were incidental beneficiaries of an asset

transfer agreement that conferred some benefits to third-party, but did not provide for

performance to be made *directly* to third-party). Moreover, even if a non-party is an intended

beneficiary, plaintiffs must demonstrate that "reliance by the beneficiary [is] both reasonable and

probable." *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, 03 Civ. 1537 (MBM),

2003 U.S. Dist. LEXIS 23062, at *25 (S.D.N.Y. Dec. 29, 2003) (quoting *Fourth Ocean Putnam*

*Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d at 44).

The Complaint utterly fails to demonstrate that plaintiffs have any right to assert a claim

for breach of the CSA. Plaintiffs do not quote or even reference a single provision of the CSA,

and do not allege any facts to demonstrate that the CSA "evinces a clear intent" to benefit them.

Likewise, plaintiffs fail to demonstrate any reliance on the CSA or that such reliance would be

16

"reasonable" or "probable," as required under New York law – plaintiffs never even allege that they *saw* the CSA, let alone relied on it. *Banco Espirito Santo*, 2003 U.S. Dist. LEXIS 23062, at *25. Moreover, the Complaint contains no allegations that Grosso or Ceretti were parties to the CSA and no allegations that they breached any contractual obligations to plaintiffs. This claim should be dismissed.

**B.** **PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM FAILS AS A MATTER OF LAW**

Plaintiffs' fiduciary duty claim fails because the Complaint contains no allegations to demonstrate that the FIM Defendants owed plaintiffs any fiduciary duty. The only relationship alleged in the Complaint involving any of the FIM Defendants is a contractual relationship between the FIM Entities and KML. Under New York law, "breach of fiduciary duty claims are governed by the place of incorporation." *Druck Corp. v. Macro Fund (U.S.) Ltd.*, No. 02 Civ. 6164 (RO), 2007 WL 258177, at *2 (S.D.N.Y. Jan. 29, 2007). Under BVI law, a contractual relationship is not a fiduciary one, and does not give rise to any fiduciary duty. Chivers Aff. ¶ 145. Moreover, even if the CSA could somehow create a fiduciary duty owing to KML, that duty would not extend to plaintiffs. *See, e.g., Jordan (Bermuda) Inv. Co. v. Hunter Green Investments LLC*, No. 00 Civ 9214 (RWS), 2007 WL 2948115, at *23 (S.D.N.Y. Oct. 3, 2007) (dismissing investor's breach of fiduciary duty claim against investment manager and fund administrator as "far too attenuated to give rise to a fiduciary duty;" the trust was "at most, a client of a client; they engaged in no direct transaction"). As to Grosso and Ceretti, the Complaint contains no allegation that they were parties to the CSA. Plaintiffs' breach of fiduciary duty claim must be dismissed.

### C.    PLAINTIFFS FAIL TO STATE VIABLE  NEGLIGENCE, GROSS NEGLIGENCE OR NEGLIGENT MISREPRESENTATION CLAIMS

Plaintiffs' claims for negligence, gross negligence and negligent misrepresentation all fail

for several reasons.  First and foremost, the same lack of any relationship between plaintiffs and

the FIM Defendants that is fatal to their contract and fiduciary duty claims is fatal to these claims

as well.  To assert a claim for negligence or gross negligence, plaintiffs must demonstrate that

the FIM Defendants owed them a duty of care, which requires the existence of a relationship

approaching privity.  *See In re September 11 Litigation*, 640 F. Supp. 2d 323 (S.D.N.Y. 2009);

*Thomas H. Lee Equity Fund V, L.P. v. Grant Thornton LLP*, 586 F. Supp. 2d 119, 126 (S.D.N.Y.

2008); *Eurycleia v. UBS Sec., LLC*, 2008 N.Y. Slip Op. 32073(U) (N.Y. Sup. Ct. July 1, 2008)

(plaintiffs, limited partners of defunct hedge fund, lacked standing to sue UBS (prime

broker/custodian) and failed to state a cause of action because plaintiff could not allege the

existence of a duty owed by UBS to plaintiffs). There are no allegations in the Complaint that

demonstrate that any of the FIM Defendants had any such relationship with plaintiffs.

Similarly, a claim for negligent misrepresentation requires the existence of a special

relationship of "trust or confidence." *See Accusystems, Inc. v. Honeywell Info. Sys., Inc.*, 580 F.

Supp. 474, 480 (S.D.N.Y. 1984).  Parties to an arm's length commercial transaction can only be

found to have a special relationship in "extraordinary" circumstances, such as when the contract

specifies it or the parties have a prolonged course of dealing. *See Meisel v. Grunberg*, 651 F.

Supp. 2d 98 (S.D.N.Y. 2009).  The Complaint is utterly devoid of any such allegations.

Second, plaintiffs sweepingly allege all three of these negligence-based claims against the

"Kingate Defendants," which they define to include the FIM Defendants, but do not mention the

FIM Defendants at all in these causes of action.  Because negligence cannot be pled collectively,

none of these claims state a cause of action. *See M+J Savitt, Inc. v. Savitt*, No. 08 Civ.

8535(DLC), 2009 WL 691278, at *12 (S.D.N.Y., Mar. 17, 2009); *Simon v. Castello*, 172 F.R.D.

103, 106-107 (S.D.N.Y. 1997); *Landy v. Mitchell Petroleum Tech. Corp.*, 734 F. Supp. 608, 621 (S.D.N.Y. 1990).

Third, plaintiffs fail to establish another essential element of their negligence and gross negligence claims – proximate cause. As previously detailed, plaintiffs do not allege a causal link between their losses and the FIM Defendants. The cause of plaintiffs' injury was Madoff's criminal acts, which were "superseding and intervening events breaking [any alleged] chain of causation" between any alleged misconduct by the FIM Defendants and plaintiffs' losses. *See Port Auth. of N.Y. & N.J. v. Arcadian Corp.*, 189 F.3d 305, 319 (3d Cir. 1999) (applying New York law); *see also Martin v. W.B. Rest. Inc.*, 703 N.Y.S.2d 212, 213 (2d Dep't 2000). Moreover, plaintiffs fail to allege that any FIM Defendant made any misrepresentation to them, negligent or otherwise, or that they relied on any such representation. For the foregoing reasons, these three claims (Counts 4-6) should be dismissed.

### D.   **PLAINTIFFS' COMMON LAW FRAUD CLAIM SUFFERS FROM THE SAME DEFICIENCIES AS THEIR FEDERAL SECURITIES CLAIM**

The elements of common law fraud under New York law are essentially the same as those required to state a claim under Section 10(b) and Rule 10b-5. *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) (applying New York state law). Therefore, the deficiencies requiring dismissal of the Rule 10b-5 claim discussed below – failure to allege any misrepresentations attributable to the FIM Defendants, scienter, reliance, or that the FIM Defendants caused plaintiffs' damages – equally require dismissal of the common law fraud claim.

### E. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS AS A MATTER OF LAW

A plaintiff cannot maintain a claim for unjust enrichment unless the plaintiff provided benefits to the defendant. *Bayou*, 472 F. Supp. 2d 528, 532 (S.D.N.Y. 2007). Here, plaintiffs do not allege they paid or provided any benefit to any of the FIM Defendants.

In addition, an unjust enrichment claim is unavailable where, as here, a contract governs the subject matter at issue. *See Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 311 (S.D.N.Y. 1998). Plaintiffs themselves allege that the CSAs between the FIM Entities and KML govern FIM's obligations. Therefore, plaintiffs cannot assert an unjust enrichment claim.

### F. PLAINTIFFS HAVE NO CLAIM FOR PUNITIVE DAMAGES

Plaintiffs' request for punitive damages as to the FIM Defendants must be dismissed because the conduct alleged in the Complaint does not approach the type of conduct that is "so gross, wanton, or willful, or of such high moral culpability, as to warrant an award of punitive damages." *Outside Connection, Inc. v. DiGennaro*, 795 N.Y.S.2d 669, 670 (2d Dep't 2005). Plaintiffs do not allege that the FIM Defendants engaged in any wrongdoing at all, let alone with the requisite "high moral culpability."

### G. PLAINTIFFS HAVE NO VIABLE STATE LAW CLAIMS AGAINST GROSSO OR CERETTI

Even if plaintiffs had viable state law claims against FIM Advisors or FIM Limited arising from the CSA, the Complaint is utterly devoid of any allegations that would support these claims against individual executives Grosso or Ceretti. Grosso and Ceretti are not alleged to be parties to the CSA or to any other contract with plaintiffs. They are not alleged to have personally undertaken any duty to plaintiffs, fiduciary or otherwise, or have any special relationship with them. They are not alleged to have made any representation to plaintiffs, or

that plaintiffs relied on them in any way.  And they are not alleged to have received any personal

benefit in connection with the CSA.  Simply put, plaintiffs have no claims against these

individuals.  *See Mobile Data Shred, Inc. v. United Bank of Switz.*, No. 99 Civ. 10315 (SAS),

2000 WL 351516, at *7, n. 9 (S.D.N.Y. April 5, 2000) ("officers, directors or employees of a

corporation are not personally liable ... if they act on behalf of the corporation and within the

scope of their duties" and "[p]ersonal liability can be imposed only if it is shown that the

defendant acted outside the scope of his employment, by committing an independent tort, or by

pursuing a personal, and not corporate, interest"); *See also Novak v. Scarborough Alliance Corp.*,

481 F. Supp.2d 289, 292 (S.D.N.Y. 2007) (because corporations are legal entities distinct from

their managers, their separate personalities ordinarily cannot be disregarded).[5]

## VII.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE SECURITIES LAWS

Section 10(b) of the Exchange Act, 15 U.S.C. § 78(j)(b), prohibits conduct "involving

manipulation or deception, manipulation being practices ... that are intended to mislead investors

by artificially affecting market activity, and deception being misrepresentation, or nondisclosure

intended to deceive." *Field v. Trump*, 850 F.2d 938, 946-47 (2d Cir. 1988).  To state a claim

under Section 10(b), a plaintiff must allege facts sufficient to show that, in connection with the

purchase or sale of securities, the defendant made a false material representation or omitted to

disclose material information, with scienter, upon which plaintiff relied, and that plaintiff's

reliance was the proximate cause of the injury.  *See ECA & Local 134 IBEW Joint Pension Trust

of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2008).

A claim for relief under Section 10(b) is subject to the heightened pleading requirements

of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA").  *See ATSI*

---

[5] All of the state law claims would similarly fail if BVI law were applied.  Chivers Aff. ¶¶ 57-68, 129 (fiduciary duty); 69-92, 124 (negligent misrepresentation); 93-98, 127 (gross negligence/negligence); 99-100, 131 (constructive fraud); 101-05, 41, 133 (third party beneficiary breach of contract); 106, 135 (constructive trust); 107-11, 138 (mutual mistake); 112-22, 141 (unjust enrichment).

*Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Under both Rule 9(b) and the

PSLRA, allegations must be made "with particularity" and give "rise to a strong inference that

the defendant acted with the required state of mind," namely, "to deceive, manipulate or

defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313-14, 127 S. Ct. 2499,

168 L. Ed. 2d 179 (2007).

### A.   PLAINTIFFS FAIL TO ALLEGE A MISREPRESENTATION OR OMISSION

Plaintiffs do not allege a single misrepresentation or omission made by or attributable to

the FIM Defendants. The federal securities claims focus entirely on statements in the IMs,

which plaintiffs attribute generally to the "Kingate Fraud Claim Defendants" (Cplt. ¶¶ 43, 399)

but nowhere allege were issued by or attributed specifically to any of the FIM Defendants.

Plaintiffs thus fail to plead the essence of a Section 10(b) claim – a false misrepresentation or

omission by the defendant. Plaintiffs' claim should be dismissed for this reason alone. *See ECA*

*& Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 207 (2d

Cir. 2009) (affirming district court dismissal where plaintiffs failed to adequately plead that

defendant made a materially false statement or omitted a material fact); *Wright v. Ernst & Young*

*LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (dismissing amended complaint where plaintiff had not

alleged that false statements in prospectus were result of defendant's omission/failure to correct).

### B.   PLAINTIFFS DO NOT ALLEGE SCIENTER

Plaintiffs also fail to plead scienter. A plaintiff must allege facts that show either (1)

defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial

evidence of conscious misbehavior or recklessness. *See S. Cherry St., LLC v. Hennessee Group*

*LLC*, 573 F.3d 98, 113 (2d Cir. 2009). In either scenario, the inference "must be more than

merely plausible or reasonable – it must be cogent and at least as compelling as any opposing

inference of nonfraudulent intent." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

Plaintiffs must show scienter with respect to each defendant. As this Court observed in *In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527, 550 (S.D.N.Y. 2007), it is insufficient for a plaintiff to rely on general allegations against "defendants," as plaintiffs do here. *See also Meridian Horizon Fund, LP*, 2010 WL 1257567, at *1 (S.D.N.Y. March 31, 2010) (dismissing securities fraud and common law fraud claims in Madoff-related case for failure to plead scienter); *In re Tremont Sec. Law*, 2010 WL 1257580, at *1 (S.D.N.Y. March 30, 2010) (same).

An alleged failure to conduct due diligence and discover "red flags" would not support an inference of scienter in any event. *See, e.g., Bayou Hedge Fund Litig.*, F. Supp. 2d at 417 ("The failure to conduct due diligence is not the same thing as knowing of or closing one's eyes to a known 'danger' or participating in the fraud."), *aff'd, S. Cherry St., LLC v. Hennessee Group LLC*, 573 F.3d 98, 110 (2d Cir. 2009); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994) (scienter not adequately alleged where allegations "strongly suggest[ed] that the defendants should have been more alert and more skeptical, but nothing alleged indicate[d] that management was promoting a fraud").

The kinds of facts that courts look to in order establish scienter are where defendants are alleged to have obtained a personal benefit, such as personal sales of stock at inflated prices, from the alleged fraud. *See Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000) (noting that "in the ordinary case, adequate motive arose from the desire to profit from extensive insider sales"); *see also In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 250 (S.D.N.Y. 2007) (defendants' stock options were "concrete and personal" because they represented a species of compensation different from that ordinarily accumulated by corporate officers and directors). Nothing like that is alleged against the FIM Defendants. The Complaint relies only on innuendo and speculation.

Cplt. ¶¶ 73-76. No knowledge of Madoff's fraud is alleged, and the only "benefit" alleged is the receipt of contractual consulting fees, which is insufficient. *Edison Fund v. Cogent Inv. Strategies Fund, Ltd.,* 551 F. Supp. 2d 210, 227 (S.D.N.Y. 2008) ("To accept a generalized allegation of motive based on a desire to continue to obtain management fees would read the scienter requirement out of the statute."). Plaintiffs' allegations are inadequate to establish a strong inference of scienter and should be dismissed.

### C.   PLAINTIFFS DO NOT ALLEGE RELIANCE

Plaintiffs do not allege a single statement by FIM Defendants upon which they relied. Vague generalizations regarding the IMs are insufficient to demonstrate reliance on the FIM Defendants. *See, e.g., In re Citigroup Auction Rate Sec. Litig.,* Nos. 08 Civ. 3095 (LTS)(FM), 09 md 2043 (LTS), 2009 WL 2914370, at *7 (S.D.N.Y. Sept. 11, 2009); *Creditsights, Inc. v. Ciasullo,* No. 05 Civ. 9345 (DAB), 2008 WL 4185737, at *13 (S.D.N.Y. Sept. 5, 2008).

### D.   PLAINTIFFS DO NOT ALLEGE LOSS CAUSATION

Finally, plaintiffs fail to plead loss causation. The U.S. Supreme Court has made clear that it is the plaintiff's burden to plead facts demonstrating "defendant's misrepresentations (or other fraudulent conduct) proximately caused the plaintiff's economic loss." *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 346 (2005); *see also First Nat'l Bank v. Gelt Funding Corp.,* 27 F.3d 763 (2d Cir. 1994) (intervening factors prevented plaintiff from alleging loss causation).

Here, plaintiffs' losses were caused by Madoff's admitted fraudulent actions, not by the FIM Defendants. Plaintiffs' generalized claim that their losses were caused by the FIM Defendants' lack of due diligence is too attenuated to meet the loss causation burden. *See Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 175 (2d Cir. 2005) (affirming dismissal of securities fraud claims where plaintiff investors failed to plead that defendant brokerage firm's misstatements and omissions caused their investment losses); *In re Ramp Corp. Sec. Litig.,* No.

24

05 CIV. 6521 (DLC), 2006 U.S. Dist. LEXIS 49579, at *27-32 (S.D.N.Y. Jul. 21, 2006)

(dismissing plaintiffs' 10(b) claims against majority of defendants for failure to adequately allege

loss causation).[6]

      Plaintiffs assert that Grosso and Ceretti "controlled" the FIM Entities and are therefore

liable under Section 20(a) of the Exchange Act.  Cplt. ¶¶ 31-32. 423-34.  But because plaintiffs

fail to plead a primary violation, or that Grosso or Ceretti were culpable in any way, this claim

must be dismissed as a matter of law.  *See Rombach v. Chang*, 355 F.3d 164, 178 (2d Cir. 2004)

(claims under Section 20(a) are necessarily predicated on a primary violation of securities law).

## CONCLUSION

      For all the foregoing reasons, the FIM Defendants' motion to dismiss should be granted

and the Complaint dismissed with prejudice.

Dated:  July 19, 2010

*Jodi Kleinick*
_____
Barry G. Sher
Jodi A. Kleinick
Robin A. Arzón
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, NY 10022
Telephone: (212) 318-6085

*Attorneys for Defendants FIM Advisors LLP, FIM Limited,*
*FIM (USA) Inc., Carlo Grosso and Federico Ceretti*

LEGAL_US_E # 88494650.19

---

[6] To the extent that the U.S. Supreme Court's recent decision in *Morrison, et al. v. National Australia Bank Ltd., et al.*, __ U.S. __ (June 24, 2010) regarding non-US securities transactions is applicable here, that would provide an independent basis for dismissing all of plaintiffs' securities laws claims.