ANTIGUA AND BARBUDA

IN THE COURT OF APPEAL

CIVIL APPEAL NO.13 OF 2005

BETWEEN:

CARIBBEAN DEVELOPMENT (ANTIGUA) LIMITED

Appellant

and

ELECTRONIC TECHNOLOGY INTERNATIONAL (ANTIGUA) LTD

Respondent

**Before:**
The Hon. Michael Gordon, QC                                         Justice of Appeal
The Hon. Denys Barrow, SC                                           Justice of Appeal
The Hon. Hugh A. Rawlins                                            Justice of Appeal

**Appearances:**
Mr. Anthony Astaphan S.C. with Mr. John Fuller for the Appellant
Ms. Debra Burnette with Ms E. Anne Henry for the Respondent

------------------------------------------------
2006:   July 18;
        September 18.
------------------------------------------------

**JUDGMENT**

[1]     **GORDON, J.A.:**  The appellant is the owner and developer of the Jolly Harbour marina, shopping center, commercial area and luxury villas (hereafter the Jolly Harbour development). In 1992 the appellant and the respondent entered into negotiations for the supply, installation and management of telephonic equipment and services to the Jolly Harbour development. The negotiations resulted in an agreement between the parties which agreement was reduced to writing and executed on September 10, 1992.

[2]     It was common ground between the parties that the gist of the agreement between them (which is not immediately apparent from the terms of the agreement itself)

1

was that the respondent would supply and install at its own cost certain telephonic equipment in the Jolly Harbour development and would charge persons in the Jolly harbour development for the use of that equipment thus, in theory, achieving a return on its investment. The respondent expresses it thus in the Statement of Claim at paragraph 4:

> "It was a fundamental aspect of the said agreement that the claimant [the respondent in this appeal] would own and continue to own the equipment and plant necessary for the provision of the said telephonic services within the complex and recover his investment and earn an income by charging the said unit owners within the said complex at rates agreed between the Claimant and each of the said unit owners."

[3]     The agreement itself is of extreme brevity and bears reproduction here:

> "The following is an agreement between CARIBBEAN DEVELOPMENT LTD. and ETI (HOLDINGS) LTD. to have ETI (HOLDINGS) LTD. act on behalf of, or represent or be the sole agent for the installation, distribution, administration and maintenance of telecommunications on the Jolly Harbour Complex including all villas, Marina and ancillary areas.
> ETI (HOLDINGS) LTD. or one of its subsidiary companies would be responsible as follows:
>
> (a) Supply and Install all necessary conduits, cable, terminations and related signal instruments for Telephone or Cable TV services to the Villa units at Jolly Harbour. The initial cost will be borne by ETI (HOLDINGS) LTD. but will be recovered by an initial unit charge and a monthly fee from the owner of each unit.
>
> (b) Provide maintenance on the system interfacing with the signal suppliers to the system.
>
> (c) Lease or supply the PBX system for the local and long distance telephone services whether they be individual or multi-line users. Maintain, operate and administrate including the billing and collecting for services on both the PBX and cable system.
>
> (d) Create and maintain the directory system of the phone in the villas.
>
> (e) Be the sole supplier of any equipment attached to or working in conjunction with this system for the purpose of communication, voice, image and data transmission.
>
> (f) Represent the owner Caribbean Development Ltd. on any telecommunication related matters arising.

    (g)    Supply or provide services to any other entity, operator or groups of users through a secondary PBX or Cable distribution system using lines installed by ETI (HOLDINGS) LTD. or any of its subsidiaries.

    (h)    The designated subsidiaries for ETI (HOLDINGS) LTD. are ETI (ANTIGUA) LTD. and POWER AND COMMUNICATION SYSTEMS LTD.

    (i)    We request the lease of an office for the installation of the electronic equipment including operation and administrative staff to be situated on the premises and provided by Caribbean Developments Ltd. at a reasonable rate of lease. The office area must have power and proper bathroom facilities. The utility cost of which be borne by us and we would provide our own metering to pay the rate used by all other tenants at Jolly Harbour.

Commencement of this agreement is as dated SEPTEMBER 10th 1992.

| ETI (HOLDINGS) LTD | CARIBBEAN DEVELOPMENTS LTD |
|---|---|
| Tony Hadeed | Dr. A. Erhart" |

[4]    The appellant concedes in its defence that the opportunity to charge for all calls made through the installed equipment together with hook-up charges to each individual subscriber within the Jolly Harbour development was the commercial underpinning of the agreement.

[5]    It is part of the respondent's (claimant's) pleaded case that by letter dated 9th March 2000 the appellant "in breach of its agreements with the Claimant……purported to repudiate the contract made between itself and the claimant." The appellant's response (as pleaded in the defence) was that there were two implied terms, namely, that the respondent would complete the installation of the necessary equipment for telephone services within a reasonable period, and, that upon such installation the service would only be interrupted for unavoidable technical interruptions but not for non-payment by the respondent of charges to Antigua Public Utilities Authority, the monopoly telephonic services provider to Antigua and Barbuda. The appellant claimed that both of these implied terms were breached by the respondent.

[6]	On this issue the trial judge found that "[g]iven the period of time involved, being more than eight years and the telephone service was still incomplete and given further Tony Hadeed's [the principal of the respondent] admission that he contributed to the delays, the non-completion was unreasonable. Therefore it was lawful for the First Defendant to repudiate the contract."[1] The respondent did not appeal against this finding of the learned trial judge and so it is unnecessary to pursue the issue of breach of contract any further.

[7]	At paragraph 16 of the Statement of Claim the respondent pleaded as follows:
> "Further, the infrastructure installed by the claimant is and remains part of the lands owned by the First Defendant (the appellant) and the claimant has effectively lost the rights to enjoy and use of the same and the property of the First Defendant has been unjustly enriched by the existence of the said infrastructure which has substantially improved the value of the same"

The trial judge accepted that the respondent had spent $4,170,930.35 on the infrastructure referred to above.

[8]	The trial judge's conclusion on this issue is to be found at paragraph 115 of the judgment and is as follows:
> "In the circumstances the Claimant is entitled to the sum of $4,170,930.35 by which the First Defendant was unjustly enriched being the uncontested amount spent by the Claimant to install the telephone system. The Claimant is also entitled to damages for the use of the system between 9th March 2000 and the date of this judgment. These damages are to be assessed. However, in the circumstances no interest will be awarded with respect to the award of $4,170,930.35."

[9]	The appellant is dissatisfied with this latter aspect of the trial judge's conclusions and has appealed. Though there are five grounds of appeal, these can be distilled into one ground, namely, that the trial judge was wrong in law to conclude that the appellant was unjustly enriched and to order restitution and consequential damages

---

[1] Judgment paragraph 80

4

### Unjust enrichment

[10]  Unjust enrichment presupposes three things. "First the defendant must have been enriched by the receipt of a *benefit.* Secondly, that benefit must have been gained *at the plaintiff's expense.* Thirdly, it would be *unjust* to allow the defendant to retain that benefit."[2] The first and second presuppositions are matters required to be proved by the claimant (respondent) and the third is a matter of legal inference derived from the evidence.

[11]  There appears to be no contest between the parties that the respondent put the telephonic infrastructure into the ground on the appellant's development at the respondent's expense. Based on the evidence adduced on behalf of the appellant there might have been some question as to the judge's finding quoted at paragraph 8 above. However, as there has been no appeal against such finding there is no need to go further on this issue. There is also no debate between the parties that the appellant derived a benefit from the placing of the telephonic infrastructure.

[12]  According to Goff and Jones, "The Law of Restitution", the common law rule is that money paid can only be recovered if the consideration for the payment has totally failed[3]. There has been much judicial debate as to whether there is a distinction between the absence of consideration and the total failure of consideration. I do not believe that this debate need concern us in this appeal. As between these litigants, there is clearly a contract which recites its consideration, is intra vires both parties and indeed, partly performed by both parties. It cannot be said, therefore, that there is either an absence of consideration or a total failure of consideration. It flows logically from this latter analysis that restitution based on the common law is not available to the respondent.

---

[2] The Law of Restitution, Goff and Jones 5th ed. At page 15
[3] Op cited at page 500

[13]  The learned trial judge referred to and relied on the Canadian case of **Pacific National Investments Ltd v Corporation of the City of Victoria**[4]. In that case the provincial government and the City of Victoria agreed on the desirability of redeveloping a block of land, some 200 acres in extent. The appellant purchased a 22 acre portion of the land earmarked for development conditional on certain zoning and formal sub-division approval. The City enacted certain zoning laws to enable the appellant's plans for the development of the 22 acre site to be carried out. The appellant expended some $1.08 million on extra infrastructural works on a discrete portion of the site based on the enactment of the zoning laws. Subsequent to an election the new City Council down-zoned that discrete area of the 22 acres rendering, according to the appellant, the development of the discrete area forming part of the 22 acres uneconomical. The appellant sued the City and claimed for breach of contract in common law and in equity for unjust enrichment.

[14]  In so far as the case for breach of contract was concerned, the court (Supreme Court of Canada) held that the respondent had acted ultra vires and hence there was no contract and therefore no breach. One further fact is of relevance in placing this case in context, and that is that the appellant had already earned a very substantial profit on its investment with other lands still to sell.

[15]  The judgment of the full court (Chief Justice and six justices) was delivered by Mr. Justice Binnie. He commenced his analysis of unjust enrichment thus:
> "The doctrine of unjust enrichment provides an equitable cause of action that retains a large measure of remedial flexibility to deal with different circumstances according to principles rooted in fairness and good conscience."

He continued:
> "As accepted by the courts in British Columbia, the test for unjust enrichment has three elements: (1) an enrichment of the defendant; (2) a corresponding deprivation of the plaintiff; and (3) an absence of juristic reason for the enrichment."

---

[4] (2004) 3 S.C.R. 575

[16]   This formulation of the basis of a successful claim for unjust enrichment is very similar to that put forward in Goff and Jones (see paragraph [10] above). The obvious difference, in words, is the use of the term "unjust" in Goff and Jones and the requirement for "an absence of juristic reason" in Canada. The difference is apparent, rather than substantive. As Binnie J said at paragraph 22 in answer to the question: "Is there a juristic reason to deny recovery to the appellant?:

> "This branch of the test for unjust enrichment is pivotal, for as McLachlin J observed It is at this stage that the court must consider whether the enrichment and detriment, morally neutral in themselves, are 'unjust'"

[17]   Binnie J continued:

> There are now two stages to the juristic reason inquiry. At the first stage, a claimant (here the appellant) must show that there is no juristic reason within the established categories that would deny it recovery. The established categories are the existence of a contract, disposition of law, donative intent, and "other valid common law, equitable or statutory obligatio[n]".... On proving that none of these limited categorical reasons exist to deny recovery, the plaintiff (here the appellant) will have made out a prima facie case of unjust enrichment. It will have demonstrated "a positive reason for reversing the defendant's enrichment" (Smith, at p. 244)[5].
>
> Although this information requires the plaintiff to prove a negative, the task is made manageable by the limited number of categories, and it is only fair to put on the claimant the onus of proving the essential elements of its cause of action.
>
> At the second stage, the onus shifts to the defendant (here the respondent City), who must rebut the prima facie case by showing that there is some other valid reason to deny recovery. In the absence of a convincing rebuttal, the transfer of wealth will be reversed. According to Garland, it is at this stage that the court should have regard to the reasonable expectation of the parties and public policy considerations.

[18]   The Supreme Court held that the claim derived from the City's ultra vires demand for works and improvements to which it was not entitled and the court was entitled to sever from the overall contractual arrangements between the parties the exchange of promises flowing from the initial ultra vires demand. The net result in

---

[5] Lionel Smith "The Mystery of 'Juristic Reason'" (2000) 12 S.C.L.R. 211

7

this case was that once the portion of the contract demanding the works and improvements (which had been executed by the appellant for $1.08 million) was severed from the rest of the contractual arrangements between the parties, the ultra vires act by the City made that portion of the contract void and hence, there was no juristic reason to deny recovery.

[19]   In the case at bar, however, there is no ultra vires contract. There is no pleading that the contract between the parties was void. As far as the parties and this court are concerned, a legal agreement for consideration was entered into by the parties which agreement was breached by one party, the respondent. Thus, continuing in the language of Binnie J. there is a juristic reason (breach of a valid contract by the respondent) to deny the respondent recovery.

[20]   If one were to come to the opposite conclusion, then a horse and cart could be driven through the ordinary law of contract. A contracting party would then be able to rely on its own breach to force restitution from the other innocent party. The law of contract, particularly building contracts would not survive in any shape recognizable to today's practitioners.

[21]   There is one further point that must be made which reinforces the view I have taken above. As stated above[6], the trial judge found that the respondent had spent $4,170,930.35 on the telephonic installation. What, however, the trial judge did not address his mind to was what benefit had the respondent derived from the installation prior to the termination of the contract by the appellant concerning which there was evidence before the court. For example, at paragraph 15 of the affidavit of Tony Hadeed dated 16th July 2002 he states the following:

> "Between the end of 1995 and march 2000, the Claimant provide telephonic services to each of the unit owners on the complex and invoiced the unit owners including the First Defendant for the services so provided, which invoices were all duly paid."

And in cross examination during the trial Mr. Hadeed said:

---

[6] Paragraph [7]

> "The monthly fee was faxed [sic] by me. I did not consent with CDAL on the fee……The surcharge was 12cents per unit. ……..We also surcharged on the Cable and Wireless bill which averaged $30.00 per month (10%) These were to cover my operation costs. It was my income from the project."[7]

[22]  Can it be said that the respondent was deprived of $4,170,930.35 or was it some lesser sum? This is a speculative game that no court will indulge in.

[23]  In the premises I would allow the appeal and set aside that part of the order of the trial judge awarding "damages for unjust enrichment in the amount of $4,170,930.55 plus further damages to be assessed for the use of the telephone system from 9th March 2000 to the date of this judgment".  The respondent shall pay the appellant's costs both in this court and in the court below, such costs to be calculated in accordance with Part 65 of the Civil Procedure Rules 2000.

Michael Gordon, QC
Justice of Appeal

I concur.                                                                Denys Barrow, SC
                                                                          Justice of Appeal


I concur.                                                                Hugh A. Rawlins
                                                                          Justice of Appeal

---

[7] Page 201 of record