BRITISH VIRGIN ISLANDS

EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
(CIVIL)

Claim No:  BVIHCV 2009/0020A

In the Matter of the Insolvency Act 2003 and the Insolvency Rules 2005
And in the Matter of Y2K Finance Inc.

BETWEEN:

CITCO GLOBAL CUSTODY NV

Applicant

and

Y2K FINANCE INC

Respondent

**Appearances:**
>Ms. Barbara Dohmann QC; Mr. Jack Husbands of Walkers; and Mr. Robert Weekes for the Respondent Y2K Finance Inc
>Mr Simon Browne-Wilkinson QC; and Ms Arabella di Iorio of Maples & Calder for the Applicant Citco Global Custody NV

JUDGMENT

[2009:  18 September]

[Member's application for appointment of liquidators;  whether to be struck out as an abuse of process;  whether to be struck out as disclosing no reasonable cause of action;  right of member to bring liquidation proceedings based upon allegations that company has actionable claims against directors and others;  whether member can bring liquidation proceedings based upon need to investigate conduct of directors]

[1]     **Bannister J [ag]:**  On Friday 18 September 2009 I heard an application by Y2K Finance Inc ('the Company') to strike out an originating application issued by Citco Global Custody NV ('Citco') on 16 January 2008 seeking the appointment by the Court of a liquidator over the Company pursuant to section 162(1)(b) of the Insolvency Act, 2003 ('the Act').  The grounds upon which the strike out application was made were (a) that the application for the appointment of a liquidator had no reasonable prospect of success and/or (b) that the application involved an abuse of the process.

1

[2] At the conclusion of the hearing I gave my decision and short oral reasons. I ordered that certain of the grounds set out in the originating application be struck out as having no reasonable prospect of success but allowed the originating application to proceed upon the remaining ground alleged, that (in short) it was just and equitable that the Company be wound up because it had ceased all commercial operation. On giving my decision I indicated that if either party wished me to supply written reasons, I would do so. On Monday 21 September 2009 I was asked by representatives of Citco to give my reasons in writing and this written judgment is given in response to that request.

Background

[3] The Company is a BVI incorporated company and operated as a Professional Fund within the meaning of the British Virgin Islands Mutual Funds Act, 1996, as amended. It used a typical hedge fund corporate structure, with investors subscribing for shares in the Company and being entitled to redeem those shares in accordance with the provisions of the Company's Articles of Association. Redemptions were paid out on the familiar Net Asset Value ('NAV') basis and there were common form provisions in the Articles permitting the directors of the Company to suspend the calculation of NAV in certain specified circumstances. Such suspensions, if validly made, would prevent the making of applications to redeem or the further processing of such applications if not completed before the suspension was declared. Citco is a nominee shareholder for various different beneficial owners of shares in the Company.

[4] Between 25 and 27 July 2007 the Company received six redemption notices. Five were from the holders of Class A shares in the capital of the Company and one was from a holder of Class X shares. There is no dispute between the parties that the Articles of the Company provide (somewhat ungrammatically) for A shares to be redeemed on the basis of a calculation of NAV made at the end of the calendar month which first occurs after the expiry of 30 days from the giving of the redemption notice. In the case of the A shares the subject of these late July redemption notices, there is again no dispute that the Company, instead of redeeming them on the basis of NAV calculated at the end of August 2007, as envisaged by the terms of the Articles which I have summarised above, paid them out between 10 and 16 August 2007 on the basis of NAV calculated as at 31 July 2007. The amounts so paid out amounted in aggregate to some US $41 million. The amount paid out in respect of the X shares referred to above was some US$9.8 million – making a total paid out between 10 and 16 August 2007 of some US$51 million. I pause to mention that

2

there is a dispute between the parties whether the X shares are redeemable at all.  For reasons which will become obvious, it is not necessary for me to resolve this dispute for present purposes.

[5]    These redemptions were made out of cash available to the Company at the relevant time.  Subsequently, the Company realised assets and unwound its positions.  On 10 September 2007 NAV was suspended.  It was common ground at the hearing before me that after these events there remains available to the Company for distribution some US$6 million only.

[6]    On 22 November 2007 a company called Headstart Class F Holdings Limited ('Headstart') commenced proceedings in the High Court claiming that the events very shortly summarized above amounted to conduct of the affairs of the Company in a manner unfairly prejudicial to Headstart.  Following the realization that Headstart was not a member of the Company, the claim was amended to join Citco as a claimant.  Citco undoubtedly is a member of the Company and it and Headstart alleged and continue to allege that it holds the 8,000 A shares in the capital of the Company which are in issue in these proceedings for Headstart beneficially.  An enormous amount of energy and costs have been expended in the course of this dispute in an effort on the part of the Company to show that Headstart is not in truth the beneficial owner of the 8,000 shares.  It seems to me that whether Citco holds the shares for itself, for Headstart or for some other person is beside the point.  There is no doubt, in my judgment, that Citco, as the registered shareholder, has *locus standi* to bring either unfair prejudice or liquidator proceedings against the Company, whether it holds the 8,000 shares beneficially or for another.  If it holds for another, the identity of that other is irrelevant.

[7]    In May 2008 the Company applied to strike out the unfair prejudice proceedings.  It said that Headstart, not being a registered holder of shares in the Company, had no *locus* to bring the proceedings;  that Citco did not complain of any unfair prejudice;  that parts of the claim were contradictory and should be struck out for that reason;  and that the claims for relief advanced by Headstart/Citco were bad as amounting to a claim by a member for loss recoverable in its own right by the Company and therefore fell foul of the rule against claims by members for loss that is merely reflective of loss suffered by a company.  The Company's application was heard by Hariprashad-Charles J on May 19 2008.  She gave judgment on 4 November 2008.

[8]    The learned Judge struck out Headstart as a claimant.  She held that a beneficial owner of shares had *locus* to bring unfair prejudice proceedings, but that Headstart had failed to show that Citco was nominee

3

for Headstart in respect of the 8,000 shares and so had no right to bring the proceedings. She further held that Citco had failed to complain in the amended statement of claim of unfair prejudice. She rejected the claim based on contradictory allegations but struck out those parts of the prayer which she held to infringe the rule against reflective loss. She refused the Company a declaration that it was entitled to distribute its remaining assets according to its members respective entitlements (it is alleged by the Company that it has no creditors) on the grounds that such relief was unnecessary.

[9]   Citco has appealed this decision. At the time of writing the Court of Appeal has yet to give its judgment.

[10]  Meanwhile, on 21 May 2008, three days after argument on the strike out in the unfair prejudice proceedings had taken place and well before the Court gave its judgment on that strike out application, Citco issued an originating application for the appointment of a liquidator to the Company. I had better set out the material parts of the originating application in full:

"The grounds upon which [Citco] seek[s] the order are summarized below and are further set out in the first affidavit of Helen Mulcahy sworn on 21 May 2008:

1. The Company is a BVI company operating as a Professional Fund within the meaning of the British Virgin Islands Mutual Fund Act 1996, as amended. The Applicant is, in its capacity as custodian for Headstart Class F Holdings Limited, an investor in, and member of, the Company.

2. The Company was incorporated as a fixed income performance mutual fund, however, the Company has itself expressed that its life has come to an end and it no longer has any reasonable expectation of meeting its objects as a mutual fund. It is the Company's intention to realize the last of its assets and to distribute those assets between the remaining members.

3. In July and August 2007, the Company purported to accept and pay out substantial redemptions in excess of US$50 million notwithstanding the Company's own admission the redemptions failed to comply with the notice requirement contained in Article 10 of the Company's Articles of Association.

4. The Company has indicated that it will distribute its remaining assets to its members and no longer has any prospect of meeting its objectives. Should the Company be put into voluntary liquidation, it is likely that the

> Company's claims in respect of 27 July 2007 redemption will never be investigated or pursued to the detriment of the Company and accordingly, its members.
>
> 5. In all the circumstances, it is just and equitable that a liquidator be appointed over the Company."

[11]   On 11 November 2008 the Company issued an application to strike out Citco's liquidator application.

[12]   On 23 January 2009 Hariprashad-Charles J held that the liquidator application had been deemed dismissed on 22 November 2008 pursuant to the provisions of section 168 of the Act. Meanwhile, on 15 January 2009 Citco had issued an almost identical liquidator application. Apart from its date, the only material difference between this and the first liquidator application was the addition of a new paragraph 1, in the following terms:

"The application is made as a protective measure in the event that, contrary to the Applicant's primary position, the First Liquidator Application is deemed to have been dismissed pursuant to section 168 of the Insolvency Act 2003."

[13]   On 16 January 2009 a consent order was made by Hariprashad-Charles J in this second liquidator application. Shortly, it was ordered by consent that the second liquidator application be treated as a 'continuation' of the first; that the Company's application to strike out the first liquidator application be treated as an application to strike out the second; that that strike out application be heard after the decision of the Court of Appeal in Citco's appeal against the dismissal by Hariprashad-Charles J of Citco's unfair prejudice claim; and that the substantive hearing of the liquidator application (if not struck out) be heard over 5 days beginning not before 1 June 2009.

[14]   As a result of two orders which I made on, respectively, 10 July and 7 August 2009, the hearing of the Company's strike out application was, as I have said, heard and decided by me on 18 September 2009, despite the fact that the decision of the Court of Appeal in Citco's appeal in the unfair prejudice proceedings has yet to be handed down.

**The strike out application in the liquidator proceedings**

[15]   The Company's strike out application asks that Citco's liquidator application be struck out or dismissed in its entirety as disclosing no reasonable grounds and/or as an abuse of process. The specific grounds which follow are:

"1. By claim made in this Court under Claim No. BVIHCV2007/0278, Citco alleged that the affairs of Y2K Finance Inc. had been conducted in a manner which was unfairly prejudicial to the interests of Citco by permitting shareholders in Y2K to redeem their shareholdings in July 2007 ("the July Redemptions") On Y2K's application, that claim was struck out in its entirely by Hariprashad-Charles J (Judgment, 4 November 2008). By the [liquidator] Application, Citco applies for a liquidator to be appointed over Y2K for the purpose of investigating the making of July Redemptions and/or the bringing of proceeding on Y2K's behalf in respect of those Redemptions. Citco is not entitled to the relief sought because:

   a) For the reasons given in the Judgment, there has been no unfair prejudice.
   b) The appointment of an external liquidator is not required in order to liquidate the estate.
   c) In light, in particular, of the findings made in the judgment, the appointment of an external liquidator would serve no good purpose.
   d) A class remedy is plainly not appropriate.
   e) The appointment of an external liquidator (and the continuation of Citco's application) will simply diminish the assets available for distribution.
   f) Citco's attempt to press for the relief sought is in substance and purpose an attempt to relitigate the unfair prejudice claim that has failed."

**Abuse of Process**

[16]   This was put in two ways at the hearing; it was said by Miss Dohmann QC, who appeared together with Mr. Jack Husbands and Mr. Robert Weeks for the Company, that by its originating application Citco was either re-litigating, or attempting to relitigate, the unfair prejudice proceedings, the decision in which stood

6

in the absence of any decision of the Court of Appeal to the contrary and operated as an estoppel against Citco's originating application; or that Citco should and could have included its application for the appointment of a liquidator as an alternative to its claim for relief for unfair prejudice and that its prosecution of separate liquidator proceedings was bad as offending against the principle in *Henderson v Henderson*[1].

[17]   I am wholly unpersuaded that the bringing of liquidator proceedings is barred by any sort of estoppel resulting from the strike out by Hariprashad-Charles J of the unfair prejudice proceedings. Hariprashad-Charles J did not have to consider and expressed no view on the question whether or not Citco was in a position to apply for the appointment of a liquidator over the Company and I do not think that her dismissal of the unfair prejudice proceedings involved an implied but unspoken rejection of any right of Citco to bring liquidator proceedings. Indeed, as I shall attempt to make clear later in this judgment, the juridical basis for the bringing of unfair prejudice proceedings on the one hand and that for the making of an application for the appointment of a liquidator on the other are quite distinct.

[18]   As for the suggestion that an application for the appointment of liquidators should have been joined to the application based upon unfair prejudice and that Citco's failure to do so somehow brings the *Henderson v Henderson* principle into play, that seems to me unreal in light of the fact that Citco brought the original liquidation application before the unfair prejudice proceedings were struck out and that the liquidation application was continued under the umbrella of the second liquidator application by consent (although still subject to the Company's application to strike out). It seems to me, applying the test identified in a passage from *Johnson v Gore Wood & Co*[2] to which I was referred in the course of argument, that I cannot hold, in the light of the public and private interests involved and the facts surrounding these proceedings, that the making and prosecution of the liquidator application in this case amounts to a misuse or abuse of the process of the court.

No reasonable prospect of success

[19]   Miss Dohmann QC also argues that the application for the appointment of a liquidator stands no reasonable prospect of success, or, put another way, is bound to fail. I say immediately that in light of the evidence, which shows to my current satisfaction that the Company has no further commercial purpose other than to distribute its remaining assets to members who have yet to redeem, it is impossible for me to

---

[1] (1843) 3 Hare 100
[2] [2002] 2 AC 1 at 31D

7

hold that Citco has no reasonable prospect of succeeding on its originating application so far as it relies upon the grounds in paragraph 3 and the first sentence of paragraph 5 of the current originating application, (which are in identical terms to those set out and numbered as paragraphs 2 and 4 in the first originating application and which I have set out in paragraph 10 of this judgment) and which seek the winding up of the Company on the grounds that its commercial life is at an end.  Whether, on the hearing of the originating application, members of the Company other than Citco may appear to oppose the application and, if they do, whether they may persuade the Court at that hearing not to order that the Company be wound up by a court-appointed liquidator, but that instead some other machinery should be employed for putting the Company to bed, is not relevant to the question whether the Court should hold *at this stage* that the ground set out in paragraph 3 and the first sentence of paragraph 5 of the current originating application has no reasonable prospect of success.

[20]   I turn to the other grounds relied upon in the liquidator application.

[21]   Paragraph 4 (identical to the original paragraph 3) refers to the admitted fact that in July of 2007, as I have mentioned, the Company paid out redemptions of more than US$51 million and states that it did so notwithstanding the admitted fact that these redemptions failed to comply with the notice period contained in Article 10.  Strictly speaking, I think it is correct to say that the Company's admission applies only to the redemptions of the Class A shares, but I do not think that that is significant for present purposes.  The final sentence of paragraph 5 of the originating application alleges that if the Company is put into voluntary liquidation it is likely that its claims in respect of the July 2007 redemptions will never be investigated or pursued and that the Company and its members will suffer accordingly.

[22]   I should say at once that the reference in the originating application to the Company's 'claims' in respect of the July redemptions begs a large question – whether the Company has any claims in that regard at all.  In an affidavit made in support of the originating application on 21 May 2008 Helen Mulcahy, an English Solicitor acting for Citco in this matter, says merely that the July redemptions involved a 'breach' of the Company's Articles and that the redemption payments were 'wrongful'.  She goes on to say that 'there remains a question' as to why NAV or payment was not suspended sooner and that there similarly remains a question whether the Company's board acted in breach of fiduciary duty in failing to do so.  Ms Mulcahy adds that 'there is a question' as to whether the payment of the July redemptions triggered a series of margin calls and whether the Company's trading of assets was manipulated to produce sufficient to enable it to pay the July redemptions.  Ms Mulcahy says that she believes that 'there is a cause for investigation'

as to the circumstances in which the redemptions were made and a 'necessity' that the Company should 'reconstitute' the cash assets and make a redistribution to all shareholders or seek to recover the shortfall between the 31 July 2007 NAV and the NAV post suspension, either from the directors or from the recipients, either as 'knowing recipients' or as recipients of money paid under a mistake. She ends by alleging that she believes that the Company's opposition to the now (but not at the time when Ms Mulcahy swore her affidavit) struck out unfair prejudice claim is fuelled, at least in part, by the directors' own interests.

[23]　It seems to me that none of this supports the existence of even a prima facie claim available to the Company. Ms Mulcahy's affidavit is a mixture of 'questions' as to whether or not actionable breaches have occurred, coupled with assertions that that certain steps by way of repayment 'need' to be made, the whole being said to give rise to a 'cause for investigation'.

[24]　In his oral submissions, Mr Browne-Wilkinson QC, who appeared together with Ms Arabella di Iorio for Citco, seemed to me to be going well beyond the cautious evidence given by Ms Mulcahy and to be suggesting that the Company had identifiable prima facie claims against directors, the recipients of the July 2007 redemptions and, even, certain advisers to the Company. It is only fair to say that in doing so he relied upon further evidence than that contained in Ms Mulcahy's affidavit. For reasons which will appear, I do not think that it is necessary for me to recite the facts to which all of that further evidence was directed, other than to say that Mr. Browne-Wilkinson QC was able to show that at least one of the directors who were concerned in authorising the July 2007 redemptions was also on the board of one of the immediate recipients of the proceeds and that the fund suffered negative monthly returns in June and July 2007. Even with the benefit of that and the other additional evidence, to which Mr. Browne-Wilkinson referred me I have to say that I was not persuaded that all the necessary elements of any of the claims which he canvassed was sufficiently evidenced to enable the Company to plead claims against any of the targets which he identified, but that seems to me to be beside the point. Even if Mr. Browne-Wilkinson QC had established to the complete satisfaction of the Court that the Company had a cast iron claim against the directors, the recipients of the redemption monies or, indeed, any other person, that would not, in my judgment, have assisted him. Mr. Browne-Wilkinson's submissions on this part of his case amounted to an assertion that, provided a member can identify wrongs (particularly wrongs committed by members of its board of directors) actionable at the suit of a company, that gives him grounds for seeking to have the company wound up. In my judgment, there is no such principle. Mr. Browne-Wilkinson QC was unable to cite

9

authority for the proposition. The decision upon which he relied, *Loch v John Blackwood Ltd*[3] is a classic example of a quasi-partnership case dealing with the position of a family shareholder trapped within a company that was being maladministered on a continuing basis. Quite apart from the fact that the background to that case was about as far removed as it is possible to be from that of a hedge fund whose membership was restricted to professional investors, it is not an authority that a member can wind up a company if he can once establish that the company has an actionable complaint against its directors for breach of fiduciary duty. It is for the company to decide what steps, if any, to take in such circumstances. If it were right that such a set of facts gave a minority shareholder the right to have the company wound up, it would, in my judgment, make serious inroads into the *Foss v Harbottle*[4] principle of majority rule.

[25]   At one point I understood Mr. Browne-Wilkinson QC to be submitting that because section 11 of the Business Companies Act, 2004 makes the memorandum and articles of association of a company binding between the company and each of its members, that in some way entitled Citco to take proceedings, such a winding up proceedings, with the object of ultimately bringing about redress against a board of directors which had acted contrary to provisions in the articles. If Mr. Browne-Wilkinson QC was indeed going that far, he was, in my judgment, in error. A member's right to enforce provisions in the articles of association of a company is restricted to breaches which affect his rights as a member. In the present case, Citco's rights *as a member* were the same after as they had been immediately before the payment out of the July 2007 redemptions. There is authority to the effect that the 'articles as a contract' principle cannot be used to short-circuit the rule in *Foss v Harbottle*[5]. In my judgment the same principle applies to prevent a minority shareholder taking indirect action (such as by way of the presentation of an application for the appointment of a liquidator) on the grounds that the board has flouted the provisions of the articles (in some manner not directly impinging on his rights *qua* member).

[26]   For these reasons, none of the matters on which Mr Browne-Wilkinson QC relies, even if the Company does have an actionable complaint against the directors or other persons arising out of them, provides Citco with any basis at all to apply for the appointment of a liquidator on just and equitable grounds. Not only is there no authority in support of such a proposition there is, as I have endeavoured to demonstrate, if not direct authority, then well established principle to the contrary.

---

[3] [1924] AC 783
[4] (1843) 2 Hare 461
[5] See Gore-Browne on Companies at para 6[30] (Update 51)

[27]   It may be that Citco is saying that even if no actionable complaint has so far been established, then at the lowest it has been able to point to circumstances which cry out for investigation.  Assuming, without deciding, that that position has been reached, it does not, in my judgment, mean that Citco has grounds for seeking the appointment of a liquidator on just and equitable grounds.  This follows *a fortiori* from the reasoning set out in the preceding paragraphs.  Unless an applicant for the appointment of a liquidator can rely upon an established ground for asking the court to make the appointment, his application will fail.  In my judgment, paragraph 3 and the last sentence of paragraph 5 of Citco's originating application disclose no such grounds.  Unless they are struck out, their continued inclusion in the application is likely to result in waste of the parties' money and the Court's time in the canvassing of irrelevant and thus inadmissible material.

[28]   At the hearing on 18 September 2009, I ordered that paragraphs 3 and 5 of Citco's originating application be struck out. I rejected a submission by Mr. Browne-Wilkinson Q.C. that there was no reason why the first sentence of paragraph 5 should not stand. I consider that I was wrong to do so, and the order as perfected will strike out the last sentence of paragraph 5 leaving the first in place.  I also ordered that paragraphs 3 to 12 of the affidavit of Ms Mulcahy, to which I have made reference above, be not relied upon in support of Citco's application.  It goes without saying that I also disallow reliance at the hearing upon any evidence going to the events which are there dealt with, although I do not think that the formal order needs to deal with that.  Otherwise, the Company's application was dismissed.  It was agreed that questions of costs should be dealt with when Citco's liquidator application comes on for hearing on 9 November 2009.  I should add that I also made an order pursuant to section 168 of the Insolvency Act, 2003 extending the time for determination of Citco's liquidator application until 15 January 2010 or such earlier time as that application has been determined.

Commercial Court Judge<br>
24 September 2009