TERRITORY OF THE VIRGIN ISLANDS

IN THE COURT OF APPEAL

HCVAP 2008/022

BETWEEN:

CITCO GLOBAL CUSTODY NV

Appellant/Claimant

and

Y2K FINANCE INC

Respondent/Defendant

**Before:**
   The Hon. Mr. Hugh A. Rawlins                        Chief Justice
   The Hon. Mde. Ola Mae Edwards                  Justice of Appeal
   The Hon. Mde. Janice George-Creque          Justice of Appeal

**Appearances:**
   Mr. Simon Browne-Wilkinson Q.C. and Mr. Jeffrey Chapman for the
   appellant/claimant
   Ms. Barbara Dohmann Q.C., Mr. Samuel Jackson Husbands and Mr. Robert
   Weekes for the respondent/defendant.

_____
2009:   January 15;
         October 19.
_____

*Civil Appeal - whether judge applied correct principles for striking out amended statement of case under CPR26.3(1)(b) - assumption that facts stated in the pleadings are true - whether test for summary judgment under CPR 15.2 applicable - whether pleadings sufficiently disclosed that one of the claimants was beneficial owner of shares - whether judge erred in striking out the claimant who was beneficial owner of shares as having no locus standi to pursue a claim under section 1841 - whether pleadings disclose reasonable grounds for bringing unfair prejudice claim under section 1841 of the BVI Business Companies Act - whether the rule against reflective loss imposes a bar to the relief sought in paragraph 2 of the prayer - statutory interpretation of section 1841 - court's discretion to make different types of orders under section 1841 - whether judge erred in striking out paragraph 2 of the relief sought.*

By an Amended Statement of Claim for unfair prejudice brought under section 1841 of the **BVI Business Companies Act**, Headstart Class Holdings Limited ("Headstart") as 1st claimant alleged at paragraphs 3 and 13 that it invested US$8,000,000.00 in the hedge fund of the respondent Y2K Finance Inc., a BVI Business company ('the Fund') in April 2006, by using Citco Global Custody NV ("Citco") who is the appellant and 2nd claimant as its nominee.  The claimants alleged that the representatives of the Fund between 1st June 2007 to 15th November 2007 had depleted the Net Asset Value of the Fund by acting in breach of its equitable obligations of good faith.  The pleadings alleged further that this depletion resulted because the representatives of the Fund had allowed redemptions of Class A and Class X shares which were not in accordance with the Fund's Memorandum and Articles of Association.  The particulars of breach of equitable obligation of good faith were pleaded in detail at paragraph 21 of the amended statement of claim.  The relief sought by the claimants included at paragraph 2 of the prayer that the Court order the repayment of all sums withdrawn from the Fund in breach of the Memorandum and Articles of Association as pleaded in paragraph 21.

The Fund made an application to the Court on 5th May 2008 for the Amended Statement of Claim to be struck out.  The grounds of this application included: (1) that Headstart was not a registered shareholder and lacked standing to pursue a claim under section 1841 of the **BVI Business Companies Act**; and (2) that the Amended Statement of Claim disclosed no complaint of unfair prejudice, or ground for relief; and was in conflict with the rule against reflective loss.  In determining the application the learned judge applied principles applicable to a summary judgment application under CPR 15.2 and made factual findings from affidavit evidence adduced by the claimants instead of assuming, as the law required, that the relevant facts pleaded in the amended statement of case were true; and thereafter identifying any pleaded inferences from those facts before striking out the statement of case.  The judge found that the claimants had failed to prove that Citco was Headstart's nominee; that Citco has not made any complaint of unfair prejudice against Y2K.  She concluded that the pleadings did not disclose reasonable grounds for bringing the claim; and that paragraph 2 of the relief sought would be struck out for offending the rule against reflective loss.  The learned judge ordered that Headstart be struck out as a claimant in these proceedings and that the claim be struck out in its entirety with costs to the defendant to be assessed in accordance with CPR 65.12 if not agreed.  The appellant appealed the judge's decision and the respondent also filed a counter notice.

**Held:**  allowing the appeal, dismissing the counter-notice, setting aside the order that the learned judge made on 4th November 2008; ordering that the matter be remitted to the court below for case management and a trial date to be set; and awarding costs to the appellant in the court below to be agreed or otherwise assessed; and costs in this appeal which is to be 2/3 of the costs below pursuant to CPR 65.13(b).

1. The application to strike out was obviously an application under CPR 26.3(1)(b)  and  the learned judge would be obliged to assume that the facts alleged in the amended statement of claim were true and she would not be entitled to make use of the powers contained in CPR 15.2 in the absence of any application for summary judgment before her.  The summary judgment test - whether the claimants had any real prospect of succeeding on the claim

was not an option in considering the respondent's application to strike out the amended statement of claim.

**Morgan Crucible Co. plc v Hill Samuel & Co. Ltd** [1991] Ch 295; **Swain v Hilman and another** [2001] 1 All E.R. 91 followed.

2.  That the judge erroneously concluded that the claimants had the burden to prove that the appellant was the nominee of Headstart, and she failed to apply the correct test and consider whether the relevant pleaded facts were primary facts or inferences.  Paragraphs 2 and 13 of the amended statement of claim contain primary facts which should be taken at face value to be true for the purposes of the application and the judge erred in striking out Headstart as a claimant.

    **Diamantis Diamantides v JP Morgan Chase Bank** [2005] EWCA Civ. 1612 at paragraph 23 to 26 followed and distinguished.

3.  An accurate summary of the case for the claimants as pleaded in paragraph 21 of the amended statement of claim is that by making certain redemptions in breach of its Memorandum and Articles of Association, Y2K's actions were unfairly prejudicial to the interests of the appellant, whose interests for these purposes include the interests of Headstart on whose behalf it holds the shares in Y2K; and had the judge applied the correct principles in considering the application, she should have concluded that the appellant and Headstart had pleaded reasonable grounds for bringing the claim.  The learned judge therefore erred in striking out the claim brought by Headstart and Citco for the reasons that she gave.

4.  Having regard to the law on reflective loss and the relief prescribed in section 1841(2)(a) to (h) of the **BVI Business Companies Act** any decision of the court as to whether to grant relief under paragraph 2 of the prayer in the amended statement of claim depends on the view that a court will take of the appellant's case in light of the pleaded facts, the evidence and law; and the learned trial judge therefore acted prematurely and unreasonably in striking out  paragraph 2 of the prayer.

    **Atlas Ltd & Others v Brightview & Others** [2004] BCC 542 at paras. 58 – 63 considered and followed

## JUDGMENT

[1]   **EDWARDS, J.A.:**  This is an appeal against the decision to strike out the appellant's claim against the respondent for unfair prejudice on the basis that it disclosed no reasonable grounds for bringing the claim.  The appellant seeks to

set aside the decision in its entirety and also seeks an order that the respondent do pay the appellant's costs below and in the Court of Appeal.

## Background Facts

[2]     The appellant Citco Global Custody NV ("Citco") is the nominee of Headstart Class Holdings Limited ("Headstart") and is a registered shareholder in the professional hedge fund of the respondent Y2K Finance Inc. ("the Fund"). The Fund is an international business company incorporated under the **International Business Companies Act** of the Virgin Islands and continued under the **BVI Business Companies Act** No 16 of 2004[1] with its registered office in Tortola, Virgin Islands. The authorized capital of the Fund is US$50,000.00 divided into 5 classes including 1,500,000 Class A shares of US$0.01 par value each, further divided into 30 series of 50,000 shares in each series.

[3]     The Fund's Memorandum and Articles of Association provided, among other things, that the redemption price for each share was the Net Asset Value per share (NAV) of the applicable class or series as at the close of business on the valuation day immediately preceding the dealing day on which such redemption is effected.  The dealing day for the Class A shares will follow after 30 days prior notice; the redemption or purchase price of shares will be effected at the redemption price, and payment shall be made to the applicant in the base currency in respect of the redemption or purchase of shares based on unaudited data.

[4]     By an Amended Statement of Claim filed on 23rd April 2008 Headstart alleged as 1st claimant that it invested US$8,000,000.00 in the Fund in April 2006 using the appellant Citco (2nd claimant/appellant) as its nominee; and that the representatives of the Fund between 1st June 2007 to 15th November 2007 had depleted the Net Asset Value of the Fund by acting in breach of its equitable obligations of good faith.

---

[1] As amended by 26 of 2005

[5]     Section 1841 of the **BVI Business Companies Act** 2004 provides:

"1841(1)    A member of a company who considers that the affairs of the company have been, are being or are likely to be, conducted in a manner that is, or any act or acts of the company have been, or are, likely to be oppressive, unfairly discriminatory, or unfairly prejudicial to him in that capacity, may apply to the Court for an order under this section.

(2)    If, on an application under this section, the Court considers that it is just and equitable to do so, it may make such order as it thinks fit, including, without limiting the generality of this subsection, one or more of the following orders:
(a) in the case of a shareholder, requiring the company or any other person to acquire the shareholder's shares;
(b) requiring the company or any other person to pay compensation to the member;
(c) regulating the future conduct of the company's affairs;
(d) amending the memorandum or articles of the company;
(e) appointing a receiver of the company;
(f) appointing a liquidator of the company under section 159(1) of the Insolvency Act on the grounds specified in section 162(1)(b) of that Act;
(g) directing the rectification of the records of the company;
(h) setting aside any decision made or action taken by the company or its directors in breach of this Act or the memorandum or articles of the company.

(3)    No order may be made against the company or any other person under this section unless the company or that person is a party to the proceedings in which the application is made."

[6]     The substance of the allegations in the claimants' Amended Statement of Claim is that following the Fund's monthly performance report for the month of July 2007, and subsequent telephone communications between the parties through their representatives concerning the value of the Fund, the representatives of Headstart and the appellant received other documents and information provided by the Fund which apparently reveal that the NAV of the Fund has been depleted.   They alleged that this depletion resulted because the representatives of the Fund have

acted in a manner which equity would regard as contrary to good faith by allowing redemptions of Class A and Class X shares which were not in accordance with the Fund's Memorandum and Articles.   The particulars of breach of equitable obligation of good faith will be considered later.   The relief sought by Headstart and the appellant was:

> "(1)   That the Fund pay such compensation to them as the Court may determine after (if necessary) an account and inquiry.
> (2)   That the Court order the repayment of all sums withdrawn from the Fund in breach of the Memorandum and Articles of Association as pleaded in paragraph 21.
> (3)   That the Fund do instruct investigating accountants to prepare an independent business review to be addressed to the Fund ("the Accountant Report") with a copy to the appellant and Headstart and all other shareholders commenting on the reasons for the decline in the NAV of the Fund between the 1st June 2007 and 15th November 2007 or such other date(s) as the Court may order.
> (4)   That the investigating accountants preparing the Accountant's Report be provided by the Fund with all documents and information necessary in the view of the investigating Accountants to prepare the Accountant's Report.
> (5)   That the Fund be restrained from determining a Net Asset Value until 28 days after the Auditor's Report has been provided to the Court and the appellant and Headstart.
> (6)   That such other order(s) may be made as the Court thinks fit."

[7]     The Fund made an application to the Court on 5th May 2008 for the Amended Statement of Claim to be struck out and filed its Defence on 9th May 2008.   The grounds of this application included: (1) that Headstart was not a registered shareholder and lacked standing to pursue a claim under section 184I of the **BVI Business Companies Act**; and (2) that the Amended Statement of Claim disclosed no complaint of unfair prejudice, or ground for relief; and was in conflict with the rule against reflective loss.

[8]     The learned judge on 4th November 2008 ordered that:

> (1)   Headstart Class F Holdings be struck out as a claimant in these proceedings.
> (2)   Claim number 278 of 2008 be struck out in its entirety.
> (3)   Costs be awarded to the defendant against the claimants, such costs

to be assessed in accordance with CPR 65.12 if not agreed.

(4) The defendant/applicant is to submit a bill of costs complying with CPR 65.12(4) by 4th December 2008.

## Grounds of Appeal

[9] Ground of appeal 3(a) complains about the finding of the learned trial judge that the appellant was not a nominee shareholder of Headstart. This ground contends that the judge was wrong in law and in fact to find that the appellant had not provided sufficient evidence to support the allegation that the appellant is the nominee of Headstart, and that Headstart is the beneficial owner of the shares in the Fund. Ground 3(b) addresses the finding that the appellant Citco did not make any complaint of unfair prejudice against the Fund and asserts that the learned judge was wrong in law and in fact to make such a finding in light of the pleadings. The contention in ground 3(c) relates to the learned judge's finding that paragraph 2 of the prayer in the Amended Statement of Claim is a claim for more than the appellant has lost and should be struck out for offending the rule against reflective loss. I note that extensive arguments have been included in the Notice of Appeal on each ground of appeal; and these arguments have been repeated and/or amplified by counsel for the appellant in their skeleton arguments and the oral submissions of Mr. Browne-Wilkinson, Q.C. A timely reminder is appropriate, having regard to CPR 62.4(5) which states that the grounds on which the appellant relies must be set out without any argument or narrative.

[10] The respondent by its counter-notice contends that the judgment and the decision to strike out the appellant's claim should be upheld because: (a) The appellant has not alleged that Headstart Class F Holdings Ltd, and the appellant, relied on any of the representations pleaded in paragraph 22 of the amended statement of claim (b) The conversations pleaded in paragraph 22 allegedly took place in August 2007, when no shareholder could redeem any longer (c) If the appellant was a nominee shareholder as it alleges, it could not complain of any prejudice to its own (as opposed to Headstart's) economic interests and therefore cannot complain of

unfair prejudice under section 1841 of the **BVI Business Companies Act** 2004 (as amended).  The learned Judge erred in law insofar as she made any finding to the contrary in paragraph 38 of her Judgment.

**The Principles Governing CPR 26.3 (1)(b) Applications to Strike Out a Claim**

[11]     By CPR 26.3(1):

>"... the court may strike out a statement of case or part of a statement of case if it appears to the court that –
>(a) ...
>(b)  the statement of case or the part to be struck out does not disclose any reasonable ground for bringing or defending a claim;
>(c ) the statement of case or the part to be struck out is an abuse of the process of the court or is likely to obstruct the just disposal of the proceedings."

[12]     Striking out under the English CPR, r 3.4(2)(a) which is the equivalent of our CPR 26.3(1)(b), is appropriate in the following instances: where the claim sets out no facts indicating what the claim is about or if it is incoherent and makes no sense, or if the facts it states, even if true, do not disclose a legally recognisable claim against the defendant.[2]

[13]     On hearing an application made pursuant to CPR 26.3(1)(b) the trial judge should assume that the facts alleged in the statement of case are true.[3]  "Despite this general approach, however, care should be taken to distinguish between primary facts and conclusions or inferences from those facts.  Such conclusions or inferences may require to be subjected to closer scrutiny."[4]

[14]     Among the governing principles stated in **Blackstone's Civil Practice 2009**[5] the

---

[2] See **Blackstone's Civil Practice 2009** at page 431.
[3] See **Morgan Crucible Co. plc v Hill Samuel & Co. Ltd** [1991] Ch 295 per Slade L.J .: " On an application to strike out a pleading under  RSC, O 18, r 19(1)(a) [ comparable to  rule 26.3 (1) of our CPR 2000], no evidence is admissible and since it is only the pleading itself which is being examined, the court is required to assume that each and every one of the facts pleaded (unless manifestly incapable of proof) is true and will be capable of proof at the trial . In some instances the court may regard the assumption as somewhat unrealistic, but it nevertheless has to be made."
[4] See **Bank of Credit and Commerce International (Overseas) Ltd (in liq.) & Ors v Price Waterhouse and another** [1988] B.C.C. 617 at 620
[5] At page 432 paragraphs 33.9 and 33.10

following circumstances are identified as providing reasons for not striking out a statement of case: where the argument involves a substantial point of law which does not admit of a plain and obvious answer; or the law is in a state of development;[6] or where the strength of the case may not be clear because it has not been fully investigated. It is also well settled that the jurisdiction to strike out is to be used sparingly since the exercise of the jurisdiction deprives a party of its right to a fair trial, and its ability to strengthen its case through the process of disclosure and other court procedures such as requests for information; and the examination and cross–examination of witnesses often change the complexion of a case. Also, before using CPR 26.3(1) to dispose of 'side issues', care should be taken to ensure that a party is not deprived of the right to trial on issues essential to its case.[7] Finally, in deciding whether to strike out, the judge should consider the effect of the order on any parallel proceedings[8] and the power of the court in every application must be exercised in accordance with the overriding objective of dealing with cases justly.

[15]  The learned judge at paragraphs 16 to 23 of her judgment considered the court's power to strike out and the principles that she was applying to the application to strike out. She identified the power under CPR 26.3(1)(b) and (c), and though it was unnecessary, she also mentioned the power under CPR 15 to enter summary judgment against a claimant who has no real prospect of succeeding on the claim. The learned judge referred to the substantial overlap between the two powers and recited the learning expressed in the **Supreme Court Civil Practice White Book** that an application can be made under both rules. At paragraph 18 the learned judge stated:

> "If a party believes he can show without a trial that an opponent's case has no real prospect of success on the facts, or that his case is bound to succeed or the opponent's fail because of a point of law, he can apply either under CPR 26 or CPR 15 or both as he thinks appropriate. When

---

[6] See also The Caribbean Civil Court Practice 2008 , page 231: " …a case should not be struck out where the claim is in an area of developing jurisprudence and the facts need to be investigated before conclusions can be drawn about the law: *Farah v British Airways plc and the Home Office* (2000) Times, 26 January CA."

[7] Op, cit. at page 429 – 430: paragraph 33.6.

[8] Op..Cit. at page 431 paragraph 33.7.

deciding whether or not to strike out, the court takes into account all relevant circumstances and "makes a broad judgment after considering the available possibilities."

See **Caribbean Civil Court Practice**, 2008, page 230, Note 23.22.

[16]     Thereafter the learned judge recited the observations of the Court of Appeal in **Bank of Bermuda Ltd v Pentium (BVI) Ltd and Landcleve Ltd** concerning a summary judgment application.[9]

[17]     CPR 15.2 governs summary judgments and provides that "The court may give summary judgment on the claim on a particular issue if it considers that the - (a) claimant has no real prospect of succeeding on the claim or the issue."  CPR 15.5(2) allows a respondent to prove that the claim has a real prospect of success at the hearing by  filing and relying on affidavit evidence.

[18]     The powers of the court under CPR 15.2 are seemingly wider than those contained in CPR 26.3(1).  In **Swain v Hilman and another**[10] Lord Woolf MR contrasted the court's power under rule 3.4 (the English CPR equivalent of our CPR 26.3 (1)(b))  and rule 24.2 the English summary judgment rule which is similar to our CPR 15.2. Lord Woolf said at page 92:

> "Rule 3.4 makes provision for the Court to strike out a statement of case or part of a statement of case, if it appears that it discloses no reasonable grounds for bringing or defending a claim. Clearly there is a relationship between r. 3.4 and r. 24.2.  However the power of the court under Pt 24, the grounds are set out in r. 24.2, are wider than those contained in r. 3.4. The reason for the contrast in language between r. 3.4 and r.24.2 is because under r. 3.4, unlike 24.2, the Court  generally is only concerned with the statement of case which it is alleged discloses no reasonable grounds for bringing or defending the claim.   Under r. 24.2 the Court now has a very salutary power, both to be exercised in a claimant's favour or, where appropriate, in a defendant's favour."

---

[9] BVI Civil Appeal No. 14 of 2003 – See Caribbean Civil Court Practice, 2008 page 232: This was a case in which the companies alleged in their claim that the Bank had acted unlawfully in breach of the mandate given to it, by paying out the companies monies on unauthorized instructions; and there was an application for summary judgement  against the Bank on grounds that the Bank's defence disclosed that there was no real prospect of successfully defending the claim.

[10] [2001] 1 All E.R. 91

[19]    Looking at the application that was before the learned judge, this was not an application for summary judgment.  It was obviously an application under CPR 26.3(1)(b) though it did not expressly say so. Consequently, the learned judge would be obliged to assume that the facts alleged in the amended statement of claim were true, and she would not be entitled to make use of the powers contained in CPR 15.2 in the absence of any application for summary judgment before her.  The summary judgment test - whether the claimants had any real prospect of succeeding on the claim - was not an option in considering the respondent's application to strike out the amended statement of claim.

### Ground 3(a) – Citco as Nominee Shareholder of Headstart

[20]    At paragraph 2 of the amended statement of claim it is pleaded:

> "The first Claimant is a shareholder in the Defendant ("the Fund") through the Second Claimant which acts as the First Claimant's nominee and is the registered shareholder of the shares in the Fund referred to in paragraph 13 below."

Paragraph 13 of the amended statement of claim pleaded:

> "The first Claimant invested US$8,000,000.00 in the Fund by buying Class A shares in April 2006 using the Second Claimant as its nominee as pleaded in paragraph 2 above.  It did this in reliance on assurances received by Henry Watkinson (a director of Headstart) from  Maurice Salem of Wharton UK (acting then and at all material times on behalf of the Fund) that he personally had invested US$30 million in the Fund.  Mr. Salem agreed in principle that he would keep Mr. Watkinson informed as to the status of his investment in the Fund (through whatever vehicle that investment might be made)."

[21]    The learned judge came to her conclusion that the appellant was not a nominee shareholder of Headstart  in the following manner.  At paragraph 33 of her judgment she stated:

> "Headstart, not being a member of Y2K, alleges that Citco acted as its nominee at the material times in question.  It is not in contention, that if Citco did act as the nominee for Headstart then Headstart will be the beneficial owner of the shares in Y2K and thereby, have locus standi in this matter.  Thus, the burden is upon the claimants to show whether there is a nominee relationship between them, which gives Headstart the locus standi, with beneficial interest, to make this claim against Y2K for unfair

prejudice."

[22]     The judge thereafter resorted to the common law to determine whether the beneficial owner has the same right to bring such an action as Citco, "assuming for a moment that Headstart is in fact the beneficial owner of the shares".  She concluded at paragraph 38 that section 1841 of the **BVI Business Companies Act** can be interpreted to include applications made by both nominee shareholders and beneficial owners of shares.

[23]     She next identified as an issue for her determination:

> "whether the evidence put forward by the claimants showed the relationship of Citco being a nominee shareholder of Headstart and Headstart being a beneficial owner of the shares in Y2K."

She continued at paragraphs 39-41:

> "This is a question of fact. In this case, the evidence which was adduced by the Claimants to prove such a relationship existed between them was as follows. 1. A Notice dated 10th April 2008… 2.  A letter headed 'Consent' from Citco Nederland…3. A further notice from Citco Nederland…. [40] In my judgment, the Claimants have not provided sufficient evidence to support the allegation that Citco is the nominee for Headstart, and that Headstart is in fact the beneficial owner of the shares in Y2K.  None of the above-mentioned documents state the crucial facts which include, among other things: (a) when did the alleged relationship between the Claimants commence; (b) for what reason was this relationship formed; (c ) for how long did this relationship continue; and (d) what is the significance of Lyxor and how is it that Headstart is instead now the underlying investor of the account?   [41] Since there is no documentary evidence disclosed by the Claimant to clearly explain their relationship, I find that the Claimants failed to prove that such a relationship existed. I am therefore constrained to find that Headstart has no locus standi to bring this claim."

[24]     Learned Queen's Counsel Mr. Browne-Wilkinson submitted that the learned judge applied the wrong legal test in light of paragraphs 2 and 13 of the amended statement of claim and the well settled law that applications to strike out should be considered on the assumption that the facts stated in the pleadings are true.

[25]     Learned Queen's Counsel Ms. Dohmann submitted that Citco adduced evidence with a view to the learned judge making such a finding; and having not taken this

point below, Citco should not be permitted to make this volte-face and advance this ground of appeal. She argued further that the court should consider whether the pleaded facts are primary facts and conclusions or inferences from those facts and if they were conclusions or inferences they should be subjected to scrutiny.[11] Ms. Dohmann Q.C. relied on the case **Diamantis Diamantides v JP Morgan Chase Bank**[12] to advance her submission.   However, the judge in **Diamantis,** unlike the learned judge in the instant case, on several occasions referred to the primary facts pleaded and to the inferences that could and could not properly be drawn from them;  and having posed the question whether a credible case was being advanced that Mr. Diamantides was in a contractual relationship with the Bank, clearly set out to answer it by reference to the pleaded facts only.  So, having concluded that the facts pleaded showed clearly that Pollux Holding Ltd. was the customer of the Bank, and not Mr. Diamantides, the judge struck out the claim form and particulars of claim, which was upheld by the Court of Appeal.

[26]   This was not the approach of the learned judge in the present case, who, unfortunately, did not resist the inducement from counsel to consider the affidavit evidence placed before her in deciding the application to strike out.   Having erroneously concluded that the claimants had the burden to prove that the appellant was the nominee of Headstart, she failed to apply the correct test and consider whether the relevant pleaded facts were primary facts or inferences.  I therefore hold that the appellant's complaint in ground 3(a) is justified.

[27]   In my view, paragraphs 2 and 13 of the amended statement of claim contain primary facts which should be taken at face value to be true for the purposes of the application.   The challenges mounted by counsel for the respondent were premature.  The judge erred in striking out Headstart as a claimant.

Ground 3(b) - The Unfair Prejudice Pleadings

---

[11] See paragraph 12 of this judgment
[12] [2005] EWCA Civ. 1612 at paragraph 23 to 26.

[28]   Queen's Counsel for the appellant contends that the reasons given by the learned judge to support her finding that the appellant did not make a complaint of unfair prejudice are unsupportable and wrong and demonstrate a misunderstanding of the appellant's pleaded case.  It appears from the judgment that the judge thought the appellant's case was that it was unfairly denied the opportunity to redeem its shares and that, because it had never made a request for redemption, it could not have been unfairly prejudiced. In particular the learned judge held:

> "[46]  Nowhere in the ASC does Citco complain of unfair prejudice…
>
> [47]  ….for the purposes of this Application, Y2K needs only rely on the fact (which is agreed ) that Citco has never made a request for redemption.
>
> [48]  Citco was therefore not prejudiced by the making of these redemptions. This is not  a case in which other shareholders of Y2K were permitted to redeem and Citco was not…
>
> [49]  At the end of the day, Citco has not made any complaint of unfair prejudice against Y2K.  Such a complaint ought to be properly pleaded with particulars.  In the event that I am wrong to come to this conclusion, in any event Citco never submitted a redemption request."

[29]   The pleadings at paragraph 21 appear not to have been given any weight by the learned judge in arriving at her conclusion that there was no complaint of prejudice.   Though she did not consider the paragraph 21 pleadings to be contradictory (as counsel for the Fund urged) she obviously did not take them into account  and apparently did not determine whether  the claimants pleaded case could fit squarely into a claim under section 1841 of the  **BVI Business Companies Act.**[13]

[30]   Paragraph 20 alleged  that following a conference call on 26th September, 2007 Headstart requested and received from the Fund's administrators (Bank of Bermuda) an historical spreadsheet of the Assets Under Management ("AUM") calculations  which showed that on 31st July 2007 the Fund had assets with an NAV of $119,491,788.00.  The email accompanying the AUM said that as at 1st August 2007 the NAV was only $64 million, a reduction of US$55 million in one

---

[13] See paragraph 5 above.

day.

[31]     Paragraph 21 pleaded:

"In the course of and as a result of these proceedings the Fund has provided certain documents and affidavits from Paul Cook of Wharton UK [Wharton UK was pleaded at paragraph 10 as entering into an advisory agreement with the Fund dated 21st April 2004 pursuant to which Wharton UK was appointed to provide investment advice to Wharton Bermuda an investment manager of the Fund.] and Mr. Dave Shastri (purportedly of a Bermuda company called "Tankard Lane Holdings Company Limited) but not from Mr. Salem. The documents and information are incomplete but from the material provided to date it appears that the Defendant has acted in breach of the Fund's Memorandum and Articles of Association alternatively the Fund has acted in a manner which equity would regard as contrary to good faith.

PARTICULARS OF BREACH/BREACH OF EQUITABLE OBLIGATION OF GOOD FAITH
(1) The Fund allowed redemption at a Valuation Date of 31 July 2007 of :
    (a) 35, 488 Class A Shares pursuant to a purported redemption notice dated 25 July 2007 for a value of $49,615.06;
    (b) 996 Class A shares pursuant to a purported redemption notice dated 26 July 2007 for a value of $799,588.92;
    (c) 1231 Class A shares pursuant to a purported redemption notice dated 25 July 2007 for a value of $989,205.59;
    (d) 29233.5 Class X shares pursuant to a purported redemption notice on behalf of Mr. Salem dated 25 July 2007 for a value of $9,787,375.80;
    (e) 7152,666514 Class A shares pursuant to a purported redemption notice dated 25 July 2007 for a value of $10,000,000;
    (f) 20980,849 Class shares pursuant to a purported redemption notice on behalf of investors in a Goldman Sachs fund dated 26 July 2007 for a value of $29,332,905.37.

(2) Neither the affidavit of Mr. Cook nor the affidavit of Mr. Shastri provide any explanation of how, why and when the above redemptions were allowed to take place when no proper notice had been given to the Fund in accordance with the Fund's Memorandum and Articles.

(3) Neither the affidavit of Mr. Cook nor the affidavit of Mr. Shastri identify the individuals who purported to allow the above redemptions to take place or the reason why those redemptions were allowed (notwithstanding the lack of proper notice) but a

redemption request from another (unidentified) party apparently received on 2 July 2007 by Fax was not permitted on 31 July 2007.

(4) Save as set out in sub-paragraph (1) above, neither the affidavit of Mr. Cook nor the affidavit of Mr. Shastri identify any connection (direct or indirect) between the entities who were allowed to redeem in breach of Article 10 and any individuals or persons connected with the Fund, Mr. Salem, Wharton UK, Wharton Bermuda or Mr. Shastri.

(5) The Fund has favoured the interests of some shareholders (including in particular Mr. Salem) who have been permitted to redeem (pursuant to the redemption notices identified in sub-paragraph (1) after the Fund should have suspended the determination of NAV pursuant to Article 11(6).

(6) The Fund paid out in respect of the redemption notices identified in sub-paragraph (1) above on or about 15 August 2007: the date when according to Mr. Shastri's affidavit dated 14 February 2007 the Fund's NAV was determined.

(7) The payments made by the Fund in respect of the redemption notices identified in sub-paragraph (1) above on or about 15 August 2007 were an effective cause of the Fund having to dispose of assets at a discount and its collapse shortly thereafter.

(8) The Fund failed to suspend the determination of NAV in accordance with Article 11(6) but instead allowed the redemptions set out in sub-paragraph (1) above to take place on or about 15 August 2007 even though by that time
   (a) It was not reasonably practicable for the Fund to dispose of investments comprised in the Fund or as a result of which any such disposal would be materially prejudicial to Members; and/or
   (b) A breakdown had occurred in the means normally employed in ascertaining the value of any of the investments or other assets of the Fund could not reasonably or fairly be ascertained.

(9) The Fund had calculated an NAV and allowed shareholders to redeem shares as set out in sub-paragraph (1) above even though (if those redemption requests were allowed) no true NAV could be determined pursuant to Article 11.

(10) Further or alternatively, some of the payments identified in sub-paragraph (1) above (and in particular the $29,332,905.37

16

> referred to in sub-paragraph 1(f) were made in breach of Article 10(1)(d) powers properly or at all then at least the $29,332,905.37 payment would not have been made before the Fund was suspended pursuant to Article 11(6). The Claimant reserves the right to supplement the above Particulars after proper disclosure and exchange of witness statements and (if the Court should permit) expert reports."

[32]     Summing up these pleadings, as Mr. Browne-Wilkinson Q.C. stated:

> "The case is, in short, that by making certain redemptions in breach of its Memorandum and Articles of Association as pleaded in paragraph 21 of the Amended Statement of Claim Y2K's actions were unfairly prejudicial to the interests of the Appellant, whose 'interests' for these purposes include the interests of Headstart, on whose behalf it holds the shares in Y2K."

This is an accurate summary, in my view.

[33]     On the other hand, I am also of the view that the submissions of Ms. Dohmann Q.C. reflect the erroneous approach taken by the learned judge in not assuming that the facts alleged in the amended statement of claim are true; and her submissions obviously contributed to and shaped the conclusions of the learned judge. Ms. Dohmann stated among other things that it is impossible for the Court to determine whether or not the interests of Citco are consistent with the interests of Headstart, in the absence of disclosure of any nominee agreement between them; and that since Citco bears the burden of establishing that its interest are consistent with those of Headstart, the failure to disclose that nominee agreement is fatal to its complaint under section 1841.[14] I cannot endorse these submissions in light of the law governing the application to strike out.

[34]     Had the learned judge applied the correct principles in considering the application, in my view, she should have concluded that the appellant and Headstart had pleaded reasonable grounds for bringing the claim. The learned judge therefore erred in striking out the claim brought by Headstart and Citco for the reasons that she gave, which are challenged by ground 3(b) of the appeal. I would therefore allow this ground of appeal.

---

[14] See paragraph 5 above

**Ground 3(c) - Was Reflective Loss sought in the Prayer?**

[35]     The learned judge examined at length the rule against reflective loss at paragraph 61 of her judgment as argued by learned Queen's Counsel Ms Dohmann.   The judge stated that this rule provides "that a shareholder may not bring proceedings to recover loss which is merely reflective of loss suffered by his company.   The following principles apply: (a) Four conditions can be identified for the rule to be engaged (adopting the analysis of counsel for the petitioner in **Shaker v Mohammed Al-Bedrawl** [2002] EWCA Civ 1452 at [37]:

> "1.  A claim is brought by or on behalf of a shareholder in a company;
> 2.  The claim is for damages for loss to the shareholder;
> 3.  The loss, through diminution in value of shares or in distributable assets, is reflective of loss to the company; and
> 4.  The company has its own cause of action to recover the loss.
> (b)  The paradigm situation for application of the rule is where the shareholder complains of loss of dividends payable in respect of that shareholding"

[36]     Having considered statements of Lord Bingham in **Johnson v Gore Wood & Co**[15] the learned judge continued :

> "(c)  The fact that the company omits to take action (even any action at all) in respect of the alleged wrongdoing does not justify any exception to the rule in **Johnson**, Lord Bingham said at p. 35F: "A claim will not lie by a shareholder to make good a loss which would be made good if the company's assets were replenished through action against the party responsible for the loss, even if the company, acting through its constitutional organs, has declined or failed to make good that loss." Moreover, as Lord Millet said at P. 66D-E: "[I]f the company chooses not to exercise its remedy, the loss to the shareholder is caused by the company's decision not to pursue its remedy and not by the defendant's wrongdoing"."

[37]     At paragraph 63 of her judgment the judge considered the claimant's submission that paragraph 2 of their prayer in the amended statement of claim (set out at paragraph 5 of this judgment) should not be struck out  for the following reasons:

> "1. On account of the possibility that in the future the Claimants or either of

---

[15] [2002] 2.A.C 1, 62E

them are "…likely to seek an order from the Court in due course that shareholders be entitled to bring derivative proceedings in the name of the Fund to recover the loss suffered by the Fund  as a result of the short notice transfers pleaded in paragraph 21". 2.  "The question of the appropriate relief is a matter for the Court after it has determined that there has been unfair prejudice pursuant to Section 1841 of the 2004 Act". 3.  The Court could somehow and in any event order the relief that is sought  by paragraph 2 of the Prayer under paragraph 6 thereof, which seeks "That such other Order or Orders may be made as the Court thinks fit"."

[38]    The claimants also contended that the court has the power to make any order it considers to be just and equitable including the power to grant leave to commence a derivative action given the court's broad discretion under section 1841.[16] At paragraphs 71 to 73 of her judgment the judge stated:

> "[71] In my view, for the purposes of this Application to strike out the Claim, attention must be paid to the specific subsection under which Y2K seeks to strike out under this ground, rather than looking at the court's wide discretion under section 1841 of the BCA.
> [72] Applying the law as outlined above, the relief sought from the Claimants in paragraph 2 of the prayer in the Claim is exorbitant and, if granted, would be prejudicial and unfair to Y2K.
> [73] As I see it, paragraph 2 of the Prayer in the ASC ought to be struck out."

[39]    Mr. Browne-Wilkinson Q.C. submitted that the rule against reflective loss is not engaged  by paragraph 2 of the prayer because as a matter of law, the rule does not apply to petitions of unfair prejudice under section 1841 of the 2004 Act. He relied on the authority **Atlas Ltd & Others v Brightview & Others** [17].

[40]    It was argued in **Atlas Ltd.**, on an application to strike out a petition under section 459 of the **Companies Act** 1985 alleging unfairly prejudicial conduct of a company's affairs, that the damages claimed could not be recovered because of the rule against reflective loss.  The deputy judge of the High Court Jonothan Crow noted, at paragraph 60 of his judgment:

> "By contrast, the law reports are full of cases in which petitioners have complained successfully under s. 459[18] about unfairly prejudicial conduct

---

[16] See paragraph 5 of this judgement.
[17] [2004] BCC 542 at paras. 58 - 63
[18] This is the English equivalent of section 184I of the BVI Business Companies Act 2004

which has involved a majority shareholder stripping out the company's assets.  Indeed, the director applicants cited one such case themselves, albeit for a different proposition, namely <u>Supreme Travels Ltd v Little Olympian Each-ways Ltd. Re a Company No. 005287 of 1985 (1985)</u> 1 <u>BCC 99, 586, at p. 99, 589: [1986] 1 WLR 281,</u> at p. 284 D-H, Hoffman J held in terms that a petition could properly be brought so as to recover shareholders loss that had been sustained by the company.  In <u>Saul D Harrison (1994) BCC 475,</u> at p. 489A, the same judge (then in the Court of Appeal) made the point even more clearly, by saying that one of the purposes of <u>s 459 </u>was to outflank the rule in **Foss v Harbottle**.  If the reflective loss argument was well founded, it is difficult to see how these cases could have been decided as they were 61.  Treating the matter as one of statutory interpretation, rather than authority, there is no justification for reading into <u>s459</u>  a restriction to the effect that a petitioner can only complain if the unfairly prejudicial conduct does not involve a breach by any directors of their duties to the company. Equally, as a matter of interpretation, there is no justification for imposing an absolute bar on the types of relief that the court might award at trial in relation to unfairly prejudicial conduct which happens also to involve a breach by directors of their duties to the company. Indeed, any such interpretation of <u>s459 </u>would appear to run counter to its express wording, which refers to unfair prejudice  'to the interests of its members generally' or of some part of its members ."

[41]     Consequently, the judge held that the reflective loss argument could not provide a bar to any of the relief sought in the petition and the petition cannot be struck out on the basis that it seeks to recover reflective loss.

[42]     Having regard to the law that has been reviewed and particularly the relief prescribed in section 1841(2)(a) to (h) of the **BVI Business Companies Act**, it seems to me that any decision of the court as to whether to grant the relief sought under paragraph 2 of the prayer in the amended statement of claim depends on the view that a court will take of the appellant's case, in light of the pleaded facts, and the evidence, and law.  I therefore conclude that the learned trial judge acted prematurely and unreasonably in striking out  paragraph 2 of the prayer on the application to strike out. I would therefore allow the appeal on ground 3(c). Consequently, the appeal by Citco succeeds on all grounds, and based this finding, it follows that  the grounds in the counter-notice of the respondent fail.

[43]     I would therefore allow the appeal, dismiss the counter-notice, set aside the order that the learned judge made on 4th November, 2008  and order that the matter be remitted to the court below for case management and a trial date to be set. I would also award costs to the appellant in the court below to be agreed or otherwise assessed; and costs  in this appeal, which is to be  2/3 of the costs below pursuant to CPR  65.13(b).

**Ola Mae Edwards**
Justice of Appeal

I concur.

**Hugh A. Rawlins**
Chief Justice

I concur.

**Janice George-Creque**
Justice of Appeal
