*Privy Council Appeal No 77 of 2006*

**(1) David Hague**
**(2) PricewaterhouseCoopers** *Appellants*

*v.*

**Nam Tai Electronics** *Respondent*

FROM

## THE COURT OF APPEAL OF
## BRITISH VIRGIN ISLANDS

- - - - - - - - - - - - - - - -

REASONS FOR DECISION OF THE LORDS OF THE
JUDICIAL COMMITTEE OF THE PRIVY COUNCIL, OF THE
21st January 2008, Delivered the 21st February 2008

- - - - - - - - - - - - - - - -

*Present at the hearing:-*

Lord Bingham of Cornhill
Lord Scott of Foscote
Lord Rodger of Earlsferry
Baroness Hale of Richmond
Lord Neuberger of Abbotsbury

- - - - - - - - - - - - - - - -

*[Delivered by **Lord Scott of Foscote**]*

1.   This appeal arises out of the affairs of Tele-Art Inc. ("TAI"), a company incorporated in the British Virgin Islands (the "BVI"), but that appears to have carried on business mainly in Hong Kong. The respondent, Nam Tai Electronics Inc. ("Nam Tai") is also incorporated in the BVI and is a substantial unsecured creditor of TAI. On 17 July 1998 TAI was put into insolvent liquidation by the BVI court on the petition of Nam Tai and Mr David Hague, the first appellant, was appointed liquidator. He was at the time a partner in PricewaterhouseCoopers ("PWC"), the second appellant.

[2008] UKPC 13

2.     Disputes arose, however, between Mr Hague and Nam Tai regarding Mr Hague's conduct of the liquidation of TAI and by summons dated 25 February 1999 Nam Tai applied for an order removing him from his office of liquidator.  On 4 September 2000 Benjamin J in the BVI High Court dismissed the application and an appeal by Nam Tai to the Court of Appeal also was dismissed.  A petition by Nam Tai to the Privy Council for leave to appeal against the Court of Appeal's decision was dismissed on 25 October 2001.  In the meantime, in March 2001, a second application by Nam Tai for the removal of Mr Hague as liquidator of TAI had been made.  But the prosecution of that application became unnecessary for on 24 July 2002 Mr Hague was given leave to resign as liquidator, by letter dated 3 September 2002 he sought to do so and on 17 December 2002 his resignation was accepted by the BVI court.  On 16 August 2002 he provided to the BVI court his "final account" of his conduct of the winding-up of TAI.

3.     On 27 September 2002 Nam Tai commenced in the BVI the litigation that has led to this appeal to the Privy Council.  The history described above of the relationship between Nam Tai and Mr Hague deprives the commencement by Nam Tai of fresh proceedings against Mr Hague and his firm of any element of surprise.  What is, however, a matter of some surprise is the form that the proceedings took, a form that is, in their Lordships' view, critical to the fate of this appeal.

4.     The proceedings were commenced by a Claim Form accompanied by a Statement of Claim.  The Statement of Claim contained allegations of improprieties on the part of Mr Hague in the conduct of the liquidation.  He was the first named defendant.  The Statement of Claim alleged that PWC had acted as Mr Hague's agent "in attending to matters relevant to the liquidation" (para.6) and the firm was joined as the second named defendant.  In addition, TAI (in liquidation) was joined as a third and "nominal" (para.4) defendant.  The Statement of Claim pleaded (in paras.8 and 9) that Mr Hague was under statutory duties to collect or obtain control of the assets "to which [TAI] is or appears to be entitled" and to assist the court in the application of those assets in the discharge of TAI's liabilities.  It was pleaded (in para.10) that Mr Hague owed those duties to the creditors of TAI including Nam Tai, (in para.11) that PWC, as agent of Mr Hague, owed the same statutory duties to the creditors and (in para.12) that Mr Hague and PWC owed to Nam Tai

> "…a duty of care at common law to exercise the powers conferred on [Mr Hague] by the Court within a reasonable

    time and for the benefit of the creditors of [TAI] including [Nam Tai] as a whole".

5.    Para.13 of the Statement of Claim pleaded breaches of duty by Mr Hague in failing to collect and/or take under the control or into the custody of [Mr Hague] certain assets of [TAI]". Particulars of the "certain assets" were given. Paragraph 14 pleaded a failure by Mr Hague "… to exercise in a timely manner [his] powers under the Companies Act and/or the powers granted by the Court … for the protection of [TAI's] estate and of the entitlement of its creditors including [Nam Tai]." Particulars of the alleged failures were given. Para.15 pleaded that as a result of "the Defendants' said breaches of statutory duty and/or negligence" Nam Tai had suffered loss or damage in being unable to prove or recover judgment debts due from TAI to Nam Tai exceeding $35 million. Five actions, in which, presumably, Nam Tai had obtained money judgments against TAI, were specified.

6.    Paragraphs 16 and 17 pleaded, in the alternative, a breach of trust claim against Mr Hague and PWC. The assets specified in paragraph 13 were said (in para.16) to constitute "trust property to be held by [Mr Hague] on trusts to be applied to discharge the liabilities of [TAI] to its creditors including [Nam Tai]." And para.17 said that

    "in breach of such trusts the Defendants by accepting the funding provided by Bank of China and for other reasons not known to [Nam Tai] knowingly and wilfully failed and/or neglected to pursue the collection of the said assets…"

7.    The relief claimed included an account of the assets of TAI that "the Defendants might have collected but for the wilful neglect or default of the Defendants or either of them" and an order for payment to TAI of "such sums as found due on the account". This relief, therefore, appears to be claimed by Nam Tai on behalf of TAI. In addition, damages are claimed. It is not clear from the pleading whether damages are claimed by Nam Tai for its own benefit or for the benefit of TAI.

8.    It is apparent from this pleading that the allegations of breaches of duty by Mr Hague relate to his alleged failure to collect or take control of assets of TAI. Both the breaches of duty alleged in paragraph 13 and those alleged in paragraph 14 are of that character. The breaches of trust alleged in paragraph 17, too, are of that character.

9.    At the time this action was commenced, Mr Hague was resident and working in Hong Kong. PWC were a Hong Kong firm. So Nam Tai

had to make, and did make, an application to serve the proceedings on them in Hong Kong. Service of proceedings outside the jurisdiction is provided for in Part 7 of the Civil Procedure Rules 2000 ("the CPR") of the Eastern Caribbean Supreme Court. Rule 7.3(1) permits a claim form to be served out of the jurisdiction if the proceedings "are listed in this rule." Nam Tai relied on rule 7.3(4) which deals with claims in tort and enables a claim form to be served out of the jurisdiction

> "… if a claim in tort is made and the act causing the damage was committed within the jurisdiction or the damage was sustained within the jurisdiction",

Nam Tai's application, made *ex parte* without notice to the defendants, was supported by an affidavit from Mr Seung, a director of Nam Tai, who (in para.9) repeated the pleaded complaint that Mr Hague had failed to take reasonable steps to collect the assets of TAI and said (in para.12) that, in consequence, Nam Tai had "missed the opportunity to recover a substantial, or any, dividend to date in the liquidation." There was an affidavit from Nam Tai's solicitor who said that Nam Tai "desires to commence proceedings in this matter in relation for claims of negligence and accounts" against Mr Hague and PWC. Matthew J, on 4 October 2002, granted Nam Tai's application and made an order permitting service of the proceedings on Mr Hague and PWC in Hong Kong. Service took place accordingly.

10. On 24 December 2002 Mr Hague and PWC applied under rule 7.7 of the CPR for Matthew J's order and the service on them to be set aside and, alternatively, for an order under CPR 9.7 for all subsequent proceedings in the action to be stayed. The application under rule 9.7 was made on a *forum non conveniens* ground that is not now persisted in and nothing more need be said about it. The application under rule 7.7 was on the ground that service out of the jurisdiction was not permitted under CPR Part 7 because neither the claim based on breach of statutory duty, nor the claim based on breach of trust, fell within any of the rule 7.3 cases and that the claim for breach of a common law duty was neither a claim in respect of a wrongful act within the jurisdiction, nor a claim in respect of damage within the jurisdiction and, in any event, was misconceived as a matter of law.

11. The application was dismissed by d'Auvergne J in a reserved judgment delivered on 29 October 2004. The learned judge rejected the application in so far as it was based on the *forum non conveniens* ground and went on simply to dismiss the application "on all grounds". The BVI

court, she said, was "the appropriate and natural forum for the hearing of the case".

12. The Court of Appeal, on 16 January 2006, dismissed the appellants' appeal. Gordon JA, with whose judgment Barrow and Rawlins JJA concurred, noted (in para.12) that the parties had agreed that an order to serve out of the jurisdiction could only be based on CPR Part 7.3(4). He noted (para.15) that it was common ground also that Nam Tai had to show that there was a serious issue to be tried. This, their Lordships have no doubt, was correct. CPR Part 7 gives a power to the court to permit service out of the jurisdiction in cases that fall within that Part, but plainly the power ought not to be exercised in respect of proceedings which are misconceived or for any reason are bound to fail (*Seaconsar Far East Ltd v Bank Markazi Jomhouri Islami Iran* [1994] 1 AC 438). Gordon JA recited (in paras.13 and 14) the respective arguments of the parties as to where the alleged breaches of duty by Mr Hague were committed and where the alleged consequential damage to Nam Tai had been suffered and then expressed his conclusions. In paragraph 16 he said that the allegations against Mr Hague contained in Mr Seung's affidavit would "… if proved, … raise a *prima facie* case of breach of a common law duty of care (negligence) against the appellants …". In paragraph 17 he addressed the issue "where did the breach occur" and said this

> "Mr Hague as the official liquidator appointed by the BVI court is an officer of the BVI court. The liquidation of [TAI] is in fact governed by the Companies Act … of the laws of BVI. A perusal of that Act, and in particular, Sections 126 et seq reveal … a whole regimen under which an official liquidator operates and to which he is subject. Such a regimen could only be enforced, as of right, by the BVI courts. Other courts might, as a matter of comity enforce the provisions of the BVI Companies Act but such enforcement might be refused."

And, in paragraph 18, Gordon JA concluded that

> "It seems patent that once Mr Hague accepted the appointment of official liquidator, he submitted to the jurisdiction of the BVI Court and I so hold. Service out on Mr Hague [and PWC] is therefore found to have been properly ordered …"

Mr Hague and PWC have appealed to the Board.

13.   Their Lordships are in agreement with Gordon JA that Nam Tai's complaints about Mr Hague's discharge of his duties as liquidator of TAI are complaints that, if they are to be litigated at all, ought to be litigated in the courts of the BVI, whose officer Mr Hague, as liquidator, was.  They are in agreement, also, that Mr Hague, having accepted appointment as liquidator of TAI, cannot contest the jurisdiction of the BVI courts to enquire into his conduct of the liquidation.  But it does not follow that Nam Tai's Statement of Claim discloses a serious issue to be tried so as to justify the exercise of the power to order service out.  As Mr Hacker QC, counsel for Mr Hague and PWC, has submitted, the breaches of duty alleged in the Statement of Claim are not breaches of a duty owed to individual creditors of TAI but of a duty owed to TAI in liquidation.  It is well arguable that the duties owed by a liquidator in an insolvent liquidation are owed also to the creditors as a class.  Nam Tai may be the most substantial creditor of TAI by some distance but is nonetheless only one member of the class.  A culpable failure by a liquidator to collect in or preserve or take control of the assets of a company in liquidation may diminish the value of the fund available for distribution pro rata among the creditors but is not, in their Lordships' opinion, a breach of a duty owed to each creditor as an individual.

14.   Case law establishes that that is so.  In *Kyrris v Oldham* [2004]  1 BCLC 305 Jonathan Parker LJ (with whose judgment Thorpe LJ and Dyson LJ agreed) held, at 329, that absent some special relationship an administrator of an insolvent partnership appointed under the Insolvency Act 1986 owed no common law duty of care to unsecured creditors in relation to his conduct of the administration. (See also *Peskin v Anderson* [2001] 1 BCLC 372).  There is no special relationship between Nam Tai and Mr Hague in the present case, either pleaded or referred to in the evidence, that could give rise to a common law duty of care.  The duties Mr Hague owed were the statutory duties owed by all liquidators under the statutory regimen established by the BVI Companies Act and referred to by Gordon JA.  In *Grand Gain Investment Ltd v Borrelli* [2006] HKCU 872 liquidators were sued by a creditor for an alleged failure to obtain a proper price for the sale of an asset of the company in liquidation.  Barma J, following *Kyrris v* Oldham, ordered the creditor's claim to be struck out as being "plainly and obviously unsustainable" (para.62).  In their Lordships' opinion Barma J's ruling was correct.

15.   If there is indeed substance in Nam Tai's complaints about Mr Hague's conduct of TAI's liquidation, a matter that has not been investigated in either of the courts below, Nam Tai is, or at least was, not without a remedy.  Section 191 of the BVI's Companies Act (to the same effect as section 212 of the Insolvency Act 1986 in this country) enables a

creditor to bring misfeasance proceedings against, *inter alios*, a past or present liquidator who is alleged to have been guilty of any misfeasance or breach of trust in relation to the company. On such an application the court may, if it thinks the allegations warrant investigation, examine the conduct of the respondent and order appropriate compensation to be paid to the company. If Nam Tai had brought misfeasance proceedings under section 191 against Mr Hague and PWC Gordon JA's remarks in paragraphs 17 and 18 of his juddgment would have been apt. But the present proceedings are not misfeasance proceedings under section 191. Nor can the present proceedings be justified as constituting derivative proceedings brought for the benefit of TAI. A shareholder cannot prosecute for the benefit of the company a cause of action belonging to the company unless it can be shown that the alleged wrongdoers are in control of the company and wrongly preventing the prosecution by the company of its cause of action. The present action cannot be justified as a derivative action.

16. The unfortunate fact of the matter, in their Lordships' opinion, is that Nam Tai's action as at present constituted is misconceived and discloses no cause of action vested in Nam Tai. If, instead of applying to have the order to serve out of the jurisdiction and the service on them set aside, Mr Hague and PWC had applied to have the claim struck out as disclosing no reasonable cause of action, the application should, in their Lordships' opinion, have succeeded. It follows that this was not a case in which leave to serve out should have been granted.

17. Their Lordships will, therefore, humbly advise Her Majesty that the appeal should be allowed and the order of Matthew J and the service of the proceedings on Mr Hague and PWC set aside. Nam Tai must pay the costs here and below.