ANTIGUA AND BARBUDA

IN THE HIGH COURT OF JUSTICE

CLAIM NO. ANUHCV 2005/0416

BETWEEN

OSWALD FRANCE

Claimant

And

THE ATTORNEY GENREAL OF ANTIGUA AND BARBUDA
DIRECTOR OF PUBLIC WORKS

Defendants

Appearances:
Mrs. Eleanor Clarke-Solomon for the Claimant
Ms. Bridget Nelson Senior Crown Counsel for the Defendants

……………………………………….
**2009:**  March 17, 24, 29
May 26
……………………………………

JUDGMENT

[1]   **Blenman J**: This is a claim by Mr. Oswald France against the defendants for damages for personal injuries and damage to his goods and premises (property).

[2]   **Background**

Mr. France is the owner of house and land situated at York's New Extension. The property adjoins the public road. He contends that some time around January or February 2004, the Ministry of Public Works improperly constructed a drain and curb in front of his property, on the public road adjoining his house, which caused his property to be flooded. He says that the flood waters caused severe damage to his home, plants and other fruit trees. In addition, he developed skin fungus and had to receive medical treatment. His clothes and

household articles were also damaged, as a consequence. He says that he has suffered loss and damage as a result of the negligent conduct of the Public Works officials who constructed the curb and drain in front of his home. Alternatively, he says that they have created a nuisance for which he is entitled to be compensated for the loss that he has suffered. He has therefore brought a claim in negligence against the defendants. Alternatively, he says that he has a claim in nuisance against them.

[3]     The defendants deny that the Department of Public Works negligently built the drain or curb. They also deny that the officials who constructed the curb and the drain created a nuisance. They say that they are sure that any damage that Mr. France may have suffered was of his own making. His property is constructed on low lying swamp land which has been prone to flooding and he accumulated waste water on his land which eventually flooded his land. They say that they are not liable for any loss or damage which he may have suffered.

[4]     **Issues**

The issues that arise for the Court to resolve are as follows:

(a)  Whether the Public Works Department negligently constructed the drain and curb and thereby caused damage to Mr. France's property.

(b)  Whether the Public Works officials created a nuisance by constructing the curb and drain.

(c)  Whether the defendants are liable for any loss and damage which Mr. France has suffered.

(d)  What is the measure of damages, if any, to which he is entitled?

[5]     **Evidence**

Several witnesses testified on behalf of Mr. France and the defendants, and they were cross examined. The Court has also paid regard to the agreed bundle of documents, which include reports and receipts.

[6]     **Senior Crown Counsel Ms. Bridget Nelson's submissions**

        **Negligence**

        Senior Crown Counsel Ms. Nelson said that the main issue in the claim of negligence is whether the curb and drain that were constructed by the Public Works Department were the cause of the flooding of Mr. France's land, and damage to his dwelling house with consequential loss and damage to property and personal injury, as Mr. France alleges.

[7]     Senior Crown Counsel Ms. Nelson said that in order to establish negligence, Mr. France must prove that the Public Works Department was in neglect of some duty of care which they were bound to exercise towards him. The primary complaint in Mr. France's claim is that the Public Works Department caused the water to run off the road onto his land which was below the level of the road, and the curb and drain acted as a dam preventing water from running off his land. Ms. Nelson said that having regard to the statutory powers conferred on the Director of Public Works even if he had done what Mr. France alleges, it would not constitute an act of negligence or nuisance.

[8]     Learned Senior Crown Counsel Ms. Nelson submitted that there was no duty of care owed to Mr. France not to block his access to the drain constructed by the Public Works Department for the purpose of draining the road only.

[9]     Further, Ms. Nelson learned Senior Crown Counsel said that there is no obligation on the Public Works Department to provide for or to facilitate drainage of Mr. France's land. The Public Works Department owed him no obligation to provide drainage for his land and owed him no duty of care in the construction of the curb and drain as he was not entitled to an unobstructed drainage into the public drain. Even if the curb and drain did act as a dam (which is denied) the construction did not amount to an act of negligence on the part of the Public Works Department and for the same reason did not constitute a nuisance. There could be no wrongful obstruction of his drain in the circumstances of the case at bar.

[10]    Mr. Dennis Morrison Burns, Mr. France's witness, said that in 2003, 2004 and 2005 he observed that the properties to the north, east and west of Mr. France were water logged.

3

These properties are contiguous to Mr. France's property. This means that the water was not backing up behind the curb and drain as Mr. Trevor Gonzalves, another of Mr. France's witnesses, alleged. Senior Crown Counsel Ms. Nelson submitted that the natural inference to be drawn from the state of the neighbouring properties prior to the construction of the curb and drain is that the topography – low lying mangrove type swamp land with a high water table and the geography – impermeable clay soil together with Mr. France's irrigation/drainage system designed to trap water are the factors that lead to the accumulation and retention of waste water on his property.

[11]   Senior Crown Counsel Ms. Nelson said that Mr. France told the Court that he was trapping rain water on his land in order to pump it out. There is no doubt that Mr. France was accumulating water on his property by trapping it. It is highly improbable that it was rain water that he was trapping. Mr. France's property is located within the ten mile radius of the Dunbar's Meteorological Station where the rainfall statistics and the rate of evaporation for that area are recorded. These statistics are kept by the Director of Meteorology (ag.) at the V.C. Bird International Airport. The statistics indicate that more moisture evaporated into the atmosphere than fell in the form of rain. It is more probable than not that Mr. France was trapping his waste water. This inference can be drawn from his own evidence that he used the waste water to irrigate his land for the benefit of his plants.

[12]   From Mr. France's evidence he stored water in a drum. He tendered a photograph of the drum and the pipe running from the roof of his house into the drum. Mr. France also tendered a photograph of a pipe which was partially embedded under the ground. This pipe, Mr. France alleges, drained rain water away from his premises onto the road prior to the construction of the curb and drain. It is Mr. France's contention that the curb and drain constructed in the first quarter of 2004 blocked the flow of rain water off his land by acting as a dam and resulted in flooding of his property and the retention of water for several months. Senior Crown Counsel Ms. Nelson submitted that it was not possible for the curb and drain, which were no more than a few inches high, to act as a retaining wall, keeping several feet of water on Mr. France's land. Further, had the source of water been rain, the

flooding would not have taken several months to occur. It would have occurred with the first heavy rainfall in May, followed by further heavy rainfall in July and September, 2004.

[13]     It is significant that Mr. France said that the water flowed naturally off his land into the hole that the government dug in the road in front of his property. The evidence of Mr. Damon Lewis, witness for the Public Works Department is that he was pumping water out of that hole from July 2005 to April 2006. This witness said that it was raining intermittently during this period but for the most part, it was dry. The natural inference to be drawn from the evidence of Mr. Lewis is that the source of the water flowing into the hole was not rain water but Mr. France's waste water.

[14]     There are other critical inferences to be drawn from this evidence. The water that was accumulating on Mr. France's property was his waste water and not rain water and he impeded its natural flow off his property by deliberately trapping it with concrete structures and interspersed mounds topped with tufts of grass. It follows that it was Mr. France's own deliberate act of accumulating waste water by trapping it on his land that caused the flooding and all of the consequential injury that he sustained.

[15]     Senior Crown Counsel Ms. Nelson said that in all of the circumstances, none of which were of the Public Works Department's making, the topography, the geography and Mr. France's own actions, the Public Works Department is not liable to Mr. France either in negligence or nuisance, since the curb and drain were not the operative cause of Mr. France's injury. In support of her contention, Senior Crown Counsel Ms. Nelson referred the Court to the **Wright v Lodge [1993] 4 All ER 299** where a combination of several factors, including a series of acts and omissions and the conditions in which the events took place, lead to the accident that resulted in litigation.

[16]     Based on the evidence of Mr. France's witness Mr. Lowell Jarvis, Mr. France's basement was partly below ground level. Even if Mr. France built up his land as he and his witnesses state, the impermeable clay soil was never removed and this along with the contraptions that he placed on his land to trap water resulted in the flooding of his basement and other

5

parts of his house. Ms. Nelson submitted that Mr. France was the author of his own misfortune.

[17]     Senior Crown Counsel Ms. Nelson was adamant that the Public Works Department had no duty to allow Mr. France to use its drain. Therefore, they are not liable to him if his own water did not make its way out into the drain. In support of this proposition, Ms. Nelson relies on the case of **Stephens v Anglian Water Authority [1987] 1 WLR 1381** even though the facts are different. In this case, the allegation was that the defendant had negligently extracted water from its land with the result that it caused the collapse of the plaintiff's neighbouring property. The Court of Appeal held that the defendant owed the plaintiff no duty of care as he had an unqualified right to extract water from his land regardless of the consequences, whether physical or pecuniary to his neighbour.

[18]     Senior Crown Counsel Ms. Nelson maintained that even if there was a casual connection between the presence of the curb and drain and the flooding of Mr. France's land, the Public Works Department owed no duty of care to him in the circumstances of the case at bar. The curb and drain were constructed for the sole purpose of draining rain water from the road and not for draining waste water or rain water from adjacent properties. The Public Works Department had a right to make provision for draining the road only to the exclusion of the adjacent properties, including Mr. France's, on whom lay the legal responsibility of making provision for his own drainage satisfactory to the Department Control Authority under the Land Development and Control regulations.

[19]     Senior Crown Counsel Ms. Nelson said further that it was unreasonable and in violation of the building requirements in Antigua and Barbuda for Mr. France to have a basement, which according to Mr. Lowell Jarvis, Mr. France's witness, was partly below ground level in an area such as York's New Extension.

[20]     Mr. France's witness, Mr. Trevor Gonzalves, said that he saw waste water from the adjoining premises entering Mr. France's house through underground pipes on Mr. France's property. He visited Mr. France's property in July and August 2006 when the curb

and drain had already been removed, therefore he could not have seen any such occurrence. In light of the evidence of Mr. Lowell Jarvis that the pipes connected to the inside of Mr. France's house led to the septic tank and soakaway, what Mr. Trevor Gonzalves is alleging was just not possible. In any event such a scenario was not reasonably foreseeable. The law requires people to guard against reasonable probabilities. They are not bound to guard against fantastic possibilities as Lord Dunedin said in the case of **Fardon v Harcourt- Rivington [1932] All ER 81.** In this case, the defendant's car was parked in the street, with a dog inside it. As the claimant walked past, the dog jumped up and broke a window and a splinter of glass went into the claimant's eye. The House of Lords said that since a reasonable person could not have foreseen what happened, the defendant was not liable. In similar vein, the Public Works Department could not foresee water from the adjoining property entering into Mr. France's property.

[21]     Causation

Further, even if there was prior negligence on the part of the Public Works Department in constructing the curb and drain at a level higher then Mr. France's land, Ms. Nelson said that Mr. France's deliberate conduct of accumulating his waste water on his land eclipsed the Public Works Department's act of prior negligence albeit but for that prior negligence the damage would not have occurred. Since Mr. France's own deliberate conduct of utilizing an inadequate system detrimental to himself of trapping water on his land eclipses any negligence or nuisance committed by the Public Works Department (which negligence and nuisance are denied), Mr. France's own conduct was the overwhelming cause of the alleged damage and loss that he sustained. In assessing the causative effect of Mr. France's fault, it is irrelevant whether the operative fault of Mr. France is prior, or subsequent, to the wrongdoing of the Public Works Department. This legal principle was applied in the case of **The Volute [1922] AC 129** where the vessel, **The Volute**, convoy leader changed course without signaling, endangering The Radstock, which negligently put on full steam ahead. It was held that the subsequent error on the part of the Radstock contributed to the ensuing collision and apportionment was ordered. Further and in the alternative, Ms. Nelson argued that Mr. France's own conduct of accumulating water on land by trapping it constituted a novus actus intervenes. For an application of this legal

principle Ms. Nelson relied on the case of **Mc Kew v Holland and Hannen and Cubitts (Scotland) Ltd [1969] 3 All ER 1621**, a decision of the House of Lords. The plaintiff had suffered an injured leg owing to the defendants' negligence. Yet he was denied compensation when he subsequently broke his ankle attempting, while still suffering from the effects of the first injury, to descend a steep staircase unaided. His own imprudence, his unreasonable conduct, constituted a fresh and separate cause of the second injury.

[22]   Next, Senior Crown Counsel Ms. Nelson argued that the flooding of Mr. France's property was not a sudden event and did not occur during Mr. France's absence, yet he failed to secure his personal property from water damage and the consequences of excess moisture. The injury sustained by Mr. France was avoidable harm since it was within his power to prevent damage to his personal effects. By failing to do so, he contributed to his own loss and damage and cannot receive full compensation. Ms. Nelson relied on the case of **Froom v Butcher [1976] QB 286** where the plaintiff suffered facial injuries in a road accident caused entirely by the negligence of the defendant. He was not wearing a seat belt and the impact of the collision threw him against the wind screen. His damages were reduced on the ground that his own contributory negligence in failing to wear a seat belt was a partial cause of the injury. Ms. Nelson submitted that since Mr. France's negligence was an operating cause of the injury he suffered it has to be taken into account in assessing damages.

[23]   In the case of **Mc Kew v Holland and Hannen and Cubitts (Scotland) Ltd** ibid, the defendant's negligence caused injury to the plaintiff's leg as a result of which injury the leg tended to give way under him. Some days after the accident, he went to inspect a flat and on leaving, descended a steep stair with no handrail and holding a child by the hand. He lost control of his leg, fell and fractured his ankle. His folly in exposing himself to the danger posed by the staircase made his own conduct the sole cause of his subsequent injury.

[24]   Senior Crown Counsel Ms. Nelson submitted that taken at its highest, the evidence on Mr. France's case is equally consistent with the presence or absence of negligence of the

Public Works Department and his action must therefore fail. It is significant that even after the curb and drain were removed, water was still present on the adjacent premises and drained off Mr. France's land only when subgrade pipes were installed by the Public Works Department. Ms. Nelson relied on the case of **Pickford v Imperial Chemical Industries plc [1998] 1 WLR 1189** in support of her submission. In that case, the plaintiff's claim arising from repetitive strain injury failed when it was held that the onus was on the plaintiff to prove that her condition had been caused by repetitive movements while typing. While the defendant's employer's failure to prove an alternative explanation was a factor to be taken into deciding whether the plaintiff had discharged the onus, it was not decisive as it still left open the question of what caused the injury.

[25]     **Nuisance**

Mr. France also made a claim in nuisance. He must prove that the Public Works Department's construction of the curb and drain was unreasonable. The Public Works Department has adduced evidence that the area is low-lying, predominantly clay soil with a high water table. Roads are not constructed below the level of the adjacent premises. This would defeat the purpose of the road which is meant for use in dry and rainy weather. The drain was constructed to drain the road. Ms. Nelson submitted that the construction of the road inclusive of the curb and drain at a level higher than Mr. France's land was perfectly reasonable. The Public Works Department derives its power to construct drains under The Public Works and Road Act Cap 360. Section 11 of the Act provides:

"It shall be lawful for the Surveyor from time to time as occasion shall require to make, or cause to be made in any land, whether the same shall be public property or the property of a private individual or individuals, any trench, ditch or water course for the purpose of draining any of the said highways and roads."

[26]     Senior Crown Counsel Ms. Nelson said that Mr. France alleges that the construction of the curb and drain created a nuisance. Mr. France must prove that the Public Works Department unlawfully interfered with his use or enjoyment of his land. In support of her submissions that the defendants are not liable to Mr. France in nuisance, Ms. Nelson relied on the case of **Arscott v The Coal Authority [2004] EWCA Civ 892** where the Court of

Appeal held that the occupier of land which was susceptible to flooding was not liable in nuisance if it took steps to prevent flooding and the result was damage by flood water to the adjoining property. The common enemy rule which deemed that the flood waters were a 'common enemy' was applied to this case, the facts of which were that in 1972 the owner of a large recreation area, which was susceptible to flooding deposited coal waste on the site in order to raise the level. It was accepted that the raised level of the site was a material cause of the damage. However, the claim was dismissed by the judge primarily because he held, relying on a long line of authority going back to the 18th century, that a doctrine known as the common enemy rule applied to the case. The judge articulated this rule as follows and the decision was upheld on appeal:

> "An owner or occupier of land is entitled to use or develop his land so as to prevent flood waters coming on to his land. If in times of flood waters which would have entered his land in consequence damage another's land that does not provide a cause of action in nuisance."

While the Public Works Department is disputing that the construction of the curb and drain played any role in the injury suffered by Mr. France, Ms. Nelson submitted that even if it did, no action would lie against the Public Works Department for the tort of nuisance for the reason that it acted within the powers conferred by statute.

[27]    Ms. Nelson also relied on the case of **Marcic v Thames Water Utilities [2003] 2 WLR 932** where the claimant's house had been affected by a back flow of foul water from the defendant's sewerage system between 1992 and 2000. In addition to smelling musty, the house showed signs of subsidence that made it virtually unsaleable. The House of Lords held that the Water Company was not liable to the claimant, either in nuisance or in a claim for damages under the Human Rights Act since to impose liability would be inconsistent with the drainage obligations under the governing legislation which struck a fair and proportionate balance between the interests of the individual and those of the community.

[28]    **Damages**

Ms. Nelson said that based on Mr. France's evidence the reasonable inference can be drawn that the flooding of his property was not a sudden event. It occurred over a period of

time. Yet he did not remove to safety the moveable items which he alleges were damaged. Ms. Nelson said that Mr. France was not being truthful when he said that he was out of the country and returned to find his premises flooded and his property damaged. His witness Mr. Dennis Burns told the Court that he visited Mr. France's house during the months of October, November and December 2004 and saw and spoke to Mr. France. He noticed that Mr. France's property was water logged. Senior Crown Counsel Ms. Nelson said that Mr. France gave evidence of extensive damage to his property and of contracting a fungal infection which he attributes to the accumulation of water on his property as a result of the construction of a curb and drain by the Public Works Department sometime in January, February or March 2004.

[29]   Senior Crown Counsel Ms. Nelson said that Mr. France did not specify the number of plants that he had on his property nor did he quantify the value of each plant that he claimed was destroyed. In the particulars of damage in his statement of claim, Mr. France did not include the cost of vitamins and materials and there is no prescription linking vitamins and minerals to his fungal infection. The sum of $10,000.00 that he gave as the cost of sheets, pillow cases, bags, curtains, clothing, shoes, medical books, suitcases and window shutters was ballooned out in his witness statement to $25,000.00 without any justification and cannot be allowed.

[30]   If the defendants are found to be liable, Ms. Nelson said that Mr. France is entitled only to the pecuniary losses that he suffered. For this, she referred to McGregor on Damages 15th Ed paragraph 67, which states:

> "Where the plaintiff's goods have been damaged, the basic pecuniary loss is the diminution in their value which is normally measured by the reasonable cost of repair."

[31]   Ms. Nelson argued that Mr. France is not entitled to any damages for pain and suffering for the fungal infection. He has adduced no evidence that he was either in pain or distress arising from his fungal infection.

[32]     Ms. Nelson Senior Crown Counsel argued that Mr. France was partially responsible for any loss or damage he has suffered since he trapped the water on his land, built his house on impermeable clay soil. Learned Senior Crown Counsel urged the Court to find that in the alternative, to find that Mr. France should be required to meet two thirds of the loss and the defendants should not be required to compensate him in full.

[33]     **Mrs. Eleanor Clarke-Solomon's submissions**

Learned Counsel Mrs. Clarke-Solomon urged the Court to find the following facts: In or around January or February 2004, the Public Works Department, in an effort to alleviate flooding and for humanitarian purposes, commenced the installation of drains and curbs in areas which were prone to flooding and dug up the curb and drain in front of Mr. France's property. The public works officials did not inspect Mr. France's premises before digging up the curb and drain in front of his property. None of the defendants' witnesses was present at the time the public works officials dug up the curb and drain in front of Mr. France's property. None of the defendants' witnesses visited Mr. France's property at the time the public works officials dug up the curb and drain in front of Mr. France's property which resulted in the flooding of his property. The public works officials dug up Mr. France's walkway and driveway and repaired the respective portions so dug up. Having dug up the curb and drain in front of Mr. France's property, the public works officials improperly constructed another drain and curb which were higher than Mr. France's property and which blocked the concrete drain built by Mr. France to facilitate the flow of water from his land. As a result of the improperly built curb and drain, water could not run off Mr. France's land, but settled behind the said curb and drain.

[34]     Prior to the public works officials' digging up in front of Mr. France's property, he had always drained the rain water from his property into the government drain. He never drained his waste water into government drain. Mr. France made provision for the drainage of waste water on his property. The waste water was drained to his fruit trees in his backyard. It is of great interest that when Mr. France returned from Canada in January 2005, he met his property flooded. Mr. France's property never flooded prior to 2004 and

has not flooded since 2006 when the Public Works Department rectified the curb and drain.

[35]     Prior to building his house on the land, Mr. France had placed ghaut sand on the entire land. He also place ghaut sand on the land after 2004. When ghaut sand is mixed properly, it would allow water to filter through clay soil.

[36]     **Negligence**

Learned Counsel Mrs. Clarke-Solomon said that this case concerns the common law duty of care of public authorities. The case of **Fellowes v Rother District Council [1983] All ER 513** sets out what must be proved where a claimant brings an action for damages for negligence at common law. A claimant can succeed in such a case if he could establish that (i) the act complained of was not within the limits of a discretion bona fide exercised under the relevant power; (ii) having regard to all of the circumstances (including the legislation creating the power), there was sufficient proximity between the claimant and the defendant to create a duty of care on the part of the defendant to avoid damage to the claimant of the type complained of; (iii) there was no ground for negativing, reducing or limiting that duty of care; and (iv) it was reasonably foreseeable that the act of the defendant was likely to cause damage of the type in fact suffered by the claimant by reason of such act. At page 522, paragraphs g-h, Justice Robert Goff made the following comments: "the underlying basis appears to be that citizens are entitled to expect that powers conferred on public authorities will be exercised and entitled therefore to expect that such powers will be exercised with due care, subject to being unable to ground a cause of action on an act done within the limit of a discretion bona fide exercised and to the ordinary criteria of an action in negligence being fulfilled. Such powers cannot be regarded as mere liberties or as mere authority to invade the proprietary interests of another".

[37]     On the question of proximity, the case of **Anns and Others v London Borough of Merton [1977] 2 All ER 492** is relevant. Lord Wilberforce made the following comments at page 498, paragraphs g-h: "there was sufficient relationship of proximity or neighborhood

13

between the defendants and the plaintiff such that in the reasonable contemplation of the former, carelessness on their part might be likely to cause damage to the latter of the type complained of, so that a prima facie duty of care arose." It was held that the damages recoverable include all those which foreseeably arise from the breach of the duty of care. Subject always to adequate proof of causation, those damages may include damages for personal injury and for damage to property. They may include damage to the dwelling house itself. The relevant damage to the house is physical damage, and what is recoverable is the amount of expenditure necessary to restore the dwelling to a condition in which it is no longer a danger to the health and safety of persons occupying it and possibly (depending on the circumstances) expenses arising from necessary displacement. "The existence of the statutory duties does not exclude liability at common law for negligence in the performance of the statutory duties", see Lord Wilberforce at page 503 paragraph d.

[38]   **Nuisance**

Next, learned Counsel Mrs. Clarke-Solomon said that in the case of **Osbourne Roberts v Romeo Roberts and Attorney General ANUHCV 2003/0400** the act of nuisance was the "piling up of garbage on Crown land by Romeo, thereby blocking Osbourne's waterway, which caused flooding his property. Romeo continuously blocked Osbourne's gate by leaving equipment and various vehicle parts in front of his gate. Romeo also left food and garbage on Crown land which resulted in rodents and other insects infecting the area. Fumes emitted from the garbage. Where a nuisance causes damage to property, the general rule is that the measure of damages is the difference between the money value of claimant's interest in the property before the damage and the money value of his interest after the damage.

[39]   In the case at bar, the act of nuisance is the flooding of Mr. France's land which resulted from improperly built drain and curb (continuing condition) which were in the control of the defendant.

14

[40]     The defendants' evidence shows that they were aware of the possibility of flooding; that is
         proof of the fact that it was reasonably foreseeable that if the drain and curb were not
         constructed properly by the employees from the Public Works Department, there was a
         real probability of flooding to Mr. France's property. The evidence shows that but for the
         construction of curb and drain in 2004, Mr. France's property would not have flooded. With
         the construction of an improper drain and curb, it was inevitable that flooding would cause
         damage to Mr. France's dwelling house and land. Learned Counsel Mrs. Clarke-Solomon
         submitted that the type of damage also, was reasonably foreseeable.

[41]     **Damages**

         Learned Counsel Mrs. Clarke-Solomon stated that the question for the Court to consider is
         whether the steps taken by Mr. France to mitigate his loss were recoverable. See **Court of
         Appeal Case 14 of 1994 Joseph Horsford v Bernard Jarvis**. The evidence of the
         claimant is that he built up the pathways on his property to prevent the water from further
         damaging his dwelling house (given in cross-examination), he contacted Teddy Burns in
         an effort to make the house habitable and he pumped water from underneath his house
         and from the surface of his property. Learned Counsel submitted that those steps taken by
         the claimant were reasonable to mitigate his loss.

[42]     The evidence also established that the actions of the employees from the Public Works
         Department were not within the limits of the discretion bona fide exercised and thus the
         common law duty of care clearly arises. The exercise of any discretion or power under that
         Act without responsibility "is not something encouraged by the law": Lord Salmon's
         comment on the relevant legislation in the case of **Anns**.

[43]     Mr. France made every effort to mitigate his loss and acted in his own interest to take
         reasonable care of himself and his property. See **Joseph Felix v Errol Cooper GDAHCV
         2001/0677**. He did not contribute to the negligence of the Public Works officials.

[44]     Learned Counsel Mrs. Clarke-Solomon said that generally, "the measure of damages is
         calculated in the same way, whatever the tort, but separate treatment is occasionally

necessary for particular torts on particular points." As regards damage to property, there is sometimes a difficulty in deciding between the diminution in value and the cost of reinstatement as before the commission of the tort; the amount required to effect this may be substantially greater than the amount by which the value of the property has been diminished. The appropriate test is one of reasonableness as was brought out in the case of **Lodge Holes Colliery Co. v Wednesbury Corporation [1908] AC 323**. "The test is the reasonableness of the claimant's desire to reinstate the property; this will be judged in part by the advantages to him of reinstatement in relation to the extra costs to the defendant in having to pay damages for reinstatement rather than damages calculated by the diminution of the land".

[45]    Learned Counsel Mrs. Clarke-Solomon therefore submitted that Mr. France is entitled to the following awards:

(a)    Special damages in the sum of $93,389.46, as supported by Mr. France's receipts (pages 20-31 trial bundle A, pages 177 to 200 trial bundle B, and valuation report of Lowell Jarvis at page 46 of trial bundle A);

(b)    General damages in the sum of $221,720.00 being the reinstatement value or replacement value of the house before the damage;

(c)    Interest pursuant to he Eastern Caribbean Supreme Court Act Cap 143.

(d)    Prescribed costs pursuant to CPR 2000 Part 65.

[46]    **Court's analysis and conclusions**

I have given deliberate consideration to the evidence that was led in this matter, the agreed bundle of documents, together with the helpful submissions of both learned Counsel. In all civil cases, the burden of proof is on the claimant. He who asserts must prove. The standard of proof is on the balance of probability.

[47]    I am of the considered view that for the most part, Mr. France was a credible and reliable witness. He did not seek to mislead the Court about the flooding to his property. While there is some merit in the defendant's assertion that Mr. France's home was built in a low lying area, I am satisfied that he took proper measures so as to ensure that his property

16

was not flooded. Also, I accept without any reservation that in the construction of his house, he took the necessary precautions including building up his land, and that he had placed the appropriate type of soil so as to ensure that any excess water would not accumulate on his land. The soil on his land was made permeable. He also built a drain and used pipes to drain the excess water from his land. The Court is of the view that the evidence led by the witnesses he called was very consistent and cogent, in relation to the important aspects of the issues that have been joined.

[48]    The important question for the Court to determine is what has caused the flooding of his property. Even though there may be some merit that the area in which Mr. France's house is situated is not ideal, I have absolutely no doubt that the entire situation was aggravated by the Public Works Department in January or February 2004, having improperly constructed the curb and the drain. This was not an intentional act, but that is entirely besides the point.

[49]    I have no reason to disbelieve Mr. France when he said that he used his waste water to irrigate his plants. This evidence is corroborated by other bits of evidence. It may well be true that there was a mixture of waste water and rain water on his land, but the matter does not end there. The overwhelming evidence indicated that prior to the Public Works Department constructing the curb and drain in 2004, Mr. France had no difficulty in draining his land. In fact, it was only after the construction of the drain and curb higher than his land, in 2004, that the problem developed.

[50]    **Causation**

I am far from persuaded, as learned Senior Crown Counsel Ms. Nelson would have me believe that the flooding of Mr. France's house was caused entirely due to his fault, since he constructed his house in an area that was unsuitable. The overwhelming evidence confirms that the construction of the drain and curb, by the Public Works Department in 2004, was a major cause to the flooding and damage that Mr. France suffered. There is no doubt that there were other connected loss and damage that he suffered, which will be shortly addressed. The Court is equally satisfied that initially Mr. France took steps in an

effort to remedy the situation however, he was not very successful in his efforts to alleviate the suffering and loss caused by the negligently built curb and drain.

[51]     With the greatest of respect, the case of **Wright v Lodge** ibid to which learned Senior Crown Counsel Ms. Nelson referred is clearly distinguishable from the case at bar. In that case the negligence of the driver was found not to be the operative cause. In contradistinction, in the case at bar, the negligent construction of the curb and drain, in my considered view, was the operative cause of the flooding on Mr. France's land. It is inconceivable how in the face of the compelling and cogent evidence, it can be contended that Mr. France was the author of his own misfortune.

[52]     As stated earlier, while the topography of Mr. France's land may not have been ideal and the Court accepts that it is located in an area that is prone to flooding and that he accumulated waste water on his land, there could be no more denying, in view of all of the direct and circumstantial evidence, that it was the improper construction of the curb and drain that was the substantial cause of the flooding by rain water and waste water, both from his land and neighbouring houses. The Court is fortified in this view, having examined the evidence of the witnesses who testified for the defence and more particularly those who testified on behalf of Mr. France.

[53]     In passing and for what it is worth, it is interesting that the defendants have not seen it fit to call, as one of their several witnesses, any of the persons who were actually involved in constructing the curb and drain. They may well have been able to provide some credible and reliable evidence in relation to what had transpired. The witnesses who testified for the defendants were not involved in the construction of the "faulty" curb and drain in 2004. Rather, they were for the most part involved in the remedial works. The defendants' witnesses, while they attempted to assist the defendants' case, they quite properly did not attempt to mislead the Court. With the greatest of respect, where there was any conflict between their evidence and Mr. France's evidence, I accept his evidence.

[54]     **Negligence**

This brings me now to consider whether, in view of the totality of circumstances, the defendants are liable to Mr. France on the basis of the tort of negligence. There is no principle of law that a public authority cannot be found liable for the negligence of its employees on the mere basis that the employees were carrying out a statutory duty. There are several authorities, if any is needed for the above position. Indeed, it is the law that if the authorised act is performed carelessly whereby unnecessary damage is caused a common law action will lie. This is because the act would, but for the statute, be actionable at common law and the defence which the statute provides extends only to the careful performance of the act. The statute only authorises invasion of private rights to the extent that the statutory powers are exercised with reasonable and proper regard for the holders of such rights. See **X v Berfordshire County Council [1995] UKHL 9**.

[55]     Also, Lord Reid said in **Dorset Yacht Co. Ltd v Home Office [1970] AC 1004 at 1030**:

"But there is good authority for the proposition that if a person performs a statutory duty carelessly so that he causes damage to a member of the public which would not have happened if he had performed his duty property he may be liable."

[56]     I am not of the view that the gravamen of Mr. France's complaint has anything to do with section 11 of the Public Works and Road Act. In fact, he is not taking issue with the ability of the Public Works Department to carry out road works or to construct or dig up trenches, rather his complaint is that the officials in carrying out their public duty did so negligently. This negligence resulted in his suffering loss and damage. Further, his major complaint is that the Public Works Department, in carrying out its statutory duty, acted in breach of the common law duty of care that it owed to him. Of necessity therefore, the Court has to determine whether the principles referred to above are applicable to the case at bar.

[57]     Lord Lane in **X v Berfordshire County Council** ibid said that:

"where a statute empowers or ordains the doing of an act which, if done with due care, will cause no harm to a third party but which, if done carelessly will be likely to cause harm, and the circumstances also satisfy the other two requirements in **Caparo**

**Industries Plc v Dickman [1990] 2 AC** namely that the relationship between the plaintiff and defendant is sufficiently proximate and that it would be just and reasonable to impose a duty of care, an action will lie at common law. But it will lie simply because careless performance of the act amounts to common law negligence and not because the act is performed under statutory authority."

[58]    Also, in **Capital and Counties Plc v Hampshire County Council [1997] 3 WLR 331**, the defendants had respectively left  the scene of an explosion without checking whether burning material had fallen on to neighbouring premises and failed to secure an adequate supply of water. The Court of Appeal held that the brigades were under no common law duty of care to respond effectively to a call for help and were liable only for making the situation worst.

[59]    Applying the principles in **X v Berfordshire County Council** ibid  and  **Dorset  Yacht  Co Ltd v Home Office** ibid and **Caparo Industries Plc v Dickman** ibid to the case at bar, the Court has no doubt that the Public Works employees were negligent in constructing the curb and drain in 2004 and they owed a duty of care to Mr. France. They breached their duty of care and caused him damage and loss.

[60]    **Nuisance**

I come now to address the alternative claim in nuisance. This is some act or omission with a person's use or enjoyment of land or some right over or in connection with it. Nuisance can take one of three forms: encroachment on a neighbour's land, direct physical injury to the land or interference with the enjoyment of the land. A nuisance is said to exist where the defendant's acts, even on its own land, interfered with the claimant's land. It is clear that the Public Works officials, by improperly constructing the drain and curb which caused the accumulation of water in it and also prevented the water on Mr. France's land from draining, created a nuisance. There is no prerequisite that the offending act must be unlawful in order to constitute a nuisance. On a review of the evidence, there is no doubt that the damage and loss that Mr. France suffered is far from a trifling inconvenience. The tort of nuisance is concerned with providing a remedy to a claimant who has suffered the

diminution in the value of his land as a consequence of the defendant's acts or omission (which ever is appropriate).

[61]     It has long been recognised that many nuisances are caused by public authorities acting under statutory powers. As a general rule, work causing substantial interference with neighbouring property will not normally be intra vires the statute unless that interference must arise even though the work is carried out with reasonable care and with approved techniques. See **Winfield and Jolowicz – Law of Torts** Fifteenth Edition, page 526.

[62]     Critical to the issue of liability in private nuisance is the question whether the damage done was foreseeable. See **Overseas Tank ship (UK) Ltd v Mieler Steamship Co PTY (The Wagon Mound) No.2 (1967) 1AC 617.**

[63]     The question whether the acts complained of amount to a nuisance is a question of fact. See **Sturges v Bridgman (1879) 11ChD 852** L J Thesiger said:

> "Whether anything is a nuisance or not is a question to be determined not merely by abstract consideration of the thing itself, but in reference to its circumstances."

[64]     The tort of nuisance is a tort directed against the claimant's enjoyment of his rights over land and an action of private nuisance. The construction of the curb and drain by the public works officials with its lack of any proper contrivance for preventing it from impeding the run off of water.

[65]     There is no doubt, applying the above principles and based on the totality of circumstances, that the officials of the Public Works Department created a nuisance. Applying the well known principles of **Caparo Industries Plc v Dickman** ibid in the case at bar, it is clear that it is fair and reasonable for the common law to step in and allow an action in the tort of negligence in. Alternatively, the Court is of the view that Mr. France clearly has a cause of action against the defendants on the basis of nuisance.

[66]     **Damages**

The Court now addresses the measure of damages to which Mr. France is entitled. It is a basic principle that a claimant who has suffered loss or damage must be compensated for the losses that were foreseeable and unavoidable. The Court would approach the matter on the basis that Mr. France has succeeded in establishing his claim against the defendants in negligence and alternatively in nuisance. It is true that the general rule is that the claimant would be entitled to pecuniary losses that he has suffered. This is however not limited only to the losses suffered as a result of the diminution in the value of the property, if any, as urged by learned Senior Crown Counsel Ms. Nelson.

[67]     **Mitigation of damages**

McGregor, The Law on Damages Seventh Edition Chapter 7 at page 280 states that mitigation of damages has three different rules. One of the rules is that the plaintiff must take all reasonable steps to mitigate the loss to him consequent upon the defendant's wrong and cannot recover damages for any such loss which he could have avoided but has failed through unreasonable action or inaction, to avoid. Put shortly, the plaintiff cannot recover for avoidable loss.

[68]     We are here concerned with that first rule since learned Senior Crown Counsel Ms. Nelson has argued that Mr. France ought to have taken steps to avoid his losses. The onus of proof on the issue of mitigation is on the defendants. If they fail to show that the plaintiff ought reasonably to have taken certain mitigating steps, then the normal measure will apply. See **Garnac Grain Co v Faure & Fairclough [1968] AC 1130**.

[69]     In several cases the conduct of the plaintiff and the circumstances of the case can affect the measure of damages which he is able to recover. It is the law that a person who has suffered a wrong is obliged to take reasonable steps to avoid loss which could be prevented; failure to do would result in him being unable to claim for the part of the damage which occurred during the plaintiff's neglect. See **British Westinghouse Co v Underground Ry [1912] AC 673**.

[70]     Senior Crown Counsel Ms. Nelson urged the Court to find that Mr. France knew that the building was flooded, yet he failed to remove his personal belongings from the building. Apart from this bald statement, the defendants have led no evidence or circumstances from which the Court can properly infer that he had available to him other accommodation to house his personal items. The defendants have not successfully challenged Mr. France's evidence that he was out of jurisdiction when the flooding occurred and the Court has no reason to disbelieve him when he said that he left Antigua on 20th November 2004 and returned in January 2005.

[71]     **Quantum of Damages**

I come now to determine the measure of damages to award Mr. France. It is noteworthy that the defendant did not appear to challenge most of the damages that Mr. France has claimed by questioning him during cross examination. It was only in the closing arguments that issue was taken with his claim for the replacement trees; the estimated costs of the sheets, pillow cases, bags, curtains, suit cases. Also of significance is that during the cross examination, the challenge was in relation to one set of medical tests and the monies claimed for vitamins. The defendants instead were content to launch most of their attack on the issue of whether they were liable at all. Accordingly, the Court sees no reason in the absence of any challenge to most of the items of damages and having reviewed the amounts claimed and examined the receipts (that were not challenged) to disallow the reasonable sums claimed by Mr. France.

[72]     **The Property**

It is usual for the Court to hold that the usual measure of damages in the case of damage to property is the diminution in the value of the property. Alternatively, the Court has awarded the claimant whose property has been damaged, the cost of reinstating the house. In the case at bar, in his claim, Mr. Oliveira had claimed $31,000.00 which represents the estimated cost of rectifying the house as the measure of damage for the damage to the property. It also reflected the diminution in the value of his house. For some unknown reason, even though that cost was placed on the Engineer's report, by the end of the case and with no evidentiary basis, he claimed the sum of $222,720 which represents

the cost of his property before it was damaged. The Court sees no reason to award him the replacement cost, as suddenly urged on the Court by learned Counsel Mrs. Clarke-Solomon in her closing arguments. Mr. France's claim was prosecuted on the basis that he was claiming as the measure of damages, the diminution in the value of the property and there is no basis for the Court to award him the cost of acquiring a new property. In this regard, the Court accepts the submissions of Senior Crown Counsel Ms. Nelson and awards Mr. France the sum of $31,000.00.

[73]   **Trees and Plants**

There is uncontroverted evidence that Mr. France's trees and plants were damaged as a consequence of the flooding. Several witness corroborated his evidence. While the defendants did not strenuously challenge that his plants and trees were destroyed, they take issue with the amount claimed. The law is clear that the Court does not necessarily have to accept a witness' evidence simply because no other evidence has been led to contradict it. There is no doubt that he has suffered loss and damage as a result of the destruction of the plants and trees. It was open to the defendants to cross examine him to test the veracity of the extent of his claim. This they did not do. Be that as it may, it seems to be that the sum of $10,000.00 is more reasonable for this item and I so award it. The sum that Mr. France has claimed seems to be on the high side.

[74]   **Rental of sump pump**

The Court is unable to appreciate the basis on which the defendants take issue with Mr. France in relation to the rental of the sump pump. Mr. France has provided evidence to the Court of his diverse efforts to rid his property of the flood waters which include the rental of the pump and the purchase of land fill material. All of this was well before the Public Works Department eventually remedied the problem that the workers had created in 2006.

[75]   Not only did Mr. France give that unchallenged evidence, but he provided the Court with documentary proof in the form of receipts for the rental of the sump pump and the purchase of the land fill material. In fact, the evidence in that regard was not questioned. It seems to the Court that in all of the circumstances, the sums he claims for the expenditure

that he has incurred in that regard is justified. He had an obligation to attempt to minimize his losses. This he did by hiring the sump pump to move the flood waters from his land and since he incurred expenses in so doing, the law enables him to recover the expenses that have been reasonably incurred. See **Moore v D.E.R [1971] 1 WLR 1476**.

[76]   **Cameras and Binoculars**

The sum claimed for the cameras and binoculars were not challenged and appear to be reasonable. The Court will therefore allow the sums claimed. With respect, and as stated earlier, in the absence of any evidence in support, the Court does not for one minute accept the defendants' contention that Mr. France left his personal items in the house with the knowledge that it was flooding, or that he could have taken steps to avoid those losses but he didn't.

[77]   **Fence**

The Court has no doubt that the fence was damages by the flood waters. The Court accepts the estimated cost of repairing the damaged fence as reasonable and will award the unchallenged sum of $800.00

[78]   **Sheets, Pillows**

Having reviewed the evidence and the pleadings, the Court is of the respectful opinion that Mr. France should only be allowed the sum of $10,000.00 for the loss and damage to the above items. He has failed to provide the Court, as stated by learned Senior Crown Counsel Ms. Nelson, with any basis for the inflation of his claim from the $10,000.00 in his statement of claim to $25,000.00 in his witness statement. The Court accepts that the loss that he has suffered under this head is $10,000.00.

[79]   **Pain and suffering**

Mr. France has claimed damages for pain and suffering due to the fungal infection he sustained. There is reliable evidence which is supported by medical reports that Mr. France suffered fungal infection and had to be treated by the doctor. It is evident that he is

entitled to recover damages for the pain, suffering and discomfort he endured. The Court awards the sum of $5,000.00 for pain and suffering.

[80]    **Purchase of fill/Spread of fill**

The Court is satisfied, based on the uncontroverted evidence, that Mr. France incurred the sum of $2,100.00 for the spread of fill and that he purchased the fill for the sum of $4,800.00. The bills presented substantiated the sums awarded. He is entitled to recover the sum expended.

[81]    **Cost of material for draining water**

Here again there was no serious challenge to Mr. France's evidence that he had incurred loss in the sum of $8,000.00 for the items that he stored in his house and which were damaged.

[82]    **Damages**

Accordingly, the Court is of the considered view that the following damages either have been incurred or are just and reasonable and so award them. Special damages allowed are as follows:

| | |
|---|---|
| Medical Treatment | $80.00 |
| Prescription | $10.15 |
| Cost of Infrared Camera | $1107.00 |
| Cannon Camera | $540.00 |
| Binoculars | $675.00 |
| Sheets Pillow Cases etc. | $10,000.00 |
| Cost of Material for draining water | $8247.31 |
| Rental of sump pump | $3,600.00 |
| Purchase of fill | $4,800.00 |
| Spread of fill | $2,100.00 |
| Pest Control | $430.00 |
| Replacement of Fruit Trees | $10,000.00 |
| Cost of damaged materials | $8,000.00 |

| | |
|---|---|
| Estimated cost of repairing damage to house | $31,000.00 |
| Damaged fence | $800.00 |

[83]     **General damages**

The sum of $5,000.00 is awarded for pain and suffering. The total sum awarded to Mr. France is $86,389.46

[84]     **Conclusion**

In view of the foregoing, there will be judgment in favour of Mr. Oswald France against the Attorney General of Antigua and Barbuda and the Director of Public Works. The Court orders that the defendants do pay Mr. Oswald France damages in the sum of $86,389.46, together with prescribed costs, unless otherwise agreed.

[85]     Interests are also awarded in accordance with the Eastern Caribbean Supreme Court Act.

[86]     The Court thanks all learned Counsel for their assistance.

**Louise Esther Blenman**

High Court Judge

Antigua and Barbuda