UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

                                     :

IN RE KINGATE MANAGEMENT        :     Master File No. 09 Civ. 5386
LIMITED LITIGATION                              (DAB)
                                       :

This Document Relates To: All Actions
                                       :

                                       :

------------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## CITI HEDGE FUND SERVICES LTD.'S MOTION TO DISMISS
## THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2000

*Attorneys for Defendant Citi Hedge Fund
Services Ltd.*

Of Counsel:

Carmine D. Boccuzzi
David Y. Livshiz
Elliott C. Mogul

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 3

    A.    Plaintiffs and the Kingate Funds .................................................................. 3

    B.    Plaintiffs' Allegations ................................................................................. 4

ARGUMENT ..................................................................................................................... 7

POINT I: PLAINTIFFS' SECTION 10(B) CLAIM SHOULD BE
DISMISSED (COUNT 32) ................................................................................................ 7

    A.    Plaintiffs Have Not Pled Facts Creating A "Strong Inference"
         Of Scienter ................................................................................................... 7

    B.    Plaintiffs Fail To Adequately Plead Reliance ............................................... 10

POINT II: PLAINTIFFS' COMMON LAW CLAIMS ARE PREEMPTED
BY FEDERAL AND STATE LAW (COUNTS 21–28) ...................................................... 11

    A.    Plaintiffs' Common Law Claims Are Preempted By SLUSA ....................... 11

    B.    Plaintiffs' Common Law Claims Are Preempted By The Martin Act ........... 13

POINT III: PLAINTIFFS LACK STANDING TO ASSERT COMMON LAW
CLAIMS (COUNTS 21–28) .............................................................................................. 14

POINT IV: PLAINTIFFS' COMMON LAW TORT CLAIMS OTHERWISE
FAIL TO STATE A CLAIM (COUNTS 21–24) ................................................................ 16

    A.    Plaintiffs Fail To State A Claim For Breach Of
         Fiduciary Duty (Count 21) ........................................................................... 17

         1.    Plaintiffs Have Failed To State A Breach Of Fiduciary Duty
               Claim Under BVI Law ........................................................................ 17

         2.    Plaintiffs Have Failed To State A Breach of Fiduciary Duty
               Claim Under New York Law ............................................................... 18

    B.    Plaintiffs Fail To State A Negligence-Based Claim (Counts 22–24) .............. 20

         1.    Plaintiffs Fail To State A Claim For Gross Negligence .................................. 20

        2.      Negligence and Negligent Misrepresentation Claims Fail ................      21

POINT V: PLAINTIFFS FAIL TO STATE A CLAIM FOR AIDING AND
ABETTING (COUNTS 26–27) ............................................................................................................      23

POINT VI: THE THIRD-PARTY BENEFICIARY AND UNJUST ENRICHMENT
CLAIMS FAIL (COUNTS 25, 28)........................................................................................................      24

CONCLUSION ........................................................................................................................................      25

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

15 U.S.C. §§ 77r(b)(1)(A) (1998) ...................................................................................... 12

15 U.S.C. §§ 77r(b)(1) (B) (1998) .................................................................................... 12

15 U.S.C. § 78bb(f)(1)(A) (2000) ..................................................................................... 11

15 U.S.C. § 78bb(f)(5)(B) (2000) ..................................................................................... 12

15 U.S.C. § 78u-4(b)(1) ...................................................................................................... 7

15 U.S.C. § 78u-4(b)(2) ...................................................................................................... 7

15 U.S.C. § 78u-4(b)(3)(A) ................................................................................................ 8

N.Y. Gen. Bus. Law § 352 et seq. ..................................................................................... 13

**Cases**

ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.,
957 F. Supp. 1308 (S.D.N.Y. 1997) ................................................................................. 17

Abrams v. Donati,
66 N.Y.2d 951 (N.Y. 1985) ........................................................................................... 15-16

Abu Dhabi Commercial Bank v. Morgan Stanley & Co.,
651 F. Supp. 2d 155 (S.D.N.Y. 2009) ......................................................................... 14, 25

Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC,
637 F. Supp. 2d 185 (S.D.N.Y. 2009) .............................................................................. 25

Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009) ............................................................................................... passim

Ashland Inc. v. Morgan Stanley & Co., Inc.,
No. 09 Civ. 5415, 2010 WL 1253932 (S.D.N.Y. Mar. 30, 2010) ..................................... 14

AT&T Co. v. City of N.Y.,
83 F.3d 549 (2d Cir. 1996) .......................................................................................... 20-21

Baker v. Andover Assocs. Mgmt. Corp.,
No. 6179/09 (N.Y. Sup. Ct. Nov. 30, 2009) .................................................................... 21

**Page(s)**

Backus v. Conn. Cmty. Bank, N.A.,
No. 9-CV-1256, 2009 WL 5184360 (D. Conn. Dec. 23, 2009)............................................................. 12-13

Baltus-Michaelson v. Credit Suisse First Boston, LLC,
116 F. App'x 308 (2d Cir. 2004)................................................................................................................ 16

Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.,
No. 03 Civ. 153, 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003)........................................................... 22

Barron v. Igolnikov,
No. 09 Civ. 4471, 2010 WL 882890 (S.D.N.Y. Mar. 10, 2010)............................................................. 12-13

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ....................................................................................................................................... 7

Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.,
448 F.3d 573 (2d Cir. 2006)....................................................................................................................... 25

Bogart v. Isr. Aerospace Indus. Ltd.,
No. 09 Civ. 4783, 2010 WL 517582 (S.D.N.Y. Feb. 5, 2010)................................................................. 16

Bruhl v. Kingate Mgmt. Ltd.,
No. 601510/09, (N.Y. Sup. Ct. Jan. 25, 2010) ......................................................................................... 16

Champion Home Builders Co. v. ADT Sec. Servs.,
179 F. Supp. 2d 16 (N.D.N.Y 2001).......................................................................................................... 22

Cinicolo v. Morgan Stanley Dean Witter & Co.,
No. 01 Civ. 6940, 2004 WL 2848542 (S.D.N.Y. Dec. 9, 2004)............................................................. 12

DeBlasio v. Merrill Lynch & Co.,
No. 07 Civ 318, 2009 WL 2242605 (S.D.N.Y. July 27, 2009)................................................................ 17, 19

Druck Corp. v. Macro Fund Ltd.,
290 F. App'x 441 (2d Cir. 2008)................................................................................................................ 16

Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.,
76 N.Y.2d 220 (1990) ................................................................................................................................. 22

ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase,
553 F.3d 187 (2d Cir. 2009) ....................................................................................................................... 7-8

Elmira Teachers' Ass'n v. Elmira City Sch. Dist.,
861 N.Y.S.2d 195 (3d Dep't 2008)........................................................................................................... 22-23

Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin.,
414 F.3d 325 (2d Cir. 2005) ....................................................................................................................... 24-25

Page(s)

Hart v. Gen. Motors Corp.,
129 A.D.2d 179 (1st Dep't 1987)..................................................................................................... 16

In re Bayou Hedge Fund Litig.,
534 F. Supp. 2d 405 (S.D.N.Y. 2007) ............................................................................................ 13-14

In re Citigroup Auction Rate Sec. Litig.,
No. 09 Civ. 3095, 2009 WL 2914370 (S.D.N.Y. Sept. 11, 2009) ......................................... 10

In re Livent, Inc. Noteholders Sec. Litig.,
151 F. Supp. 2d 371 (S.D.N.Y. 2001).............................................................................................. 12

In re Tremont Secs. Law, State Law & Ins. Litig.
No. 09 MD 2052, 2010 WL 1257580 (S.D.N.Y. Mar. 30, 2010)............................................. 10

In re WorldCom Inc. ERISA Litig.,
263 F. Supp. 2d 745 (S.D.N.Y. 2003).............................................................................................. 11-12

Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.,
157 F.3d 933 (2d Cir. 1998) ............................................................................................................... 23

Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Inv. Ltd.,
No. 00 Civ. 9214, 2003 WL 21263544 (S.D.N.Y. Mar. 31, 2003) ...................................... 19

Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Inv. Ltd.,
No. 00 Civ. 9214, 2007 WL 2948115 (S.D.N.Y. Oct. 3, 2007)............................................. 18

Kolbeck v. LIT Am. Inc.,
923 F. Supp. 557 (S.D.N.Y. 1996) ................................................................................................... 19

Lago v. Krollage,
78 N.Y.2d 95 (1991)............................................................................................................................... 22

Lerner v. Fleet Bank, N.A.,
459 F.3d 273 (2d Cir. 2006) ............................................................................................................... 24

Levinson v. PSCC Servs., Inc.,
No. 09 Civ 00269, 2009 WL 5184363 (D. Conn. Dec. 23, 2009)......................................... 12-13

Merrill Lynch, Pierce, Fenner & Smith v. Dabit,
547 U.S. 71 (2006).................................................................................................................................. 11,13

Missel v. County of Monroe,
351 F. App'x 543 (2d Cir. 2009)........................................................................................................ 7

MLSMK Inv. Co. v. JP Morgan Chase & Co.,
No. 09 Civ. 4049 (S.D.N.Y. July 15, 2010) ................................................................................. 9

**Page(s)**

Morin v. Trupin,
711 F. Supp. 97 (S.D.N.Y. 1989)...................................................................................................... 24

Morrison v. Nat'l Austl. Bank Ltd.,
No. 08-1191, 2010 WL 2518523 (June 24, 2010) ................................................................ 11

Musalli Factory for Gold & Jewelry v. JP Morgan Chase Bank, N.A.,
261 F.R.D. 13 (S.D.N.Y. 2009) ........................................................................................... 19

Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP,
603 F.3d 144 (2d Cir. 2010) ................................................................................................... 8

Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,
592 F. Supp. 2d 608 (S.D.N.Y. 2009).................................................................................... 11

Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,
446 F. Supp. 2d 163 (S.D.N.Y. 2006)............................................................................ 19, 23-24

Primavera Familienstiftung v. Askin,
No. 95 Civ. 8905, 1996 WL 494904 (S.D.N.Y. Aug. 30, 1996)........................................... 16

Retty Fin. v. Morgan Stanley Dean Witter & Co.,
293 A.D.2d 341 (1st Dep't 2002)........................................................................................... 21

Rombach v. Chang,
355 F.3d 164 (2d Cir. 2004) .................................................................................................... 7

Rosner v. Bank of China,
349 F. App'x 637 (2d Cir. 2009)............................................................................................ 24

Rothman v. Gregor,
220 F.3d 81 (2d Cir. 2000)...................................................................................................... 5

S. Cherry Street, LLC v. Hennessee Group LLC,
573 F.3d 98 (2d Cir. 2009)................................................................................................... 8, 10

San Diego County Employees Ret. Assoc. v. Maounis,
No. 07 Civ. 2618 (DAB), 2010 WL 1010012 (S.D.N.Y. Mar. 15, 2010) ........................... 16-17

San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc.,
75 F.3d 801 (2d Cir. 1996)...................................................................................................... 7

SEC v. Cohmad Sec. Corp.,
No. 09 Civ. 5680, 2010 WL 363844 (S.D.N.Y. Feb. 2, 2010)............................................. passim

Sedona Corp. v. Ladenburg Thalmann & Co.,
No. 03 Civ. 3120, 2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005) ......................................... 14

**Page(s)**

Seghers v. Thompson,
No. 06 Civ. 308, 2006 WL 2807203 (S.D.N.Y. Sept. 27, 2006)............................................................. 14-15

Sharp Int'l Corp. v. State St. Bank & Trust Co.,
403 F.3d 43 (2d Cir. 2005)...................................................................................................................... 23

Stephenson v. Citco
No. 09 Civ. 00716, 2010 WL 1244007 (S.D.N.Y. Mar. 31, 2010) ...................................... 25

Stevelman v. Alias Research, Inc.,
174 F.3d 79 (2d Cir. 1999)....................................................................................................................... 9

Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,
552 U.S. 148 (2008) ................................................................................................................................ 10

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
551 U.S. 308 (2007) ............................................................................................................................. 7-8, 10

Terrydale Liquidating Trust v. Barness,
611 F. Supp. 1006 (S.D.N.Y. 1984) ....................................................................................................... 23

Tevdorachvili v. Chase Manhattan Bank,
103 F. Supp. 2d 632 (E.D.N.Y. 2000)..................................................................................................... 21

Thermal Imaging, Inc. v. Sandgrain Sec., Inc.,
158 F. Supp. 2d 335 (S.D.N.Y. 2001)..................................................................................................... 18

Zeno Invs., LLC v. Merrill Lynch & Co.,
No. 600121/08, 2009 NY Slip Op. 30178 (N.Y. Sup. Ct. Jan. 21, 2009) ............................................ 16

**Other Authorities**

21B Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure:
Evidence § 5106.4 (1st ed. 1997 & Supp. 2007) .................................................................. 4

Citi Hedge Fund Services Ltd. ("Citi Hedge"), respectfully submits this memorandum in support of its motion pursuant to FRCP 8(a), 12(b)(1), 12(b)(6) and 9(b) to dismiss with prejudice the Amended Consolidated Class Action Complaint, dated May 18, 2010 (the "Complaint" or "AC").

## PRELIMINARY STATEMENT

Plaintiffs are sophisticated foreign investors who invested in two British Virgin Islands ("BVI") registered funds, Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. (the "Funds"), which were among the numerous "feeder funds" that, as disclosed to the plaintiffs, invested substantially all of their assets with Bernard L. Madoff Investment Securities LLC ("Madoff" or "BMIS"). Madoff stole the Funds' assets. Plaintiffs now bring a 32-count Complaint against eighteen defendants seeking to hold all of them responsible for the Funds' losses. Citi Hedge, which served the ministerial role of administrator to the Funds, makes the present motion to dismiss all of the purported claims against it.

The limited obligations owed by Citi Hedge to the Funds are set forth in the Agreements (as defined below) referenced in, and attached to, the Complaint. Citi Hedge performed ministerial functions such as keeping the Funds' share registers, processing subscription and redemption requests and computing the Funds' net asset value ("NAV"). Fulfilling "back office," clerical functions, Citi Hedge had no discretion with respect to Fund assets or decision-making. The Agreements make clear that Citi Hedge did not take on broad duties to monitor the Funds' chosen managers or to take undefined steps that would have somehow unearthed the Madoff fraud prior to that fraud's disclosure in December 2008. This Court has noted that for nearly two decades, Madoff deceived regulators, financial institutions and individuals, and nothing alleged in the Complaint makes plausible any claim that Citi Hedge somehow violated duties that it purportedly owed to plaintiffs by failing to detect that fraud.

Plaintiffs assert nine claims against Citi Hedge – one for violation of Section 10(b) of the Securities Exchange Act of 1934 and eight common law claims. Each must be dismissed.

Plaintiffs' Section 10(b) claim fails to satisfy the requirements set out in the statute and controlling case law. As an initial matter, Citi Hedge is not chargeable with purported misstatements contained in the Funds' private offering documents. As for the NAV statements, plaintiffs fail to allege facts sufficient to make plausible the claim that Citi Hedge acted with the requisite level of scienter. Plaintiffs' claim is not that Citi Hedge knew that Madoff was running the largest Ponzi scheme in history, but that had Citi Hedge fulfilled some undefined due diligence steps (nowhere imposed on it by any agreement), then it would have known of the fraud. This on its face fails to raise a strong inference of scienter. Even were plaintiffs able to plead scienter (they are not), they do not plead that they relied on any NAV statement (sent to existing Fund shareholders) at the time they purchased shares in the Funds.

As for plaintiffs' common law claims, all are preempted by the broad preemption provision of the Securities Litigation Uniform Standard Act ("SLUSA"). Plaintiffs allege misrepresentations coinciding with transactions in covered securities – i.e., securities that trade on a national exchange, such as the securities purportedly traded by Madoff for the benefit of the Funds – and so SLUSA requires the dismissal of all common law claims. Federal courts analyzing SLUSA preemption in similar factual scenarios (including three cases involving other Madoff feeder funds) have reached this exact conclusion. Preemption is also consistent with and required by New York's Martin Act as to the non-fraud based common law claims (to the extent that the Court concludes that New York, and not BVI, law applies).

Even if the Court does not hold the common law claims preempted by these statutory regimes, they must be dismissed for failure to state a claim, under BVI or New York law:

First, plaintiffs are all shareholders in BVI hedge funds. Accordingly, BVI law determines whether the claims that they seek to assert are theirs, or are in fact corporate claims that plaintiffs have no standing to assert. It is black letter BVI law that plaintiffs may not prosecute claims for alleged loss in the value of their shares – that is, in fact, a loss "reflective" or "derivative" of what is a purported injury to the

2

corporation. Plaintiffs' claims for breach of fiduciary duty, negligence, gross negligence, and aiding and

abetting accordingly all must be dismissed. Plaintiffs' purported contract claims fail as well: they are on

their face corporate claims, because the corporate entities, and not plaintiffs, were Citi Hedge's

counterparties on the various Agreements.

Second, plaintiffs' claim for breach of fiduciary duty also fails because plaintiffs are unable

to allege either the existence of a fiduciary relationship or that, in fulfilling its ministerial obligations to the

Funds, Citi Hedge breached any duties it may have owed to the Funds' investors, with whom it had no

direct business relationship.

Third, no tort of gross negligence exists under BVI law and plaintiffs cannot allege conduct

sufficient to make out a claim of gross negligence under New York law. Moreover, plaintiffs' negligence

and negligent misrepresentation claims fail because Citi Hedge assumed no duty to protect plaintiffs from

Madoff's fraud, and the creation of any duty in negligence here would be otherwise inconsistent with the

Agreements, including the exculpatory clauses.

Finally, as with the plaintiffs' federal securities claim, the claims of aiding and abetting

must be dismissed, because plaintiffs do not plead facts plausibly demonstrating that Citi Hedge had actual

knowledge of any alleged fraud or breach of fiduciary duty.

## FACTUAL BACKGROUND[1]

### A.    Plaintiffs and the Kingate Funds

Plaintiffs are sophisticated foreign investors who purchased shares in the Kingate Global

and Kingate Euro Funds, BVI hedge funds in operation from 1994 and 2000, respectively. AC ¶¶ 15-23;

---

[1]     For purposes of this motion only, Citi Hedge accepts as true the allegations of the Complaint.
Capitalized terms not defined here have the meanings assigned to them in the Complaint.

AC Exs. 1-6.[2]  The Funds' strategy was to invest substantially all Fund assets with BMIS. AC ¶¶ 48-49.

Madoff and BMIS represented to the Funds that he would utilize his so-called split-strike conversion

strategy, which purportedly involved the purchase of "a basket of forty-five (45) to fifty (50) large-

capitalization S&P 100 stocks . . . [accounting] for the greatest weight of the Index." AC Ex. 1 at 2.

            When Madoff revealed to the world in December 2008 that he had orchestrated the largest

Ponzi scheme in history, the Funds lost substantially all of their value. The Funds are now in liquidation in

the BVI. See AC ¶ 51. As this Court has noted, Madoff – who enjoyed an "established reputation as a

successful and respected investment advisor" – accomplished his fraud through "the use of elaborate

machinery" that deceived "individual investors, financial institutions and regulators." SEC v. Cohmad Sec.

Corp., No. 09 Civ. 5680, 2010 WL 363844, at **2, 5 (S.D.N.Y. Feb. 2, 2010); AC ¶¶ 1, 60.[3]

## B.      Plaintiffs' Allegations

            The gravamen of the various allegations in the Complaint is the purported failure of the

Funds' directors, Manager (Kingate Management Limited), consultants (the FIM Entities), auditor

(PricewaterhouseCoopers Bermuda ("PwC")), and administrator (Citi Hedge) to uncover the Madoff fraud.

Plaintiffs allege that the Kingate Defendants were "close" to Madoff and therefore either knew or should

have known that rather than following his touted "split-strike conversion" strategy for investing in S&P 100

stocks, Madoff was in fact a fraud. See, e.g., AC ¶¶ 70-82; 89-91. Plaintiffs further allege that by failing to

---

[2]     For ease of reference, citations to the Information Memoranda are to the October 6, 2008
        Information Memorandum attached as Exhibit 1 to the Complaint. Cited exhibits not attached to
        the Complaint are attached to the Declaration of David Y. Livshiz, dated July 19, 2010.

[3]     Frank DiPascali, Madoff's "right-hand man," admitted in his guilty plea to taking "steps to
        conceal [the fraud] from clients, from the SEC, and from auditors," including "add[ing] fictitious
        trade data," "falsifying documents," and creating "fake trade blotters, ledgers, and other books
        and records," which ultimately deceived thousands of clients as well as the SEC. Hr'g Tr.,
        United States v. DiPascali, No. 09-Cr-764 (S.D.N.Y. Aug. 11, 2009) at 47, 49, 51; see also
        United States v. Bonventre, No. 10-Cr-228, filed on Mar. 24, 2010 (alleging complex computer
        technology developed by Madoff IT team to implement fraud). Because these documents form
        part of the public record, this Court may take judicial notice of their contents. See 21B Charles
        Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure: Evidence § 5106.4, at
        228 (1st ed. 1997 & Supp. 2007).

fulfill its non-delegable duty to monitor Madoff, the Manager breached its fiduciary duty to the Funds'

investors and that the Funds' Information Memoranda, prepared by the Kingate Defendants, misrepresented

the Manager's due diligence of Madoff. AC ¶¶ 77-105. There is no allegation that Citi Hedge authored any

part of the Information Memoranda. See AC ¶ 84 (Kingate Defendants authored the Information

Memoranda).

      As set forth in the Agreements between Citi Hedge and the Funds, which are governed by

BVI law, and in the Information Memoranda – documents heavily relied on by the Complaint – Citi

Hedge's role was ministerial in nature. See AC Ex. 15 (June 1, 2007 Administration Agreement for

Kingate Global); Ex. A (June 1, 2007 Administration Agreement for Kingate Euro, and together with AC

Ex. 15, the "Agreements" or "AA"); AC Ex. 1 (Information Memorandum). Its ministerial responsibilities

included maintaining the Funds' shareholder registries, processing investors' subscriptions and redemptions,

and calculating the Funds' NAVs. AA ¶ 4. Citi Hedge had "no discretionary authority or control with

respect to the management or disposition of financial instruments" of the Funds. AA ¶ 10.7.

      As set forth in its Agreements with the Funds and disclosed to investors, Citi Hedge was

required to calculate the Funds' NAV "as of the close of business on the last Business Day of each calendar

month." AC Ex. 1 at 23. The Funds' Articles of Association explain further, noting that Citi Hedge must

value "Securities . . . at the last sale price reported on the Valuation Date on the principal securities

exchange." Ex. B (Kingate Euro April 19, 200 Articles of Association) (the "Articles") at ¶ 56.[4]  The

Articles define Valuation Date as being "[t]he last Business Day in each month following the initial issuance

of shares." Id. at ¶ 1.

      In calculating the NAV, Citi Hedge was entitled to rely on

---

[4]     The Court may consider the Articles because they are incorporated by reference into the
Information Memoranda, which are attached to, and relied upon by, the Complaint. See Rothman
v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) (on motion to dismiss, court can consider documents
attached to, or incorporated by reference in, a complaint).

> information supplied by the Manager or any brokers [Madoff] in connection
> with performing its obligations hereunder, [and that] the Administrator's
> liability for the accuracy of any calculations utilising such information is
> limited to the accuracy of its own computations.  The Administrator is not
> liable for the accuracy of the underlying data provided to it.

AA ¶ 10.6 (emphasis added); AC Ex. 1 at 10.  This limitation on Citi Hedge's responsibility and potential

liability is not surprising.  See AA ¶ 10.3 (expressly limiting Citi Hedge's liability to "the [Funds] or to any

Shareholder" to instances of "gross negligence, willful default or fraud" by Citi Hedge).  Citi Hedge's

ministerial duties were limited, and nowhere did it assume any responsibility to monitor or audit Madoff in

any way.  Cf. AC ¶ 92 (alleging that the Manager had a non-delegable duty to monitor Madoff); AC Ex. 1

at 14.  Nor did Citi Hedge act as the Funds' auditor.  Cf. AC ¶ 106 (identifying PwC as Funds' auditor).

At the end of the day, any diminution in the value of the Funds' shares was not the result of

some calculation or valuation error by Citi Hedge; rather, the value of the Kingate Funds collapsed once it

was revealed that Madoff, the person charged with the role of "Investment Advisor," had in fact stolen the

Funds' investments (just as he had stolen the funds of all of his investors).  The risk of such defalcation had

in fact been disclosed to the Kingate investors as part of the offering materials:

> Neither the Fund nor the Custodian has actual custody of the assets.  Such
> actual custody rests with the Investment Advisor and its affiliated broker-
> dealer. . . . There is always the risk that the assets with the Investment
> Advisor could be misappropriated.  In addition, information supplied by the
> Investment Advisor may be inaccurate or even fraudulent.

AC Ex. 1 at 9.  Plaintiffs do not point to any document or disclosure that imposes on Citi Hedge any

obligation to police the risk – disclosed to plaintiffs – that Madoff might misappropriate the Funds' assets.

Plaintiffs nevertheless allege that as part of the NAV calculation process, Citi Hedge should have uncovered

Madoff's scam, AC ¶¶ 187-90; 201-04, and was reckless in not informing the Funds' investors that the

Manager was allegedly failing to monitor BMIS.  AC ¶¶ 205-06.  The Complaint contains no specific

allegations that Citi Hedge knew of any wrongdoing either on the part of Madoff or the Kingate Defendants.

## ARGUMENT

To survive a motion to dismiss, a complaint must contain allegations that, if true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Plaintiffs must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). In determining this, the Court must accept as true only well-pleaded facts: "legal conclusions . . . are not factual allegations entitled to a presumption of truth." Missel v. County of Monroe, 351 F. App'x 543, 545 (2d Cir. 2009).

## I.  PLAINTIFFS' SECTION 10(B) CLAIM SHOULD BE DISMISSED (COUNT 32)

### A.    Plaintiffs Have Not Pled Facts Creating A "Strong Inference" Of Scienter

To state a claim under Section 10(b) of the Securities Exchange Act of 1934 and Rule10b-5, the Complaint must satisfy the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). It must allege with particularity "in what respects the statements at issue were false" when made, San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc., 75 F.3d 801, 812 (2d Cir. 1996), and "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004); see also 15 U.S.C. § 78u-4(b)(1) (PSLRA requirement for specifying false statements and pleading supporting facts).

The PSLRA requires the plaintiff to allege with particularity, for each alleged misrepresentation, specific facts giving rise to a "strong inference" that the defendant acted with scienter, an intent to deceive, manipulate or defraud. 15 U.S.C. § 78u-4(b)(2); see also ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase, 553 F.3d 187, 198 (2d Cir. 2009). The inference of scienter must be "powerful," "cogent," "compelling," and "strong in light of other explanations." Tellabs, Inc. v.

7

Makor Issues & Rights, Ltd., 551 U.S. 308, 310 (2007).  To survive dismissal, the complaint must raise an inference of scienter so strong that it is "at least as compelling as any opposing inference one could draw from the facts alleged." Id.; accord S. Cherry Street, LLC v. Hennessee Group LLC, 573 F.3d 98, 110-11 (2d Cir. 2009).  If these exacting requirements are not met, "the court shall . . . dismiss the complaint."  15 U.S.C. § 78u-4(b)(3)(A) (emphasis added).

Here, plaintiffs have not pled specific facts that give rise to the requisite strong inference of scienter.  As an initial matter, Citi Hedge cannot be held liable for alleged misstatements in the Funds' private offering documents, which Citi Hedge did not author.  See AC ¶ 84 (Kingate Defendants authored Information Memoranda).  Where, as here, the Information Memoranda mention a service provider, like Citi Hedge, but do not identify the service provider as the author of the statement, or otherwise attribute the statement to the service provider, plaintiffs cannot show reliance on the service provider's statement.  See Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP, 603 F.3d 144, 158 (2d Cir. 2010).

As for the NAV calculations, there are no facts pled that raise the requisite strong inference that Citi Hedge made these calculations with actual knowledge of Madoff's fraud or with reckless disregard of it.  Cf. AC ¶ 439 (conclusory statement that Citi Hedge "acted recklessly or knowingly").  Plaintiffs fail to plead "strong circumstantial evidence of conscious misbehavior or recklessness," which is an "extreme departure from the standards of ordinary care" such that "the danger was either known to the defendant or so obvious that the defendant must have been aware of it." ECA, 553 F.3d at 198.  The allegation that Citi Hedge was reckless in not confirming "information received from BMIS" fails on its face to raise a strong inference of recklessness.  AC ¶ 439.  Citi Hedge had no obligation to verify information it received from BMIS, and, in fact, was affirmatively entitled to rely on it.  See AA ¶ 10.6.

Plaintiffs do not solve this pleading deficiency by alleging that Citi Hedge somehow ignored "risks" about BMIS such as its "consistent" returns.  AC ¶¶ 149, 203.  There is nothing alleged as

8

to why the alleged consistency of the returns was a flag of fraud. As Judge Stanton noted in rejecting the

argument that larger returns than those alleged here constituted "red flags": "in light of Madoff's established

reputation as a successful and respected investment advisor, the high returns he produced were not generally

perceived (even by professional investors) as a badge of fraud." Cohmad, 2010 WL 363844, at * 5; Ex. C

(MLSMK Inv. Co. v. JP Morgan Chase & Co., No. 09 Civ. 4049, (S.D.N.Y. July 15, 2010) (rejecting

"unusually high returns" in 2008 as a "red flag" of fraud)). Plaintiffs also identify as a "risk"

Madoff's multiple roles as investment manager, custodian and trade execution agent. AC ¶¶ 439, 441. The

Funds' Investment Memoranda, however, disclosed BMIS's multiple roles and the potential that Madoff

might misappropriate the Funds' assets. See AC Ex. 1 at 14. There is no statement in the Agreements, the

Information Memoranda, or any Fund document suggesting that Citi Hedge had the duty to police the risk

that Madoff would do so. Courts routinely reject such "fraud by hindsight" arguments. See Stevelman v.

Alias Research, Inc., 174 F.3d 79, 85 (2d Cir. 1999) (rejecting "fraud by hindsight" arguments as "a basis

for a securities fraud complaint").

      The other "red flag" identified by plaintiffs is that on 185 occasions, BMIS allegedly

"reported [trades to the Funds] at prices that were outside the daily trading range." AC ¶¶ 77, 188. This is

no "red flag" at all. First, as discussed, Citi Hedge, which is "not alleged to have had a role in managing"

the Funds' assets, Cohmad, 2010 WL 363844, at *2, had no obligation to verify each of Madoff's trades.

Rather, Citi Hedge was expressly entitled to rely on the information provided by BMIS without verification.

See AA ¶ 10.6; AC Ex. 1 at 10. At most, Citi Hedge had the responsibility "whenever reasonably possible"

to check the prices of the publicly traded securities held by the Funds at month's end. See AC Ex. 1 at 23;

Articles at ¶¶ 1, 56. Second, there is not a single allegation that any of the alleged "demonstrably false"

prices cited by the plaintiffs was a month's-end value as opposed to a purported transaction price that

occurred at some period earlier in the given month. See AC ¶¶ 78-79. Third, there is no allegation of how,

9

in the event that Citi Hedge discovered what would no doubt appear to be a clerical error, such discovery would result in the exposure of the Ponzi scheme. See Cohmad, 2010 WL 363844, at *6 ("An irregular trade date over the twelve years [the] account [was] with BMIS does not show reckless disregard of Madoff's fraud.").

In South Cherry Street, the Second Circuit found allegations that an investment advisor (1) misrepresented due diligence it performed on a hedge fund that was a Ponzi scheme, and (2) "ignored obvious red flags" about the fund to be insufficient to support an inference of scienter that was either cogent or at least as compelling as an inference of mere negligence. See 573 F.3d at 111-15. Here, Citi Hedge was not even acting in an advisory capacity, but merely fulfilled ministerial functions, and so the inference of scienter is even less compelling. At bottom, an inference of scienter is not "as compelling as any opposing inference one could draw from the facts alleged," Tellabs, 551 U.S. at 323-24, and the more compelling inference is that Madoff "fooled [Citi Hedge] as he did individual investors, financial institutions and regulators." See Cohmad, 2010 WL 363844, at *2; In re Tremont Secs. Law, State Law & Ins. Litig., No. 09 MD 2052, 2010 WL 1257580, at *5 (S.D.N.Y. Mar. 30, 2010) ("[T]he more compelling inference as to why Madoff's fraud went undetected for two decades was his proficiency in covering up his scheme.").

**B.    Plaintiffs Fail To Adequately Plead Reliance**

To state a Section 10(b) claim, a plaintiff must allege reliance on a material misrepresentation or omission. See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 159 (2008). Plaintiffs allege the loss in the value of privately placed shares of the Funds, AC Ex. 1 at 4, 19, and so the fraud-on-the-market theory is unavailable to them, meaning that they must plead in a non-conclusory manner that they actually relied on specific misrepresentations by Citi Hedge in making their investment decision. See In re Citigroup Auction Rate Sec. Litig., No. 09 Civ. 3095, 2009 WL 2914370, at *7 (S.D.N.Y. Sept. 11, 2009) (where "fraud on the market" presumption does not apply, plaintiffs must plead non-conclusory facts sufficient to demonstrate reliance).

Plaintiffs allege – in conclusory fashion – that the "Exchange Act Plaintiffs justifiably relied on the information contained in the Citi Hedge statements." AC ¶ 442. Critically, they do not allege a single fact demonstrating that they received such statements prior to making their investment decision, or that they allegedly relied on them in making their investment decision. See Iqbal, 129 S. Ct. at 1949 (conclusory assertions insufficient to state a claim). Thus, plaintiffs cannot plead their reliance on the NAV statements in deciding to invest in the Funds, as they must to sustain their 10b-5 claims.[5] See Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 592 F. Supp. 2d 608, 629 (S.D.N.Y. 2009) (plaintiffs cannot establish reliance where they fail to show that they received the NAV statements prior to making their investment decision).[6]

## II. PLAINTIFFS' COMMON LAW CLAIMS ARE PREEMPTED BY FEDERAL AND STATE LAW (COUNTS 21–28)

### A. Plaintiffs' Common Law Claims Are Preempted By SLUSA

The Securities Litigation Uniform Standards Act ("SLUSA") preempts all of the plaintiffs' common law claims. SLUSA preempts a claim if it is: (i) a covered class action; (ii) based on state and common law; (iii) alleging a material misrepresentation or omission; and (iv) in connection with the purchase or sale of a covered security. See 15 U.S.C. § 78bb(f)(1)(A) (2000); In re WorldCom Inc. ERISA Litig., 263 F. Supp. 2d 745, 769 (S.D.N.Y. 2003). The Supreme Court has directed courts interpreting SLUSA to do so broadly, explaining that a narrow reading would run "contrary to SLUSA's stated purpose." Merrill Lynch, Pierce, Fenner & Smith v. Dabit, 547 U.S. 71, 86 (2006). Courts in this Circuit consistently have found SLUSA preemption to apply in evaluating claims against funds that invested in

---

[5]  The absence of any facts demonstrating actual reliance by plaintiffs on the NAV statements in deciding to invest in the Funds underscores the conclusory nature of their allegations that they relied on the NAV statements in the context of their negligent misrepresentation claims. See AC ¶¶ 368-74; Iqbal, 129 S. Ct. at 1949.

[6]  Additionally, the failure of plaintiffs, who are all foreigners, to allege that they purchased securities "listed on a domestic exchange" or that such purchases occurred in the United States, requires the dismissal of their 10b-5 claim. See Morrison v. Nat'l Austl. Bank Ltd., No. 08-1191, 2010 WL 2518523, at *11 (June 24, 2010).

Madoff. See, e.g., Barron v. Igolnikov, No. 09 Civ. 4471, 2010 WL 882890 (S.D.N.Y. Mar. 10, 2010)
(SLUSA preempts claims against a fund that invested in a fund that invested in Madoff); Backus v. Conn.
Cmty. Bank, N.A., No. 9-CV-1256, 2009 WL 5184360, at *5 (D. Conn. Dec. 23, 2009) (SLUSA preempts
claims against a fund that invested in Madoff); Levinson v. PSCC Servs., Inc., No. 09 Civ 00269, 2009 WL
5184363, at **8-12 (D. Conn. Dec. 23, 2009).

      Each of the SLUSA requirements is satisfied here. The class action is "covered" because
plaintiffs seek to "recover damages on a representative basis on behalf of themselves and other unnamed
parties similarly situated." 15 U.S.C. § 78bb(f)(5)(B) (2000). Plaintiffs' purported claims are based on
"state and common law," alleging that Citi Hedge breached duties owed to the class and made
"misrepresentations" when it distributed NAV statements. AC ¶¶ 360-96; see also Cinicolo v. Morgan
Stanley Dean Witter & Co., No. 01 Civ. 6940, 2004 WL 2848542, at **5-6 (S.D.N.Y. Dec. 9, 2004)
(breach of fiduciary duty and unjust enrichment claims preempted); WorldCom ERISA Litig., 263 F. Supp.
2d at 770 (negligence claim preempted); In re Livent, Inc. Noteholders Sec. Litig., 151 F. Supp. 2d 371,
442-43 (S.D.N.Y. 2001) (fraud and negligent misrepresentation claims preempted).

      Finally, the present action satisfies the requirement that the misrepresentation occurs in
connection with a purchase or sale of a "covered security," i.e., one that is listed or authorized for listing on
the New York Stock Exchange or another national exchange. See 15 U.S.C. §§ 77r(b)(1)(A), (B) (1998).
Here the covered securities are the securities in the basket of forty-five to fifty "stocks underlying the
Standard & Poor's 100 index" purportedly purchased by Madoff. AC ¶ 57; see also Igolnikov, 2010 WL
882890, at *5; Backus, 2009 WL 5184360, at *5 (applying SLUSA in Madoff feeder fund context and
finding the securities allegedly purchased by Madoff to be covered securities); Levinson, 2009 WL
5184363, at **8-12 (same).

      Plaintiffs might argue that SLUSA should not apply because the alleged misrepresentations

here were made in connection with the privately placed securities issued by the Funds, not securities Madoff was alleged to be purchasing. This argument fails. First, as the Supreme Court explained in Dabit, SLUSA is to be interpreted broadly, and the "in connection with" requirement is satisfied if the misrepresentation "coincides" with the alleged transaction in covered securities. 547 U.S. at 85-86.[7] Here, the misrepresentations alleged in the Complaint – the due diligence of Madoff undertaken by the Manager, the quantity and quality of BMIS oversight promised by the Manager, and the financial statements and NAVs of the Funds – all "coincided" with Madoff's purported purchase of covered securities on the New York Stock Exchange. See, e.g., Backus, 2009 WL 5184360, at *9; Levinson, 2009 WL 5184363, at **8-12.

Second, plaintiffs' various allegations about Madoff demonstrate that the claims asserted here fall within the broad scope of SLUSA. Plaintiffs allege that the agreements executed by the Funds with Madoff state that Madoff would purchase securities "in New York through New York-based securities trading activities." AC ¶ 50. The Complaint further alleges that the purchase by Madoff of a basket of stocks that were part of the S&P's 100 index was an essential element of Madoff's split-strike conversion strategy as marketed by the Funds. Id. ¶¶ 57; 49(b) (Madoff was supposed to invest "in the NYSE in U.S. Dollars"). There is little doubt that the misrepresentations underlying plaintiffs' common law claims occurred in connection with "covered securities," requiring dismissal of these claims.

**B.     Plaintiffs' Common Law Claims Are Preempted By The Martin Act**

As set out below, BVI law requires dismissal of plaintiffs' common law claims as a matter of law. In the event this Court applies New York law, then the New York State Martin Act preempts all of plaintiffs' common law claims except the claims for aiding and abetting fraud and breach of contract (which otherwise fail to state a claim). See N.Y. Gen. Bus. Law § 352 et seq. "The vast majority of state and

---

[7]     The fact that Madoff never actually purchased the securities is beside the point. "[C]laims based on the alleged failure to buy or sell covered securities fall squarely within SLUSA's ambit." Igolnikov, 2010 WL 882890, at *4 (citing Instituto de Prevision Militar v. Merrill Lynch, 546 F.3d 1340, 1347-51 (11th Cir. 2008)).

13

federal courts have found that 'causes of action related to a plaintiff's securities fraud claim that do not include scienter as an essential element are typically preempted by the Martin Act. . . .'" In re Bayou Hedge Fund Litig., 534 F. Supp. 2d 405, 421 (S.D.N.Y. 2007) (quoting Sedona Corp. v. Ladenburg Thalmann & Co., No. 03 Civ. 3120, 2005 WL 1902780, at *22 (S.D.N.Y. Aug. 9, 2005)).  Where claims arise in the securities context, the Martin Act preempts "at least": "negligence, breach of fiduciary duty, negligent misrepresentation, unjust enrichment, and aiding and abetting any of these claims."  Abu Dhabi Commercial Bank v. Morgan Stanley & Co., 651 F. Supp. 2d 155, 172 (S.D.N.Y. 2009).  Citi Hedge joins and incorporates by reference the arguments of PricewaterhouseCoopers LLP demonstrating that application of the Martin Act requires dismissal of these claims as preempted by the Martin Act.  See Mem.Of Law Of PricewaterhouseCoopers LLP In Supp. Of Its Mot. To Dismiss, dated July 19, 2010, at Part III(B).[8]

## III. PLAINTIFFS LACK STANDING TO ASSERT COMMON LAW CLAIMS (COUNTS 21-28)

New York's "'internal affairs'" choice of law doctrine requires courts to look to the "'law of the [fund's] state of incorporation'" when deciding whether claims should be brought directly or derivatively.  Seghers v. Thompson, No. 06 Civ. 308, 2006 WL 2807203, at *4 (S.D.N.Y. Sept. 27, 2006) (citation omitted) (applying BVI law to questions of derivative standing where the fund was incorporated in the BVI).  Applying the law of the BVI – the jurisdiction where the Funds are incorporated – requires dismissal of these claims as derivative claims that plaintiffs have no standing to assert.

---

[8]     The Martin Act's requirement that the conduct at issue be "within or from" New York is easily satisfied here.  The Complaint alleges that a "substantial number of relevant events occurred in this District." AC ¶ 12; see also AC ¶¶ 25, 48, 49, 54, 57 (alleging various conduct that occurred in New York).  See Ashland Inc. v. Morgan Stanley & Co., Inc., No. 09 Civ. 5415, 2010 WL 1253932, at *16 (S.D.N.Y. Mar. 30, 2010) (finding the Martin Act to apply where venue was proper in New York and where securities transactions were ultimately executed in New York); Abu Dhabi, 651 F.Supp. 2d at 182.

14

Under BVI law, as under the law of virtually every state, claims based on corporate mismanagement or third party action that resulted in the decline of share value belong to, and can only be brought by, the corporation. Declaration of Simon Browne-Wilkinson, QC, dated July 18, 2010, ¶¶ 7-15 ("Wilkinson Decl.") (citing Johnson v. Gore Wood & Co. (a firm) [2002] 2 AC 1). In Johnson, a decision binding in the BVI, the House of Lords explained that where an action is based on losses reflecting the damage done to a corporation, "no action lies at the suit of a shareholder." Id. Johnson requires the dismissal of the common law claims. Id.; see also Seghers, 2006 WL 2807203, at *4 (following BVI law and dismissing derivative claims).

At bottom, this case is about the Manager's disclosed decision to invest the Funds' money with Madoff and the resulting diminution in the value of the Funds resulting from Madoff's theft. AC ¶ 14. Plaintiffs do not allege a single claim separate and apart from the collective injury suffered by all of the Funds' investors – the decline in the value of the Funds' shares. The Complaint concedes throughout that plaintiffs bring this purported class action on "behalf of all [investors] who owned shares of the Funds," see AC ¶ 6, seeking to recover for harm suffered ratably by the plaintiffs and all of the Funds' other investors – the value of their respective shares in the Funds. See, e.g., AC ¶¶ 69 (identifying losses suffered by plaintiffs, and all other shareholders, as being those caused by the Funds' collapse); 363 (as a result of Citi Hedge's alleged gross negligence, "Plaintiffs and the Class have lost . . . their investments in the Funds"); 367 (same); 374 ("Plaintiffs and the Class have suffered damages, namely the loss of their investments in the Funds"). Under BVI law, claims that "merely reflect[] the company's loss," like those alleged by plaintiffs here, may "only" be brought by the company. Wilkinson Decl. ¶¶ 8-14.[9] Shareholders may not bring such claims even when the defendant is found to

---

[9]     The result is the same under New York law. A shareholder has no cause of action "[f]or a wrong against a corporation . . . [even] though he loses the value of his investment." Abrams v. Donati, 66 N.Y.2d

have breached "a duty owed to both the company and to the shareholder." Id. ¶ 10. The New

York State court dismissed nearly identical claims to those brought here when a shareholder

sought to assert them explicitly as derivative claims, because the shareholder failed to comply

with the BVI law governing derivative actions. See Ex. D (Bruhl v. Kingate Mgmt. Ltd., Index

No. 601510/09, filed on May 15, 2009); Ex. E (Jan. 25, 2010 Order Dismissing Bruhl v. Kingate

Mgmt. Ltd., Index No. 601510/09, dated Jan. 25, 2010); see also Wilkinson Decl. ¶ 15.

## IV. PLAINTIFFS' COMMON LAW TORT CLAIMS OTHERWISE FAIL TO STATE A CLAIM (COUNTS 21-24)

            In deciding which jurisdiction's law should apply to tort claims, New York courts apply an

"interest analysis," "giving controlling effect to the law of the jurisdiction which, because of its relationship

or contact with the occurrence or the parties, has the greatest concern with the issue" in dispute. San Diego

County Employees Ret. Assoc. v. Maounis, No. 07 Civ. 2618 (DAB), 2010 WL 1010012, at *18 (S.D.N.Y.

Mar. 15, 2010) (Batts, J.) (internal quotation marks omitted). Where, as here, the plaintiffs are an

international group, AC ¶¶ 15-23, the plaintiffs' location is not dispositive to the question of which

jurisdiction's law should apply, and "other occurrences and contacts within each jurisdiction . . . are

appropriately considered." Maounis, 2010 WL 1010012 at *18.

---

951, 953 (1985). Where, as here, a plaintiff is a shareholder in a corporation and asserts a cause of action for a
common injury to "all persons or entities who owned shares of the Fund," AC ¶ 6, based on a wrong done to
the Funds that caused "'damage to the [shareholders] in the form of diminution in the value of their shares,'
'such allegations plead a wrong to the corporation only, for which a shareholder can only sue derivatively.'"
Druck Corp. v. Macro Fund Ltd., 290 F. App'x 441, 444 (2d Cir. 2008) (quoting Hahn v. Stewart, 5 A.D.3d
285, 285-86 (1st Dep't 2004) (alteration in original); Baltus-Michaelson v. Credit Suisse First Boston, LLC,
116 F. App'x 308, 310 (2d Cir. 2004) ("the injury claimed – loss of investment value – affects all shareholders
and the corporation equally and may only be raised in a derivative suit"). "It is well settled that diminution in
value of corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right."
Bogart v. Isr. Aerospace Indus. Ltd., No. 09 Civ. 4783, 2010 WL 517582, at *4 (S.D.N.Y. Feb. 5, 2010). See
also, Zeno Invs., LLC v. Merrill Lynch & Co., 600121/08, 2009 NY Slip Op. 30178 (N.Y. Sup. Ct. Jan. 21,
2009) (dismissing negligent misrepresentation claims as derivative); Primavera Familienstiftung v. Askin, No.
95 Civ. 8905, 1996 WL 494904, at *16 (S.D.N.Y. Aug. 30, 1996) (dismissing aiding and abetting claims as
derivative); Hart v. Gen. Motors Corp., 129 A.D.2d 179, 183 n.2 (1st Dep't 1987) ("allegation of diminution
in the value of stock based on a breach of fiduciary duty gives rise to a derivative action only").

Applying this standard, the Court should apply BVI law to the tort claims against Citi Hedge. The Funds, which are the only connection between plaintiffs and Citi Hedge, were organized and regulated under BVI law and had their principal places of business in the BVI. AC ¶¶ 48-49. Citi Hedge acted pursuant to the BVI law-governed Agreements, and the BVI has an obvious interest in ensuring that its laws regulating investment funds are upheld. See Maounis, 2010 WL 1010012, at *18; ABF Capital Mgmt. v. Askin Capital Mgmt., L.P., 957 F. Supp. 1308, 1308 (S.D.N.Y. 1997).

## A.    Plaintiffs Fail To State A Claim For Breach Of Fiduciary Duty (Count 21)

Under BVI law (like New York law), to establish a claim for a breach of fiduciary duty, plaintiffs must allege (a) the existence of a relationship pursuant to which the fiduciary duty was established, (b) the scope of that duty and (c) a breach of that duty by Citi Hedge. See Wilkinson Decl. ¶¶ 17-20; DeBlasio v. Merrill Lynch & Co., No. 07 Civ. 318, 2009 WL 2242605, at *28 (S.D.N.Y. July 27, 2009). Because the Complaint does not plead facts plausibly establishing (1) the existence of a fiduciary relationship or (2) that Citi Hedge breached any duty, this claim must fail.

1.    Plaintiffs Have Failed To State A Breach Of Fiduciary Duty Claim Under BVI Law

Under BVI law, a fiduciary duty can arise only when one party has affirmatively undertaken to act for or on behalf of another in circumstances that give rise to a relationship of trust and confidence. See Wilkinson Decl. ¶ 19. The duties that Citi Hedge undertook are embodied in the Agreements and run to the Funds, not to plaintiffs. See id. ¶¶ 21-22. Moreover, plaintiffs do not, because they cannot, identify a single statement evidencing Citi Hedge's intent to voluntarily accept a fiduciary obligation to investors with whom it had no direct business relationship. Cf. AC ¶¶ 193–95 (internet statements that Citi Hedge serves the needs of hedge funds and their managers, not investors). Without such acceptance, BVI law will not impose a fiduciary duty on Citi Hedge. See Wilkinson Decl. ¶¶ 19-22.

Plaintiffs' assertion that Citi Hedge "occupied a superior position" and that plaintiffs reposed "trust and confidence in Citi Hedge," AC ¶¶ 199, 353-54, is of no moment. Such unilateral

17

entrustment does not create a fiduciary relationship under BVI law because it does not show an affirmative undertaking by Citi Hedge to act as the investors' fiduciary. See Wilkinson Decl. ¶¶ 19-22.

Finally, even if plaintiffs could show a fiduciary relationship existed, they have failed to allege that Citi Hedge was disloyal to plaintiffs, a requirement for a breach of fiduciary duty claim under BVI law. See Wilkinson Decl. ¶¶ 19-20. Plaintiffs' allegations that Citi Hedge breached its fiduciary duty by failing to ferret out Madoff's fraud, see AC ¶¶ 201-04, do not allege disloyalty by Citi Hedge and so are not sufficient to state a claim for breach of fiduciary duty under BVI law. See Wilkinson Decl. ¶ 22.

2.      Plaintiffs Have Failed To State A Breach of Fiduciary Duty Claim Under New York Law

Under New York law, a fiduciary relationship will not be found where, as here, the relationship between Citi Hedge and the plaintiffs – who to Citi Hedge were only clients of a client – is attenuated. See Thermal Imaging, Inc. v. Sandgrain Sec., Inc., 158 F. Supp. 2d 335, 343 (S.D.N.Y. 2001) (no fiduciary duty owed to plaintiff, "a client of a client"). Citi Hedge provided services to the Funds under contractual agreements with the Funds, which were Citi Hedge's clients. See AC ¶¶ 185-86; see also id. ¶¶ 193-95 (noting that Citi Hedge provides services to hedge funds). This Court has found the relationship between a hedge fund administrator and the fund's investors – the very relationship at issue here – to be too attenuated to give rise to a fiduciary duty on the part of the administrator vis-à-vis the fund's investors. See, e.g., Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Inv. Ltd., No. 00 Civ. 9214, 2007 WL 2948115, at *22 (S.D.N.Y. Oct. 3, 2007) (no fiduciary duty where administrator's primary contact with the fund's investors was sending them the fund's monthly statements).

Moreover, a fiduciary duty under New York law "will only arise if the purported fiduciary voluntarily accepts the entrustment of confidence." Id. at *28 (quoting Thermal Imaging, 158 F. Supp. 2d at 343). Plaintiffs' failure to identify a single statement in the Agreements or the Information Memoranda evidencing Citi Hedge's voluntary acceptance of a fiduciary role vis-à-vis the Funds' investors is as fatal

18

under New York law, as it is under BVI law.[10]

Courts have refused to dismiss claims for breach of fiduciary duty by an administrator only where the administrator "'under[took] to implement trades on behalf of'" the fund or held itself out to fund investors as having specific policies and procedures to fairly value illiquid fund assets. See Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Inv. Ltd., No. 00 Civ. 9214, 2003 WL 21263544, at *4 (S.D.N.Y. Mar. 31, 2003) (administrator undertook to implement trades on behalf of the Trust); Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 446 F. Supp. 2d 163, 172-73, 197 (S.D.N.Y. 2006) (investors relied on statements that administrator independently valued thinly traded fund assets). By contrast, the Complaint does not, because it cannot, allege that Citi Hedge played a role in investing the Funds' assets. See AC Ex. 1 at 4 (Manager "has complete authority and discretion in the management and control of the business of the Fund"); AA ¶ 10.7 (Citi Hedge "shall have no discretionary authority or control with respect to the [Funds'] management"). And, plaintiffs do not identify a single communication where Citi Hedge implied that it provided services, much less owed fiduciary duties, to the Funds' investors.[11]  See AC ¶¶ 193-95 (Citi Hedge serves the

---

[10]    Nor does the allegation that plaintiffs reposed trust and confidence in Citi Hedge because of its purported superior position, AC ¶¶ 199, 353-54, fare any better under New York law. Courts in this District have held time and again that allegations of unilateral trust are insufficient to establish a fiduciary relationship. See Kolbeck v. LIT Am. Inc., 923 F. Supp. 557, 572 (S.D.N.Y. 1996) ("[t]hat plaintiffs may have regarded defendants as their fiduciaries is not enough to establish a fiduciary duty when that duty otherwise would not exist"); see also DeBlasio v. Merrill Lynch & Co., No. 07 Civ 318 (RJS), 2009 WL 2242605, at *28 (S.D.N.Y. July 27, 2009); Musalli Factory for Gold & Jewelry v. JP Morgan Chase Bank, N.A., 261 F.R.D. 13, 26 (S.D.N.Y. 2009) (dismissing claim for breach of fiduciary duty where there was no allegation that defendant had accepted the trust or confidence reposed in it by plaintiff).

[11]    In citing to statements on Citi Hedge's website, plaintiffs do not, and cannot, allege that these statements were on the website when plaintiffs invested in the Funds, or that they relied on these statements when doing so. This is not surprising, as Citi Hedge did not become the Funds' administrator until August 1, 2007, long after most of the plaintiffs invested. See AC ¶ 185.

"comprehensive and complex needs of hedge funds," not the Funds' investors).[12]

        Plaintiffs' breach of fiduciary duty claim must also fail because plaintiffs are trying to impose on Citi Hedge a duty – broad and unspecified – to have somehow discovered Madoff's fraud. The Complaint proposes only one theory as to how Citi Hedge breached its alleged fiduciary duties, baselessly alleging that by failing to independently verify prices at which Madoff purported to buy securities, Citi Hedge failed to uncover Madoff's fraud. See AC ¶¶ 201-04. As discussed above, however, plaintiffs provide no plausible explanation of how, even if Citi Hedge had "verified" these prices and discovered what would no doubt appear to be an administrative error, the Madoff fraud would have been discovered. See Cohmad, 2010 WL 363844, at *6; see discussion supra Part I.A. In any event, Citi Hedge never took on this duty. And, the Complaint concedes that the duties of monitoring Madoff and auditing the Funds did not belong to Citi Hedge. See AC ¶¶ 92, 94 (Manager has non-delegable duty to monitor Madoff); 106 (PwC is the auditor for the Funds). Citi Hedge's duty was limited to calculating the Funds' NAV statements, and in doing so it was permitted to rely on the data provided by Madoff. See AA ¶ 10.7. Plaintiffs' argument that Citi Hedge's reliance on Madoff's pricing data is a "*per se* breach of fiduciary duty," AC ¶ 356, must therefore fail.

**B.    Plaintiffs Fail To State A Negligence-Based Claim  (Counts 22-24)**

       1.    <u>Plaintiffs Fail To State A Claim For Gross Negligence</u>

        Under BVI law, there is no tort of gross negligence. See Wilkinson Decl. ¶ 27. This claim should therefore be dismissed.

        Nor do plaintiffs fare any better if New York law were to apply. To plead a claim of gross

---

[12]    Plaintiffs' lawyers are aware of what language – unlike that used by Citi Hedge – might create a fiduciary relationship between a fund administrator and the fund's investors. See Complaint at ¶ 325; Anwar v. Fairfield Greenwich Ltd., No. 09-Civ-118, (S.D.N.Y. 2009), (quoting the website of the administrator for feeder funds managed by Fairfield Greenwich: "Citco has also stated on its website: 'By providing fully independent services, we act as a <u>reliable fiduciary</u> to safeguard the <u>interests of investors</u>.'" (emphasis added)).

negligence plaintiffs must allege conduct that "'evinces a reckless disregard'" or "'smacks of intentional wrongdoing.'" AT&T Co. v. City of New York, 83 F.3d 549, 556 (2d Cir. 1996) (citation omitted); Retty Fin. v. Morgan Stanley Dean Witter & Co., 293 A.D.2d 341, 341 (1st Dep't 2002) (dismissing gross negligence claim where complaint did not allege conduct evincing "reckless disregard" or "smacking of intentional wrongdoing"). "[R]ecklessness" means "extreme wrongdoing" that is "desperately heedless, as from folly, passion or perversity, impetuosity or rashly adventurous." Tevdorachvili v. Chase Manhattan Bank, 103 F. Supp. 2d 632, 644 (E.D.N.Y. 2000) (internal quotation marks omitted).

Plaintiffs' threadbare allegations that Citi Hedge was grossly negligent do not come close to satisfying the high burden that is required of them. Plaintiffs' sole allegation is that Citi Hedge's reliance on data provided by Madoff, as it was entitled to do, was "blind[] and reckless[]," AC ¶ 202, and that Citi Hedge therefore "grossly failed to exercise due care" by failing to exercise "the degree of prudence, caution, and good business practice." AC ¶ 362. Such formulaic recitation of the elements is not sufficient to survive a motion to dismiss. See Iqbal, 129 S. Ct. at 1949. Moreover, allegations that a defendant "missed red flags" based on its failing to perform "due diligence that would have revealed" Madoff's fraud is, as a matter of law, insufficient to state a claim for gross negligence. Ex. F (Baker v. Andover Assocs. Mgmt. Corp., Index No. 6179/09 (N.Y. Sup. Ct. Nov. 30, 2009) (allegations that defendant missed "red flags" and failed to perform "appropriate due diligence" do not satisfy the pleading requirements for gross negligence)).

2.    Negligence and Negligent Misrepresentation Claims Fail

Plaintiffs' claims of negligence and negligent misrepresentation also fail as a matter of law. In asserting negligence-based claims against Citi Hedge, plaintiffs simply assert the legal conclusion that Citi Hedge failed to "exercise due care," resulting in plaintiffs' losing "all or substantially all of their investments." AC ¶¶ 366-67. But BVI law will not impose on a person a duty to hold harmless another from suffering financial loss caused by a third party. See Wilkinson Decl. ¶¶ 33-36. Accordingly, plaintiffs' argument that Citi Hedge had a general undefined duty, not found in any contract or document, to

21

protect them from Madoff's theft cannot survive. The imposition on Citi Hedge of a duty of care is further undermined by provisions of the Agreements and the Information Memoranda entitling Citi Hedge to rely on Madoff's data and limiting Citi Hedge's liability to instances of gross negligence, willful misconduct and fraud. See AA ¶¶10.3, 106; AC Ex. 1 at 10; see also Wilkinson Decl. ¶¶ 37-40. As a matter of BVI law, plaintiffs' claims of negligence and negligent misrepresentation must fail.

These claims also fail under New York law. Citi Hedge's limited duties are governed by contract (i.e., the Agreements), and so the law will not impose on Citi Hedge a broad extra-contractual duty to protect plaintiffs from the criminal acts of third parties. See AA ¶¶ 10.3, 10.6; Eaves Brooks Costume Co. v. Y.B.H. Realty Corp., 76 N.Y.2d 220, 225 (1990) (affirming dismissal of negligence claims where defendant with limited contractual obligation to maintain property did not monitor and correct all conditions on the property that could cause injury).

Moreover, it is beyond dispute that "'New York law generally enforces contractual provisions absolving a party from its own negligence.'" Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A., No. 03 Civ. 153, 2003 WL 23018888, at *11 (S.D.N.Y. Dec. 22, 2003) (quoting Colnaghi U.S.A., Ltd. v. Jewelers Protection Services, Ltd., 81 N.Y.2d 821, 823 (1993)). Where, as here, "the language of the exculpatory agreement expresses in unequivocal terms the intention of the parties to relieve a defendant of liability for the defendant's negligence, the agreement will be enforced." Lago v. Krollage, 78 N.Y.2d 95, 99-100 (1991); see also AA ¶ 10.3; AC Ex. 1 at 10. Exculpatory clauses foreclosing ordinary negligence claims also bar claims for negligent misrepresentation. See Champion Home Builders Co. v. ADT Sec. Servs., 179 F. Supp. 2d 16, 24 (N.D.N.Y 2001); Elmira Teachers' Ass'n v. Elmira City Sch. Dist., 861 N.Y.S.2d 195 (3d Dep't 2008) (exculpatory clause barring

22

negligence claims bars negligent misrepresentation claim).  Thus, plaintiffs' negligence and

negligent misrepresentation claims must be dismissed.

## V. PLAINTIFFS FAIL TO STATE A CLAIM FOR AIDING AND ABETTING (COUNTS 26–27)

Under BVI law, aiding and abetting "is a principle confined to criminal liability," and is not

the applicable test for secondary liability in tort.  Wilkinson Decl. ¶ 50.  Secondary liability in tort under BVI

law is established by pleading either conspiracy or knowing assistance.  Id. ¶¶ 52-54.  Here, plaintiffs have

not alleged that Citi Hedge conspired with the Manager, and are therefore left only with the potential claim

of knowingly assisting.  To state a claim for knowing assistance, plaintiffs must allege that Citi Hedge acted

with dishonesty in assisting the Manager.  Id. ¶¶ 53-54.  The Complaint fails to allege actual knowledge on

the part of Citi Hedge of any alleged wrongdoing by the Manager.  See supra Part I.A.  Allegations of

constructive knowledge of the Manager's actions, like those in the Complaint, are insufficient to allege

"dishonesty" on the part of Citi Hedge.  These claims must therefore fail.  See Wilkinson Decl. ¶¶ 52-55.

Under New York law, a party seeking to assert a claim of aiding and abetting liability must

allege a tort committed by a primary tortfeasor[13] and that the "defendant knowingly induced or participated

in the [tort]."  Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 943 (2d Cir.

1998); see Sharp Int'l Corp. v. St. Street Bank & Trust Co., 403 F.3d 43, 50 (2d Cir. 2005).  Pleading

requirements for an aiding and abetting claim are high.  To allege knowing inducement, plaintiff must show

actual – not constructive – knowledge on the part of the defendant.  See Sharp Int'l Corp., 403 F.3d at 49-50.

The knowledge requirement is "a heavy one," Terrydale Liquidating Trust v. Barness, 611 F. Supp. 1006,

1027 (S.D.N.Y. 1984), and is not satisfied by mere allegations that a party "knew or was willfully blind."

See Pension Comm., 446 F. Supp. 2d at 202 n.279 ("overwhelming weight of authority holds that actual

---

[13]     Plaintiffs assert that Citi Hedge aided and abetted Kingate Defendants' fraud and breach of
fiduciary duty.  To the extent this Court dismisses these claims against the Kingate Defendants,
see AC ¶¶ 241-253, 278-283, the aiding and abetting counts alleged against Citi Hedge must also
be dismissed.

23

knowledge is required"). The bar is raised further still for claims of aiding and abetting fraud, where plaintiffs must satisfy the heightened pleading requirements of Rule 9(b). See Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292-93 (2d Cir. 2006). "[C]onclusory assertions of aider-abettor liability which refer to the general charges of wrongdoing are insufficient." Morin v. Trupin, 711 F. Supp. 97, 113 (S.D.N.Y. 1989).

Plaintiffs' allegations that Citi Hedge "knew or was willfully blind to" the Kingate Defendants' alleged fraud and breaches of fiduciary duty are facially deficient to show knowing inducement or participation. AC ¶¶ 205–06. First, plaintiffs' conclusory allegations assert no more than constructive knowledge by Citi Hedge of the Kingate Defendants' alleged fraud or breach of fiduciary duty. See AC ¶¶ 205 (alleging that Citi Hedge "knew or was willfully blind"), 206, 388-89; Lerner, 459 F.3d at 292-93 (affirming dismissal of aiding and abetting fraud claim where plaintiffs failed to plead specific facts giving rise to a "strong inference" of actual knowledge.). Second, plaintiffs' assertion that Citi Hedge knew of the Kingate Defendants' conduct "by virtue of [its] long-standing involvement in the Funds, and its experience in fund management," id. at ¶ 383, is conclusory and does not plausibly show that Citi Hedge had actual knowledge of any wrongdoing by the Kingate Defendants. See Iqbal, 129 S. Ct. at 1949; Rosner v. Bank of China, 349 F. App'x 637, 639 (2d Cir. 2009) (pleadings that "only . . . suggest that [defendant] should have known that something was amiss . . . [are] insufficient to support an aiding-and-abetting claim under New York law.") (emphasis added).

## VI. THE THIRD-PARTY BENEFICIARY AND UNJUST ENRICHMENT CLAIMS FAIL (COUNTS 25, 28)

First, plaintiffs' claim to third-party beneficiary status under the Agreements fails. The Agreements – which are between and among Citi Hedge (or its predecessors) and the Funds and their Manager – are governed by BVI law, and therefore so is plaintiffs' claim. See AA ¶ 18; Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., 414 F.3d 325, 332 (2d Cir. 2005) (contract terms interpreted under the

law of the state identified in the choice of law provision). BVI law is clear: non-parties to a contract cannot enforce the terms of the contract. Wilkinson Decl. ¶¶ 42-47. This claim fails.[14]

Second, while BVI law recognizes the concept of unjust enrichment, it is a fundamental principle of BVI law that only the payer can sue for restitution of fees under such a claim. Wilkinson Decl. ¶¶ 57-59. Here, Citi Hedge's fees were paid by the Funds, see AC ¶ 4, not the plaintiffs, and so the plaintiffs cannot sue to recover those fees. Wilkinson Decl. ¶¶ 57-59.[15]

## CONCLUSION

For the foregoing reasons, this Court should grant Citi Hedge's motion to dismiss, with prejudice, and grant such other and further relief as may be necessary and proper.

Dated: New York, New York
July 19, 2010

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:_____
Carmine D. Boccuzzi
(cboccuzzi@cgsh.com)

One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Attorneys for defendant Citi Hedge Fund Services Ltd.*

Of Counsel:
  David Y. Livshiz
  Elliott C. Mogul

---

[14] New York law also requires the dismissal of plaintiffs' third-party beneficiary claim. <u>Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC</u>, 637 F. Supp. 2d 185, 191 (S.D.N.Y. 2009) (absent "clear[] evidence [of] an intent to permit enforcement by the third party," a third party beneficiary claim must fail) (citation omitted). Where, as here, "[p]laintiffs base their third-party beneficiary claims on the conclusory statement that the defendants entered into the 'contractual obligations' . . . for 'the purpose and intent to benefit the plaintiff[s],'" a third-party beneficiary claim should be dismissed. <u>Abu Dhabi Comm. Bank v. Morgan Stanley & Co.</u>, 651 F. Supp. 2d 155, 185 (S.D.N.Y. 2009) (citation omitted). Moreover, plaintiffs' claim cannot survive in the face of the Agreements' inurement and non-assignment clause. <u>See Stephenson v. Citco</u>, 09 Civ. 00716, 2010 WL 1244007, at *20 n.12 (S.D.N.Y. Mar. 31, 2010) (finding that an analogous clause "undermine[d] any argument that the contracting parties intended to benefit third parties.").

[15] New York law requires the dismissal of this quasi-contract claim because a contract governing the subject matter exists. <u>See Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N. J.</u>, 448 F.3d 573, 587 (2d Cir. 2006) ("existence of a valid and enforceable written contract governing a particular subject matter" "precludes recovery" on unjust enrichment claim).