**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE KINGATE MANAGEMENT LIMITED LITIGATION | Master File No: 09 Civ. 5386 (DAB) |
| This Document Relates to All Actions | ECF Case – Electronically Filed |

**MEMORANDUM OF LAW IN SUPPORT OF**
**KINGATE MANAGEMENT LIMITED'S MOTION TO DISMISS**

Peter R. Chaffetz
Charles J. Scibetta
CHAFFETZ LINDSEY LLP
1350 Avenue of the Americas
New York, NY 10019
(212) 257-6960

*Attorneys for Defendant Kingate*
*Management Limited*

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

I.      PRELIMINARY STATEMENT ................................................................. 1

II.     STATEMENT OF RELEVANT FACTS ...................................................... 2

        A.      The Kingate Funds .................................................................... 3

        B.      Kingate Management Limited ("KML") ........................................ 3

        C.      Plaintiffs' Allegations Against KML ........................................... 3

        D.      The Complete Terms of the Investment Documents .................... 5

III.    SUMMARY OF ARGUMENT ................................................................... 6

        A.      Applicable Law .......................................................................... 6

        B.      Summary of Grounds for Dismissal ............................................ 7

IV.     ARGUMENT ........................................................................................... 8

        A.      KML Had No Due Diligence Duty ............................................... 8

        B.      Plaintiffs Fail to Allege Scienter ............................................... 15

        C.      Plaintiffs Have No Standing to Assert the Funds' Claims ........... 17

        D.      Plaintiffs Fail to Allege Any Relationship Between Them and KML,
                Much Less Any Special Relationship ......................................... 19

        E.      Madoff's Crimes are an Intervening Cause of Plaintiffs' Losses ... 20

        F.      Plaintiffs Claims are Time-Barred and Pre-Empted .................... 21

V.      CONCLUSION ...................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Allen v. WestPoint-Pepperell, Inc.*,
   945 F.2d 40 (2d Cir. 1991)................................................................................................. 14

*Apex Oil Co. v. Belcher Co. of New York, Inc.*,
   855 F.2d 997 (2d Cir. 1988)............................................................................................... 12

*Ashcroft v. Iqbal*,
   129 S.Ct. 1937 (2009)........................................................................................................ 13

*Backus v. Connecticut Cmty. Bank, N.A.*,
   No. 09 Civ 1256, 2009 WL 5184360 (D. Conn. Dec. 23, 2009)...................................... 22

*Barron v. Igolnikov*,
   No. 09 Civ. 4471 (TPG), 2010 WL 882890 (S.D.N.Y. Mar. 10, 2010) ...................... 22, 24

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................................... 13

*Bruhl v. Kingate Mgmt Ltd.*,
   Index No. 601526/09 (N.Y. Sup. Ct. Jan. 25, 2010).......................................................... 17

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
   547 F.3d 115 (2d Cir. 2008)............................................................................................... 13

*County of Suffolk v. Long Island Lighting Co.*,
   728 F.2d 52 (2d Cir.1984).................................................................................................. 13

*CPC Int'l v. McKesson Corp.*,
   70 N.Y.2d 268 (N.Y. 1987) ............................................................................................... 24

*Cromer Fin. Ltd. v. Berger*,
   137 F. Supp. 2d 452 (S.D.N.Y. 2001)................................................................................ 20

*Cullen v. BMW of North America*,
   691 F.2d 1097 (2d Cir. 1982)............................................................................................. 20

*Dacey v. Morgan Stanley Dean Witter & Co.*,
   263 F. Supp. 2d 706 (S.D.N.Y. 2003)................................................................................ 23

*Debussy LLC v. Deutsche Bank AG*,
   No. 05 Civ. 5550 (SHS), 2006 WL 800956 (S.D.N.Y. Mar. 29, 2006) ............................ 17

*Edison Fund v. Cogent Investment Strategies Fund Ltd.*,
   551 F. Supp. 2d 210 (S.D.N.Y. 2008)................................................................................ 11

*Farash v. Continental Airlines, Inc.*,
　　574 F. Supp. 2d 356 (S.D.N.Y. 2008)..................................................................... 13

*Felton v. Morgan Stanley Dean Witter & Co.*,
　　429 F. Supp. 2d 684 (S.D.N.Y. 2006).................................................................... 23

*Fezzani v. Bear, Stearns & Co.*,
　　592 F. Supp. 2d 410 (S.D.N.Y. 2008).................................................................... 17

*Filler v. Hanvit Bank*,
　　156 Fed.Appx. 413 (2d Cir. 2005).......................................................................... 12

*Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc.*,
　　414 F.3d 325 (2d Cir. 2005)...................................................................................... 7

*Granite Partners, L.P. v. Bear, Stearns & Co.*,
　　17 F.Supp. 2d 275 (S.D.N.Y.1998)....................................................................... 24

*Gray v. Seaboard Sec. Inc.*,
　　126 Fed.Appx. 14 (2d Cir. 2005)............................................................................ 23

*Halperin v. eBanker USA.com, Inc.*,
　　295 F.3d 352 (2d Cir. 2002)................................................................................... 11

*Hausman v. Buckley*,
　　299 F.2d 696 (2d Cir. 1962)................................................................................... 17

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
　　227 F.3d 8 (2d Cir. 2000)....................................................................................... 12

*In re Ades and Berg Group Investors*,
　　550 F.3d 240 (2d Cir. 2008).................................................................................. 13

*In re First Central Fin. Corp.*,
　　377 F.3d 209 (2d Cir. 2004).................................................................................. 15

*In re Leslie Fey*,
　　918 F. Supp 749 (S.D.N.Y. 1996) ......................................................................... 14

*In re Livent, Inc. Noteholders Sec. Litig.*,
　　151 F. Supp. 2d 371 (S.D.N.Y. 2001)................................................................... 23

*In re Tremont Sec. Law, State Law and Ins. Litig.*,
　　No. 08 Civ. 11117 (TPG), 2010 WL 1257580 (S.D.N.Y. 2010)........................... 24

*In re Worldcom, Inc. ERISA Litig.*,
　　263 F. Supp. 2d 745 (S.D.N.Y. 2003)................................................................... 23

*Kingdom 5-KR-41, Ltd. v. Star Cruises Plc,*
   01-Civ-2946/7670 (DLC), 2002 WL 432390 (S.D.N.Y., Mar. 10, 2004) ............................ 23

*Kinsey v. Cendant Corp.*,
   No. 04 Civ.0582 (RWS), 2005 WL 1907678 (S.D.N.Y. Aug. 10, 2005) .............................. 13

*Kottler v. Deutsch Bank AG,*
   607 F. Supp. 2d 447 (S.D.N.Y. 2009) .................................................................................. 20

*Majer v. Sonex Research, Inc.*,
   541 F. Supp. 2d 693 (E.D. Pa. 2008) ................................................................................... 11

*Meridian Horizon Fund, LLP.  v. Tremont Group Holdings, Inc.*,
   No. 09 Civ. 3708 (TPG), 2010 WL 1257567 (S.D.N.Y. Mar. 31, 2010) ......................... 2, 24

*Merrill Lynch, Pierce, Fenner & Smith Inc., v. Dabit*,
   547 U.S. 71 (2006) ............................................................................................................... 22

*MLSMK Investments Co. v. JP Morgan Chase & Co.*,
   No. 09 Civ. 4049 (BSJ) (S.D.N.Y. Jul. 15, 2010) ................................................................ 16

*Olkley v. Hyperion 1999 Term Trust, In.*,
   90 F3d 2 (2d Cir. 1996) ........................................................................................................ 11

*S.E.C. v. Cohmad Securities Corp.*,
   No. 09 Civ. 5680 (LLS), 2010 WL 363844 (S.D.N.Y. Feb. 2, 2010) ................................... 16

*Sedona Corp. v. Ladenburg Thalmann & Co., Inc.*,
   No. 03 Civ. 3120 (LTS) (THK), 2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005) ..................... 24

*South Cherry Street, LLC v. Hennessee Group LLC*,
   573 F.3d 98 (2d Cir. 2009) ............................................................................................. 12, 16

*Stephenson v. Citco Group Ltd.*,
   No. 09 Civ. 00716 (RJH), 2010 WL 1244007 (S.D.N.Y. Apr. 1, 2010) ......................... 15, 24

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*,
   551 U.S. 308  (2007) ............................................................................................................ 15

*The Lusitania*,
   251 F. 715 (S.D.N.Y. 1918) .................................................................................................. 20

*Winne v. Equitable Life Assurance Soc. of U.S.*,
   315 F. Supp. 2d 404 (S.D.N.Y. 2003) ................................................................................... 23

**Statutes**

15 U.S.C. §§ 77(b)(1) ................................................................................................................. 23

15 U.S.C. §§ 77p(b) ................................................................................................... 9, 23

15 U.S.C. §§ 77p(f)(2) ................................................................................................... 23

15 U.S.C. §§ 78bb(f)(1) ............................................................................................ 9, 23

15 U.S.C. §§ 78bb(f)(5)(B) .............................................................................................. 23

15 U.S.C. §§ 78bb(f)(5)(E) .............................................................................................. 23

N.Y. Gen. Bus. Law § 352 ........................................................................................ 9, 25

**Rules**

F.R.C.P. 12(b)(6) ............................................................................................................ 1

Defendants Kingate Management Limited ("KML") respectfully submits this

Memorandum of Law in Support of its Motion to Dismiss the Amended Consolidated Class

Action Complaint ("Complaint") pursuant to F.R.C.P. 12(b)(6).

## I.    PRELIMINARY STATEMENT

Plaintiffs seek to hold KML responsible for Bernard Madoff's fraud.   Plaintiffs invested

in one or both of two Kingate hedge funds ("the Funds"), which in turn invested substantially all

their assets in Bernard Madoff Investment Securities LLC ("BMIS"), the purported fund

managed by Madoff.  Because of Madoff's fraud, the Funds lost their assets and Plaintiffs lost

the value of their investments in the Funds.

KML was a manager of the Funds.  Plaintiffs do not allege that KML knew that BMIS

was a fraud.  Instead, they make three basic claims against KML.  First, with respect to

misrepresentations about Madoff's business,  Plaintiffs attempt to plead fraud on the basis that

KML recklessly failed to detect Madoff's crimes.  Second, Plaintiffs also contend that KML

made false representations that it was conducting extensive due diligence efforts to protect

investors from fraud by Madoff.  Third, they contend that by failing to detect Madoff's fraud,

KML breached the duties it undertook when it made those representations.  All thirteen of the

Complaint's purported Counts against KML rely on one or more of these assertions.

The Court should dismiss the case against KML with prejudice.   Courts in this Circuit

have now repeatedly rejected fraud claims based on the same "failure to detect" theory Plaintiffs

assert here.  More fundamentally, Plaintiffs' investment documents – which provide the sole

basis for their claims – cannot reasonably be read to support the existence of the alleged due

diligence duty to detect Madoff's fraud that underlies *all* of Plaintiffs' claims against KML.  To

the contrary, the documents explicitly identified the risk of fraud arising from Madoff's role as

custodian of his fund's assets and disclaimed any due diligence duty on the part of KML to
verify Madoff's data:

> **Possibility of Fraud or Misappropriation.**  Neither the Fund nor the
> Custodian has actual custody of the assets.  Such actual custody rests with
> the Investment Advisor [*i.e.* Madoff] and its affiliated broker-dealer.
> Therefore, there is the risk that the custodian could abscond with those
> assets.  There is always the risk that the assets with the Investment
> Advisor could be misappropriated.  In addition, information supplied by
> the Investment Advisor may be inaccurate or even fraudulent.  The
> Manager [*i.e.* KML] is entitled to rely on such information (provided they
> do so in good faith) and is not required to undertake any due diligence to
> confirm the accuracy thereof.

(Compl. Ex.1 at 9).

As we show at § II below, this is only one of a series of stark disclosures, disclaimers and
warnings that investors read and subscribed to as a condition to participating in the Funds.  The
only reasonable interpretation of these documents is that Plaintiffs assumed 100% of the risk that
led to their investment losses.  They knew and agreed that KML had no duty to protect against
such loss.  Therefore, their claims against KML fail as a matter of law.  For this reason, and
based on other dispositive legal defenses set forth below, the Court should dismiss the Complaint
with prejudice as to KML.

## II.      STATEMENT OF RELEVANT FACTS

"The basic facts surrounding Madoff's fraudulent Ponzi scheme are well-known."
*Meridian Horizon Fund, LLP. v. Tremont Group Holdings, Inc.*, No. 09 Civ. 3708 (TPG), 2010
WL 1257567, at *2 (S.D.N.Y. Mar. 31, 2010).  "Through BMIS, Madoff had created the
impression that he was operating a legitimate investment advisory business, all the while
masterminding a vast $50 billion Ponzi scheme for nearly 20 years."  *Id.*

A.    **The Kingate Funds**

The Funds were two of Madoff's many victims.  Each is "an open-ended investment company organized under the laws of the British Virgin Islands."  (Compl. ¶¶ 48–49.)  Kingate Global Fund, Ltd. invested $963.45 million in BMIS, and Kingate Euro Fund, Ltd. invested $767.44 million.  (*See id.* ¶ 68.)  Those investments comprised substantially all the Funds' assets, "all of which are now lost."  (*Id.* ¶ 3.)  The Funds are in Liquidation, under the supervision of Joint Liquidators William R. Tacon and Richard E. F. Fogerty.  (Decl. of Peter Chaffetz in support of Defs.' Mot. To Dismiss ("Chaffetz Decl."),  Ex. F.

B.    **Kingate Management Limited ("KML")**

KML is a Bermuda corporation, with its principal place of business in Bermuda.  It served as Co-Manager of the Funds (with Defendant Tremont) from their inception through December 31, 2005, after which it was sole Manager.  (Compl. ¶ 25.)  KML acted pursuant to a Management Agreement ("MA") between it and each of the Funds.  (Compl. Ex. 7.)   Plaintiffs were not party to the MA.

C.    **Plaintiffs'  Allegations Against KML**

Plaintiffs allege that they made their investment decisions based on representations contained in the Information Memoranda ("IM") issued by the Funds.  They rely on the following description of KML's role under the MA:

> Pursuant to the Manager [or Co-Manager] Agreement, the Manager [or Co-Managers] **evaluates** and **monitors** the Investment Advisor and, in general, provides all necessary management services.
> ***
> The Manager [or Co-Managers] has agreed (i) to manage all aspects of the investment advisory services provided to the Fund, including the **selection** and **evaluation** of [Madoff] and (ii) to arrange for the performance of all accounting and administrative services which may be required by the Fund's operations.  The Manager [Co-Manager] Agreement authorizes the Manager [Co- Manager] to delegate responsibilities to others, subject to

> retaining responsibilities for **evaluating** and coordinating the services
> offered by others.

(Compl. ¶ 92 (emphasis supplied in Complaint)).  Plaintiffs allege that these representations led

them to believe that KML would conduct due diligence for the Plaintiffs' benefit to determine

the accuracy of information provided by Madoff.

Thus, the handful of paragraphs in the Complaint that specifically name KML attempt to

describe actionable failures by KML to detect the Madoff fraud.  (Compl. ¶ 95 ("KML and the

Kingate Defendants never independently monitored or confirmed that the represented strategy

was being executed"); ¶ 96 ("KML also failed to conduct any meaningful evaluation of Madoff's

trading performance"); ¶ 97 ("KML not only failed to monitor and evaluate Madoff but also

failed to monitor Citi Hedge and Citi Hedge's oversight over Madoff"); and ¶ 98 ("KML and Citi

Hedge failed to properly verify the prices provided by Madoff)).

Plaintiffs also include KML among the so-called "Kingate Defendants" as well as a

subset of that group which they call "the Kingate Fraud Claim Defendants."  The thrust of these

group allegations is the same as those described above.  (Compl. ¶ 77 ("*If Defendants had

verified* the pricing information . . ."); ¶ 82 ("*Defendants could have verified* . . . whether any of

those options trades existed – not a single one did"); ¶ 85 (alleging failure to disclose that "(i) *no

one had conducted meaningful due diligence*, (ii) no one was monitoring or *had independently

verified* any of Madoff's purported trading activity … (iv) they had *no independent, factual basis*

for stating that Madoff was executing a split-strike conversion strategy "); ¶ 91 ("Kingate

Defendants . . . *had not independently verified* any of Madoff's purported trading activity"); ¶ 95

("Kingate Defendants *never independently monitored*")).

The Complaint nowhere alleges that KML knew that the information provided by Madoff

was false.  To the contrary, it alleges that it did not know.  (*See, e.g.*, Compl. ¶ 98 ("KML . . .

- 4 -

failed to properly verify the prices provided by Madoff.  If they had done so, they *would have* discovered Madoff's Ponzi scheme.") (emphasis added)).

     **D.**     **The Complete Terms of the Investment Documents**

Plaintiffs  allegations rest on isolated excerpts from the IM.  KML relies on the full text of Plaintiffs' investment documents as a whole to show the  insufficiency of Plaintiffs' pleading. Here, we lay out the additional terms that are relevant to this motion.

Plaintiffs invested in the Funds by executing Subscription Agreements ("SA") that incorporated all the terms of the IM.  By signing the SA, the investors acknowledged having "received, reviewed, and understood" the IM and acknowledged that their investments were "on the terms of the Information Memorandum."  (Compl. Ex. 1 at S-4; Compl. Ex. 2 at S-4.)  The IM disclosed the following:

> CERTAIN RISK FACTORS
> . . .
> **Dependence on the Investment Advisor**.  The Manager has delegated all investment management duties with regard to USD Shares to the Investment Advisor. . . Neither the Manager nor USD Shareholders have any control over the investment and trading decisions of the Investment Advisor, and *no person should invest in the Fund unless willing to entrust all aspects of the investment management of the Fund to the selected Investment Advisor, having evaluated its capability to perform such functions*.
> . . .
> **No Manager Liability Beyond Fund Assets**.  The Manager shall have no personal liability to USD Shareholders for the return of any capital contribution, it being understood that any such return shall be made solely from the Fund assets.
>
> **Shortened Claims Period**. By subscribing for the Shares, the Shareholder is agreeing to *shortening the period during which a claim may be made* against the Fund, the Manager or the Consultant *with regard to any matter relating to such Shareholder's investment in the Fund*.  [The SAs stated this shortened period was six months.  (Ex.1 at S-11; Ex. 2 at S-11.)]
> . . .
> **Possibility of Fraud or Misappropriation**.  Neither the Fund nor the Custodian has actual custody of the assets.  Such actual custody rests with

the Investment Advisor [i.e. Madoff] and its affiliated broker-dealer.
Therefore, *there is the risk that the custodian could abscond with those
assets.  There is always the risk that the assets with the Investment Advisor
could be misappropriated.  In addition, information supplied by the
Investment Advisor may be inaccurate or even fraudulent.  The Manager
[i.e. KML] is entitled to rely on such information (provided they do so in
good faith) and is not required to undertake any due diligence to confirm
the accuracy thereof.*
. . .
**Lack of Independent Experts Representing Investors**. The Manager
has consulted with counsel, accountants and other experts regarding
formation of the Fund.  *Each prospective investor should consult his own
legal, tax and financial advisors regarding desirability of an investment in
the Fund.*

(Compl. Ex. 1 at 4–11; Compl. Ex. 2 at 5–12 (italics added).)

On signing the SAs, each Plaintiff accepted these risks and warranted that it:

- was a professional investor with "the knowledge, expertise and experience in financial matters to evaluate the risks of investing in the Fund(s)."  (Compl. Ex. 1 at S-8; Compl. Ex. 2 at S-8);

- was "aware of the risks inherent in investing in the assets proposed to be acquired by the Fund(s) and the method by which the assets of the Fund(s) are to be held and/or traded;" (*Id.*)

- could "bear the risk of loss of [their] entire investment" (*Id.*); and

- had the opportunity "to obtain any additional information necessary to verify the information contained in the [IM] . . . ." (Compl. Ex. 1 at S-9; Compl. Ex. 2 at S-9.)

## III.   SUMMARY OF ARGUMENT

### A.   Applicable Law

Except for their single claim against KML for securities fraud under Exchange Act

§10(b) and Rule 10(b)(5), all of Plaintiffs' claims are governed either by the law of the British

Virgin Islands or of Bermuda.  The SA provided that "this Agreement shall be governed and

interpreted" under BVI law.  Compl. Ex. 1, at S-11; Compl. Ex. 2, at S-11.  KML conducted its

management activities on behalf of the Funds in Bermuda.  Neither KML nor the Plaintiffs are

New York residents, and the Complaint does not allege that the parties ever dealt with each other here. Under New York's "interest analysis" for choice of law, a New York court would apply BVI law to the interpretation of the IM and SA, and might apply either BVI or Bermuda law to claims based on conduct of KML. *See Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc.*, 414 F.3d 325, 337 (2d Cir. 2005) ("The contacts of the parties and occurrences with each jurisdiction are thus factors to be considered in applying interest analysis, together with the policies underlying each jurisdiction's rules, the strength of the governmental interests embodied in these policies, and the extent to which these interests are implicated by the contacts.")

To assist the court in applying the applicable foreign legal rules, we submit the accompanying Affidavit of David Chivers Q.C., an English barrister who is qualified to provide expert evidence on both BVI and Bermuda law. ("Chivers Aff.") However, we also show below that the Complaint must be dismissed regardless of choice of law principles, because the claims against KML would also all fail under federal and New York law.

### B.  <u>Summary of Grounds for Dismissal</u>

Plaintiffs attempt to allege 13 different Counts against KML. Each of these Counts fails for a combination of interrelated and overlapping reasons.

*First*, the investment documents' disclaimer of due diligence obligations by KML negates at least one essential element of every claim.

*Second*, Plaintiffs' federal and common law fraud claims fail because Plaintiffs have not alleged the required scienter.

*Third*, Plaintiffs' claims for breach of fiduciary duty, negligence, gross negligence, constructive fraud, third-party beneficiary breach of contract, constructive trust, mutual mistake

and unjust enrichment must be dismissed because they are all derivative in nature and barred by either the "proper plainitff" or the "reflective loss" doctrines under BVI law.

*Fourth*, Plaintiffs' claims for negligent misrepresentation, gross negligence, breach of fiduciary duty, constructive trust and unjust enrichment all fail because plaintiffs fail to allege the special relationship that is essential to support these claims. The terms of the IMs specifically negate the existence of any such relationship, and none of the jurisdictions of the BVI, Bermuda, or New York would recognize a special relationship under these circumstances.

*Fifth*, Plaintiffs cannot establish proximate cause because Madoff's criminal acts broke any chain of causation between KML's conduct and the Plaintiffs' losses.

*Sixth*, even if Plaintiffs could plead a *prima facie* case under any of their theories, three independent defenses would still require dismissal of Plaintiffs' claims with prejudice:  (i) Plainitffs' claims are time-barred under the limitations period that Plaintiffs agreed to in the investment documents; (ii) the Securities Litigation Uniform Standards Act ("SLUSA") pre-empts all claims, except for the federal securities fraud claims, from being brought as a class action, 15 U.S.C. §§ 77p(b), 78bb(f)(1); and (iii) the Martin Act (New York's blue sky law) pre-empts all non-fraud claims from being asserted in New York in any fashion, class action or not. N.Y. Gen. Bus. Law § 352 *et seq.*

## IV.    ARGUMENT

### A.    KML Had No Due Diligence Duty

#### 1.    The Terms of the Investment Documents Negate Plaintiffs' Allegations of Reliance on KML Representations

All claims against KML fail as a matter of law because they hinge on an incorrect and unreasonable reading of the investment documents that Plaintiffs say they relied on. The plain

terms of the IM and SA establish as a matter of law that Plaintiffs had no right to expect KML to conduct due diligence to protect them from Madoff's fraud.

Plaintiffs' allegations regarding broad due diligence duties owed by KML rest on a narrow base:  the statement in the IMs that "the Manager [or Co-Managers] **evaluates** and **monitors** the Investment Advisor and, in general, provides all necessary management services." (Compl. ¶ 92. (emphasis supplied in Complaint)).  But that statement does not by its terms say that KML will conduct due diligence to root out Madoff fraud.  And the rest of the document together with the SA makes clear that, whatever the scope of KML's duty to "evaluate" and "monitor," it did not include any due diligence obligations.

As laid out above, the IM presents a detailed description of "Certain Risk Factors" presented by investment in the Funds and plainly informed investors that they were responsible for conducting their own due diligence and risk assessment with respect to Madoff.  (Compl. Ex. 1 at 4–11; Compl. Ex. 2 at 5–12.)  It made expressly clear that "*no person should invest in the Fund unless willing to entrust all aspects of the investment management of the Fund to the selected Investment Advisor, having evaluated its capability to perform such functions.*"  (Compl. Ex. 1 at 4; Compl. Ex. 2 at 6 (emphasis added).)  It further disclosed that the Manager did not retain experts on behalf of investors and directed them to engage their own and that  "each prospective investor *should consult his own legal, tax and financial advisors regarding desirability of an investment in the Fund*."  (Compl. Ex. 1 at 10; Compl. Ex. 2 at 11.) (emphasis added.)

The  IM specifically highlighted the risk of fraud arising from Madoff's role as custodian of all invested assets, explaining that Madoff "could abscond with those assets" and that he could provide false data to cover up his fraud.  (Compl. Ex. 1 at 9; Compl. Ex. 2 at 10.)  It assigned that

risk to the investors through its blunt disclaimer of any due diligence duty on the part of KML.

After explicitly warning  that "information supplied by the Investment Advisor may be

*inaccurate or even fraudulent*," it then disclaimed, in the plainest of words, the precise due

diligence duty on which Plaintiffs attempt to build their case: "The Manager is entitled to rely on

such information (provided they do so in good faith) and is *not* required to undertake *any due*

*diligence* to confirm the accuracy thereof."  (*Id.* (emphasis added).)

Two additional terms further confirmed that investors could not rely on KML for due

diligence.  First, the IM provided that the "Manager shall have *no personal liability* to the

[investors] for the return of any capital contributions."  (Compl. Ex. 1 at 8; Compl. Ex. 2 at 9

(emphasis added).)  Second, it required investors to agree to a "Shortened Claims Period" for

bringing any claims against the Funds or its directors or the Manager, which the SA stated to be

six months.  (Compl. Ex. 1 at 8, S-11; Compl. Ex. 2 at 9, S-11.)

When they executed the SA, which was attached to the IM and incorporated its terms,

Plaintiffs read and accepted all of these terms.  Specifically, each investor acknowledged having

"received, reviewed, and understood" the terms of the IM and acknowledged that their

investments were "on the terms of the Information Memorandum."  (Compl. Ex. 1 at S-4;

Compl. Ex. 2 at S-4.)   Each investor further warranted that it had "the knowledge, expertise and

experience in financial matters to evaluate the risks of investing in the Fund(s)."  (Compl. Ex. 1

at S-8; Compl. Ex. 2 at S-8.) and that it "had and understood all information necessary to make

its investment decisions . . . ." (Compl. Ex. 1 at S-9; Compl.  Ex. 2 at S-9.)

**2.      Applicable Case Law Recognizes the Effectiveness of
the IM Disclaimers**

As the Second Circuit made clear in *Halperin v. eBanker USA.com, Inc.,* 295 F.3d 352,

357 (2d Cir. 2002), where offering materials contain sufficient cautionary language to enable

investors to assess a risk, alleged misrepresentations relating to that risk are:

> *immaterial as a matter of law* because it cannot be said that any
> reasonable investor could consider them important in light of adequate
> cautionary language set out in the same offering.

295 F.3d 352, 357 (2d Cir. 2002) (emphasis added.)   Therefore, the court stated, a claim should

be dismissed when disclosures are such that, considering "the total mix of information," no

"*reasonable investor* could have been misled into thinking that the risk that materialized and

resulted in his loss did not actually exist." *Id.* at 359.  *Accord, Olkley v. Hyperion 1999 Term

Trust, In.,* 90 F3d. 2, 5 (2nd Cir. 1996) (noting that "prominent and specific cautionary language"

will not be disregarded as "boilerplate,"and finding no fraudulent misrepresentation where a

prospectus "warn[ed] investors of exactly the risk the plaintiffs claim was not disclosed" );

*Edison Fund v. Cogent Investment Strategies Fund Ltd.,* 551 F. Supp. 2d 210, 223 (S.D.N.Y.

2008)(*quoting Halperin* at 357).

The court in *Majer v. Sonex Research, Inc.*, 541 F. Supp. 2d 693 (E.D. Pa. 2008), applied

this principle to dismiss securities fraud and related state claims on analogous facts.  There,

sophisticated investors in a risky venture sued when the venture failed.  After reviewing the

disclosure of risk in the offering document, the court held that the plaintiffs' loss was caused by

the materialization of risk that had been specifically disclosed to and accepted by the plaintiff.

The Court stated:

> These specific warnings, which the plaintiffs warranted they had read and
> understood when they signed their subscription agreements, make it
> impossible for the plaintiffs to establish, on the facts alleged in the
> amended complaint, that the defendants caused their economic losses. The

> plaintiffs decided to invest despite these warnings, and their economic
> losses are theirs to bear.

*Id.* at 712.

Those words apply with equal force to this case.  Plaintiffs knew of and accepted the risk of Madoff's fraud.  They also knew and accepted that KML was not performing due diligence to protect them from that risk.  The disclaimers and warnings of the IM require dismissal with prejudice of both the federal securities law claims and all the common law claims, which are just Plaintiffs' attempt to repackage the same core allegations.

### 3. The Due Diligence Disclaimer Negates At Least One Element Of Every Claim Alleged Against KML

*Counts 1 – 4, 8, 29 (common law fraud, negligent misrepresentation, constructive fraud, securities fraud).*  Each of these claims requires as an essential element that the complaint allege a false representation relied on by the Plaintiffs.  *See Filler v. Hanvit Bank*, 156 Fed.Appx. 413, at *3 (2d Cir. 2005) (common law fraud); *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000) (negligent misrepresentation); *Apex Oil Co. v. Belcher Co. of New York, Inc.*, 855 F.2d 997, 1008 (2d Cir. 1988) (constructive fraud); *South Cherry Street, LLC v. Hennessee Group LLC*, 573 F.3d 98, 108 (2d Cir. 2009) (securities fraud).  Plaintiffs try to meet these requirements by alleging that KML falsely represented that it would conduct due diligence, and that they relied on the IM representations concerning the legitimacy of Madoff's operations because they believed that KML was conducting such due diligence.  (*See, e.g.*, Compl. ¶¶ 242, 248, 256, 263, 285, 399.)  However, the terms of the IM and SA establish that KML did not represent that it would conduct such due diligence and that Plaintiffs assumed the risk of fraud and the obligation to perform their own due diligence.  Moreover, KML never represented anything. Only the Funds did. Plaintiffs fraud and negligent misrepresentation claims also must fail for this reason.

- 12 -

*Counts 5 – 7, 11 (gross negligence, negligence, breach of fiduciary duty and constructive trust).* All of these claims, including constructive trust, hinge on the existence of a duty on the part of KML to conduct due diligence on Plaintiffs' behalf.  *See Farash v. Continental Airlines, Inc.*, 574 F.Supp.2d 356, 367-68 (S.D.N.Y. 2008) (negligence and gross negligence); *Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 547 F.3d 115, 134 (2d Cir. 2008) (breach of fiduciary duty); *In re Ades and Berg Group Investors*, 550 F.3d 240, 245 (2d Cir. 2008) (constructive trust).  Plaintiffs allege that KML breached such duties by failing "to take adequate steps to confirm" information provided by Madoff.  (*See, e.g.*, Compl. ¶¶ 270, 275, 282.)  Again, because the governing investment documents disclaim the assumed duty, these claims also fail.[1]

  *Count 9 (third-party breach of contract).*  This claim requires a contract between two parties other than the Plaintiffs that is nevertheless intended to benefit the Plaintiffs.  *See County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 63 (2d Cir.1984).  Even if the facts alleged otherwise satisfied the pleading requirements for a claim as a third-party beneficiary of the Funds' MAs with KML, the disclaimers and warnings make clear that KML's duties did not include the alleged duty to "monitor Madoff's performance and adherence to the split-strike conversion strategy."  (Compl. ¶ 297.)

---

[1]  We note here two additional bases to dismiss the gross negligence and unjust enrichment counts (in addition to those we discuss at Sections B and C, below).  The Chivers Affidavit explains that there is no cause of action for gross negligence under BVI law.  And plaintiffs have failed to plead one as a matter of New York law.  Plaintiff's count for gross negligence merely recasts their negligence claim by appending a "gross negligence" label and reciting the elements of "gross negligence."  Such conclusory allegations fail under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) and *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).  Courts in this district have routinely dismissed allegations of gross negligence when the allegations of negligence have been merely re-cast as allegations of gross negligence.  *See, e.g.*, *Kinsey v. Cendant Corp.*, No. 04 Civ.0582 (RWS), 2005 WL 1907678, at *7, (S.D.N.Y. Aug. 10, 2005) ("The conclusory allegation that Defendants acted recklessly and/or with conscious disregard does not meet the standard required to adequately plead a gross negligence claim.") (internal citations omitted).  As to constructive trust, Plaintiffs actually seek a constructive trust as a remedy for alleged breach of fiduciary duty (*see* Compl. ¶ 304) and thus it should not stand as a separate Count.

*Count 12 (Mutual Mistake)*.  A claim of mutual mistake requires a shared mistaken understanding that renders a parties' contract voidable due to a total failure of consideration.  *See Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 46 (2d Cir. 1991).   This claim fails for the threshold reason that there is no contract between Plaintiffs and KML, much less one founded on mutual mistake.  (*See, e.g.*, Exs. 1, 2 at S-4–S-7 (SA is between the Funds and each individual subscriber; KML is not a party).)   But even if Plaintiffs could overcome that hurdle, there is no *mutual* mistake as a legal matter.  Because KML expressly disclaimed any obligation to verify the accuracy of Madoff's information, the Plaintiffs alone assumed the risk of inaccuracies in information provided by Madoff.[2]

*Count 28 (Unjust Enrichment)*.  Plaintiffs "restate and reallege" all prior allegations to support Count 28, including those concerning KML's alleged misrepresentations concerning and failure to perform due diligence.  (Compl. ¶ 392.)  Then, they allege that KML's performance was "so far below the applicable fiduciary and business standards that Plaintiffs . . . involuntarily conferred a benefit upon Defendants without . . . receiving adequate benefit or consideration in return."  (*Id.* ¶ 394.)  This general allegation can only refer to the repeated allegations concerning the failure of due diligence, as that is the only basis alleged throughout the complaint for culpability of KML.  Therefore, this claim adds nothing to the ones that

---

[2]   The mutual mistake claim fails for the additional reason that a mutual mistake as to the *value* of a contract is not actionable.  *See In re Leslie Fey*, 918 F. Supp 749, 771 (S.D.N.Y. 1996) ("The parties, however, were not mistaken as to the subject of their exchange (stock in Leslie Fay).  They were only mistaken as to the proper valuation of the securities.  *Mutual mistake in valuation does not warrant restitution*.") (emphasis added).

precede it and fails for the same reason.  Plaintiffs' manifest objective when they invested in the

Funds was access to Madoff.  That is what they got.[3]

### B.   Plaintiffs Fail to Allege Scienter

To the extent that Plaintiffs' fraud claims rely on misrepresentations concerning the

nature of Madoff's operations, they fail for the independent reason that Plaintiffs have not

sufficiently pled scienter.

The Supreme court held in *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, that to survive a

motion to dismiss, a complaint for securities fraud must allege facts that support an inference of

fraud that is "*at least as compelling as any opposing inference of nonfraudulent intent*." 551 U.S.

308, 314  (2007) (emphasis added.)  Stated otherwise, the facts alleged must *support* a

reasonable conclusion that fraudulent intent is "more likely than not." *Id.* at 329.

Here, Plaintiffs do not allege that KML knew that the information about Madoff's

operations and strategy as reported in the IM's was inaccurate.  Therefore, as in previous Madoff

cases, they attempt to establish scienter based on *KML's* failure to detect the Ponzi scheme.  In

support of that theory, the Complaint identifies six purported red flags which, it says, should

have led KML to discover the true facts.  (*See* Compl. ¶¶ 215-22.)

However, courts in this circuit have already rejected similar "red flag" allegations as a

basis for establishing scienter in other Madoff-related cases.  *See Stephenson v. Citco Group

Ltd.*, No. 09 Civ. 00716 (RJH), 2010 WL 1244007, at *17-20 (S.D.N.Y. Apr. 1, 2010)

(dismissing claims based on alleged "red flags" that included Madoff's serving as custodian of

---

[3]     Further, if, as Plaintiffs allege, they had enforceable rights against KML under the IM and SA, then the
existence of that contract further precludes Plaintiffs' claims for unjust enrichment and constructive trust.
Claims for unjust enrichment and constructive trust are quasi-contractual claims.  *See, e.g., In re First
Central Financial Corp.*, 377 F.3d 209, 213–14 (2d Cir. 2004) ("A quasi or constructive contract . . . is an
obligation which the law creates*, in the absence of any agreement* . . . .") (internal citation and quotation
marks omitted).  "[T]his principle has become formalized into a rule that generally bars a finding of unjust
enrichment in the face of *a valid and enforceable written agreement*." *Id.* (emphasis added).

invested assets, use of a little known auditor, use of paper trading tickets, and consistently high returns were all insufficient to put defendants on notice of fraud); *S.E.C. v. Cohmad Securities Corp.*, No. 09 Civ. 5680 (LLS), 2010 WL 363844, at *3-4 (S.D.N.Y. Feb. 2, 2010) (finding no inference of scienter despite defendant's sharing of office space with BMIS, their favorable commission-based compensation structure, Madoff's insistence on secrecy and consistent success); *MLSMK Investments Co. v. JP Morgan Chase & Co.*, No. 09 Civ. 4049 (BSJ) (S.D.N.Y. Jul. 15, 2010) (declining to find scienter based on BMIS's consistent high returns, the implausibility of certain reported results, and defendants' knowledge of "unusual activity" in BMIS's account).

The reasoning of these cases follows that of the Second Circuit in *South Cherry Street, LLC v. Hennessee Group LLC,* 573 F.3d 98 (2d Cir. 2009).  In contrast to this case, the defendant in *South Cherry* actually was plaintiffs' investment advisor, and it had "extolled" its "industry leading due diligence" procedures underlying each of its investment recommendations as including "five levels of scrutiny."  *Id.* at 100.  In fact, the *South Cherry* defendant performed no due diligence, and one of its recommended investments turned out to be a Ponzi scheme. Nonetheless, the court held that the "red flags" alleged in that case did not support an inference of fraudulent intent because, "nowhere in the Complaint is there any allegation that [defendant] had knowledge that any representation it made as to the records or circumstances of [the perpetrator of the fraud] was untrue."  *Id.,* at 112.  As here, the complaint in *South Cherry* was "replete with allegations that [defendant] '*would*' have learned the truth as to those aspects of the Bayou  funds if [defendant] *had* performed the 'due diligence' it promised."  *Id.* (emphasis added) (quotation marks in original).  That was not sufficient to infer fraudulent intent.  *Id.* at 114.

The same reasoning forecloses Plaintiffs' common law fraud claims.  In the Second Circuit, "elements of common law fraud are essentially the same as those which must be pleaded to establish a claim under [Exchange Act] § 10(b) and Rule 10b-5." *Fezzani v. Bear, Stearns & Co.*, 592 F.Supp.2d 410, 423 (S.D.N.Y. 2008).

### C.  Plaintiffs Have No Standing to Assert the Funds' Claims

In Counts 5–9, 11-12 and 28, Plaintiffs allege injuries said to arise not from misrepresentations made directly to them, but from the loss of value of their shares in the Funds allegedly caused by breaches of duty and management failures by KML.  Plaintiffs lack standing to assert such claims.  Despite Plaintiffs' conclusory assertion that KML owed these duties directly to them, it is plain from the facts alleged that any duty that existed was owed by KML to the Funds.  Moreover, even if KML did owe Plaintiffs a duty that was co-terminus with a duty owed the Funds, Plaintiffs still could not sue for breach of the duty owed them because the "Reflective Loss Principle" bars such claims under BVI law.  Such claims belong to the Funds, not to Plaintiffs.

### 1.  BVI Law Controls

New York courts determine questions of shareholder standing, "that is, whether claims should be brought directly or derivatively," by reference to the law of the fund's state of incorporation.  *See Debussy LLC v. Deutsche Bank AG*, No. 05 Civ. 5550 (SHS), 2006 WL 800956, at *3 (S.D.N.Y. Mar. 29, 2006); *see also Hausman v. Buckley,* 299 F.2d 696, 702–03 (2d Cir. 1962) (holding that New York adheres to the 'internal affairs' rule).

A New York state court has already determined that BVI law applies to questions regarding the corporate affairs of these Funds.  *See Bruhl v. Kingate Mgmt Ltd.,* Index No. 601526/09 (N.Y. Sup. Ct. Jan. 25, 2010) (Chaffetz Decl. Ex. E).  There the court dismissed a

derivative action based on claims virtually identical to those asserted here because BVI law, BCA §184(c), requires a shareholder plaintiff to obtain the permission of the BVI High Court before bringing derivative claim on the Funds' behalf.  *Id.*

### 2.   BVI Law Bars Plaintiffs from Asserting Claims that Belong to the Funds and their Liquidators

The accompanying Affidavit of David Chivers Q.C. makes clear that under BVI law claims for injuries to a shareholder derived from injuries to the corporation belong solely to the corporation.  Plaintiffs therefore lack standing to assert them.  (Chivers Aff. ¶¶ 14–16 (citing *Foss v. Harbottle*, (1843) 2 Hare 461, 490).)

Today, the only proper plaintiffs to assert any claim that KML breached duties to the Funds are the joint liquidators whom the BVI court has appointed and given exclusive authority to bring this type of claim.  As one of the co- Liquidators, William Tacon, explained in his affidavit to the court in *Bruhl:*

> [p]otential claims that the company may have are part of the company's assets, and under BVI law, the liquidator is charged with assessing and pursuing such claims as appropriate . . . . [N]o person other than the liquidator may cause the company to bring proceedings, or commence or proceed with any action or proceeding 'in relation to its assets.'"

(Chaffetz Decl. Ex. F at ¶ 12, (*citing* BVI Insolvency Act § 174(1)).)

As an independent bar to these claims, BVI courts apply the Reflective Loss Principle, which bars shareholders from asserting claims "when the loss suffered by the shareholder as a result of the diminution of the value of their shares is merely reflective of the loss suffered by the company."  (Chivers Aff. ¶ 21; *see also Id.* at 21–28.)  Mr. Chivers explains that this limitation on shareholder actions depends solely on the nature of the damage incurred and not upon whether the corporation itself intends to pursue the claim.  (*Id.* ¶ 20.)  He explains that this

principle would independently lead the BVI court to "strike out" Counts 5–7, 9–12, and 28.  *See Id.* ¶¶ 35-38 (Counts 5–7); ¶¶ 40-43 (Counts 9–12); ¶ 44 (Count 28).

> **D.    Plaintiffs Fail to Allege Any Relationship Between Them and KML,
> Much Less Any Special Relationship**

Several of Plaintiffs' claims rely on the allegation that a special relationship existed between KML and the Plaintiffs.  These claims include: negligent misrepresentation (Counts 3 and 4), gross negligence (Count 5), breach of fiduciary duty (Count 7), constructive fraud (Count 8), constructive trust (Count 11), and unjust enrichment (Count 28).  Plaintiffs, however, fail to plead facts sufficient to establish such a relationship.

The specific disclaimers and warranties in the investment documents negate Plaintiffs' conclusory allegations that such a special relationship existed.  For example, the Plaintiffs allege that a special relationship existed based on the Kingate Defendants' "unique or special expertise with respect to investments generally and Madoff's investments in particular."  (Compl. ¶ 255).  But, the specific terms of the investment documents negate that allegation by, *inter alia,* making clear that plaintiffs warranted that they were investment professionals with "the knowledge, expertise and experience in financial matters to evaluate the risks of investing in the Fund(s)" and that they were fully "aware of the risks inherent in investing in the assets proposed to be acquired by the Fund(s) and the method by which the assets of the Fund(s) are to be held and/or traded." (discussed, at p. 6, *supra*).  The terms of the investment documents also make clear that there were no "independent experts representing the investors."  *Id.*

The Plaintiffs also allege that KML had a special relationship as "investment advisors, managers and placement agents," (Compl. ¶ 269), but the terms of the investment documents made clear that Madoff, not KML was the investment advisor *and that KML had delegated all investment responsibilities to Madoff with the Plaintiffs' full knowledge and acceptance*.  These

disclosures made clear that Plaintiffs were to rely on Madoff, not KML.  (*See* p. 5, *supra*) (citing disclosure concerning "Dependence on the Investment Advisor").  *See, e.g., Kottler v. Deutsch Bank AG*, 607 F. Supp. 2d 447, 465 (S.D.N.Y. 2009) (holding that reasonable reliance is required to establish a special relationship).

Finally, the accompanying affidavit of David Chivers establishes that the allegations of the Complaint fail to state the basis for any relationship between KML and the Plaintiffs under controlling BVI or Bermuda law, much less a special relationship to support these particular causes of action.  (*See* Chivers Aff. at ¶¶ 86–87.)

**E.      Madoff's Crimes are an Intervening Cause of Plaintiffs' Losses**

Even if Plaintiffs were correct about the existence and breach of any duty by KML, their claims based on such duties still fail because Madoff's fraud was an "independent illegal act" that cut off the chain of causation.  No breach of duty by KML was the proximate cause of Plaintiffs' loss unless it was reasonably foreseeable to KML that its conduct would facilitate that crime.  *See Cullen v. BMW of North America*, 691 F.2d 1097, 1101 (2d Cir. 1982) (holding defendants' breach of duty did not cause plaintiff's loss where it was not foreseeable that a third party criminal would abscond with plaintiff's money).  This long-established rule [4] controls here.  It clearly was not foreseeable to KML or to Plaintiffs or to any of Madoff's thousands of victims, that one of the most successful and respected investment advisors in the world was reasonably likely to steal their money, much less that he was operating the largest, most complex Ponzi scheme in history.

---

[4]     *See, e.g.,  Cromer Fin. Ltd. v. Berger*, 137 F.Supp. 2d 452, 471 (S.D.N.Y. 2001) ("[defendants'] conduct was not a proximate cause of the Ponzi scheme."); *The Lusitania*, 251 F. 715, 732 (S.D.N.Y. 1918) (defendant's conduct "cannot be the proximate cause of the loss or damage, if an independent illegal act of a third party intervenes to cause the loss"  ).

Importantly, the IM's disclosure concerning fraud does not establish that fraud was reasonably foreseeable.  Plaintiffs concede this when they allege that the disclaimer simply reflects the "truism" that the risk of fraud existed.  (Compl. ¶ 103.)  The evident purpose of the disclaimer was not to warn that fraud was likely; it was to make clear that investors understood and assumed that risk (even if it seemed to be remote) and that they were not relying on KML to protect against it.

### F.     Plaintiffs Claims are Time-Barred and Pre-Empted.

#### 1.     Plaintiffs' Claims Are Time-Barred

Plaintiffs agreed to a six-month limitations period for asserting claims.  (S*ee* p. 6, *supra*). Every operative fact alleged in the Complaint occurred more than six months before Plaintiffs first filed suit on June 9, 2009.  Plaintiffs allege:

- The Funds opened accounts with Madoff in March 1994 (Kingate Global) and May 2000 (Kingate Euro) (Compl. ¶¶ 48–49);

- Plaintiffs purchased shares in the Funds between July 1997 and November 2008 (Compl. ¶¶ 15–23);

- "Key Kingate Defendants" (which do not include KML) made contact with Madoff between May 2005 and September 2008 (Compl. ¶ 73);

- The Kingate Defendants failed to discover inaccuracies in account statements issued by Madoff between October 2003 and January 2008; (Compl. ¶¶ 78–81); and

- The Kingate Defendants "drafted, reviewed, authorized or otherwise participated in the preparation and dissemination of the Information Memoranda" issued between 2000 and 2008 – the latest of which is dated 6 October, 2008 (Compl. ¶ 89–92; Compl. Ex. 1; Compl. Ex. 2).

It is the occurrence of these facts, not Plaintiffs' discovery of their loss, that triggers the contractual limitation period.  Thus, Plaintiffs' claims are time-barred.

### 2.      SLUSA Pre-empts All State Claims

The Securities Litigation Uniform Standards Act ("SLUSA") prevents plaintiffs from

evading federal securities law reforms by resorting to state courts and state law claims pursued in

federal courts.  *See Merrill Lynch, Pierce, Fenner & Smith Inc., v. Dabit*, 547 U.S. 71, 81 (2006)

(SLUSA "represents Congress' effort to curb these perceived abuses.")  By its terms, SLUSA

mandates dismissal of (1) any covered class action, (2) based on state or local law, (3)

concerning a covered security, (4) alleging material misrepresentation or omission or use of a

manipulative device or contrivance in connection with the purchase or sale of that security.  15

U.S.C. §§ 77p(b); 78bb(f)(1).

The Complaint falls squarely within SLUSA's four requirements.  Because Plaintiffs

purport to sue on behalf of more than 50 similarly situated investors and their first 28 Counts are

state law claims the first two SLUSA requirements require no analysis.  This is a "Covered Class

Action" based on state law.  15 U.S.C. §§ 78bb(f)(5)(B), 77p(f)(2).

The Complaint also concerns a "Covered Security," which SLUSA defines as any

security that is listed or authorized for listing on the NYSE or another national exchange.  15

U.S.C. §§ 77(b)(1), 78bb(f)(5)(E).  While the shares that Plaintiffs bought in the Funds are not

themselves covered securities, Plaintiffs' claims arise from Madoff's purported purchase and sale

S&P 100 stocks and options (Compl. ¶ 57), which indisputably are "covered securities."  Prior

Madoff-related decisions that reflect this analysis include, *Backus v. Connecticut Cmty. Bank,*

*N.A.,* No. 09 Civ. 1256, 2009 WL 5184360, at *4–5 (D. Conn., Dec. 23, 2009 ("the individual

securities fraudulently represented to be bought, sold, and held by the [Madoff] entities are

covered securities"); and *Barron v. Igolnikov*, No. 09-Civ-4471 (TPG), 2010 WL 882890, at *5

(S.D.N.Y. Mar. 10, 2010) (even though plaintiffs themselves did not purchase covered securities,

SLUSA applies because Madoff's fraud "was in connection with the trading in the nationally listed securities in which Madoff claimed to be engaged").

Finally, it is equally clear that all of Plaintiffs' state law claims meet the fourth SLUSA requirement – that they involve allegations of material misrepresentation in connection with the sale of a covered security.  To prevent plaintiffs from evading SLUSA through artful pleading, courts must delve into the substance of plaintiffs' claims to determine whether preemption is required.  *See Felton v. Morgan Stanley Dean Witter & Co.*, 429 F. Supp. 2d 684, 692 (S.D.N.Y. 2006).  Courts have routinely applied SLUSA preemption to dismiss state law claims, even those which do not intrinsically require proof of fraud or misrepresentation, where those claims are intertwined with securities claims.[5]  That Plaintiffs' claims are all intertwined with securities claims is clear here.  As shown in Section II, *supra*, every Count relies in some way on the allegation that KML represented in the IM that it would conduct due diligence to root out the Madoff fraud.  Plaintiffs implicitly acknowledge this because they expressly incorporate misrepresentation claims into each Count of the Complaint.

---

[5]   *See, e.g., Gray v. Seaboard Sec. Inc.,* 126 Fed.Appx. 14, 17 (2d Cir. 2005) (breach of contract and negligence claims preempted where based on alleged misrepresentation regarding source of investment advice); *Dacey v. Morgan Stanley Dean Witter & Co.,* 263 F.Supp.2d 706, 710-11 (S.D.N.Y. 2003) (breach of contract claim preempted where operative allegations focused on defendant's misrepresentations  and breach of disclosure duties concerning investment research); *In re Worldcom, Inc. ERISA Litig.*, 263 F. Supp. 2d 745, 770-72 (S.D.N.Y. 2003) (SLUSA preempts negligence claim where plaintiff alleged that defendant auditor misrepresented value of stock); *Winne v. Equitable Life Assurance Soc. of U.S.,* 315 F.Supp.2d 404, 415-17 (S.D.N.Y. 2003) (claims of violation of N.Y. statutory deceptive business practices, breach of contract, unjust enrichment all preempted where plaintiff alleged defendant insurer's misrepresentation or omission regarding penalty withdrawal period); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F.Supp.2d 371, 442-43 (S.D.N.Y. 2001) (negligence claim preempted where grounded on misrepresentation in documents in connection with sale of notes; tortious interference with contract claim preempted where based on defendant's scheme to avoid change-of-control provision triggering purchase of note); *Kingdom 5-KR-41, Ltd. v. Star Cruises Plc,* 01-Civ-2946/7670 (DLC), 2002 WL 432390, at *3 (S.D.N.Y., Mar. 10, 2004) (unjust enrichment claim dismissed where plaintiff alleged misrepresentation in tender offer for shares).

### 3.     The Martin Act Preempts the Non-Fraud Claims

New York's Martin Act, N.Y. Gen. Bus. Law §§ 352, et seq. (McKinney 2009), preempts

all of Plaintiffs' state law claims that do not require proof of fraudulent intent.  *See Granite*

*Partners, L.P. v. Bear, Stearns & Co.*, 17 F.Supp. 2d 275, 291 (S.D.N.Y.1998) ("It is well

established that there exists no private right of action for claims that are within the purview of

the Martin Act."); s*ee also CPC Intl. v. McKesson Corp*., 70 N.Y.2d 268, 275–77 (N.Y. 1987)

("[T]here is no implied private cause of action for violations of the antifraud provisions of the

Martin Act . . . ").  These claims relate to transactions that are "within or from" New York for

purposes of the Martin Act, because Plaintiffs allege that a substantial portion of the events

giving rise to their claims occurred in New York. *See, e.g., Sedona Corp. v. Ladenburg*

*Thalmann & Co., Inc.*, No. 03 Civ. 3120(LTS) (THK), 2005 WL 1902780, at *22 (S.D.N.Y.

Aug. 9, 2005) (applying Martin Act where Complaint alleged proper venue in New York based

on a substantial part of the events or omissions giving rise to the claims having occurred in the

Southern District of New York").

Every case involving a Madoff feeder fund decided in this district has dismissed all non-

fraud causes of action as preempted by the Martin Act.  *See Stephenson v. Citco Group Limited*,

No. 09 CV 00716 (RJH), 2010 WL 1244007, at *13 (S.D.N.Y. 2010) (breach of fiduciary duty,

negligence, gross negligence, and aiding and abetting breach of fiduciary duty); *Meridian*

*Horizon Fund, LLP v. Tremont Group Holdings, Inc.*, No. 09 Civ. 3708(TPG), 2010 WL

1257567, at *8 (S.D.N.Y. 2010) (negligence); *In re Tremont Sec. Law, State Law and Ins. Litig.*,

No. 08 Civ. 11117 (TPG), 2010 WL 1257580, at *7 (S.D.N.Y. 2010) (aiding and abetting breach

of fiduciary duty, negligent misrepresentation, and breach of fiduciary duty); *Barron v.*

*Igolnikov*, No. 09-Civ-4471 (TPG), 2010 WL 882890, at *5 (S.D.N.Y. Mar. 10, 2010) (breach of

fiduciary duty, aiding and abetting breach of fiduciary duty, gross negligence, and unjust enrichment).

## V.   <u>CONCLUSION</u>

For the reasons stated herein, all claims alleged against Defendant KML should be dismissed with prejudice.

Dated:       New York, New York
             July 19, 2010

Respectfully submitted,

By  /s/ Peter R. Chaffetz_____
Peter R. Chaffetz
(peter.chaffetz@chaffetzlindsey.com)
Charles J. Scibetta
(charles.scibetta@chaffetzlindsey.com)
CHAFFETZ LINDSEY LLP
1350 Avenue of the Americas
New York, New York 10019
(212) 257-6960

*Attorneys for Defendant Kingate*
*Management Limited*