**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | |
|---|---|
| **IN RE KINGATE MANAGEMENT** : | **Master File No. 09 Civ.5386** |
| **LIMITED LITIGATION** : | **(DAB)** |
| : | |
| : | **CDF Case** |
| **This Document Relates to: All Actions** : | **Electronically Filed** |

------------------------------------------------------------x

---

## DECLARATION OF MARK A C DIEL

---

I, **MARK A C DIEL** of Marshall Diel & Myers, "Sofia House", 48 Church Street, Hamilton HM 12, Bermuda hereby declare as follows:

1.　　I am a partner in the Bermuda firm of Marshall Diel & Myers and the head of the litigation department of the firm. I have an LL.B from the University of Buckingham in the United Kingdom (1984) and was called to the Bar of England and Wales in 1984. I was called to the Bermuda Bar in 1985. A copy of my curriculum vitae is appended hereto at **Tab 1**.

2.　　I have been instructed by Plaintiffs to express my opinion in relation to statements made in the declaration of George Bompas, Q.C. with respect to the law of the United Kingdom as applied in Bermuda and to address certain local aspects of Bermuda law which are unique to the jurisdiction. In my opinion, the statements expressed by Mr. Bompas concerning English common law accurately represent the common law of Bermuda where Bermuda common law parallels English common law.

My declaration is limited to responding to the statements with respect to Bermuda law that are set forth in the declaration of Narinder K. Hargun dated 19 July 2010 which was submitted in connection with the Motions to Dismiss filed by Tremont (Bermuda) Limited and Tremont Group Holdings, Inc, recognizing, however, that my analysis and conclusions may have broader relevance to the arguments made by the other defendants as to Bermuda law.

**Qualifications as an expert witness**

3.  Since my call to the Bermuda Bar in 1985, I have specialized in commercial litigation, including insolvency and insurance and reinsurance litigation. I have advised on numerous occasions on the issue of officers' and directors' duties under Bermuda law.

**Documents reviewed for the purposes of this Declaration**

4.  For the purposes of this Declaration, I have been asked to review the following documents:

    4.1  The Amended Consolidated Class Action Complaint in the matter of In Re Kingate Management Limited Litigation, Master File No 09 Civ. 5386 (DAB), dated 18 May 2010

    4.2  The Memorandum of Association and Articles of Association of Kingate Euro Fund, Ltd dated 19 April 2000

4.3 The Amended and Restated Memorandum of Association and Articles of Association of Kingate Global Fund, Ltd dated 6 June 2000

4.4 The Amended and Restated Articles of Association of Kingate Global Fund, Ltd dated 6 June 2000

4.5 The Amended and Restated Information Memorandum of Kingate Global Fund, Ltd's dated 15 January 2003

4.6 The Management Agreement between Kingate Management Limited and Kingate Global Fund, Ltd dated 1 January 2006

4.7 The Amended and Restated Administration Agreement between Kingate Global Fund, Ltd, Kingate Management Limited and BISYS Hedge Fund Services Limited dated 1 June 2007

4.8 The Amended and Restated Administration Agreement between Kingate Euro Fund, Ltd, Kingate Management Limited and BISYS Hedge Fund Services Limited dated 1 June 2007

4.9 The Amended and Restated Information Memorandum of Kingate Global Fund, Ltd's dated 6 October 2008

4.10 The Amended and Restated Information Memorandum of Kingate Euro Fund, Ltd's dated 6 October 2008

4.11 The Co-manager Agreement between Tremont (Bermuda) Ltd. and the Kingate Global Fund Ltd. (undated)

4.12 The Declaration of Barbara Dohmann QC dated 15 July 2010

4.13 The Declaration of Narinder K Hargun dated 19 July 2010

4.14 The Affidavit of David Chivers QC dated 19 July 2010

4.15 The Declaration of Simon Browne-Wilkinson QC dated 19 July 2010

4.16 The Declaration of Richard G. Evans dated 19 July 2010

4.17 The Declaration of Anthony George Bompas QC dated 4 November 2010.

**Bermuda law in relation to strike out applications**

5. It is my understanding that the Motions to Dismiss applications being made against the Plaintiffs in this case are in substance equivalent to a strike out application under Bermuda/UK law. Consequently, some general observations in relation to the principles upon which a court will operate in considering a strike out application are set out below.

6. In order, as a matter of Bermuda law, for a claim to be struck out, it must be "unarguable", "plain and obvious", "obviously unsustainable", "clear beyond doubt". These are phrases that have been used by the Courts

over the years to describe the very high test to be met before a Court will strike out a claim. Statements of the test include:

- "the jurisdiction to strike out will only be exercised in plain and obvious cases, where the claim is essentially unarguable or bound to fail" (*Roberts v Commissioner of Police and Minister of Public Safety & Housing* [2008] Bda LR 27);

- "It is now well settled that a pleading should be struck out only where the pleaded case is 'obviously unsustainable', ' unarguable', 'hopeless', 'one which cannot succeed', or other language to this effect. Before me both parties accepted the 'plain and obvious' test, which comes from the judgment of Lord Pearson in *Drummond-Jackson v British Medical Association* [1970] 1 WLR 688 at 696...'the order for striking out should only be made if it becomes plain and obvious that the claim … cannot succeed' (*Yearwood v Thomas Miles & Co Ltd. 2000 Civil Jur. No. 213* [2001] Bda LR 30) **(Tab 2)**.

7. In the result-

- A pleading will not be struck out where it raises an arguable, difficult or important point of law (see *A-G of Duchy of Lancaster v London and North Western Rly Co* [1892] 3 Ch. 274, applied in various Bermuda cases, including *Bermuda Commercial Bank Ltd v*

*Estate Representatives of Bickley (Deceased) 1991 Civil Jur. No. 78* [1991] Bda LR 89 (**Tab 3**).

- The "summary jurisdiction of the court is not intended to be exercised by a minute and protracted examination of the documents and facts of the case, in order to see whether the plaintiff really has a cause of action. To do that, is to usurp the position of the trial judge, and to produce a trial of the case in chambers, on affidavits only, without discovery and without oral evidence tested by cross-examination in the ordinary way. This seems to me to be an abuse of the inherent power of the court and not a proper exercise of that power." (see *Wenlock v Moloney* [1965] 2 All ER 871, at page 874 (**Tab 4**), per Danckwerts LJ, applied several times in Bermuda, including by the Bermuda Court of Appeal in *Chiang and Pacific Challenge Holdings Ltd v Kistefos Investment AS* [2002] Bda LR 50 **(Tab 5)** and *Inova Health System Foundation v First Virginia Reinsurance Limited 1998 Civil Appeal No. 1* [1998] Bda LR 2 **(Tab 6)**.

8. Accordingly, in order for a strike out application to succeed, the propositions advanced by the applicant must be (at least in this case) that the Plaintiff's claims are "hopeless", "unarguable", "unsustainable" and this must be "clear beyond doubt". It does not appear that Mr. Hargun's Declaration goes as far as this. For example, Mr Hargun states at paragraph 61 of his Declaration that in his opinion "... a Bermuda Court

would be <u>unlikely</u> to recognise or impose such a duty ..." (emphasis added). To take another example, at paragraph 72 he says: "I have also explained above why, on the basis of the facts alleged in the Amended Complaint, I do not consider that a duty of care was owed on the part of Tremont (Bermuda) to the Plaintiffs in this case." The point is that Mr. Hargun often states that which, in his opinion, is or is likely to be the case. In my opinion, he needs to take the further step of stating that the contrary opinion would be unarguable or hopeless.

9. Given the high test that applies in relation to strike outs, statements such as these do not seem to go far enough. Indeed, they would appear (tacitly) to accept that a strike out application will (or ought) not be successful.

10. Hereafter in this Declaration for ease of reference I will where possible follow the headings of Mr Narinder Hargun's Declaration, in the same order.

**Sources of Bermuda Law/the Bermuda court system**

11. I agree with Mr Hargun's Declaration in this regard.

**Common law principle of precedent is applicable in Bermuda**

12. Again I agree with Mr Hargun's description of the common law principle of precedent. However, I would mention his reference at footnote 4 to the basis for Bermuda's 1981 Companies Act ("Companies Act"). Whilst I

agree with him, it should be emphasized that as the principal Companies Act has been amended over the years more and more amendments have had their origin from jurisdictions other than the United Kingdom, with a number of provisions being drawn more recently from Canada, or being "home grown". Thus in cases where the provision in question can be seen to have been drawn from (for example) Canadian legislation, and there is no equivalent provision in English law, the Bermuda court would of course look to Canadian authorities in construing it, as the English authorities would not be relevant. I would also emphasize that what constitutes binding precedent is only the *ratio decidendi* of a case, so that *obiter dicta*, even from the highest court, are not binding on lower or co-ordinate courts (see *Halsbury's Laws of England*, Title "Civil Procedure" (Volume 11 (2009) 5th Edition, Paras 1–1108; Volume 12 (2009) 5th Edition, Paras 1109–1836), at paragraph 91) (**Tab 7**). I would mention, also, that an otherwise binding precedent or rule may, on proper analysis, be held to have been impliedly overruled by a subsequent decision of a higher court (see *Miliangos v George Frank (Textiles) Ltd* [1975] 3 All ER 801 per Lord Simon at page 820) (**Tab 8**); and that where there are conflicting decisions of courts of co-ordinate jurisdiction the later decision is to be preferred if reached after full consideration of earlier decisions (see *Halsbury's Laws of England*, Title "Civil Procedure" (Volume 11 (2009) 5th Edition, Paras 1–1108; Volume 12 (2009) 5th Edition, Paras 1109–1836), at paragraph 98) (**Tab 7**).

> The rule in *Foss v Harbottle* or the "proper Plaintiff"
> principle/derivative actions as an exception to the rule in *Foss v Harbottle*/principle of "reflective loss"/principle in *Saloman v Saloman*

13. These aspects of matters are dealt with by Mr. Bompas. Given that it is accepted that Bermuda common law parallels UK common law on the various points addressed by Mr. Bompas, in my opinion what Mr. Bompas states concerning UK common law accurately depicts Bermuda common law on those points.

**Are duties owed by directors, officers and service providers of a company to the company's shareholders directly?**

14. Mr. Hargun's analysis does not take into account the provisions of section 97 (1) of the Bermuda Companies Act 1981, and its origins in section 122 of the Canadian Business Corporations Act, which the Bermuda Act mirrors. This section provides that there is a general duty lying upon every officer of a company, which of course includes directors, "in exercising his powers and discharging his duties", to "(a) act honestly and in good faith with a view to the best interests of the company; and (b) exercise the care, diligence and skill that a reasonably prudent person would exercise in comparable circumstances." Relevant sections of the Bermuda Companies Act of 1981 are appended hereto as **Tab 9**. As already stated, the Bermuda provisions mirror the identical provisions of

section 122 of the Canadian Business Corporations Act. As the Supreme Court of Canada has commented in relation to those provisions (in *Peoples Department Stores Inc (trustee of) v. Wise (Peoples)* (2004) 244 Dominion L. Rep 4th 564, 586, paragraph 57) **(Tab 10)**:

> ". . . the statement of the duty of care in s 122 (1) (b) of the CBCA does not specifically refer to an identifiable party as the beneficiary of the duty. Instead, it provides that "every director and officer of a corporation in exercising his powers and discharging his duties shall . . . exercise the care, diligence and skill that a reasonably prudent person would exercise in comparable circumstances. Thus, the identity of the beneficiary of the duty of care is much more open-ended and it appears obvious that it must include creditors."

15.   The point is that the statutory duty is potentially a duty to a broad class of persons including, at least, creditors. Given especially that the Plaintiffs in this case are essentially contingent creditors, in my opinion, it is at the very least arguable that they may be owed a duty of care under this section, as recently construed by the Supreme Court of Canada.

16.   Fiduciary duties also may arise as between directors, officers and service providers on the one hand, and shareholders on the other, depending on the circumstances. In my opinion, the Bermuda Supreme Court and Court of Appeal decisions in *Walsh and Taal v Horizon Bank International Ltd*

[2008] Bda LR 16 and *Horizon Bank International v A Walsh et al [2009]* *CA (Bda) 6 Civ (March 2009)* ("HBI") respectively **(Tab 11),** are authority for the proposition that there are circumstances in which a fiduciary relationship can arise by reason that one person entrusts the management of his assets to another and for that purpose relinquishes operational control over them.

17.    In *HBI* a Bermuda Bank, the Bermuda Commercial Bank ("BCB"), held a large sum for the account of an Antiguan Bank, "HBI", which was being wound up in Bermuda and St Vincent and the Grenadines.    HBI's entitlement to the moneys was being challenged by two men, Walsh and Taal (referred to by the Court of Appeal as "the Investors"), who alleged that about US$14 million of the sums held by BCB for the account of HBI represented the proceeds of a large number of Microsoft shares worth in excess of US$20 million which they had entrusted to HBI and others for the specific purposes of an Offshore Investment Programme in about September 1997.    They alleged, amongst other things, that from about November 1998 HBI and others had used the shares for their own purposes, acting dishonestly and in breach of fiduciary duties they owed to the Investors.    Applying the Privy Council decision in *Arklow Investments v* *Maclean* [2000] 1 WLR 594 ("*Arklow*") and the leading UK Court of Appeal decision in *Bristol and West Building Society v. Mothew* [1998] Ch. 1, the first instance Judge held that HBI owed the Investors fiduciary duties on the basis (amongst other things), that:

"in agreeing to establish an offshore structure which entailed [the Investors] placing assets into companies which HBI would control on their behalf (i.e. by providing its own manager, Coombes, to be the manager of Boomer), HBI in my judgment became a fiduciary of [the Investors] to the extent that it was trusted to ensure that Boomer would be managed consistently with the interests of [the Investors]" (at paragraph 56 of the judgment); and "HBI entered into a fiduciary relationship with [the Investors] and Boomer because it agreed to manage their assets, which were to be kept separate from HBI and Extant's assets, subject to certain broad guidelines through a structure over assets of which [the Investors] had relinquished operational control..." (at paragraph 59 of the judgment)

18.    In other words, the first instance Judge held that a fiduciary relationship had come into being on the basis (amongst other things) that the Investors had entrusted their assets to HBI, by relinquishing operational control over them to HBI.

19.    The Court of Appeal entirely agreed with the reasoning of the first instance Judge, referring, in paragraph 35, to those paragraphs of the first instance judgment mentioned above. Then, having applied *Arklow* and *Mothew*, at paragraph 33, the Court held, in paragraph 40, that the first instance

Judge's holding that HBI owed a fiduciary duty to the Investors was "undoubtedly correct".

20.     What is required, according to *Arklow* (at page 598 of the WLR Report) is "a situation where one person is in a relationship with another which gives rise to a legitimate expectation, which equity will recognise, that the fiduciary will not utilise his or her position in such a way which is adverse to the interests of the principal." Further, as the Privy Council continues on the same page: "The existence and the extent of the duty will be governed by the particular circumstances. It is therefore essential at the outset to turn to the circumstances ..." In short, the existence and scope of a fiduciary relationship are fact-specific and very much dependent upon a detailed assessment of individual facts and circumstances, as has been held in many other cases. There is nothing in principle to prevent the creation of a fiduciary relationship between a director or fund manager and an investor. It all depends on the particular facts and circumstances.

21.     *Snell's Equity*, 31st Edition (with Supplement up to date to September 1, 2009) I believe provides a very measured analysis. After discussing the "settled categories" (in which the editors do not include investment or financial advisers or managers), the editors then go on to address what they call the "ad hoc" categories, namely those relationships which, depending on the circumstances and how close they are to the general test, may be found to be fiduciary. The following appears at the end of paragraph 7-10 (emphasis supplied):

"Accountants who had incompetently reported to their client that the proposed price for a takeover target was fair and reasonable were not guiding or influencing their client's decision and so did not owe fiduciary duties to the client. **But financial advisers can occupy a fiduciary position vis-à-vis their clients**: *Daly v Sydney Stock Exchange Ltd* (1986) 160 CLR 371 at 377 **(Tab 12)**; *Aequitas v AEFC* [2001] NSWSC 14, (2001) 19 ACLC 1.006 at [307]." **(Tab 13)**

22.    In *Daly*, Australia's highest court, the High Court of Australia (a court including Gibbs CJ, later a Privy Councillor) was faced with a client who had been advised by a firm of stockbrokers that he should give the firm a loan at a high rate of interest and therefore a high rate of return for him, rather than make investments in the market, which, the firm advised, was not the best place to put his money at the time.  The firm failed to disclose its precarious financial position, and the client suffered loss when the firm later became insolvent.  Gibbs CJ said **(Tab 14)**:

> "5.    The argument for the appellant was that Patrick Partners owed a fiduciary duty to Dr Daly and were in breach of that duty in borrowing money from him without disclosing the firm's unsatisfactory financial situation. The failure to account for money received in a fiduciary capacity was, so it was submitted, a

defalcation. Further, it was said, a constructive trust arose immediately the money was received, so that the money was received for or on behalf of Dr Daly, or as trustee, within the meaning of the sections.

6.     It was right to say that Patrick Partners owed a fiduciary duty to Dr Daly and acted in breach of that duty. The firm, which held itself out as an adviser on matters of investment, undertook to advise Dr Daly, and Dr Daly relied on the advice which the firm gave him. In those circumstances the firm had a duty to disclose to Dr Daly the information in its possession which would have revealed that the transaction was likely to be a most disadvantageous one from his point of view. Normally, the relation between a stockbroker and his client will be one of a fiduciary nature and such as to place on the broker an obligation to make to the client a full and accurate disclosure of the broker's own interest in the transaction: *In re Franklyn*; *Franklyn v. Franklyn* (1913) 30 TLR 187; *Armstrong v. Jackson* (1917) 2 KB 822; *Thornley v. Tilley* [1925] HCA 13; (1925) 36 CLR 1, at p 12; *Glennie v. McDougall & Cowans Holdings Ltd.* (1935) 2 DLR 561; *Burke v. Cory* (1959)

19 DLR (2d) 252; *Culling v. Sansai Securities Ltd.* (1974) 45 DLR (3d) 456. The duty arises when, and because, a relationship of confidence exists between the parties: see *Tate v. Williamson* (1866) LR 2 ChApp 55, at pp 61, 66 and see also *McKenzie v. McDonald* (1927) VLR 134, at pp 144-145; *Hospital Products Ltd. v. U.S. Surgical Corporation* [1984] HCA 64; (1984) 58 ALJR 587, at pp 596-598, 628; [1984] HCA 64; 55 ALR 417, at pp 431-436, 488-489."

23. The Plaintiffs plead in this case (for example) that "Plaintiffs and the Class entrusted their assets to the Kingate Defendants who had substantial discretion and control over the Plaintiffs' and the Class' assets invested in the Funds, the marketing of those Funds, and communications to Plaintiffs and the Class." (at paragraph 279 of the Amended Complaint). This is an allegation of fact which, in my opinion, is capable of bringing the case within the parameters of the proposition for which *HBI* provides authority. Further in relation to Counts 7 and 21 I do not believe as a matter of Bermuda law that these would be struck out. They allege a special relationship which arose out of the (asserted) trust and reliance placed on the Tremont Defendants due to their marketing of the funds, the (asserted) access and knowledge of the funds and their operation. It does appear from the pleaded case that the investors were wholly dependent on the

Tremont Defendants and KML to provide accurate and complete information concerning their investments in the Funds.

**Privity of contract (Third Party Beneficiary)**

24.    Broadly speaking, I do not disagree with the thrust of Mr. Hargun's Declaration in relation to the law regarding the rights of third parties to enforce contracts as intended beneficiaries, which he sets out at paragraphs 53 and 54. However, having reviewed the same paragraphs in the Amended Complaint as those he refers to, and having also reviewed the agreements, I respectfully disagree with his conclusions in paragraph 55.

25.    As to the Amended Complaint, paragraph 295 states: "The benefits to Plaintiffs and the Class under the Management Agreements between the Funds, KML and Tremont were immediate, not simply incidental, in that the Funds' only motivations for executing these agreements were to provide investors with capital appreciation and returns on their investments in the Funds." I would respectfully agree. The goal of the arrangements appears to me to be self evident-it is clearly to increase the value of the Investor/Shareholders' investments in the Funds.

26.    Further, in my opinion, the provisions of the clause to which Mr. Hargun refers (in paragraph 55.2 of his Declaration) support this conclusion. There would be no need to limit the scope of liability to "Shareholders", in addition to "the Fund", unless it was recognised that due to the nature of

the arrangements, and given their obvious purpose, liability could accrue. The limitation clause therefore pre-supposes that the purpose of the arrangements was to confer benefits on the Investors/Shareholders. It also pre-supposes that duties are owed to them, otherwise there would be no need to limit liability.

27.     Given this, I think it is at least arguable that this case falls within the equitable exception referred to by Mr. Hargun in paragraph 54 of his Declaration. Consequently, in my opinion, counts 9 against KML and Tremont, 10 against the FIM Entities, and 25 against Citi Hedge would in principle be likely to survive a strike out application in an equivalent Bermuda proceeding.

**Potential duties of care at common law (tort) to contracting counter-parties:  Concurrent liability**

28.     In paragraph 56 Mr. Hargun asserts, citing the Bermuda Court of Appeal in decision in *White v. Conyers Dill & Pearman* [1994] Bda LR 9, and the more recent Supreme Court decision of *Phoenix Global Fund Ltd v. Citigroup Fund Services (Bermuda) Ltd* [2009] SC (Bda) 57 Civ, that "there is no place for a concurrent duty of care at common law as between contracting parties". He also asserts that on this point "there is a marked contrast to English law".

29.     Mr. Hargun does not mention the very recent Court of Appeal decision on concurrent duties of care - *Island Cleaning Services v. Fagundo* [2010] CA

(Bda) 9 Civ –in which such duties were accepted. I believe this to be the most recent decision at that level on this point. As the Court of Appeal said (in the employment context), "Put another way, the issue was whether Mr Fagundo's contractual obligation was so clear and wide as to be inconsistent with and negate Island Cleaning's broad common law duty of care." Applying both the Privy Council decision in *Tai Hing Cotton Mill Ltd v Liu Ching Hong Bank Ltd* [1986] AC 80 and the House of Lords decision in *Henderson v Merrrett Syndicates Ltd* [1995] 2 AC 145, the Court of Appeal held (at paragraph 6) that the following was a "sound approach":

> "The Judge found that Island Cleaning, pursuant to its broad common law duty, whether in contract or in tort, to provide a safe system of work for Mr Fagundo, should have provided him with, and instructed him to wear, special non-slip footwear for the task, and to do so whether or not he had requested it - as to which he made no finding. The Judge acknowledged that, where a contract of employment clearly excludes that broad common law duty, the contractual exclusion will prevail; see *Tai Hing Cotton Mill Ltd v Liu Ching Hong Bank Ltd* [1986] AC 80, per Lord Scarman giving the advice of the Board, at 107; and *Henderson v Merrett Syndicates Ltd* [1995] 2 AC 145, per Lord Goff at 191. But he held that, in the circumstances of the case, the express or implied term did not have that clear exclusory effect." (at paragraph 5)

30. The Court of Appeal decision in *Fagundo* implicity accepts that concurrent duties in tort and contract do exist. However if the contractual provisions are sufficiently clear they may exclude concurrent duties/liability in tort. But this in my opinion is a moot point as in any event the Supply of Services (Implied Terms) Act 2003 (which I address in further detail below) imports into the contract, as an implied term, exactly the same duty as normally exists in tort and this duty cannot be contractually excluded.

31. A further relevant point is that third parties are not bound by provisions to which they are not a party. The disclaimer in order to be effective has to be made to, and accepted by (in this case) the plaintiffs. I believe the law to be as stated in *Halsbury's Laws of England*, Volume 9 (1) (Reissue), Title "Contract" at paragraph 818 **(Tab 15)**:

> "On the other hand, there may be a contract between A and B, containing an exclusion clause for the benefit of B behind which B seeks to shelter in an action against him for injuring C, a third party, while B was performing his contract with A. The rule here is that A and B cannot simply, by contract between themselves, impose the burden of the exclusion clause upon C. Where, however, on the proper interpretation of the facts A or B is acting as agent for C to make C a party to the contract, C may be bound by the exclusion clause if, on its proper construction, it is sufficiently wide. Similarly, the facts may support an implied contract between B and C

containing the same exclusion clause as that between A and B, in which case C will be similarly bound."

32. Thus, subject to the identified exceptions, contractual provisions between the Tremont Defendants and Kingate will not bar tortuous actions asserted by third parties (in this case the plaintiffs).

### Potential duties of care at common law (tort) to third parties

33. As stated in paragraphs 15 and 16 (above) I would respectfully disagree with Mr. Hargun in that no less than the Supreme Court of Canada in *Peoples Department Stores Inc. (trustee of) v. Wise (Peoples) (2004), 244 Cominion L. Rep. 4th 564* (**Tab 10**) has held that a director's duty may well extend to parties other than the company by virtue of legislative intervention. Thus in my opinion it can be argued that the scope of the common law duty has, in Bermuda as in Canada, been extended.

34. Whilst Mr. Hargun may be correct in saying, as he does in paragraph 60 of his Declaration, that there is no Bermuda case directly on point, this, contrary to his conclusion, supports the view that the matter should proceed to trial, given that clearly a novel and important point of law arises. Indeed, as related in Mr. Bompas' Declaration, this is a developing area of the law in which the legal result is sensitive to the facts. Under the applicable Bermuda strike out principles, to which I have already referred, cases of that kind are unlikely to be struck out at a preliminary stage. Further, as also already mentioned, for a strike out to be successful, it

must be shown that the Plaintiffs' case is for example "unarguable". Mr. Hargun's statement that "a Bermuda court would be *unlikely* to recognise or impose such a duty of care" fails to meet the relevant standard (emphasis added)

35.  Mr. Hargun deals with a number of factual assertions in sub-paragraphs 61.1 to 61.3 (inclusive) stating that those facts individually do not in and of themselves give rise to a special relationship. However, in my opinion those facts and circumstances must be taken together and viewed as a whole.

36.  In my opinion in the present case relevant and distinguishing factors from the authorities cited by Mr Hargun are the pleaded "marketing" of the funds by Tremont, and the pleaded representations that were made to the Plaintiffs as potential investors as well as to shareholders to purchase and/or retain the shares. Taking all the factual assertions as a whole, and in light specifically of the particular pleaded facts referred to above, I believe Count 3 would "survive" a strike out application under Bermuda law.

**Contractual limitation of liability clauses and contractual indemnity clauses: common law principles**

37.  Mr. Hargun refers to Bermuda common law. However, in this area, Bermuda common law is superseded by sections 3 and 6 of the Bermuda Supply of Services (Implied Terms) Act 2003 ("the Act") **(Tab 16)** under

which there is an implied statutory duty of care which applies *notwithstanding any contractual provision, course of dealing or usage to the contrary.* Contractual limitation or exclusion clauses therefore cannot affect contractual liability under this Act for breach of the implied statutory term requiring reasonable care, which parallels common law negligence liability. The upshot is that by virtue of the Act, in my opinion contractual liability for negligence cannot be contractually excluded.

38. Those sections provide in relevant part:

> "3. **Implied term about care and skill**
>
> In a contract for the supply of a service where the supplier is acting in the course of a business, there is an implied term that the supplier will carry out the service with reasonable care and skill.
>
> 6. **Contracting out**
>
> The terms implied by this Act in a contract for the supply of a service shall have effect *notwithstanding any agreement, course of dealing between the parties or usage."* (emphasis added).

39. In each of the service contracts governed by Bermuda law therefore (the Kingate Management Agreement with the Kingate Global Fund dated January 1, 2006 (governed by Bermuda law), (Complaint, Exh. 7);

Tremont Co-Manager Agreement [undated] (governed by Bermuda law),
Vigna Dec. Exh. A), there is a statutory implied term that the Defendants
will carry out the promised service with reasonable care and skill; and that
implied term is effective notwithstanding any contrary agreement. Thus,
despite any provision to the contrary, the effect of the statutory implied
term is that the Defendants had an obligation to act with reasonable care
and skill. It can also be argued, although the position is less clear, that if
Bermuda were the forum, the mandatory provisions of the Act would apply
even in relation to those service contracts which are expressed to be
governed by some other law, on the basis that the Act is an "overriding
statute" containing "mandatory rules" (see *Dicey, Morris & Collins: The
Conflict of Laws*, Fourteenth Edition 2006, paragraphs 1-053 to 1-061 and
32-136 to 32-137) (**Tab 17**).

40.    Mr. Hargun refers to the Act and asserts (in footnote 33 of his
       Declaration), without explanation, that the relevant sections: "do not
       prevent a service provider from limiting or excluding liability for losses
       caused by negligence." If what he means by this is that the statutory
       implied term can be excluded or limited by agreement, in my respectful
       opinion, that cannot be supported in light of the plain language of the Act,
       already examined.

41.    The *Astwood* case, to which Mr. Hargun refers, and upon which he relies,
       was decided prior to the Act and, in cases where the Act applies therefore,
       in my opinion it no longer represents the law of Bermuda.

**Contractual limitation periods**

42. Mr. Bompas addresses this at paragraph 58 of his Declaration. In my opinion, Mr. Bompas' comments are equally applicable under Bermuda law.

**Causation in Bermuda law**

43. In my opinion, there is nothing in this which is sufficiently determinative to ground a successful strike out application under Bermuda.

**COUNT 5: Gross Negligence against the Kingate Defendants (paragraphs 268 to 272 of the Amended Complaint)**

44. Whilst I agree with Mr. Hargun's statement as to the cause of action in "gross negligence", which he makes in paragraph 74 of his Declaration, it should be noted that on a strike out in Bermuda, in my opinion a Bermuda court would allow an amendment which would fix the defect by removing the word "gross" and would allow the claim to proceed, as amended, in simple negligence. Bermuda courts will not strike out an action where asserted defects can be cured by amendment.

45. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 4th day of November, 2010, in Hamilton, Bermuda.

Mark A C Diel