# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE KINGATE MANAGEMENT LIMITED LITIGATION | Master File No. 09 Civ. 5386 (DAB) |
| This Document Relates To:  All Actions | **JURY TRIAL DEMANDED** |

## <u>PLAINTIFFS' OPPOSITION TO DEFENDANT CITI HEDGE'S MOTION TO DISMISS</u>

**BOIES, SCHILLER & FLEXNER LLP**
575 Lexington Avenue
New York, New York 10022
(212) 446-2300

**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street
New York, New York 10005
(212) 838-7797

**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
(212) 907-0700

*Co-Lead Counsel for Plaintiffs and
Interim Co-Lead Counsel for the Putative Class*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...........................................................................................ii

PRELIMINARY STATEMENT ..................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 2

ARGUMENT .................................................................................................................. 4

I.      PLAINTIFFS HAVE STANDING...................................................................4

II.     NEITHER SLUSA NOR THE MARTIN ACT BAR PLAINTIFFS' STATE LAW
        CLAIMS. ..........................................................................................................4

III.    PLAINTIFFS STATE COMMON LAW TORT CLAIMS...................................4

        A.      Plaintiffs' Common Law Tort Claims Are Governed by New York Law............. 4

        B.      Plaintiffs Have Stated Claims for Negligence, Gross Negligence, and
                Negligent Misrepresentation. .................................................................... 5

                1.      Citi Hedge Owed Plaintiffs a Duty of Care Under *Credit Alliance*.............5

                2.      Plaintiffs' Allegations of Recklessness Are Sufficient to State a Gross
                        Negligence Claim.........................................................................8

                3.      The Exculpatory Provisions in the Administration Agreement Do Not
                        Preclude Plaintiffs' Negligence Claims. ...................................................10

        C.      Plaintiffs Have Stated Claims for Breach of Fiduciary Duty. .............................. 11

        D.      Plaintiffs Have Stated Claims for Aiding and Abetting Fraud and Aiding
                and Abetting Breach of Fiduciary Duty................................................................. 17

        E.      Plaintiffs Have Stated a Claim for Third-Party Beneficiary Breach of
                Contract................................................................................................. 21

CONCLUSION................................................................................................................ 25

i

# TABLE OF AUTHORITIES

Page

## Cases

*Abercrombie v. Andrew College*,
  438 F. Supp. 2d 243 (S.D.N.Y. 2006) .................................................................. 11

*ADL, LLC v. Tirakian*,
  No. CV 2006-5076, 2010 WL 3925131 (E.D.N.Y. August 26, 2010) ................................. 20

*AMW Materials Testing, Inc. v. Town of Babylon*,
  584 F.3d 436 (2d Cir. 2009) .................................................................................. 8

*Anwar v. Fairfield Greenwich Ltd.*,
  No. 09-CV-118, 2010 WL 3341636 (S.D.N.Y. Aug. 18, 2010) .................................... *passim*

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ....................................................................................... 9

*AT&T v. City of New York*,
  83 F.3d 549 (2d Cir. 1996) .................................................................................. 8

*AUSA Life Insurance Co. v. Ernst and Young*,
  206 F.3d 202 (2d Cir. 2000) ................................................................................. 7

*Barry v. Atkinson*,
  No. 96 CIV. 8436, 1998 WL 255431 (S.D.N.Y. May 19, 1998) .......................................... 22

*Colnaghi, U.S.A., Ltd. v. Jewelers Protection Services, Ltd.*,
  595 N.Y.S.2d 381 (N.Y. 1993) ............................................................................ 8, 9

*Court Appointed Receiver of Lancer Offshore, Inc. v. The Citco Group Ltd.*,
  2008 WL 926509 (S.D. Fla. Mar. 31, 2008) ............................................................... 9

*Credit Alliance Corp. v. Arthur Andersen & Co.*,
  493 N.Y.S.2d 435 (N.Y. 1985) ........................................................................ 5, 6, 7

*Cromer Financial Ltd. v. Berger*,
  137 F. Supp. 2d 452 (S.D.N.Y. 2001) ..................................................................... 10

*Cromer Financial Ltd. v. Berger*,
  No. 00 CIV 2498, 2001 WL 1112548 (S.D.N.Y. Sept. 19, 2001) ....................................... 10

*Cromer Financial Ltd. v. Berger*,
  No. 00-CV-2284, 2003 WL 21436164 (S.D.N.Y. June 23, 2003) ................................... 18, 20

*De Lage Landen Financial Services v. Rasa Floors, LP*,
No. 08-0533, 2009 WL 884114 (E.D. Pa. Apr. 1, 2009)........................................ 24

*Debary v. Harrah's Operating Co., Inc.*,
465 F. Supp. 2d 250 (S.D.N.Y. 2006)................................................................ 22

*DeBlasio v. Merrill Lynch & Co.*,
No. 07-CV-318, 2009 WL 2242605 (S.D.N.Y. July 27, 2009) ............................ 14

*EBC I, Inc. v. Goldman Sachs & Co.*,
832 N.E.2d 26 (N.Y. 2005)............................................................................... 11, 13

*F.D.I.C. v. Bober*,
No. 95-CV-9529, 2003 WL 21976410 (S.D.N.Y. Aug. 19, 2003)........................ 16

*Finch, Pruyn & Co. v. M. Wilson Control Services*,
658 N.Y.S.2d 496 (App. Div. 3d Dep't 1997) .................................................... 23

*Flickinger v. Harold C. Brown & Co., Inc.*,
947 F.2d 595 (2d Cir. 1991)............................................................................... 23

*Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC*,
376 F. Supp. 2d 385 (S.D.N.Y. 2005)................................................................. 7

*Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC*,
479 F. Supp. 2d 349 (S.D.N.Y. 2007)............................................................... 18, 19

*Gibbs v. Breed, Abbot & Morgan*,
710 N.Y.S.2d 578 (App. Div. 1st Dep't 2000).................................................... 16

*Harmelin v. Man Financial Inc.*,
No. 06-1944, 2007 WL 2739579 (E.D. Pa. Sept. 20, 2007) ............................... 5

*Houbigant, Inc. v. Deloitte & Touche LLP*,
753 N.Y.S.2d 493 (App. Div. 1st Dep't 2003).................................................... 20

*Jordan (Berm.) Investment Co. v. Hunter Green Investments LLC*,
No. 00 CV 9214, 2007 WL 2948115 (S.D.N.Y. Oct. 9, 2007).............................. 13

*Jordan (Berm.) Investment Co. v. Hunter Green Investments Ltd.*,
No. 00 CIV 9214(RWS), 2003 WL 1751780 (S.D.N.Y. Apr. 1, 2003) .................. 13

*Jordan (Berm.) Investment Co. v. Hunter Green Investments Ltd.*,
No. 00 CIV 9214(RWS), 2003 WL 21263544 (S.D.N.Y. June 2, 2003) ............... 13

*Kalisch-Jarcho, Inc. v City of New York*,
58 N.Y.2d 377 (N.Y. 1983) ............................................................................... 10

*Kolbeck v. LIT America, Inc.*,
    923 F. Supp. 557 (S.D.N.Y. 1996)..........................................................................14

*Kottler v. Deutsche Bank AG*,
    607 F. Supp. 2d 447 (S.D.N.Y. 2009).....................................................................17

*Madeira v. Affordable Housing Foundation, Inc.*,
    469 F.3d 219 (2d Cir. 2006)....................................................................................22

*Miles v. Naval Aviation Museum Foundation, Inc.*,
    289 F.3d 715 (11th Cir. 2002) ................................................................................10

*Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*,
    261 F.R.D. 13 (S.D.N.Y. 2009) ..................................................................11, 14, 17

*Oster v. Kirschner*,
    905 N.Y.S.2d 69 (App. Div. 1st Dep't. 2010).........................................................18

*Pension Comm. of University of Montreal Pension Plan v. Banc of America Securities,*
    *LLC*,
    652 F. Supp. 2d 495 (S.D.N.Y. 2009).....................................................................18

*Pension Committee of the University of Montreal Pension Plan v. Banc of America*
    *Securities, LLC*,
    No. 05 Civ. 9016(SAS), 2007 WL 528703 (S.D.N.Y. Feb. 20, 2007) ....................20

*Pension Committee of the University of Montreal Pension Plan v. Banc of America*
    *Securities, LLC*,
    446 F. Supp. 2d 163 (S.D.N.Y. 2006).............................................................*passim*

*Pension Committee of the University of Montreal Pension Plan v. Banc of America*
    *Securities, LLC*,
    592 F. Supp. 2d 608 (S.D.N.Y. 2009)................................................................4, 6, 7

*Piccoli A/S v. Calvin Klein Jeanswear Co.*,
    19 F. Supp. 2d 157 (S.D.N.Y. 1998)........................................................................24

*Prudential Insurance Co. v. Dewey, Ballantine, Bushby, Palmer & Wood*,
    590 N.Y.S.2d 831 (N.Y. 1992) ..................................................................................6

*P.T. Adimitra Rayapratama v. Bankers Trust Co.*,
    1995 WL 495634, *4-5 (S.D.N.Y. 1995) ................................................................22

*Richards v. City of New York*,
    433 F. Supp. 2d 404 (S.D.N.Y. 2006)......................................................................24

*RSL Communications PLC ex rel. Jervis v. Bildirici*,
    No. 04-CV-5217, 2006 WL 2689869 (S.D.N.Y. Sept. 14, 2006)............................16

*Sage Enterprises, Inc. v. Wells Fargo Alarm Services, Inc.*,
   No. 94-CV-2100 (JG), 1996 WL 1057144 (E.D.N.Y. June 20, 1996) ................................. 10

*Sommer v. Federal.Signal Corp.*,
   79 NY 2d 540 (N.Y. 1992) ..................................................................................... 10

*Stephenson v. Citco*,
   09 Civ. 00716, 2010 WL 1244007 (S.D.N.Y.  Mar. 31, 2010) ............................................ 24

*Subaru Distributors Corp. v. Subaru of America, Inc.*,
   425 F.3d 119 (2d Cir. 2005) ................................................................................... 23

*Thermal Imaging, Inc. v. Sandgrain Securities, Inc.*,
   158 F. Supp. 2d 335 (S.D.N.Y. 2001) ....................................................................... 14

*Woolard v. JLG Industries*,
   210 F.3d 1158 (10th Cir. 2000) .............................................................................. 24

## **Rules**

FED. R. CIV. P. 8(a) ............................................................................................. 9

FED. R. CIV. P. 9 .................................................................................................. 17

FED. R. CIV. P. 9(b) ............................................................................................. 9

Plaintiffs hereby file their response in opposition to the motion to dismiss filed by Citi Hedge Fund Services Ltd. ("Citi Hedge") (DE 97).

## PRELIMINARY STATEMENT

Plaintiffs are investors in two Madoff feeder funds, Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. (the "Funds"). Citi Hedge served as administrator for the Funds, and assumed responsibility for determining the value of the funds, independently verifying the prices of securities held by the Funds, mailing Fund performance reports to shareholders, communicating with prospective and existing investors and the public, and handling all subscriptions and redemptions for the Funds' shareholders. As a supposedly independent fund administrator, and the self-proclaimed number one fund-of-fund administrator in North America, Citi Hedge was uniquely situated to protect Plaintiffs from Madoff's theft.

Instead, Citi Hedge grossly neglected its duties. Citi Hedge communicated the Funds' supposed value ("NAV") and other information to Plaintiffs in reckless disregard of whether the NAV was supported by reliable information or indeed, any assets at all, and knowing that the information it was providing was contradicted by numerous red flags surrounding Madoff's operations and results. Indeed, Citi Hedge failed in its responsibilities so spectacularly that it did not even report any of the 185 instances in which the securities prices reported by Madoff were demonstrably false according to easily verifiable public records. Each of the Plaintiffs invested on the basis of the false and misleading NAV reported by Citi Hedge, as Citi Hedge knew they would. As a result, Plaintiffs lost their entire investment to the now-infamous Madoff Ponzi scheme.

Citi Hedge is directly responsible for the losses suffered by Plaintiffs in the Madoff Ponzi scheme, yet in its motion to dismiss, it seeks to avoid responsibility for investors' millions in losses.  The motion to dismiss should be denied.

## FACTUAL BACKGROUND

Citi Hedge and its predecessors in interest (referenced collectively herein as "Citi Hedge") have served as the Funds' administrators since the inception of the Funds.  (Amended Consolidated Class Action Complaint ("CAC") ¶ 185.)  Citi Hedge has been well-compensated for its services; since 2005 alone, Citi Hedge has received millions of dollars in fees from the Funds.  (*Id.* ¶ 192.)

In return for those fees, Citi Hedge assumed duties beyond those of a typical fund administrator.  (*Id*. ¶ 196.)  Citi Hedge was responsible for determining the net asset value of the Funds' assets each month, and committed to verify the prices of the securities held by the Funds from independent pricing sources.  (*Id*. ¶ 187; AA[1] § 4.1.1.)  In addition, Citi Hedge was to serve as the Funds' agent with the general public, communicate with shareholders before and after their initial investment, and process all subscription and redemption requests for Fund investors.  (CAC ¶ 197; AA §§ 4.4.1, 4.4.4.)  Citi Hedge assumed numerous other duties as well.  (CAC ¶¶ 191, 196-98; AA §§ 4.2.1, 4.2.8, 4.2.9, 4.3.1, 4.3.3, 4.3.4.)

Citi Hedge knew that Plaintiffs, who communicated directly with Citi Hedge, were relying on Citi Hedge to fulfill its duties, both before and after their initial investment in the Funds.  (CAC ¶ 198.)  Plaintiffs made all their investment subscriptions directly to Citi Hedge, as well as their redemptions, and received Fund performance reports that contained false NAV

---

[1] "AA" refers to the two administration agreements: June 1, 2007 Administration Agreement for Kingate Global (CAC Ex. 15, DE 53-16), and  June 1, 2007 Administration Agreement for Kingate Euro (July 19, 2010 Declaration of David Y. Licshiz Ex. A, DE 96-2).

2

statements directly from Citi Hedge.  (*Id*. ¶ 197.)  Marketing materials that Plaintiffs received before they invested also contained the false NAV statements supplied by Citi Hedge.  (CAC ¶ 198; November 4, 2010 Declaration of S. Douglas Bunch ("Bunch Dec.") at Exs. B-J.) Moreover, the Funds' subscription agreements state that the administrator was available to subscribing investors to answer questions about the Information Memorandum, and to "obtain any additional information necessary to verify the information contained in the Information Memorandum."  (DE 53-3, Kingate Euro Subscription Agreement ("Euro Sub. Ag.") at S-9; DE 53-2, Kingate Global Subscription Agreement ("Global Sub. Ag.") at S-9 8.)

Citi Hedge utterly failed to fulfill its duties to Plaintiffs.  Citi Hedge used manifestly incorrect information from Madoff to calculate the Funds' NAVs, and then provided those fake NAVs to Plaintiffs, with no scrutiny or verification, in the face of numerous red flags and known risks surrounding Madoff's operations.  (CAC ¶¶ 202-03, 215-221.)  Citi Hedge failed to meet its commitment to verify the securities prices in at least 185 separate instances where the prices were demonstrably false.  (*Id*. ¶¶ 77-80, 188.)  For example, the October 2003 Madoff account statement reported purchases of more than a million shares of Intel at a price of $27.63 on October 2, 2003, but the price for Intel stock that day never fell below $28.41, so Madoff could not have purchased the shares at the price he claimed.  (*Id*. ¶ 78.)  In stark contrast to its performance here, Citi Hedge advertises itself as having a "unique competitive advantage, and touts that it provides "industry-leading offshore fund services," and is ranked "the #1 fund administrator."  (*Id*. ¶¶ 194-95.)  Its reputation lent significant credibility to the Funds and assurance to Plaintiffs.  (*Id*. ¶ 198.)

Citi Hedge is registered in Bermuda, but is an affiliate of Citigroup, Inc. and Citi Hedge Fund Services, which is a Delaware corporation registered to do business in New York.  (*Id*.

¶ 46.)  Citi Hedge conducted significant Fund business in New York, including communicating

the Plaintiffs' subscription and redemption requests to Madoff in New York.  (*Id*. ¶ 46(c).)

<u>ARGUMENT</u>

The legal standard governing Citi Hedge's motion to dismiss is set forth in Plaintiffs'

Consolidated Memorandum of Law in Opposition to the Motions of the Kingate Defendants to

Dismiss the Amended Consolidated Class Action Complaint ("Cons. Mem."), at Section I.[2]

## I.      PLAINTIFFS HAVE STANDING.

Plaintiffs have standing to assert claims against Defendants.  *See* Cons. Mem. § I.

Numerous cases, addressed in more detail below, have recognized that fund investors hold direct

claims against fund service providers like Citi Hedge.  *See, e.g., Anwar v. Fairfield Greenwich*

*Ltd.*, No. 09-CV-118, 2010 WL 3341636 (S.D.N.Y. Aug. 18, 2010) ("*Anwar II*"); *Pension*

*Committee of the University of Montreal Pension Plan v. Banc of America Securities, LLC,* 446

F. Supp. 2d 163 (S.D.N.Y. 2006); *Pension Committee of the University of Montreal Pension*

*Plan v. Banc of America Securities, LLC*, 592 F. Supp. 2d 608 (S.D.N.Y. 2009).

## II.     NEITHER SLUSA NOR THE MARTIN ACT BAR PLAINTIFFS' STATE LAW
##         CLAIMS.

Plaintiffs' state-law claims are not barred by SLUSA.  *See* Cons. Mem. § IV-A.

Plaintiffs' state law claims are also not barred by the Martin Act.  *See* Cons. Mem. § IV-B.

## III.    PLAINTIFFS STATE COMMON LAW TORT CLAIMS

### A.      Plaintiffs' Common Law Tort Claims Are Governed by New York Law

Citi Hedge contends that Plaintiffs' claims are governed by the law of the British Virgin

Islands ("BVI").  Plaintiffs have submitted the Declaration of Anthony George Bompas QC

---

[2] Plaintiffs incorporate herein by reference all applicable arguments in the Plaintiffs' Consolidated
Memorandum of Law in Opposition to the Motions of the Kingate Defendants to Dismiss the Amended
Consolidated Class Action Complaint ("Cons. Mem.").

("Bompas Dec."), which explains BVI law as it relates to Plaintiffs' claims, and responds to the

Affidavit of Simon Browne-Wilkinson QC ("Wilkinson Dec.").  BVI and New York law on

Plaintiffs' negligence, negligent misrepresentation, breach of fiduciary duty, and aiding and

abetting claims are harmonious, leaving the Court free to apply New York law.  *See* Cons. Mem.

§ II-A.  Where there is a difference in the laws of BVI and New York, the law of New York

applies as the jurisdiction with the greatest interest in the dispute.  *See* Cons. Mem. § II-B.  Citi

Hedge, an affiliate of New York-headquartered Citigroup, Inc. and Citi Hedge Fund Services,

Inc., a Delaware entity authorized to transact business in New York, had significant contacts

with New York.  (CAC ¶ 46(c).)  In its role as the Funds' administrator, Citi Hedge dealt

regularly with Madoff in New York for the purpose of receiving information to calculate the

Funds' value and processing Plaintiffs' subscription and redemption requests.  (*Id.*)

>    **B.**    **Plaintiffs Have Stated Claims for Negligence, Gross Negligence, and Negligent Misrepresentation.**

>>    1.    Citi Hedge Owed Plaintiffs a Duty of Care Under *Credit Alliance.*

Citi Hedge suggests (at 22) that Plaintiffs' negligence claims should be dismissed under

New York law because it owed no duty of care to Plaintiffs.  To the contrary, Citi Hedge owed

Plaintiffs a duty of care under New York law because Plaintiffs' allegations satisfy the test set

forth in *Credit Alliance Corp. v. Arthur Andersen & Co.*, 493 N.Y.S.2d 435, 443 (N.Y. 1985).

*See, e.g., Anwar II*, 2010 WL 3341636, at *47 (holding that administrator of another BVI Madoff

feeder fund owed a duty of care to shareholders); *Pension Committee*, 446 F. Supp. 2d at 199-

200 (also recognizing duty of care owed by fund administrator to shareholders); *see also*

*Harmelin v. Man Fin. Inc.*, No. 06-1944, 2007 WL 2739579 (E.D. Pa. Sept. 20, 2007)

(upholding negligence claim against fund administrator that had failed to properly calculate the

NAV by failing to independently verify assets and to ensure that it had access to all of the fund's

trading accounts). *Credit Alliance* requires: "(1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance." *Pension Comm.*, 446 F. Supp. 2d at 199 (*quoting Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 590 N.Y.S.2d 831, 834-35 (N.Y. 1992)).  Citi Hedge does not even address this test.

The first element of the *Credit Alliance* test – awareness by Citi Hedge that its statement was to be used for a particular purpose – is satisfied.  Citi Hedge was retained to independently determine the Funds' NAVs and independently verify the securities prices reported by Madoff. (*Id*. ¶ 187.)  The number of shares that Plaintiffs received in exchange for their investment depended directly on Citi Hedge's NAV calculations, as did the profits reported to Plaintiffs. (*Id*. ¶ 200.)  As recognized in the Funds' information memoranda, "there is very little independent data available to assist a prospective investor in his analysis of the Fund."  (DE 53-3, Kingate Euro IM dated Oct. 6, 2008 ("Euro IM") at 7; DE, 53-2, Kingate Global IM dated Oct. 6, 2008 ("Global IM") at 6.)  Therefore, Citi Hedge knew that Plaintiffs would rely upon the information it provided for the particular purpose of deciding whether to invest, and it also knew that its involvement in the Funds lent significant credibility to the Funds.  (CAC ¶¶ 198-99, 361, 365, 371.)  *Anwar II* held that the first element of the *Credit Alliance* test was satisfied based on similar allegations.  *Anwar II*, 2010 WL 3341636, at *45.  As the court observed in *Pension Committee*, 592 F. Supp. 2d at 641, under these circumstances, it would be "disingenuous" for an administrator like Citi Hedge to contend that it did not know Plaintiffs would rely on the information provided.

The second element – reliance by "a known party" on the statements of Citi Hedge – is satisfied.  Plaintiffs allege that they were known to Citi Hedge, both before and after they

6

invested, because they sent their initial subscription documents and investment assets directly to

Citi Hedge.  (CAC ¶ 197.)  Furthermore, Citi Hedge was required to be available to each

prospective subscriber to answer questions about the Funds.  (Euro Sub. Ag. at S-9; Global Sub.

Ag. at S-9.)  Thus, as in *Anwar II*, Plaintiffs' allegations establish that "there was a discrete

group of potential investors, not simply a faceless mob, who were known parties to the

Administrators, and that the Administrators intended those investors to rely upon the NAV and

account balance statements to invest in the Funds."  *Anwar II*, 2010 WL 3341636, at *46.[3]

The third element of *Credit Alliance* – some conduct linking Citi Hedge to Plaintiffs – is

also satisfied.  Citi Hedge was required to, and did, send investment confirmations to Plaintiffs,

as well as monthly reports of Fund performance.  (CAC ¶¶ 197, 200; Euro IM at 33; Global IM

at vii.)  In addition, Citi Hedge supplied the false statements of Fund value that were used in

marketing materials provided to prospective investors.[4]  *See* Bunch Dec. at Exs. B-J.  Both

*Anwar II*, 2010 WL 3341636, at *47, and *Pension Committee*, 592 F. Supp. 2d at 641, establish

that sending NAV statements to interested persons, as Citi Hedge did (CAC ¶¶ 196-97), is

sufficient to allege the linking requirement.

Because Plaintiffs' allegations satisfy the test set forth under *Credit Alliance*, Citi Hedge

owed Plaintiffs an independent duty of care.  It is Citi Hedge's breach of this independent duty of

care to Plaintiffs which gives rise to Plaintiffs' negligence and negligent misrepresentation

claims.  Accordingly, these claims should not be dismissed under New York law.

---

[3] *See also Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*, 376 F. Supp. 2d 385, 411 (S.D.N.Y. 2005) ("first-time investors" justifiably relied on defendant fund managers and principals "to publish accurate information about the Funds they managed"); *AUSA Life Ins. Co. v. Ernst and Young*, 206 F.3d 202, 223 (2d Cir. 2000) (reversing district court's dismissal of negligent misrepresentation claim where auditors prepared no-default letters which they knew would be for the purpose of being forwarded to note holders, some of which subsequently used the letters to determine whether to make an additional loan).
[4] *See* Cons. Mem. § V-B-5, n. 45 (court may properly consider these marketing materials on a motion to dismiss).

Plaintiffs have also stated a claim for both negligent misrepresentation and negligence under BVI law.  (Bompas Dec. ¶¶105-06, 120.2.)  Contrary to Citi Hedge's argument (at 21), Madoff's theft is no bar to the claim under BVI law (*id*. ¶ 90); indeed, "it may well be said that the purpose of having an independent party produce NAV and account balance calculations is to prevent fictitious valuations."  (*Id*. ¶113.)  Nor are the administration agreements are dispositive of Plaintiffs' negligence claims under BVI law.  (*Id*. ¶¶ 81, 116.)  The agreements actually support Plaintiffs' claims under BVI law, because the provisions that seek to limit the liability of Citi Hedge to "shareholders" further suggest "that there was recognised to be a relevant duty owed by Citi Hedge to the 'Shareholders.'"  (*Id*. ¶ 115.)  Citi Hedge errs when it suggests (at 22) that its duty of care is limited under BVI law because the administration agreements and information memoranda entitle Citi Hedge to rely on Madoff's data; Citi Hedge inexplicably fails to acknowledge that the agreements actually require Citi Hedge to use an independent pricing service to verify Madoff's data.  (CAC ¶¶ 187, 201-03; AA § 4.1.1.)

        2.       Plaintiffs' Allegations of Recklessness Are Sufficient to State a Gross Negligence Claim.

To survive a motion to dismiss on their gross negligence claims under New York law, Plaintiffs must allege an "extreme departure from the standards of ordinary care."  *AMW Materials Testing, Inc. v. Town of Babylon*, 584 F.3d 436, 454 (2d Cir. 2009) (quotation omitted); *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd*., 595 N.Y.S.2d 381, 383 (N.Y. 1993) (gross negligence evinces "a reckless disregard for the rights of others"); *AT&T v. City of New York*, 83 F.3d 549, 556 (2d Cir. 1996) (a "gross failure to exercise due care").  Plaintiffs have adequately made such allegations here.[5]

---

[5] Citi Hedge contends (at 21) that Plaintiffs' allegations of gross negligence do not meet the "high burden" that is required of them.  However, no such heightened pleading burden is in fact required;

Plaintiffs allege that Citi Hedge "grossly failed to exercise due care, and acted in reckless disregard of its duties," failing to "exercise the degree of prudence, caution, and good business practice that would be expected of any reasonable investment professional." (*Id.* ¶ 362.) Plaintiffs allege that "Citi Hedge blindly and recklessly relied on information provided by Madoff to calculate and disseminate the Funds' NAV, and to perform its duties, even though that information was manifestly incorrect and should not have been relied on" (*id.* ¶¶ 201-02), and that "Citi Hedge well knew" that it "should not have relied on the information relied on by Madoff . . . ." (*id.* ¶ 203.) These allegations are well-supported and not simply conclusory. Going well beyond the minimal Rule 8 pleading requirement, Plaintiffs allege specific red flags that Citi Hedge ignored, including consolidation of the roles of investment manager, custodian, and execution agent in Madoff; profits that were impossible to achieve; and 185 instances where Madoff reported demonstrably false prices that Citi Hedge was obligated to verify independently. (*Id.* ¶¶ 77-82, 188, 203, 215-221.) These allegations are more than sufficient to establish gross negligence. *See, e.g., Anwar II*, 2010 WL 3341636 at *49 (finding based on similar allegations that "it is reasonable to infer that the Administrators acted in a way that, if proven, 'differs in kind, not only degree' from ordinary negligent conduct.") (quoting *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 611 N.E.2d 282, 284 (N.Y. 1993)).[6] Accordingly, Plaintiffs' claim for gross negligence should not be dismissed.[7]

---

"claims for gross negligence, like claims of negligence, are governed by Rule 8(a), not Rule 9(b) of the Federal Rules of Civil Procedure." *Anwar II*, 2010 WL 3341636, at *49. "Plaintiffs are not required to plead gross negligence with particularity, but simply to state a facially-plausible claim, by alleging 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

[6] See also *Court Appointed Receiver of Lancer Offshore, Inc. v. The Citco Group Ltd.*, 2008 WL 926509, at *4, 7 (S.D. Fla. Mar. 31, 2008) (upholding gross negligence claim where plaintiffs alleged that defendants had willfully and recklessly "fail[ed] to use reasonable skill and care to value the Net Asset Values . . . and independently price the Offshore Funds," and had "willingly, knowingly, consciously, and recklessly failed to use reasonable skill and care to be aware of, discover, investigate and report numerous

3.      The Exculpatory Provisions in the Administration Agreement Do Not
        Preclude Plaintiffs' Negligence Claims.

Citi Hedge argues (at 22) that it is absolved from liability for its own negligence because

of the exculpatory provision in its administration agreement with the Funds.  However, Citi

Hedge offers no explanation for why Plaintiffs, who are not parties to this agreement, and who

are bringing direct, not derivative claims, would be bound by any exculpatory provision therein.

They would not.  *Anwar II* flatly rejected a similar argument by fund managers, holding that "[a]t

the pleadings stage, this argument carries no water" where plaintiffs were not a party to the

agreement.  *Anwar II*, 2010 WL 3341636, at *75 n.15.[8]  Furthermore, these provisions do not

have any bearing on Plaintiffs' allegations of gross negligence.  Section 10.3 specifically

excludes "gross negligence, willful default or fraud."  (AA ¶10.3.)  They would otherwise be

unenforceable.  *See, e.g.*, *Kalisch-Jarcho, Inc. v City of New York,* 58 N.Y.2d 377, 384-85 (N.Y.

1983).  Nor are the exculpatory provisions in the agreement dispositive of Plaintiffs' negligence

claims under BVI law, as Citi Hedge argues (at 22).  If BVI law applied, Plaintiffs' allegations of

---

glaring red flags"); *Cromer Fin. Ltd. v. Berger*, 2001 WL 1112548, at *2-3  (S.D.N.Y. Sept. 19, 2001)
(upholding gross negligence claim where allegations were that defendant "issued materially false and
misleading audit reports" and "knew or recklessly disregarded" that the reports were "the principal means
by which investors were induced to purchase shares . . ., to increase their shares . . . and/or to retain their
existing shares" and "there was no other purportedly independently-verified information available to
investors on which they could rely"); *Cromer Fin. Ltd. v. Berger,* 137 F. Supp. 2d 452, 464 (S.D.N.Y.
2001) (claims of gross negligence against offshore fund administrator sustained).
[7] While BVI law does not have a separate tort of gross negligence, the claim would not be dismissed
under BVI law because the allegations of gross negligence are relevant in light of the exculpatory clauses
in the administration agreements.  (Bompas Dec. ¶ 114.)
[8] *See also Sommer v. Fed. Signal Corp*., 79 N.Y. 2d 540, 558 (N.Y. 1992) (holding "it would be patently
unfair" to deprive a party rights under an exculpatory clause in a contract to which it was not a party);
*Miles v. Naval Aviation Museum Found., Inc.,* 289 F.3d 715, 720 (11th Cir. 2002) ("[T]he district court
correctly found that the exculpatory contract clause did not affect Plaintiff's claim because he was not a
party to the contract."); *Sage Enterprises, Inc. v. Wells Fargo Alarm Services, Inc.,* No. 94-CV-2100 (JG),
1996 WL 1057144 (E.D.N.Y. June 20, 1996) ("No person who owes a duty to avoid ordinary negligence
with regard to one party is relieved of that duty because of an agreement made with another party.  Sage
was not a party to the contract between FMA and Mack and thus is not bound by that contract's
exculpatory clause.").

10

gross negligence by Citi Hedge would likewise be sufficient to avoid the exculpatory provisions. (*Id.* ¶ 114.)

### C.    Plaintiffs Have Stated Claims for Breach of Fiduciary Duty.

"In New York, the elements of a claim for breach of fiduciary duty are 'breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages.'" *Anwar II*, 2010 WL 3341636, at *29 (quoting *Pension Comm.,* 446 F. Supp. 2d at 195). Citi Hedge disputes that Plaintiffs' allegations establish a fiduciary relationship under New York law. A fiduciary relationship arises when "one party's superior position or superior access to confidential information is so great as to virtually require the other party to repose trust and confidence in the first party." *Anwar II*, 2010 WL 3341636, at *29 (*quoting Pension Comm.*, 446 F. Supp. 2d at 195.). "New York courts generally avoid dismissing a claim of breach of fiduciary duty at the motion to dismiss stage because it usually involves a question of fact: whether someone reposed trust and confidence in another who thereby gain[ed] a resulting superiority or influence." *Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 26 (S.D.N.Y. 2009), *aff'd*, 2010 WL 2588195 (2d Cir. June 29, 2010); *see Anwar II*, 2010 WL 3341636, at *26 ("Whether the [fiduciary] duty exists is a fact-specific inquiry."); *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006) (whether a fiduciary duty exists "normally depends on the facts of a particular relationship, [and] therefore a claim alleging the existence of a fiduciary duty is not subject to dismissal"); *EBC I, Inc. v. Goldman Sachs & Co.*, 832 N.E.2d 26, 31 (N.Y. 2005) (noting that a fiduciary relationship is "necessarily fact-specific").

Plaintiffs' allegations establish that they had a fiduciary relationship with Citi Hedge. Citi Hedge had superior access to confidential information, because it received information underlying the Funds' values from Madoff, and it was obligated to independently verify the

security prices Madoff reported.  (*Id.* ¶ 187; CAC Ex. 15 § 4.1.1.)  Citi Hedge's substantial

additional duties with regard to the Funds, which go beyond the duties of a typical fund

administrator, also gave it superior access to confidential information, including its duties to:

provide an employee to act as secretary of the Funds (CAC, Ex. 15, § 4.2.1) and to organize and

attend meetings of the Funds' boards of directors (*id.*, § 4.2.7); establish and maintain bank

accounts for the Funds (*id.*, § 4.2.9), as well as the Funds' brokerage and custodian accounts (*i.e.*,

the Funds' accounts with Madoff) (*id.*, § 4.6.1); maintain the Funds' accounting books (*id.*,

§4.3.1) and reconcile accounting issues (*id.*, §4.3.3); prepare draft financial statements for the

Funds' auditors (*id.*, §4.3.4); process shareholder subscription and redemption requests (*id.*, §

4.4.1); and answer correspondence from shareholders (*id.*, § 4.4.4).  Plaintiffs had to repose trust

in Citi Hedge, because Citi Hedge determined the Funds' value as well as the number of shares

purchased by Plaintiffs' principal, and was responsible for communicating with them and

handling their subscriptions and redemptions.  (*Id.* ¶¶ 200.)  Of course, Plaintiffs had no access

to the significant underlying information available to Citi Hedge, and so could not independently

verify any of the information Citi Hedge provided to them – as the information memoranda

explicitly recognize.  (Euro IM at 7; Global IM at 6.)  Plaintiffs had no choice but to repose their

trust and confidence in Citi Hedge.

    In *Pension Committee*, the court imposed a fiduciary obligation where – as here – the

defendants were required to determine the relevant funds' NAVs by reference to "independent

pricing sources."  *Pension Comm.*, 446 F. Supp. 2d at 197; (CAC ¶¶ 187, 196, 200).  In *Anwar

II*, 2010 WL 3341636, the court found that the similar "substantial responsibilities" of the fund

administrator in that case established a fiduciary relationship, including, *inter alia*, independently

calculating the fund's NAV, reconciling the fund's cash and other balances, preparing monthly

financial statements, preparing records for the external audit, serving as the Funds' agent with

the general public, and being responsible for communications with investors.  *Id.* at \*53.  *See also EBC I, Inc.*, 832 N.E.2d at 31 (finding a fiduciary relationship because, inter alia, the plaintiff "was induced to and did repose confidence in [the defendant's] knowledge and expertise to advise it as to a fair IPO price").

Citi Hedge contends (at 18) that, because Plaintiffs were clients of a client, the relationship was too attenuated for a fiduciary duty to arise, but this argument overlooks that Plaintiffs have alleged direct contacts between themselves and Citi Hedge.  For instance, Citi Hedge was the Funds' "agent with the general public, and was specifically responsible for communications with investors"; it solicited sales and received money and subscription documents directly from Plaintiffs; and it sent investment confirmations, as well as dividends, directly to Plaintiffs.  (*Id.* ¶¶ 191, 197.)  These allegations of direct contact were sufficient under *Anwar II,* 2010 WL 3341636, \* 53 and *Pension Committee*, 446 F. Supp. 2d at 196-97.

The case on which Citi Hedge relies, *Jordan (Berm.) Investment Co. v. Hunter Green Investments LLC*, No. 00 CV 9214, 2007 WL 2948115, at \*23 (S.D.N.Y. Oct. 9, 2007), was decided at summary judgment, after discovery revealed that – contrary to Plaintiffs' allegations here – the plaintiff in that case had not relied on the information provided by the fund administrator, and the administrator had simply mailed out fund statements.  Indeed, in that case, the claim against the fund administrator was upheld in the earlier ruling on the motion to dismiss and motion for reconsideration.  *Jordan (Berm.) Investment Co. v. Hunter Green Investments Ltd.*, No. 00 CIV 9214(RWS), 2003 WL 1751780, at \*13 (S.D.N.Y. Apr. 1, 2003); *Jordan*

13

*(Berm.) Investment Co. v. Hunter Green Investments Ltd.*, No. 00 CIV 9214(RWS), 2003 WL 21263544, at *4 (S.D.N.Y. June 2, 2003).[9]

Citi Hedge further contends (at 18-19) that it did not voluntarily accept a fiduciary role vis-à-vis the Funds' investors.  This after-the-fact disclaimer cannot undo the fiduciary nature of the relationship.  Plaintiffs allege that, throughout the relationship, Citi Hedge allowed its name and duties to be set forth in the information memoranda for prospective investors; allowed its NAV calculations to be set forth in marketing materials provided to prospective investors; knowingly accepted investment monies directly from Plaintiffs; sent investment confirmations directly to Plaintiffs; continued to calculate the NAV on which it knew Plaintiffs relied to ascertain account values; and communicated regularly with Plaintiffs as investors – all without ever disclaiming the fiduciary nature of the relationship.  (CAC ¶¶ 185, 187, 189-92, 200; Bunch Dec. at Exs. B-J.)  *See Anwar II*, 2010 WL 3341636, at *53 (rejecting a similar argument by the fund administrator, observing that the administrator's relationship with plaintiffs included "communicating with them before investing in the form of Placement Memos that featured, with permission from the Citco Defendants, their names, duties, and NAV calculations," and that the administrator "accepted money from Plaintiffs, sent investment confirmations to Plaintiffs, and calculated the NAV on which Plaintiffs relied.").[10]

---

[9] The other case cited by Citi Hedge, *Thermal Imaging, Inc. v. Sandgrain Securities, Inc.*, 158 F. Supp. 2d 335, 343 (S.D.N.Y. 2001), was also decided at summary judgment, and discovery had revealed far less contact and reliance than is alleged here.

[10] The cases cited by Citi Hedge (at 19, n10) are distinguishable, because in those cases, the plaintiff were not virtually required to repose trust in the defendants – as Plaintiffs were here –but simply chose to do so.  *See Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 26 (S.D.N.Y. 2009) (applying general rule that banks do not owe fiduciary duties in a deposit or lending relationship), *aff'd*, 2010 WL 2588195 (2d Cir. June 29, 2010); *DeBlasio v. Merrill Lynch & Co.*, No. 07-CV-318, 2009 WL 2242605, at *28 (S.D.N.Y. July 27, 2009) (dismissing claim because plaintiffs alleged no "interactions-indirect or otherwise" between plaintiffs and defendants); *Kolbeck v. LIT Am., Inc.*, 923 F. Supp. 557, 561-62, 572 (S.D.N.Y. 1996) (dismissing a fiduciary duty claim because the claim was premised on unspecified statements made by people other than the defendant).

Citi Hedge endeavors to distinguish the cases holding that a fund administrator owes a fiduciary duty to fund investors by arguing (at 19) that courts only allow such claims where the administrator undertook to implement trades on behalf of the fund or held itself out to fund investors as having specific policies and procedures to fairly value illiquid fund assets.  But nowhere do the cases define the fiduciary relationship so narrowly.  While *Anwar II* also mentioned that the defendants "advertised that they were a reliable fiduciary," the court went on to emphasize that its holding that plaintiffs had adequately alleged a fiduciary duty was not "based only on the [defendants'] marketing materials."  *Anwar II*, 2010 WL 3341636, at *53.   In any event, like the administrator in *Anwar II*, Citi Hedge held itself out as an "elite professional" (*Anwar II*, 2010 WL 3341636, at *53), touting on its website that it had "the experience, the global scale and the state-of-the-art technology to meet the comprehensive and complex needs of hedge funds and their managers for years to come"; that it was "ranked the #1 fund administrator"; and that it had a "unique competitive advantage" over other fund service providers.  (CAC ¶¶ 194-95.)  Thus, even if marketing statements were required, Plaintiffs' allegations are sufficient.[11]   Accordingly, accepting Plaintiffs' allegations as true, Plaintiffs have established a fiduciary duty between them and Citi Hedge as fund administrator.

Citi Hedge further contends (at 20) that, even if it was a fiduciary of Plaintiffs, it did not breach its duty.  But Plaintiffs' allegation that Citi Hedge communicated fictitious Fund values to Plaintiffs before and after they invested, while ignoring red flags that showed the falsity of those figures and profoundly neglecting its obligations as the Funds' administrator, establish breach.

---

[11] Citi Hedge argues (at 19, n11) that Plaintiffs may not rely on statements from its website because Plaintiffs cannot allege these statements were on the website of it or its predecessors when Plaintiffs invested in the Funds, or that they relied on them.  *Anwar II* properly rejected this same argument, observing: "These are the kinds of factual disputes that are inappropriate for the Court to resolve at this stage, where the Court is obligated to accept Plaintiffs' allegations as true and resolve doubts and draw all reasonable inferences in their favor."  *Anwar II*, 2010 WL 3341636, at *60.

(CAC ¶¶ 201-03, 215-21, 356.)  Remarkably, Citi Hedge suggests (at 20) that, even if it had

discovered the at least 185 separate instances where Madoff incorrectly reported the prices of

securities he was falsely claiming to hold – a key breach alleged by Plaintiffs (¶¶ 77-80, 188) – it

would have appeared to be an "administrative error."  Yet it is precisely this alarming lack of

scrutiny in the face of manifestly incorrect information and inappropriate tolerance of red flags

suggesting a high risk of fraud that Plaintiffs contend breached the fiduciary duty.  Citi Hedge, as

the party tasked with independently verifying the prices of the securities Madoff purported to

hold, was uniquely well-situated to investigate these pricing discrepancies – indeed, keeping

track of the prices was its key responsibility.  Citi Hedge agreed to and was paid to undertake

this task to protect Plaintiffs, yet failed to do so.[12]  As such, Citi Hedge's conduct was a

substantial factor in causing Plaintiffs' loss, and Plaintiffs' allegations establish breach.  *See RSL

Commc'ns PLC ex rel. Jervis v. Bildirici*, No. 04-CV-5217, 2006 WL 2689869, at *5 (S.D.N.Y.

Sept. 14, 2006) ("To establish that [d]efendants breached their duty of care, [p]laintiff need only

'establish that the offending parties' actions were a substantial factor in causing an identifiable

loss.'") (internal quotation marks omitted) (*quoting F.D.I.C. v. Bober*, No. 95-CV-9529, 2003

WL 21976410, at *1 (S.D.N.Y. Aug. 19, 2003)); *Gibbs v. Breed, Abbot & Morgan*, 710

N.Y.S.2d 578, 684 (App. Div. 1st Dep't 2000) (requiring that "the offending parties' actions

were a substantial factor in causing an identifiable loss" to establish breach (internal quotation

marks omitted)).

---

[12] Citi Hedge also inexplicably argues (at 20) that it did not undertake to verify the security prices
reported by Madoff – even though the Information Memoranda provided to investors indicated that this
was the administrator's responsibility (CAC ¶ 187), and the administration agreement confirms that Citi
Hedge was to use "independent pricing services" when calculating the net asset value. (AA § 4.1.1.)  Citi
Hedge's unsupported assertion that it did not, in fact, undertake this duty creates, at most, a factual
dispute that cannot be resolved before discovery.

The result is the same under BVI law.  (Bompas Dec. ¶ 143.)  Citi Hedge contends (at 17) that Plaintiffs' claims for breach of fiduciary duty fail under BVI law because Plaintiffs do not identify any statement by Citi Hedge evidencing an intent to voluntarily accept a fiduciary obligation.  However, nowhere in the Wilkinson Affidavit submitted by Citi Hedge is it suggested that under BVI law the fiduciary must accept the duty through an express statement.  Rather, Wilkinson acknowledges that if the circumstances give rise to a relationship of trust and confidence – as Plaintiffs allege – a fiduciary obligation arises.  (Wilkinson Dec., ¶ 19.)  Furthermore, contrary to Citi Hedge's argument (at 18), Plaintiffs' allegations go beyond simple incompetence, and suffice to establish breach of fiduciary duty under BVI law.  (Bompas Dec., ¶¶ 143.3.)

> **D.**     **Plaintiffs Have Stated Claims for Aiding and Abetting Fraud and Aiding and Abetting Breach of Fiduciary Duty.**

To state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must show: "(1) breach of fiduciary obligations to another of which the aider and abettor had actual knowledge; (2) the defendant knowingly induced or participated in the breach; and (3) plaintiff suffered actual damages as a result of the breach."  *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 466 (S.D.N.Y. 2009); *Anwar II*, 2010 WL 3341636, at \*54.  Similarly, to state a claim for aiding and abetting fraud, a plaintiff must show: "(1) the existence of an underlying fraud; (2) knowledge of this fraud on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in achievement of the fraud."  *Kottler*, 607 F. Supp. 2d at 464; *Anwar II*, 2010 WL 3341636, at \*54. [13]  Citi Hedge disputes (at 23-24) only the knowledge element – whether

---

[13] Plaintiffs' claim for aiding and abetting breach of fiduciary duty claim is governed by Rule 8 pleading standard, *Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A*, 261 F.R.D. 13, 23-24 (S.D.N.Y. 2009), while Plaintiffs' claim for aiding and abetting fraud is governed by Rule 9.

the allegations sufficiently establish Citi Hedge's actual knowledge of the breach of fiduciary duty or fraud by the Kingate Defendants.

Citi Hedge is incorrect when it asserts (at 23) that willful blindness is insufficient to satisfy the knowledge requirement. It is well-established that allegations that create "a strong inference of actual knowledge or conscious avoidance" are sufficient to satisfy the actual knowledge requirement. *Anwar II*, 2010 WL 3341636, at *54; *see also Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 370 (S.D.N.Y. 2007) ("[T]he Court sees no reason to spare a putative aider and abettor who consciously avoids confirming facts that, if known, would demonstrate the fraudulent nature of the endeavor he or she substantially furthers."); *Cromer Fin. Ltd. v. Berger*, No. 00-CV-2284, 2003 WL 21436164, at *9 (S.D.N.Y. June 23, 2003) (denying summary judgment on an aiding and abetting breach of fiduciary duty claim because plaintiff "rais[ed] questions of fact as to whether [defendant] consciously avoided confirming the existence of the . . . breach of fiduciary duty"). Actual knowledge can be "discerned from the surrounding circumstances." *Oster v. Kirschner*, 905 N.Y.S.2d 69, 72 (App. Div. 1st Dep't. 2010). The knowledge requirement is not identical to the scienter required for the underlying fraud. *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 652 F. Supp. 2d 495, 502-03 (S.D.N.Y. 2009); *Anwar II*, 2010 WL 3341636, at *54.

Plaintiffs' allegations satisfy the actual knowledge requirement. Citi Hedge's longstanding and extensive involvement with the Funds and its managers creates a strong inference of Citi Hedge's actual knowledge of the breach of fiduciary duty and fraud being perpetrated by the Kingate Defendants on Plaintiffs set forth in Counts 1, 2, 7, and 8. Specifically, Citi Hedge and its predecessors in interest served as administrators of the Funds from their inception. (CAC ¶ 185.) In that role, Citi Hedge was highly involved in the Funds' affairs, maintaining the Funds' books and records, providing an employee to serve as secretary

for the Funds, preparing draft financial statements for the Funds' auditors, and reconciling the

Funds' accounting issues.  (*Id.* ¶ 196.)  Citi Hedge's employee was even obligated to organize

and attend meetings of the Funds' boards of directors.  (AA § 4.2.7.)  Citi Hedge also served as

the Funds' agent with the general public, and processed all subscription and redemption requests

for the Funds' investors.  (*Id.* ¶ 197; AA §§ 4.4.1, 4.4.4.)  Citi Hedge was knowledgeable about

proper Fund administration, having extensive experience in providing financial services to funds.

(*id.* ¶¶ 193-95).  Furthermore, Citi Hedge was aware of the roles consolidated in Madoff and

other red flags, which demanded a higher level of scrutiny over the Madoff investments.[14]  (*Id.*

¶¶ 77-82, 203, 215-22).  These allegations create a strong inference that Citi Hedge knew, as

Plaintiffs allege it did, that the Kingate Defendants were committing fraud and breach of

fiduciary duty by, for instance, making false representations to Plaintiffs about the extent of their

due diligence and oversight over the Funds' investments and the nature of the Madoff

investments, that the Kingate Defendants had absolutely no adequate system in place to monitor

the Funds' investments in Madoff, and that they were failing to perform necessary and adequate

due diligence. (*Id.* ¶¶ 383, 389.)  Under these circumstances, if Citi Hedge did not know of the

fraud and breach of fiduciary duty being perpetrated, it was only because it "refrained from

confirming [them] in order later to be able to deny knowledge."  *Fraternity Fund*, 479 F. Supp.

2d at 368 (internal quotation marks omitted).  The knowledge requirement is satisfied.

Similar facts have been found sufficient to demonstrate actual knowledge in other cases.

*See, e.g.*, *Anwar II*, 2010 WL 3341636, at *55 (relying on the defendants' "aware[ness] of the

---

[14] The red flags of which Citi Hedge was aware include: Madoff failed to trade through an independent broker; self-cleared all trading activities; and served as his own custodian.  (CAC ¶ 215.)  He refused to identify the counterparties with which he supposedly traded, (*id.* ¶ 216), used an unknown accounting firm which publicly represented that it did not conduct audits, (*id.* ¶ 218), reported his trades on paper despite claiming to be technologically advanced, (*id.* ¶ 219), and had preternaturally consistent results, (*id.* ¶ 220).

roles consolidated in Madoff," and other red flags, together with the defendants' "familiarity

with the [f]unds, as well as their general experience in providing financial services to funds" in

concluding that "[p]laintiffs allege a strong inference that the [defendants] consciously avoided

confirming facts that, if known, would demonstrate" both a breach of fiduciary duty and fraud)

(internal quotation marks omitted); *Pension Committee of the University of Montreal Pension*

*Plan v. Banc of America Securities, LLC*, No. 05 Civ. 9016(SAS), 2007 WL 528703, at *7

(S.D.N.Y., Feb. 20, 2007) (holding "actual knowledge" requirement satisfied where there was

"circumstantial evidence" giving rise to an "inference of knowledge," such as the series of "red

flags" that the administrator allegedly ignored); *Cromer Fin.*, 2003 WL 21436164, at *1, 9

(finding a material dispute of fact when plaintiffs argued that the defendant auditing firm

"ignored evidence of [defendant's] fraud and failed their responsibilities as auditors");

*Houbigant, Inc. v. Deloitte & Touche LLP*, 753 N.Y.S.2d 493, 498, 500 (App. Div. 1st Dep't

2003) (noting that cases had imposed fraud liability on accountants where the accountant

"recklessly failed to independently verify and investigate the documents of a corporation it knew

had severe internal control and reporting problems," and imposing liability for aiding and

abetting fraud "based on audit reports and financial statements that allegedly did not accurately

reflect the financial condition of [the defendant's] clients" (internal quotation marks and

emphasis omitted)); *Oster*, 905 N.Y.S.2d at 72 (finding that knowledge of misrepresentations as

to dates, and criminal background of the people running an investment vehicle, was sufficient to

demonstrate actual knowledge that the investment vehicle was a Ponzi scheme); *ADL, LLC v.*

*Tirakian,* No. CV 2006-5076, 2010 WL 3925131, at *17 (E.D.N.Y. August 26, 2010) (relying, in

part, on defendants' "extensive experience" of financial and business practices in order to infer

actual knowledge).  As in these decisions, Plaintiffs here have alleged both actual knowledge and

circumstances from which such knowledge can be inferred, and have satisfied the knowledge

requirement.  Citi Hedge's motion to dismiss the claims for aiding and abetting fraud and breach of fiduciary duty should be denied.

The result is the same under BVI law.  (Bompas Dec., ¶¶ 147-69.)  Citi Hedge argues (at 23) that the concept of "aiding and abetting" is confined to criminal liability, but this is merely semantics.  Plaintiffs' allegations establish the equivalent claims under BVI law for liability "as a joint tortfeasor with a principal fraudster" (*id*. ¶ 147) and "knowing assistance in a breach of trust." (*Id*. ¶ 163.)  Citi Hedge further argues (at 23) that Plaintiffs' allegations are insufficient to establish the requisite dishonesty on the part of Citi Hedge for these claims.  While Plaintiffs do not use the label "dishonesty," that is not necessary; their allegations that Citi Hedge knew of the fiduciary duties owed by the Kingate Defendants and of the breaches of those duties, and assisted with such breaches, are sufficient to establish dishonesty for these claims.  (*Id*. ¶ 169.)

## E.    Plaintiffs Have Stated a Claim for Third-Party Beneficiary Breach of Contract.

Citi Hedge contends (at 24-25) that Plaintiffs' third party beneficiary claims should be dismissed because the administration agreements select BVI law, which does not recognize such claims.  To the contrary, given New York's predominant interest in the litigation, New York law should determine Plaintiffs' status as third party beneficiaries.  *See* Cons. Mem. § II-B.  In *Anwar II*, the court applied New York law to determine whether plaintiffs were third party beneficiaries of contracts between the funds and their managers, even though the contracts selected Bermuda law, because there was nothing in the complaint alleging that plaintiffs were given actual notice of the choice of law provision in the contract.  *Anwar II*, 2010 WL 3341636, at *32.  Furthermore, the court observed that the law of the selected forum would not recognize Plaintiffs as third party beneficiaries, and that choice of law clauses "are not valid if, among other circumstances, enforcement would deprive the complaining party of his day in court or of

an effective remedy." *Id*.  As in *Anwar II*, New York law should apply here, because there is no allegation that Plaintiffs here were given actual notice of the choice of law provisions, and they would likewise be denied their day in court if BVI law were to be applied.[15]

Under New York law, to assert rights under a contract, a non-party must show that (1) a valid contract existed, (2) it was intended for the third party's benefit, and (3) that benefit was sufficiently immediate, rather than incidental.  *See Madeira v. Affordable Hous. Found., Inc*., 469 F.3d 219, 251-52 (2d Cir. 2006).  Citi Hedge focuses its challenge (at 25 n.14) on only the second element under New York law – whether the contract was intended for the Plaintiffs' benefit.  However, "[d]etermining intent is necessarily a factual endeavor," and thus, "third-party beneficiary status is a question of fact."  *Debary v. Harrah's Operating Co., Inc*., 465 F. Supp. 2d 250, 261 (S.D.N.Y. 2006).  Hence, where there is any ambiguity in the contractual language, courts typically refuse – even on summary judgment motions – to decide the issue of whether the contract intended to confer third-party beneficiary status.  *See, e.g., Barry v. Atkinson*, No. 96 CIV. 8436, 1998 WL 255431, at *3 (S.D.N.Y. May 19, 1998) (finding agreement ambiguous as to the rights of alleged third-party beneficiaries due to "the absence of any language in the agreement affirmatively bestowing such a right").

The administration agreement evinces an intent to benefit Plaintiffs.  It has an entire section, Section 4.4, entitled "Shareholder Services," which lists the services that Citi Hedge is to provide directly to Plaintiffs, such as processing their subscription and redemption requests (AA § 4.4.1); handling all correspondence with them (*id.* § 4.4.4); and sending them circulars, notices of meetings, reports, and financial statements (*id.* § 4.4.2).  (CAC ¶¶ 46, 197, 377.)  In addition,

---

[15] *See also P.T. Adimitra Rayapratama v. Bankers Trust Co.*, 1995 WL 495634, *4-5 (S.D.N.Y. 1995) (applying New York law to determine whether defendant was a third party beneficiary of a contract, notwithstanding the contract's selection of English law).

in recognition of the important role Citi Hedge played in protecting investor interests, the Funds'
information memoranda assured investors that the administrator determines the net asset value of
the Funds' portfolio and "verifies the prices attributed to the securities held by the USD shares of
the Fund by reference to pricing sources independent of the Investment Advisor whenever
reasonably possible."  (*Id.* ¶ 187.)  The subscription agreement also provides that Citi Hedge
would be available to investors before investing to answer questions or verify information in the
Information Memorandum.  (Euro Sub. Ag. at S-9; Global Sub. Ag. at S-9.)  There is no one else
but the investors who would benefit from these services.

These provisions preclude dismissal.  Where "the terms of the contract necessarily
require the promisor to confer a benefit upon a third person, then the contract contemplates a
benefit to that third person, and this is ordinarily sufficient to justify third-party-beneficiary
enforcement of the contract, even though the contract also works to the advantage of the
immediate parties thereto."  22 N.Y. Jur.2d Contracts § 304; *see also Subaru Distribs. Corp. v.
Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) ("[A] contractual requirement that the
promisor render performance directly to the third party shows an intent to benefit the third
party."); *Anwar II*, 2010 WL 3341636, at *43 (holding that shareholders were properly alleged to
be intended beneficiaries of fund administration agreement where agreement did not explicitly
name them as third party beneficiaries, but did require the administrator to render certain
performance directly to the plaintiffs).[16]

---

[16] *See also Flickinger v. Harold C. Brown & Co., Inc.*, 947 F.2d 595, 597, 600 (2d Cir. 1991) ("[w]here
performance is to be rendered directly to a third party under the terms of an agreement, that party must be
considered an intended beneficiary," in the context of a brokerage firm that was retained to provide
clearing services for a broker's clients, and registered securities for plaintiff, shipped securities to
plaintiff, and sent periodic activity statements to plaintiff); *Finch, Pruyn & Co. v. M. Wilson Control
Servs.*, 658 N.Y.S.2d 496, 497-98 (App. Div. 3d Dep't 1997) (plaintiff manufacturer who hired an
electrician to perform services at the plaintiff's power plant was a third-party beneficiary to a subcontract
between electrician and mason, because "subcontract necessarily required [mason] to directly perform

Citi Hedge submits (at 25 n.14) that the agreements' inurement and non-assignment clauses preclude Plaintiffs' third-party beneficiary claims, but Citi Hedge does not even identify the clauses in the contract.  The agreement does contain a non-assignment clause (AA § 17), but not an inurement clause.[17]   Even if there were an inurement clause, it would not bar Plaintiffs' claim because the contract also evinces a contrary intent to benefit Plaintiffs, both through the provisions discussed above and the third-party indemnification clause (AA § 10.5).  *See Anwar II*, 2010 WL 3341636, at *43 (refusing to dismiss third-party beneficiary claims against fund administrator where contract contained both an inurement and a non-assignment clause, where other provisions evinced an intent to benefit the shareholders); *De Lage Landen Fin. Servs. v. Rasa Floors, LP*, No. 08-0533, 2009 WL 884114, at *8-9 (E.D. Pa. Apr. 1, 2009) (applying New York law) (declining to dismiss third-party beneficiary claims where the agreements at issue contained a non-assignment clause and an inurement clause, where they also provided indemnification by the contracting parties in case of third-party claims).  The presence of such "conflicting evidence" necessitates that the court have the "benefit of discovery and development of the factual record to aid in construing the contracts and discerning the parties' intent."  *De Lage*, 2009 WL 884114, at *8-9.  The decision *Stephenson v. Citco*, 09 Civ. 00716, 2010 WL 1244007 (S.D.N.Y.  Mar. 31, 2010), cited by Citi Hedge, is not to the contrary, because – unlike

---

services at plaintiff's facility . . . in order to satisfy . . . obligations to plaintiff."); *Richards v. City of New York*, 433 F. Supp. 2d 404, 430 (S.D.N.Y. 2006) (children were third-party beneficiaries of a contract between the Administration for Children's Services and an agency licensing the children's foster care providers because "they are the people for whom the delegated services are to be provided").

[17] Non-assignment clauses alone are not sufficient to foreclose third-party beneficiary status, because "it is possible for parties to intend that a third party enjoy enforceable rights while at the same time intending to limit or preclude assignments."  *Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 164 (S.D.N.Y. 1998).  *See also Woolard v. JLG Indus.*, 210 F.3d 1158, 1170 (10th Cir. 2000) ("Although the assignment of a contract will confer rights and obligations upon a third-party, the assignment is unrelated to one's status as a third-party beneficiary. The non-assignment clause serves to protect . . . successors from . . . unauthorized transfer of rights and obligations and does not speak to the intended third-party beneficiary status . . .").

here – the court held that nothing in the four corners of the agreement expressed an intent to

benefit third parties.  *See Anwar II*, 2010 WL 3341636, at *43 (distinguishing *Stephenson* on this

basis).  Accordingly, Plaintiffs' third-party beneficiary claim should not be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Citi Hedge's

motion to dismiss filed by the Citco Defendants, or in the alternative, allow Plaintiffs to amend

the Complaint to cure any pleading deficiencies.

Date:  November 4, 2010                    Respectfully submitted,

**LABATON SUCHAROW LLP**


_____
Joel H. Bernstein
Javier Bleichmar
Michael Woolley
140 Broadway
New York, NY 10005
Tel: 212-907-0700
Fax: 212-818-0477

**BOIES, SCHILLER &FLEXNER LLP**
David Boies
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
Fax: (914) 749-8300

David A. Barrett
Howard L. Vickery
575 Lexington Avenue
New York, NY 10022
Tel: (212) 446-2300
Fax: (212) 446-2350

Stuart H. Singer
Carlos M. Sires
Sashi Bach Boruchow
401 East Las Olas Blvd, #1200
Ft. Lauderdale, FL 33301
Tel: (954) 356-0011
Fax: (954) 356-0022

**COHEN MILSTEIN SELLERS &
TOLL PLLC**
Joel P. Laitman
88 Pine Street
New York, New York 10005
Tel: (212) 838-7797
Fax: (212) 838-7745

Steven J. Toll
Daniel S. Sommers
Joshua Devore
S. Douglas Bunch
Lisa M. Mezzetti
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

***Co-Lead Counsel for Plaintiffs***