UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE KINGATE MANAGEMENT LIMITED LITIGATION<br><br>This Document Relates To:  All Actions | Master File 09 Civ. 5386 (DAB) |

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THE FIM DEFENDANTS' MOTION TO DISMISS THE
<u>AMENDED CONSOLIDATED CLASS ACTION COMPLAINT</u>**

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adelphia Recovery Trust v. Bank of America*
  No. 05 Civ 9050, 2010 WL 2077214 (S.D.N.Y. May 14, 2010). ........................................... 9

*Anwar v. Fairfield Greenwich Ltd.*,
  728 F. Supp. 2d 372 (S.D.N.Y. 2010) ............................................................................ 5, 7, 8, 9

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ............................................................................................................. 2

*Bennett v. Spear*,
  520 U.S. 154 (1997) ................................................................................................................ 9

*Bensen v. Am. Ultramar Ltd.*,
  No. 92 Civ. 4420, 1997 WL 317343 (S.D.N.Y. June 12, 1997) ............................................. 5

*Cariani v. D.L.C. Limo. Svc., Inc.*,
  363 F. Supp. 2d 637 (S.D.N.Y. 2005) ..................................................................................... 6

*Deluca v. AccessIT Group*,
  695 F. Supp. 2d 54 (S.D.N.Y. 2010) ....................................................................................... 4

*Eurycleia Partners, LP v. Seward & Kissel, LLP*,
  849 N.Y.S.2d 510 (1st Dep't 2007) ......................................................................................... 3

*Eurycleia v. UBS Sec., LLC*,
  2008 N.Y. Slip Op. 32073(U) (N.Y. Sup. Ct. July 1, 2008) ................................................ 7, 8

*Fezzani v. Bear, Stearns & Co.*,
  384 F. Supp. 2d 618 (S.D.N.Y. 2004) ..................................................................................... 3

*Global Network Commc'n, Inc. v. City of N.Y.*,
  458 F.3d 150 (2d Cir. 2006) .................................................................................................... 4

*Goldstein v. SEC*,
  451 F.3d 873 (D.C. Cir. 2006) ................................................................................................. 7

*Granite Partners, L.P. v. Bear, Stearns*,
  17 F. Supp. 2d 275 (S.D.N.Y. 1998) ....................................................................................... 9

*IIT v. Cornfeld*,
  619 F.2d 909 (2d Cir. 1980) .................................................................................................... 3

*In re Cannon Cameras Lit.*,
  No. 05 Civ. 7233, 2006 WL 1751245 (S.D.N.Y. June 23, 2006) ........................................... 8

*In re Tremont Securities Law*,
  703 F. Supp. 2d 362 (S.D.N.Y. 2010) ..................................................................................... 5

*Jordan Inv. Co., Ltd. v. Hunter Green Inv. Ltd.*,
   154 F. Supp. 2d 682 (S.D.N.Y. 2001) .................................................................................. 5

*Jordan Inv. Co., Ltd. v. Hunter Green Inv. Ltd*,
   No. 00 Civ. 9214, 2007 WL 2948115 (S.D.N.Y. Oct. 3, 2007) ............................................ 7

*Linares v. Greiner*,
   No. 02-Civ-1844, 2003 WL 23864914 (E.D.N.Y. Oct. 24, 2003) ........................................ 6

*Marcus v. AT & T Corp.*,
   938 F. Supp. 1158 (S.D.N.Y. 1996) ...................................................................................... 6

*Newman v. Family Management.Corp.*,
   No. 08 Civ. 11215, 2010 WL 4118083 (S.D.N.Y. Oct. 20, 2010) .................................... 5, 7

*People v. Merkin*,
   907 N.Y.S.2d 439 (N.Y. Sup. Ct. 2010) ................................................................................ 8

*Picard v. Kohn*,
   No. 08-01789, 2010 WL 5029549 (Bankr. S.D.N.Y. Dec. 10, 2010) ................................... 6

*Saltz v. First Frontier, LP*,
   No. 10 Civ. 964, 2010 WL 5298225 (S.D.N.Y Dec. 23, 2010) .................................... 2, 5, 7

*SEC v. Cohmad Secs. Corp.*,
   No. 09 Civ. 5680, 2009 WL 1748402 (S.D.N.Y. June 22, 2009) ......................................... 6

*Sheldon v. Khanal*,
   No. 08-Civ-3676, 2009 WL 3233093 (E.D.N.Y. Sept. 30, 2009) ......................................... 8

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994) .................................................................................................. 5

*Subaru Distrib. Corp. v. Subaru of Am., Inc.*,
   425 F.3d 119 (2d Cir. 2005) .................................................................................................. 8

*Thermal Imaging, Inc. v. Sandgrain Sec., Inc.*,
   158 F. Supp. 2d 335 (S.D.N.Y. 2001) ................................................................................... 7

LEGAL_US_E # 91565424.5

FIM's [1] Moving Brief made a simple but dispositive point: the Complaint fails to plead any facts, let alone facts satisfying the applicable pleading standards, that any FIM Defendant engaged in wrongdoing or made any misrepresentation to any Plaintiff. Not a single "representation" or statement of any kind is attributed to FIM in the entire Complaint or the many Information Memoranda ("IMs") and other documents attached to it. Regardless of whether the Complaint states a cause of action against any of the other defendants, it completely fails to state one against FIM. The Complaint also fails for the other reasons explained in the Moving and Joint Briefs, but this failure is specific to FIM and itself mandates dismissal.

The Opposition does nothing to refute this. Rather than attempting to defend the allegations they actually made, Plaintiffs instead resort to wholesale mischaracterizations of their Complaint. A glaring example, among many, is Plaintiffs' new assertions that the FIM Defendants (and Sandra Manzke) were the "principal wrongdoers" and "main culprits," and that they "sponsored, managed, marketed, and sold" and "controlled" the Funds. Plaintiffs cite numerous paragraphs of the Complaint as supposed support for these inflammatory assertions. But those paragraphs consist entirely of assertions regarding FIM's structure, corporate status, place of incorporation, and the like, and the existence of a consulting agreement between two FIM Entities and KML. There is not a single word in the Complaint about any FIM Defendant sponsoring, selling, controlling or managing the Funds, and nothing about being culprits or wrongdoers. These new assertions are simply made up for purposes of the Opposition.

Similarly, Plaintiffs argue that the Complaint somehow suggests a "close relationship" between Madoff and FIM executives Grosso and Ceretti, in a blatant attempt to tar FIM with the Madoff taint. But while the Opposition purports to describe "numerous meetings" with Madoff since 2005, the Complaint fails to allege a single meeting between Ceretti and Madoff, and alleges only that Grosso met with Madoff once in each of 2006 of 2008 (twice in 2007). This is not "numerous." The same is true of Plaintiffs' argument regarding Madoff's "pocketbook telephone directory." Plaintiffs argue that it establishes "close contact and regular communications" with Madoff, but this is just plain silly – two numbers listed for Grosso and Ceretti

---

[1] Capitalized terms have the same meanings as in FIM's Memorandum of Law in Support of their motion to dismiss ("Mov. Br."). "FIM" refers to all FIM Defendants; "Funds" refers to the Kingate Funds; "JK Dec." refers to the Declaration of Jodi Kleinick dated February 10, 2010; references to "AC" are to paragraphs in the Complaint. FIM also joins in the Joint Memorandum (the "Joint Brief") dated February 10, 2010.

were discontinued by the U.K. telephone authority by 2001. No "close relationship" is based on phone numbers that were out of service for *nearly eight years*.

Finally, the supposed "red flags" Plaintiffs recite have all been considered and rejected by various courts considering Madoff claims. These "red flags" simply do not establish that parties like the FIM Defendants "should have known" of Madoff's fraud, something that eluded the entire world – including the SEC and FINRA, the regulatory authorities charged with overseeing Madoff's operations and in the best position to have detected that fraud– for decades.

Plaintiffs try to argue that they are not suing the Defendants for failing to detect Madoff's fraud, but because the Defendants allegedly "made false statements and omitted material information." But even this spin (which is contradicted by Plaintiffs' actual allegations) fails due to the lack of any allegedly false statement by FIM, and Plaintiffs' lack of any relationship or dealings whatsoever with FIM. These failures require dismissal, and no amount of hyperbole to bolster the Complaint can forestall that dismissal.[2]

## I.   PLAINTIFFS DO NOT ALLEGE ANY MISSTATEMENTS BY FIM[3]

Throughout their Opposition, like in their Complaint, Plaintiffs continue to lump the FIM Defendants into their allegations and arguments relating to the "Kingate Defendants" or "Defendants."[4] As the cases FIM cited make clear, this is improper. Mov. Br. 9-10. Plaintiffs do not attempt to refute any of these cases – nor could they. *Saltz v. First Frontier, LP*, 2010 WL 5298225, at **7-8 (S.D.N.Y. Dec. 23, 2010) (allegations cannot be made against multiple defendants lumped together).

Unable to point to any allegations of misstatements by FIM in their Complaint, Plaintiffs

---

[2] Plaintiffs never should have commenced their action against FIM in this Court in the first place. All of the Plaintiffs are non-U.S. investors (as are all of the investors in the funds) in non-U.S. funds. There are already two actions pending against the other FIM Defendants relating to these Funds, one in Bermuda by the court-appointed liquidators of the Funds, and one in the U.K. (where FIM Advisers, FIM Limited, Grosso and Ceretti reside) by Picard, the Madoff trustee. JK Dec. ¶¶ 4-5 and Ex. 3. Those are the right parties, if any, to pursue claims against FIM, and those forums are clearly more appropriate given the claims and the parties involved.

[3] Plaintiffs concede that under Second Circuit precedent, claims "sounded in fraud when [they] depended on misstatements and omissions which were identical to those which were the basis of plaintiffs' fraud claims." Opp. 12 n.8. Here, because every cause of action expressly incorporates and is based on all of the allegations of intentional wrongdoing that form the basis for the fraud claims (AC 254, 261, 268, 273, 278, 284, 298, 303, 306, 392), all of Plaintiffs' claims are subject to the requirements of Rule 9(b). Mov. Br. 9-10. Even if Rule 8 is applied to some claims, Plaintiffs fail to meet even this standard as to FIM. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Saltz v. First Frontier*, at *8 (dismissing Madoff-related fraud claims under Rule 9(b) and gross negligence claims under Rule (8)).

[4] *See* Opp. 1-4, 7-9, 25-26, 31-32, 55-61, 66-69, 75-88, 93-94.

(1) mischaracterize the nature of their claims; (2) mis-cite what they actually allege in the Complaint, and argue that they made allegations that simply do not exist; and (3) attempt to cite materials, including documents and unsupported hearsay allegations made in another proceeding, that were never referenced in the Complaint. These efforts fail, as claims rise or fall with what is actually alleged in the Complaint, which is plainly inadequate here. *See IIT v. Cornfeld*, 619 F.2d 909, 914 & n.6 (2d Cir. 1980); *Fezzani v. Bear, Stearns & Co.*, 384 F.Supp.2d 618, 647 (S.D.N.Y. 2004).

Plaintiffs argue that they are *not* seeking to hold the Defendants liable for failing to detect Madoff's fraud, but for making false statements in "uniform sales documents" distributed to investors since 1998. Opp. 1. This directly contradicts the Complaint. *See, e.g.*, AC 77; 271 ("If the Kingate Defendants had not been grossly negligent ... they would have discovered that Madoff was a fraud..."); ¶ 276 ("If the Kingate Defendants had not been negligent ... [they] would have discovered that Madoff was operating a Ponzi Scheme...").

But the claims against FIM still fail because they are all based on supposed misstatements or omissions in the IMs (AC 43, 399). In their Opposition, Plaintiffs argue that the "Kingate Defendants" – again, undifferentiated – "drafted, reviewed, authorized, and/or otherwise participated in the preparation and dissemination of the [IMs]." Opp.7-9, 58-61. However, there are no allegations in the Complaint and nothing in the IMs suggesting that any FIM Defendant prepared or issued the IMs. Plaintiffs note that the IMs identify FIM Advisers as an outside "Consultant" to KML, but that is irrelevant to the issue of whether any FIM Defendant *made the statements* in the IMs. *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 849 N.Y.S.2d 510, 512 (1st Dep't 2007) (fraud claim not properly pled against fund's outside counsel where investors only alleged misrepresentations by the fund).

Plaintiffs then blatantly mischaracterize the Complaint by citing paragraphs they claim support their arguments but clearly do not. Plaintiffs argue that Grosso and Ceretti were the "principal sponsors" of the Funds and the "main culprits here," but the Complaint says nothing of the sort.[5] They argue that Grosso and Ceretti "sponsored," "marketed" or "sold" the Funds to investors through FIM Limited, FIM Advisers and

---

[5] *See* Opp. 5 (citing AC 31, 32, 36, which allege where Grosso and Ceretti reside and their relationship to FIM ).

- 3 -

FIM (USA), but the Complaint again says nothing of the sort.[6] Plaintiffs argue that FIM Advisers, FIM Limited, Grosso and Ceretti "managed" or "controlled" the Funds through the CSA, but the Complaint again says no such thing.[7] Moreover, Plaintiffs disingenuously suggest throughout the Opposition that the CSA creates a relationship between KML and all the FIM Defendants, and even purport to bring a breach of contract claim against FIM (USA), although FIM (USA), Grosso and Ceretti are not even alleged to be parties to the CSA. Opp.5, 89; AC 298-302.

Plaintiffs try to avoid dismissal by referring to "monthly reports" issued by KML in 2008 and on assertions made by Picard, the trustee for the liquidation of BLMIS, in the context of a discovery motion in the U.K. Opp.10, 62, n. 45 (citing AC 43). None of this is mentioned anywhere in the Complaint[8] and cannot be considered on this motion. *Deluca v. AccessIT Group*, 695 F.Supp.2d 54 (S.D.N.Y. 2010); *Global Network Commc'n, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

Moreover, the monthly reports all state that they are *not* part of the IMs and do not constitute investment advice. None were even issued until June 2008, and nearly all of the Plaintiffs bought their shares in the Funds long before then. AC 15-23; Bunch Dec. Exs. B-I. Moreover, each of the monthly reports until November 2008 state that they were "prepared by [KML]" and merely identify FIM Advisers as a consultant to KML. While two reports from November 2008 state that they were "approved and issued in the [U.K.] by FIM Advisers LLP," these reports came after all of the Plaintiffs allegedly purchased their shares in the Funds. *Id.*[9]

Plaintiffs' reliance on assertions by Picard, who is a plaintiff in another lawsuit against FIM and others, similarly fails. These are merely unsupported allegations made in support of a motion seeking broad investigatory discovery of potential claims and are cited by that court in that context. Despite Plaintiffs'

---

[6] *See* Opp. 5 (citing AC 28-30, which merely allege the corporate status of the FIM Entities, their principal places of business, and that FIM Advisers provided consulting services to KML pursuant to the CSA). Moreover, there are only two allegations in the entire Complaint that relate to FIM (USA), and they merely identify its place of incorporation and address, and allege that "FIM USA is the American affiliate of FIM Advisers" and that FIM Advisers and FIM Limited supposedly had a "presence in New York" through this affiliate. AC 30, 229. FIM (USA) is not alleged to be a party to the CSA, nor is it mentioned anywhere in the IMs or identified on any of the new documents upon which Plaintiffs rely. There is no basis whatsoever to assert any claims against this entity.
[7] *See* Opp. 5 (citing AC 25-26, 28, which merely allege that FIM Limited and FIM Advisers provided consulting services to KML pursuant to the CSA and received fees).
[8] In a footnote, Plaintiffs weakly argue that Paragraph 43 of the Complaint somehow referred to the monthly reports, but are forced to concede that this paragraph, like the rest of the Complaint, never mentions them. *See* Opp.62 n. 45.
[9] Moreover, for the reasons set forth in the submissions by KML and other Defendants, none of the statements in the IMs or any of the monthly reports are actionable misrepresentations.

- 4 -

LEGAL_US_E # 91565424.5

suggestion, they were not a determination on the merits. Bunch Dec. Ex. A. For this reason also, it is improper to take judicial notice of these contested hearsay opinions in assessing the validity of the Complaint. *See Jordan Inv. Co., Ltd. v. Hunter Green Inv. Ltd.*, 154 F.Supp.2d 682, 689-90 (S.D.N.Y. 2001) (court should not take judicial notice of evidence or legal arguments presented to another court, even in related actions).

Finally, Plaintiffs cannot simply "attribute" alleged misrepresentations and omissions made by others to Grosso or Ceretti through the "group pleading" doctrine. Opp.64-65. There are no allegations in the Complaint that any FIM Entity made any misstatements, or any allegations that Grosso or Ceretti are corporate insiders at the entity that issued the IMs, so the doctrine does not apply. *See Anwar v. Fairfield Greenwich Ltd.*, 728 F.Supp.2d 372, 405-406 (S.D.N.Y. 2010) ("*Anwar II*") (complaint must allege "facts indicating that the defendant was a corporate insider, with direct involvement in day-to-day affairs, at the entity issuing the statement").[10]

## II. PLAINTIFFS FAIL TO PLEAD SCIENTER

Plaintiffs' claims should also be dismissed because they fail to allege scienter. Plaintiffs rely entirely on allegations of "red flags" that are repeated in virtually every Madoff complaint. However, nearly every court to consider these "red flags" has rejected them as a basis for scienter. *See Saltz v. First Frontier*, at *5 (red flag "theory has been routinely rejected"); *Newman v. Family Mgmt.Corp.*, 2010 WL 4118083, at *8 (S.D.N.Y. Oct. 20, 2010) ("As this Court and other courts considering similar red flag allegations in the aftermath of the Madoff affair have found, Plaintiffs' allegations are insufficient to establish scienter.").[11]

Plaintiffs ignore these decisions, and cite only *Anwar II*. But that case does not help them with respect to FIM. While Plaintiffs carefully quote the *Anwar II* court's findings of scienter, they omit that the findings have no applicability to parties like FIM because Plaintiffs never allege that any FIM Defendant had control over the Funds' assets or undertook an obligation to the Plaintiffs to monitor the Funds' investments with Madoff. *Anwar II* at **21-23, 36-37, 55.

---

[10] Plaintiffs' argument regarding English pleading rules (Opp. 65-66) is irrelevant because U.S. pleading requirements apply. *Bensen v. Am. Ultramar Ltd.*, 1997 WL 317343, at *13 (S.D.N.Y. June 12, 1997) (forum state should apply its own pleading rules rather than the rules of a foreign jurisdiction).
[11] *See also In re Tremont Secs.*, 703 F.Supp.2d 362, 371 (S.D.N.Y. 2010); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994).

Plaintiffs also try to create the misimpression that Grosso and Ceretti were so close to Madoff that they must have known about Madoff's fraud. Opp.6 (arguing that Grosso and Ceretti's "role as sponsors and principal wrongdoers is evidenced from their close relationship with Madoff."). This is frivolous. Plaintiffs claim that Grosso and Ceretti "met regularly" and "repeatedly" with Madoff, but the Complaint merely alleges that Grosso met with Madoff four times over a three-year period and makes no allegation that Ceretti ever met with Madoff. Cf. Opp.6, 8 with AC 73. These are not "regular" or "repeated," and do not come close to suggesting a "close relationship" between any FIM Defendant and Madoff. This is in stark contrast to the type of relationship that Madoff allegedly had with those in his inner circle. *See, e.g., SEC v. Cohmad Secs. Corp.*, 2009 WL 1748402, at ¶¶ 15, 31, 32 (S.D.N.Y. June 22, 2009) (Cohmad's CEO, Maurice Cohn, was Madoff's neighbor, Cohn and Madoff jointly owned Cohmad Securities, entities were completely intertwined and shared same compliance counsel (Madoff's niece), Madoff's brother on Cohmad board); *Picard v. Kohn*, 2010 WL 5029549, at ¶¶ 9, 10, 68, 163, 164, 167 (S.D.N.Y. Dec. 10, 2010) (Kohn "held herself out to potential investors with BLMIS as Madoff's close friend," "intimated that their special relationship yielded special returns on investments," received over $62 million in kick-backs from Madoff over 20-years, and there were "scores of meetings, phone calls, and other communications among Madoff, his employees, Kohn, and [her representatives]."[12]

Plaintiffs also claim that the fact that Madoff had telephone numbers for Grosso and Ceretti in his phonebook is evidence of "close contact and regular communications." Opp.6. Having a phone number for a person in a phonebook is not evidence of either.[13] Moreover, two of the three numbers that Madoff had for Grosso and Ceretti in his phonebook were retired in the U.K. by 2001. JK Dec. Exs. 1-2; AC 75-76.[14] If, as Plaintiffs contend, Madoff was in close contact with either Grosso or Ceretti, he would not have had numbers for them that had been discontinued for almost eight years.

---

[12] *See also Picard v. Wilpon*, Adv. P. No. 10-05287 at ¶¶ 732-741 (close, personal relationships between Wilpon's and Madoff's children and wives, attendance at family celebrations and dinners, travel, participation in common charitable organizations, investments by Madoff in Wilpon's business, and "unique and direct access to Madoff and his staff whenever necessary").

[13] Madoff's phone book also includes numbers for various massage therapists, the London police department, taxi and airline companies and the Mayo Clinic Emergency Department, none of whom are alleged to be part of the supposed fraud. *See* Seal & Squillari, "The Madoff Chronicles Part II," Vanity Fair, June 2009; JK Dec. Ex. 1.

[14] The Court can take judicial notice of the fact that these phone numbers were retired in 2000 and 2001. *Cariani v. D.L.C. Limo. Svc., Inc.*, 363 F.Supp.2d 637, 640 (S.D.N.Y. 2005); *Linares v. Greiner*, 2003 WL 23864914, at *17 (E.D.N.Y. Oct. 24, 2003); *Marcus v. AT & T Corp.*, 938 F.Supp. 1158, 1164-65 (S.D.N.Y. 1996).

- 6 -

Finally, Plaintiffs point to their allegation that the "Kingate Fraud Claim Defendants" – again, undifferentiated – received from the Funds "millions of dollars in fees based on the Funds' fictitious profits" and were therefore motivated to attract new investors and mask the true nature of the Fund's investments. Opp. 70 (citing AC 4, 25, 26, 28, 69, 246, 253). There are no allegations in the Complaint to suggest any "masking" by FIM, and the receipt of fees is not sufficient to demonstrate a fraudulent intent. *See Saltz v. First Frontier*, at \*\*5-6; *Anwar II* at \*21; *Newman*, 2010 WL 4118083, at \*7.

### III.   NO FIDUCIARY DUTY OR NEGLIGENCE CLAIMS

The Complaint contains no allegations that Plaintiffs have any relationship to FIM, let alone a fiduciary or special relationship. Mov. Br. 17-18. The mere fact that FIM Advisers or FIM Limited had a consulting contract with KML does not create a relationship or duty between even those FIM Entities and Plaintiffs under any law that may apply.[15] Moreover, Plaintiffs plead nothing to suggest any direct interaction with any FIM Defendant. The fiduciary duty, negligence, and gross negligence claims fail for this reason as well. *Eurycleia v. UBS Sec., LLC*, 2008 N.Y. Slip Op. 32073(U) (N.Y. Sup. Ct. July 1, 2008).

None of Plaintiffs' arguments apply to FIM. The IMs do not state that any FIM Defendant undertook a responsibility to Plaintiffs to "select, evaluate or monitor Madoff" or to "safeguard Plaintiffs' investments." Similarly, the Complaint does not allege that Plaintiffs "entrusted their assets" to FIM or that FIM controlled those assets. Nor could they – all of Plaintiffs' assets went directly to the Funds. Nor does the Complaint allege that FIM "undertook to act" on Plaintiffs' behalf. Plaintiffs point to the "Management" section of the IMs, but the IMs state that FIM Advisers and FIM Limited were engaged on behalf of KML – not on behalf of Plaintiffs – and were paid directly by KML. AC Exs. 1, 3 and 4 at 17 and Exs. 2, 5 and 6 at 18. Finally, there are no allegations in the Complaint or the Opposition that any FIM Defendant is even among the "Kingate Directors" (AC 31-40; Opp. 6-7) or that FIM had any direct dealings with Plaintiffs. There is no fiduciary duty. *See Jordan v. Hunter*, 2007 WL 2948115 at \*25.

Plaintiffs point to *Anwar II*, arguing that the court found a special relationship between the plaintiffs and the "equivalent of the Kingate Defendants (the Fairfield Defendants)." Opp.78. But again, Plaintiffs'

---

[15] Even under New York law, which does not apply here, Plaintiffs' fiduciary duty claim fails. *See, e.g., Thermal Imaging, Inc. v. Sandgrain Sec., Inc.*, 158 F.Supp.2d 335, 343 (S.D.N.Y. 2001) (no fiduciary duty owed to plaintiff, "a client of a client"); *Goldstein v. SEC*, 451 F.3d 873, 881 (D.C. Cir. 2006) (investment adviser owes fiduciary duty only to the fund, not to the fund's investors); *Jordan*, 2007 WL 2948115, at \*22.

lumping of parties together is misleading. *Anwar II* only held that a special relationship existed between those defendants who undertook an affirmative duty to the plaintiffs to monitor Madoff and manage the fund by "exercis[ing] discretionary control over the funds' assets," but did not find that a special relationship existed between the plaintiffs and other defendants, like FIM, who were not alleged to have undertaken any such obligations to the plaintiffs. *Anwar II* at *45.[16]

## IV. NO CONTRACT OR UNJUST ENRICHMENT CLAIMS

For their contract claim, Plaintiffs argue that "surrounding circumstances" indicate that the CSA intended to confer a benefit upon them. However, the Complaint merely alleges that FIM Advisers and FIM Limited entered into the CSA with KML, pursuant to which these entities provided certain consulting services to KML relating to the Funds. AC 28, 29, 228. Plaintiffs point to the IMs, but the language of the IMs pertaining to the FIM Defendants makes clear that FIM Advisers was being engaged *only* on behalf of the Manager, KML, not on behalf of the shareholders of the Funds.[17] This claim should be dismissed. *Subaru Distrib. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005).[18]

So should the unjust enrichment claim. This claim is based on allegations that the "Defendants," undifferentiated from each other, received fees and commissions that were "wrongfully paid out of the Funds." Opp. 90-91 (citing AC 4, 393). However, the IMs show that FIM Advisers or FIM Limited were separately engaged by and paid by KML -- not by the Funds.[19] Plaintiffs cannot rely on payments made by KML to support their unjust enrichment claim against even these FIM Entities.[20] Moreover, FIM (USA),

---

[16] *Sheldon v. Khanal*, 2009 WL 3233093 (E.D.N.Y. Sept. 30, 2009) and *People v. Merkin*, 907 N.Y.S.2d 439 (N.Y. Sup. Ct. 2010) are inapposite. In *Sheldon*, the court held that a special relationship may have existed between a real estate broker and seller where the broker made false statements directly to the seller. *Sheldon v. Khanal*, 2009 WL 3233093, at *13. In *Merkin*, the court held that plaintiff alleged the existence of a special relationship where the defendant managed plaintiffs' funds and made written and oral misrepresentations directly to the plaintiffs. However, in *Eurycleia v. UBS* (which Plaintiffs attempt to distinguish) the court found that no special relationship existed because, like the FIM Defendants, the defendants did not contract with the plaintiffs and were not alleged to have any discretionary control over the plaintiffs' funds.

[17] As to "The Consultant," the IMs state: "The Manager has appointed FIM Advisers LLP ("FIM") as its consultant ...(the "Consultant")... Consultant renders consulting advice to Manager...." CAC Ex. 1 at 14, 15.

[18] Plaintiffs' reliance on *Anwar II* is again misplaced. The court made a clear distinction between an entity hired by the fund "to manage the investments of a pool of capital," and entities like FIM who did not assume any obligations to plaintiffs under the relevant management agreement. *Anwar II* at *33.

[19] AC Exs. 1, 3, 4 at 17, Exs. 2, 5, 6 at 18 ("Consultant is paid by the Manager ... at no additional cost to the Fund").

[20] Plaintiffs cite to *In re Cannon Cameras Lit.*, 2006 WL 1751245, at *2 (S.D.N.Y. June 23, 2006), arguing there need not be any direct relationship for an unjust enrichment claim. However, the consumer plaintiffs there alleged that their payments went directly from the retailer to the manufacturer. Plaintiffs' reliance on *Anwar II* is similarly misplaced.

- 8 -

Grosso and Ceretti are not even alleged to be parties to the CSA or to have received any payments from KML. Finally, the CSA governs the relationship with respect to the services to be provided by FIM Advisers or FIM Limited and the fees for those services, so no unjust enrichment claim can be maintained against any FIM Defendant. *Granite Partners, L.P. v. Bear, Stearns*, 17 F.Supp.2d 275, 311 (S.D.N.Y. 1998).

## V. PLAINTIFFS HAVE NO VIABLE CLAIMS AGAINST GROSSO OR CERETTI

Although Plaintiffs now try to recast Grosso and Ceretti as the "masterminds" behind Madoff's fraud, the Complaint says nothing of the sort. It merely alleges that they are officers and/or directors of FIM Advisers and/or FIM Limited, "had knowledge of and participated in the FIM Entities' transaction of business" and "controlled the FIM Entities." AC 31, 31, 423, 424. There is no basis to hold either of these individuals liable to Plaintiffs even had they pled a viable claim against the FIM Entities, which they did not.

## VI. PLAINTIFFS LACK STANDING

Plaintiffs concede that the "fairly traceable" element of Article III standing requires more than "but for" causation. They nevertheless point to inapposite case law and sidestep the issue by arguing that FIM's conduct need not be the "last step" in the causal chain. *See* Opp.37. However, injury that results from "the *independent* action of some third party" (here, Madoff) destroys standing. *Bennett*, 520 U.S. 154, 168-69. Because Madoff's fraud was an independent action directly causing Plaintiffs' injury, Plaintiffs must allege more than a mere possibility that FIM's actions had a "determinative or coercive effect" on Madoff for standing. *Adelphia*, 2010 WL 2077214 (S.D.N.Y. May 14, 2010) at *8.[21] They fail to do so. The Complaint should be dismissed for this reason and, as explained in the Moving and Joint Briefs, because Plaintiffs cannot assert derivative claims belonging to the Funds.

## CONCLUSION

For all the foregoing reasons, the FIM Defendants' motion to dismiss should be granted and the Complaint dismissed with prejudice.

---

The court in *Anwar II* merely concluded that unjust enrichment claims could be maintained against those entities that were allegedly paid directly out of the assets of the funds.

[21] Plaintiffs try to distinguish *Adelphia*, arguing that "there was no claim that the [defendant] had made any misrepresentations or undertaken any duties" to plaintiffs (Opp.37). However, *Adelphia* is exactly on point because Plaintiffs have not alleged that FIM made any misrepresentations or undertook any duty to Plaintiffs. Nor do Plaintiffs come close to alleging that any FIM Defendant had any "determinative or coercive effect" on Madoff.

Dated: February 10, 2011

*Jodi Kleinick*
_____
Barry G. Sher
Jodi A. Kleinick
Robin A. Arzón
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, NY 10022
Telephone: (212) 318-6085

*Attorneys for Defendants FIM Advisers LLP, FIM Limited, FIM (USA) Inc., Carlo Grosso and Federico Ceretti*