**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE KINGATE MANAGEMENT
LIMITED LITIGATION

Master File No: 09 Civ. 5386 (DAB)

This Document Relates to All Actions

ECF Case – Electronically Filed

**KINGATE MANAGEMENT LIMITED'S**
**REPLY MEMORANDUM OF LAW IN FURTHER**
**SUPPORT OF ITS MOTION TO DISMISS THE**
**AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

Peter R. Chaffetz
Charles J. Scibetta
Erin E. Valentine
CHAFFETZ LINDSEY LLP
1350 Avenue of the Americas
New York, NY 10019
(212) 257-6960

*Attorneys for Kingate Management Limited*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................................................i

TABLE OF AUTHORITIES ..................................................................................... ii

I.   PRELIMINARY STATEMENT ......................................................................... 1

II.  ARGUMENT ..................................................................................................... 2

    A.   Plaintiffs Do Not Plead Scienter ........................................................... 2

    B.   *Anwar* Is Consistent with Prior Precedents and Supports KML ..................... 3

        1.   The Allegations in *Anwar* Are Different From Plaintiffs' Allegations Here ................................................................................ 4

        2.   The *Anwar* Fraud Analysis Supports Dismissal Here ........................... 5

        3.   *Anwar's* Analysis of the Non-Fraud Claims Also Supports Dismissal Here ...................................................................................... 6

    C.   The Disclaimers Negate Plaintiffs' Claims ..................................... 7

III. CONCLUSION ............................................................................................ 12

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anwar v. Fairfield Greenwich Group,*
   728 F. Supp. 2d 372 (S.D.N.Y. 2010) .......................................................................... *passim*

*Ashcroft v. Iqbal,*
   129 S.Ct. 1937 (2009)............................................................................................................. 1

*Bell Atl. v. Twombly,*
   550 U.S. 544 (2007)................................................................................................................ 1

*Iowa Public Emps. Ret. Sys. v. MF Global, Ltd.,*
   620 F.3d 137 (2d Cir. 2010)................................................................................................... 9

*In re J.P. Jeanneret Assoc., Inc.,*
   No. 09 Civ. 3907 (CM), 2011 WL 335594 (S.D.N.Y. Jan. 31, 2011)................................. 3, 9

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,*
   547 U.S. 71 (2006) ................................................................................................................. 2

*MLSMK Inves. Co. v. JP Morgan Chase & Co.,*
   No. 09 Civ. 4049 (BSJ), 2010 WL 2925403 (S.D.N.Y. July 15, 2010) ............................ 2, 3

*Newman v. Family Mgmt. Corp.,*
   No. 08 Civ. 11215 (LBS), 2010 WL 4118083 (S.D.N.Y. Oct. 20, 2010) .............................. 3

*Novak v. Kasaks,*
   216 F.3d 300 (2d. Cir. 2000).................................................................................................. 1

*In re Prudential Sec. Inc. P'ships Litig.,*
   930 F. Supp. 68 (S.D.N.Y. 1996) ....................................................................................... 10

*S.E.C. v. Cohmad Sec. Corp.,*
   No. 09 Civ. 5680 (LLS), 2010 WL 363844 (S.D.N.Y. Feb. 2, 2010) .................................... 3

*Saltz v. First Frontier, LP,*
   No. 10 Civ. 964 (LBS), 2010 WL 5298225 (S.D.N.Y. Dec. 23, 2010) ................................. 3

*South Cherry St., LLC v. Hennessee Group LLC,*
   573 F.3d 98 (2d Cir. 2009)..................................................................................................... 3

*Stephenson v. Citco Group Ltd.,*
   700 F. Supp. 2d 599 (S.D.N.Y. 2010) .................................................................................. 3

*In re Tremont Sec. Litig.,*
   703 F. Supp. 2d 362 (S.D.N.Y. 2010) .................................................................................. 3

*Warner Theatre Associates Ltd. P'ship v. Metro. Life Ins. Co.*,
   No. 97 Civ. 4914 (SS), 1997 WL 685334 (S.D.N.Y. Nov. 4, 1997)
   (Sotomayor, J.), *aff'd*, 149 F.3d 134 (2d Cir. 1998) ........................................................... 10

Defendant Kingate Management Limited ("KML") respectfully submits this Reply Memorandum of Law in Further Support of its Motion to Dismiss the Amended Consolidated Class Action Complaint ("Complaint" or "Compl.").

## I.  PRELIMINARY STATEMENT

Plaintiffs do not seriously contend that KML knew about Madoff's fraud, and the Kingate placement documents disclaimed any KML obligation to conduct due-diligence to discover fraud.  Those documents establish that if Plaintiffs wished to verify the information about Madoff, they were to do it themselves.  On these facts, Plaintiffs cannot plead actionable KML misrepresentations, nor can they plead that KML assumed any tort or contract duties to Plaintiffs.

Plaintiffs' arguments against dismissal rely mainly on Judge Marrero's recent decision in *Anwar v. Fairfield Greenwich Group*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010).  However, Plaintiffs' misrepresent *Anwar* when they say that it was decided on "nearly the same set of facts" as this case. (Opposition Brief ("Opp.") at 71.)  *Anwar* turned on specific allegations not made here.  These allegations established the "facial plausibility" of the surviving claims in *Anwar*, as required by *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), and *Bell Atl. v. Twombly*, 550 U.S. 544 (2007).   They also were sufficient to meet the heightened pleading requirements for fraud, including the "strong inference" of scienter required by *Novak v. Kasaks*, 216 F.3d 300, 307 (2d. Cir. 2000).  On the very different allegations made in this case, however, the Plaintiffs cannot meet these pleading standards, and *Anwar* does not hold otherwise.  In fact, Judge Marrero *dismissed* claims in *Anwar* that were based on stronger allegations than Plaintiffs make here.  Thus, *Anwar* supports KML, not Plaintiffs.[1]

---

[1] In addition to the points made here and in KML's opening submission ("Init. Mem."), KML also (i) participates in the Joint Memorandum of Law in Further Support of All Defendants' Motions to Dismiss and (ii) relies on the arguments concerning failure to plead duty as to any specific defendant, limitations period and mutual mistake made

## II.    ARGUMENT

### A.    Plaintiffs Do Not Plead Scienter

Courts in this Circuit have uniformly rejected each of Plaintiffs' three scienter arguments:

*Receipt of False Reports.*  Plaintiffs say that Madoff issued reports that reflected trades "outside the daily price ranges" and option trading volume that was "impossible." (Compl. ¶¶80–82.)  Plaintiffs never allege that KML (or any defendant) reviewed these reports and actually discovered Madoff's fraud from them, or even that the fraud was obvious on the face of these reports.  Instead, Plaintiffs say that the reports are evidence of scienter because defendants could have checked the veracity of the reports with "ease." (Opp. 70.)  At best, these facts allege that the defendants "could have connected the dots to determine that Madoff was committing fraud . . . ."  *MLSMK Invest. Co. v. JP Morgan Chase & Co.*, No. 09 Civ. 4049 (BSJ), 2010 WL 2925403, at *5 (S.D.N.Y. July 15, 2010).  That does not plead scienter.  *Id.* (*See also* Init. Mem. 15–17.)

*Purported Profit Motive.*  Plaintiffs say that their profit motive allegations support scienter (Opp. 70), but the case law is clear that "[g]eneral profit-making motive alone is generally disclaimed as a sign of fraudulent intent."  *Anwar*, 728 F. Supp. 2d at 407 (citing *Chill v. General Elec. Co.*, 101 F.3d. 263, 268 (2d Cir. 1996)).

---

in the Director's Joint Reply Memorandum, and, to the extent that the arguments of the Tremont Defendants are also applicable to KML as Co-Manager or Manager of the Kingate Funds, the arguments made in the Tremont Defendants' Reply Memorandum of Law in Further Support of their Motion to Dismiss. And KML relies on the expert reply affidavits cited in these briefs.

While KML joins the SLUSA arguments in the Joint Memorandum in Support of All Defendants, it adds here that Plaintiffs are incorrect when they say that all Defendants argued that the Supreme Court's *Morrison* decision precluded Plaintiffs' federal securities claims. (Opp. 39.)  KML did not.  Plaintiffs' securities fraud claims would have been dismissed not because of *Morrison*, but for lack of scienter, among other reasons.  Plaintiffs withdrew those defective claims voluntarily in an effort to try to avoid *SLUSA* preemption, but that strategy cannot prevail for the reasons stated in the Joint Memorandum, and because *Morrison* cannot be read to have overruled *Dabit's* broad reading of "in connection with." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006).

*Failure to Act on "Red Flags."*   Finally, at pages 70–74 of their Opposition, Plaintiffs make their principal scienter argument by urging that their "red flag" allegations are sufficient. Every case in this Circuit that has addressed this issue disagrees.  The Second Circuit rejected a similar argument in *South Cherry St.*, *LLC v. Hennessee Group. LLC*, 573 F.3d 98, 111–13 (2d Cir. 2009) (discussed at Init. Mem. 16).  Thereafter, district courts called upon to apply this rule specifically to the Madoff fraud have recognized that:

> [f]or twenty years, Madoff operated his fraud without being discovered and with only a handful of investors withdrawing their funds as a result of their suspicions.  An inference of scienter based on publicly available red flags is simply not as cogent and compelling as the opposing inference of nonfraudulent intent.

*Saltz v. First Frontier, LP*, No. 10 Civ. 964 (LBS), 2010 WL 5298225, at *6 (S.D.N.Y. Dec. 23, 2010).  *See also S.E.C. v. Cohmad Sec. Corp.,* No. 09 Civ. 5680 (LLS), 2010 WL 363844, at *2 (S.D.N.Y. Feb. 2, 2010) ("[T]he complaint supports the reasonable inference that Madoff fooled the defendants as he did individual investors, financial institutions, and regulators.").  *Accord MLSMK Inves. Co.*, 2010 WL 2925403, at *5–6; *Newman v. Family Mgmt. Corp.*, No. 08 Civ. 11215 (LBS), 2010 WL 4118083, at *8 (S.D.N.Y. Oct. 20, 2010); *In re Tremont Sec. Litig.*, 703 F. Supp. 2d 362, 370 (S.D.N.Y. 2010); *Stephenson v. Citco Group Ltd*., 700 F. Supp. 2d 599, 621 (S.D.N.Y. 2010); *In re J.P. Jeanneret Assoc., Inc.*, No. 09 Civ. 3907 (CM), 2011 WL 335594, at *20 (S.D.N.Y. Jan. 31, 2011).

Plaintiffs say that Judge Marrero rejected these precedents and approved the red-flag theory in *Anwar.*  But, as we discuss next, Plaintiffs misrepresent that case.

## B.    *Anwar* Is Consistent with Prior Precedents and Supports KML

While Plaintiffs baldly claim support from *Anwar*, they never discuss the facts alleged there nor Judge Marrero's detailed analysis.  On a proper reading, *Anwar* supports KML.

### 1.   The Allegations in *Anwar* Are Different From Plaintiffs' Allegations Here

In contrast to this case, the plaintiffs in *Anwar* alleged far more than that the Fairfield

funds failed to conduct due diligence in the face of red flags.  They alleged specific

misrepresentations that the *Anwar* defendants made about their unusually close relationship with

Madoff, their complete understanding of his business, and their claimed rigorous due diligence

procedures for protecting investors from fraud.  For example, according to the *Anwar* SCAC[2]:

- The Fairfield Funds told investors they had "full transparency" into "all aspects" of
Madoff's operations) (SCAC ¶200); they claimed to have a "deep, ongoing joint venture
relationship" with Madoff (SCAC ¶202) that included "physical access to Madoff's
operations." *Anwar*, 728 F. Supp. 2d at 415.

- The *Anwar* defendants represented that they used their unique access to conduct "in-
depth and multi-faceted due diligence," designed specifically to protect investors "from
faulty or incomplete due diligence by investors or their advisors." (SCAC ¶198. *See also
id.* ¶¶197, 201 (alleging representations that "[s]enior members of FGG's legal,
operations, and risk teams" made "regular on-site visits" to Madoff's offices and that
FGG "verified a potential manager's portfolio analysis, financial statements, backoffice
procedures, and regulatory/legal procedures" and "check[ed] for a reputable auditor.").)

- The *Anwar* defendants "even went so far as to assert that their oversight, monitoring, and
risk management processes were so superior [to those of other funds] that they would
have uncovered the significant Bayou Fund fraud that had deceived other investment
managers . . . ." (SCAC ¶203 (alleging representations that defendants would have
"visited the potential fund manager's office" and "had several face-to-face meetings and
watched for inconsistent answers, [or] refusal to give information, in addition to verifying
assets under management for all funds directly with the prime broker/administrator and
conducting an independent, third party confirmation of assets.").)

For more detail on how the *Anwar* defendants sold their due diligence protections to

investors, we refer the Court to the FGG marketing materials that Judge Marrero relied on in

Anwar. (Chaffetz Reply Decl. Ex. B (Ex. 11 to the Consolidated Amended Complaint in *Anwar*,

_____

[2] SCAC refers to the Second Consolidated Amended Complaint at issue in *Anwar*.  The SCAC quotes extensively
from the original Fairfield Greenwich Group ("FGG") offering documents and marketing materials.  For readability,
when we quote here from the SCAC, we omit internal quotation marks, ellipses, and brackets that appear in the
SCAC.  Any such indicators in the text of this memo reflect our modifications to the quoted language.  We provide
copies of the relevant SCAC excerpts in Peter R. Chaffetz Reply Declaration in Support of KML's Motion to
Dismiss, dated February 10, 2011 ("Chaffetz Reply Decl.") at Ex. A.

incorporated into SCAC at ¶198).)   Plaintiffs here have not attached any similar exhibit to their

pleadings against KML because the Kingate Funds made no similar representations.

In further contrast to Plaintiffs' allegations here, the plaintiffs in *Anwar* alleged actual

misconduct by certain defendants that suggested complicity in, or willful ignorance of, Madoff's

fraud.  For example:

- Despite representing that FGG always "check[ed] for a reputable auditor" (SCAC ¶227), defendants Tucker, Lipton and McKeefry "discovered that Madoff was using [a] curiously suspicious auditing firm, but Lipton authorized FGG employees to tell investors that the firm was . . . well respected in the local community."  *Anwar*, 728 F. Supp. 2d at 409.

- McKeefry and another individual defendant, Vijayvergiya, "engaged in deliberately illegal behavior by attempting to stymie a [2005 SEC] investigation into Madoff's operations." *Anwar*, 728 F. Supp. 2d at 408. (*See also* SCAC ¶234 (alleging that these defendants spoke with Madoff before they met with the SEC.  Madoff told them "what to say and what not to say to the SEC."  They "followed Madoff's instructions . . . .").)

- Despite their bold assertions to investors that they fully understood Madoff's operations, the above individual defendants, plus another, Noel, "exchanged numerous emails noting 'the gaps in [their] knowledge' about basic information of Madoff's operation." *Anwar*, 728 F. Supp. 2d at 409.  These defendants brought their concerns to Madoff himself and "did not follow-up" when "Madoff refused to answer many questions . . . ." *Id.* at 390.

## 2.  The *Anwar* Fraud Analysis Supports Dismissal Here

For purposes of this motion, the most critical aspect of Judge Marrero's fraud analysis in

*Anwar* is one that Plaintiffs do not mention:  while Judge Marrero upheld the fraud allegations

against Tucker, Lipton, McKeefry, Vijayvergiya and Noel, he dismissed the fraud claims against

another individual defendant, Piedrahita.  *Anwar*, 728 F. Supp. 2d at 409.  The distinction that

Judge Marrero drew between the allegations directed at Piedrahita and those that led him to

sustain the fraud claims against the others is dispositive here.

Piedrahita was a founding partner of FGG; he had "overall management responsibility"

and was "directly involved in [FGG's] decision-making." (SCAC ¶126.)  Thus, the allegations

against him included all of the red flag allegations, *plus* the allegations regarding

misrepresentations of access and due diligence. (SCAC ¶¶193–203; 217–24.)  And the *Anwar* plaintiffs also alleged that Piedrahita was copied on the emails showing his colleagues' concerns about their lack understanding of Madoff's business.  (SCAC ¶¶206–09.)

Nevertheless, Judge Marrero held that the SCAC did not allege scienter against Piedrahita because his "passive role [was] not enough to cross over the threshold into scienter." *Anwar*, 728 F. Supp. 2d at 409.  That reasoning requires dismissal of KML here.  If the red flag allegations were not sufficient to support a finding of scienter on the part of Piedrahita in *Anwar*, then by definition they are not sufficient to sustain such a finding against KML here:  the Complaint does not contain anything approaching *Anwar's* allegations – all applicable to Piedrahita – of either extensive misrepresentations concerning due diligence practices *or* any suggestion that KML had actual knowledge that contradicted its statements to investors.

### 3.   *Anwar's* Analysis of the Non-Fraud Claims Also Supports Dismissal Here

Judge Marrero rested his rulings sustaining certain non-fraud claims in *Anwar* on what he described as "the *unique context* of the facts" of that case.  *Anwar*, 728 F. Supp. 2d at 414 (emphasis added).  Obviously, the "unique context of the facts" in *Anwar* included the plaintiffs' detailed allegations about defendants' claimed access to Madoff's operations and touting of their due diligence expertise and activity.  Indeed, it was specifically *because* the *Anwar* defendants represented that they had special access to Madoff and maintained robust investor protections that Judge Marrero sustained any claims in *Anwar* based on breach of common law duties.  *See id.* at 416 (recognizing that the *Anwar* defendants vouched for Madoff's strategy, touting it as a "sort of silver bullet" and noting that defendants' representations "went beyond general assertions of financial expertise and trustworthiness"); *id.* at 415 (sustaining gross negligence claims when, despite their repeated promises to the contrary, defendants "conducted no due

diligence"); *id.* (sustaining claims of special relationship based on defendants' representations of a "deep, ongoing joint venture relationship" with Madoff).

In contrast, KML made clear that it was not independently vouching for the accuracy of information provided by Madoff and was not encouraging investors to rely on it for any investment advice or guidance.  KML not only made no representations like those in *Anwar*, it expressly *disclaimed*, through the Information Memoranda ("IMs") and Subscription Agreements ("SAs"), any warranty of accuracy for Madoff's information or any commitment on its part to verify that data or conduct due diligence.  Thus, while FGG repeatedly encouraged investors to rely on its expertise and due diligence efforts, KML made clear it was strictly a conduit.

In short, Plaintiffs may like the result in *Anwar,* but its dramatically different allegations highlight the insufficiency of Plaintiffs' claims against KML here.

## C.    The Disclaimers Negate Plaintiffs' Claims

As shown in KML's Initial Memorandum, the disclaimers of due diligence in the offering documents negate at least one element of each of Plaintiffs' claims. (Init. Mem. 12–15.)  None of Plaintiffs' three attempted responses to this showing has merit.

*1.  Plaintiffs' Reliance on <u>Anwar</u> is Misplaced.*  Plaintiffs' claim that "Judge Marrero considered and rejected precisely the same [disclaimer] argument in *Anwar*" (Opp. 67) is false. In *Anwar*, there was only a single, two-sentence disclaimer provision that was "at all pertinent" to Judge Marrero's analysis.  That limited provision warned of the "risk that the personnel of any entity with which the Fund invests could misappropriate the securities or funds (or both) of the Fund."  *Anwar*, 728 F. Supp. 2d at 412.  Judge Marrero ruled that "two anodyne sentences,

innocuously embedded within a single-spaced document exceeding fifty pages in length," could not negate the liability created by all the other facts in *Anwar. Id.*

That reasoning does not fit here because the Kingate disclaimers went far beyond the isolated, "anodyne" warning in *Anwar*, and KML has made no affirmative representations that could be read to negate or trump the disclaimers.  First, the IMs expressly allocated the risk of fraud to Plaintiffs by first identifying that risk, and then in the very next sentence stating plainly that KML had no duty to conduct due diligence to protect against it:

> [I]nformation supplied by [Madoff] may be inaccurate or even fraudulent.  [KML] is entitled to rely on such information (provided they do so in good faith) and is *not required to take any due diligence to confirm the accuracy thereof.*

(Compl. Ex. 1 at 9) (emphasis added).  The Kingate documents also included multiple other provisions that made clear that KML assumed no special relationship with or due diligence duty to investors.[3] (*See* Init. Mem. 5–6.)

Plaintiffs say that all of these several disclaimers should be ignored as "general boilerplate" because of a statement made elsewhere in the IMs that the Kingate Defendants would "evaluate and monitor Madoff."  (Opp. 75.)[4]  But this conclusion does not follow.  The statement concerning evaluation and monitoring does not conflict with the disclaimers.  One can evaluate and monitor at a level that does not include due diligence to verify.[5]  Even if "evaluate

---

[3] The message in the Funds' monthly performance reports, which Plaintiffs now try to rely on in their Opposition, also confirmed that KML was making "no representation or warranty, express or implied, … as to reliability, accuracy, completeness or correctness" of the information provided by Madoff. *See* Decl. of S.D. Bunch, Dkt. 138, Exs. B–J.

[4] In addition to arguing that the disclaimers are general boilerplate, Plaintiffs say that even if the disclaimers were "specific" – which they clearly are – they are ineffective to disclaim knowledge of facts that were exclusively within the knowledge of the Kingate Defendants." (Opp., 76.)   But Plaintiffs have not plead that Madoff's crimes were even within KML's knowledge, much less uniquely so.  (*See* discussion on scienter above.)

[5] For example, KML could evaluate and monitor the timeliness and completeness of the Madoff reports, or the adequacy of the Madoff returns, while taking the information reported at face value.

and monitor" could include due diligence in some other context, it cannot mean that here:
Plaintiffs ignore the critical fact that these words are not used in isolation in the IMs.  They must
be read in concert with all of the terms of the controlling documentation, including the blunt due
diligence disclaimers.  *See Iowa Public Emps. Ret. Sys. v. MF Global*, *Ltd.*, 620 F.3d 137, 141
(2d Cir. 2010) (noting "the well-established principle that a statement or omission must be
considered in context") (citations omitted).  These terms make clear that "evaluate and monitor,"
in the context of the Kingate investment program, never included KML due diligence to verify
Madoff's information.

In short, the investment presented here was materially different from the deal presented
by the funds in *Anwar.*  The Fairfield funds were selling unusual transparency into Madoff's
operations and rigorous due diligence.  KML was not – and the Kingate Funds were up-front
about that fact.  *See In re J.P. Jeanneret*, 2011 WL 335594, at *19 (recognizing that "an investor
who knows that no due diligence is being conducted appreciates that his investment is subject to
a greater degree of risk–one that he might not be willing to tolerate–and has the opportunity to
avoid making it").  By disclosing the risk that KML was not conducting due diligence, the
Kingate Funds gave the Plaintiffs the opportunity to decline to invest because of that fact.
Plaintiffs chose to invest notwithstanding the disclosed risk.  They cannot retract that choice
now, or blame KML for the consequences.

2. *The limitations on the "bespeaks caution" doctrine are irrelevant.*  Plaintiffs argue
that the disclaimers are not effective because the "bespeaks caution" doctrine does not apply to
misrepresentations of present facts. (Opp. 67–68 (relying on *MF Global*, *Ltd.*, 620 F.3d 137)).
But *MF Global* stands only for the uncontroversial proposition that warnings of future risk
cannot insulate a defendant from liability for fraudulently misrepresenting current or historical

facts.  Critically, this case is not like the case where one hiker "knows with near certainty that the Grand Canyon lies ahead" but only tells his companion "there might be a ditch."  *In re Prudential Sec. Inc. P'ships Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996) (cited at Opp. 68).  Here, KML did not know a canyon lay ahead (*see* above discussion on scienter).  And it agreed to take these sophisticated Plaintiffs hiking only if they accepted the risks of dangerous terrain after independently evaluating the degree of danger.  As both the New York Court of Appeals and the Second Circuit recognize, courts should not interfere when sophisticated parties expressly allocate risks.  *See Warner Theatre Associates Ltd. P'ship v. Metro. Life Ins. Co.*, No. 97 Civ. 4914 (SS), 1997 WL 685334, at *5 (S.D.N.Y. Nov. 4, 1997) (Sotomayor, J.), *aff'd*, 149 F.3d 134 (2d Cir. 1998) (applying *Danann Realty Corp. v. Harris*, 157 N.E.2d 597, 604 (N.Y. 1959), and citing *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 735 (2d Cir.1984) ("[W]here the parties to an agreement have expressly allocated risks, the judiciary shall not intrude . . . .")).

Moreover, as in *Danann*, the Kingate disclaimers here did not simply warn of future risks.  With respect to both categories of representation argued by Plaintiffs – those related to Madoff's operations and those relating to KML's due diligence – the disclaimers defined and delimited the *present representations* that the Funds were making.  Specifically, the disclaimers made clear that KML had delegated all responsibilities to Madoff and was not vouching for his operations *as of the time of the Plaintiffs' investments*.  That is why each Plaintiff certified in the SA that, *prior to investing*, it had the opportunity to "verify the information" in the IM for itself. (*See e.g.* Compl. Ex. 1 at S-9.)  This is decisive.  If the IMs were warranting the present truth of the Madoff data and only warning about future fraud, this *pre-investment* certification would make no sense.  Similarly, with respect to KML's due diligence, the IMs did not couple a

representation that KML was presently conducting detailed diligence with a caution that the diligence might fail in the future.  The IMs and the SAs made clear that KML had no due diligence obligation, and that Plaintiffs were required to investigate Madoff for themselves if they wished to verify the information he was providing. (*See* Init. Mem. 5–6.)

   *3.  The IMs' Integration Clause Is Irrelevant.*  In addition to arguing that the disclaimers are ineffective, Plaintiffs also contend that, "[e]ven if the Kingate Defendants' disclaimers were effective . . . the Information Memoranda themselves instructed Plaintiffs to rely on the language they contained." (Opp. 76.)  Plaintiffs' argument is far from clear, but they seem to be saying, "Even if the disclaimers are otherwise effective, the IMs' integration clause entitles Plaintiffs to disregard them."  However, the language Plaintiffs rely on does not support any such conclusion. It states,  "The Subscriber has not relied on any representations or other information purported to be given on behalf of the Fund except as set forth in the Information Memorandum or the published, financial accounts of the Fund." (Compl. Ex 1 at S-8.)  This simply confirms that the Funds were not providing any information or making any representations outside of the IMs.  It neither warrants the veracity of information provided by Madoff nor purports to prohibit Plaintiffs from declining the investment opportunity if they were unsatisfied with the results of their own due diligence.  The integration clause is irrelevant to the effectiveness of the disclaimers.

* * *

   Tellingly, even Plaintiffs' own expert witness disagrees with Plaintiffs' disclaimer arguments.  He says that there is "no doubt" that liability can be "avoided by an appropriately worded disclaimer." (Bompas Decl. ¶76.)  He recognizes that the IMs (i) disclaimed any "reliance  by a Subscriber on the Information Memorandum for advice" (*Id.* at ¶77), and that

- 11 -

they (ii) "warn[ed] that the Investment Manager would not be performing due diligence on [Madoff]] in the future." (*Id.* at ¶ 79.)  He thus concedes, at least implicitly, that Plaintiffs' claims relying on KML special expertise or ongoing due diligence should be dismissed.[6]

## III.   <u>CONCLUSION</u>

For these reasons, and the reasons set forth in its Initial Memorandum, KML respectfully submits that its Motions to Dismiss the Amended Consolidated Class Action Complaint should be granted in its entirety.

Dated: New York, NY
        February 10, 2011

                                  Respectfully submitted,

                                  CHAFFETZ LINDSEY LLP

                                  By: /s/ Peter R. Chaffetz
                                      Peter R. Chaffetz
                                      (Peter.Chaffetz@chaffetzlindsey.com)
                                      Charles J. Scibetta
                                      (Charles.Scibetta@chaffetzlindsey.com)
                                      Erin E. Valentine
                                      (Erin.Valentine@chaffetzlindsey.com)

                                  1350 Avenue of the Americas
                                  New York, NY 10019
                                  Telephone:  (212) 257-6960

                                  *Attorneys for Defendant Kingate*
                                  *Management Limited*

---

[6] Mr. Bompas parrots Plaintiffs' conclusion that the disclaimers do not apply to representations "about the present state of the Funds." (Bompas Decl. ¶79.)  However, like Plaintiffs themselves, he never explains how the plain terms of the IMs and the SAs can reasonably be interpreted that way.  He simply states the conclusion without providing any textual support.  This is not surprising.  As discussed herein, there is no present misrepresentation in the placement documents.