## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **IN RE KINGATE MANAGEMENT LIMITED LITIGATION**<br><br>This Document Relates To: All Actions | Master File No. 09 Civ. 5386 (DAB) |

## JOINT REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF JOHN EPPS, GRAHAM COOK, CHARLES SEBAH, CHRISTOPHER WETHERHILL AND MICHAEL TANNENBAUM'S RESPECTIVE MOTIONS TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT

DAVIS & GILBERT LLP
Howard J. Rubin (hrubin@dglaw.com)
Bruce M. Ginsberg (bginsberg@dglaw.com)
Cheryl M. Plambeck (cplambeck@dglaw.com)
1740 Broadway
New York, New York 10019
(212) 468-4800
*Attorneys for Defendants Graham Cook,*
*John Epps and Charles Sebah*

CHAFFETZ LINDSEY LLP
Peter R. Chaffetz (Peter.Chaffetz@chaffetzlindsey.com)
Charles Scibetta (Charles.Scibetta@chaffetzlindsey.com)
Erin Valentine (Erin.Valentine@chaffetzlindsey.com)
1350 Avenue of the Americas
New York, NY 10019
Telephone: (212) 257-6960
*Attorneys for Defendants Kingate Management Limited*
*and Christopher Wetherhill*

COOLEY LLP
Laura Grossfield Birger (lbirger@cooley.com)
Karen Won (kwon@cooley.com)
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 479-6000
*Attorneys for Defendant Michael Tannenbaum*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT .................................................................................................................... 1

I.     THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER
      COOK, EPPS, SEBAH AND WETHERHILL.................................................................. 3

     A.    PLAINTIFFS FAIL TO MAKE A PRIMA FACIE CASE FOR PERSONAL
          JURISDICTION ........................................................................................................ 3

     B.    PLAINTIFFS FAIL TO ESTABLISH THAT THE EXERCISE OF PERSONAL
          JURISDICTION OVER THESE DIRECTORS WOULD BE CONSTITUTIONAL .............................. 6

     C.    JURISDICTIONAL DISCOVERY IS UNWARRANTED ................................................ 6

II.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST ANY OF THE
      DIRECTORS UNDER EITHER BVI OR NEW YORK LAW ........................................... 7

     A.    PLAINTIFFS CANNOT MEET THEIR BURDEN WITH GROUP ALLEGATIONS
        AGAINST A LARGE GROUP OF DIVERSE DEFENDANTS ................................................ 7

     B.    PLAINTIFFS' CLAIMS ALL FAIL FOR LACK OF THE REQUISITE
        RELATIONSHIP BETWEEN PLAINTIFFS AND THESE DEFENDANTS ................................ 10

          1.    The Directors Owed No Fiduciary Duty to Plaintiffs................................. 10

          2.    Plaintiffs Had No Relationship With The Directors That Would
              Support Their Negligent Misrepresentation Claims .................................. 12

          3.    Plaintiffs' Negligence Claims Fail For Lack of A Duty Of Care ............ 14

          4.    Plaintiffs Fail to State a Claim for Unjust Enrichment ........................... 15

          5.    Plaintiffs Have No Viable Claim For Constructive Fraud ...................... 16

          6.    Plaintiffs Are Not Entitled to a Constructive Trust ................................. 17

          7.    Plaintiffs Abandoned Their Mutual Mistake Claim ................................ 17

III.   PLAINTIFFS' CLAIMS ARE TIME-BARRED.................................................. 17

## TABLE OF AUTHORITIES

### FEDERAL CASES

@Wireless Enterprises, Inc. v. AI Consulting, LLC,
 No. 05-CV-6176), 2006 WL 3370696 (W.D.N.Y. Oct. 30, 2006)...........................................16

ABF Capital Management v. Askin Capital Management, L.P.,
 957 F. Supp. 1308 (S.D.N.Y. 1997).......................................................................................16

Arnold Chevrolet LLC v Tribune Co.,
 35 Media L. Rep. 2460 (E.D.N.Y. Sept. 17, 2007) ................................................................13

Anwar v. Fairfield Greenwich Ltd.,
 728 F. Supp. 2d 372 (SDNY 2010)................................................................................. passim

Bank of America Corp. v. Lemgruber,
 385 F. Supp. 2d 200 (S.D.N.Y. 2005)..............................................................................11, 12

BBS Norwalk One, Inc. v. Raccolta, Inc.,
 60 F. Supp. 2d 123 (S.D.N.Y. 1999), aff'd, 205 F. 3d 1321 (2d Cir. 2000)...........................10

Century Pac., Inc. v. Hilton Hotels Corp.,
 528 F. Supp. 2d 206 (S.D.N.Y. 2007) ...................................................................................14

Dresner v. Utility.com, Inc.,
 371 F. Supp. 2d 476 (S.D.N.Y 2005)........................................................................................9

Druck Corp. v. Macro Fund Ltd.,
 290 Fed. App'x. 441 (2d Cir. 2008) .......................................................................................11

Duravest, Inc. v. Viscardi, A.G.,
 581 F. Supp. 2d 628 (S.D.N.Y. 2008).......................................................................................5

E*TRADE Financial Corp. v. Deutsche Bank AG,
 631 F. Supp. 2d 313 (S.D.N.Y. 2009).....................................................................................16

Ebusinessware, Inc. v. Technology Services Group Wealth Management Solutions, LLC,
 No. 08 Civ. 09101 (PKC), 2009 WL 5179535 (S.D.N.Y. Dec. 29, 2009) ..............................14

Ellington Management Group, LLC v. Ameriquest Mortgage Co.,
 No. 09 Civ. 0416 (JSR), 2009 WL 3170102 (S.D.N.Y. Sept. 29, 2009)..................................16

Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of N.Y.,
 375 F.3d 168 (2d Cir. 2004)....................................................................................................13

Hanig v Yorktown Central School District,
 384 F. Supp. 2d 710 (S.D.N.Y. 2005).....................................................................................17

In re Alstom SA Securities Litigation,
    406 F. Supp. 2d 433 (S.D.N.Y. 2005)........................................................................................8

In re Banco Santander,
    732 F. Supp. 2d 1305 (S.D. Fla. 2010) .................................................................................1, 5

In re BISYS Securities Litigation,
    397 F. Supp. 2d 430 (S.D.N.Y. 2005)....................................................................................8, 9

In re First Central Financial Corp.,
    377 F.3d 209 (2d Cir. 2004)...................................................................................................17

In re Independent Energy Holdings PLC Securities Litigation,
    154 F. Supp. 2d 741 (S.D.N.Y. 2001)......................................................................................9

International Shoe Co. v. State of Washington,
    326 U.S. 310 (1945)................................................................................................................6

Karabu Corp. v. Gitner,
    16 F. Supp. 2d 319 (S.D.N.Y. 1998)........................................................................................5

Muller-Paisner v TIAA,
    289 Fed. App'x. 461 (2d Cir. 2008) .......................................................................................14

Ontel Products, Inc. v. Project Strategies Corp.,
    899 F. Supp. 1144 (S.D.N.Y.1995)..........................................................................................5

Polar International Brokerage Corp v. Reeve,
    108 F. Supp. 2d 225 (S.D.N.Y. 2000)......................................................................................8

Retail Software Service, Inc. v. Lashlee,
    854 F.2d 18 (2d Cir. 1988)......................................................................................................5

Royalty Network, Inc. v. Dishant.com, LLC,
    638 F. Supp. 2d 410 (S.D.N.Y. 2009).......................................................................................6

Saltz v. First Frontier, LP,
    10 CIV 964 LBS, 2010 WL 5298225 (S.D.N.Y. Dec. 23, 2010) .............................................15

Steinberg v. Sherman,
    07-Civ-1001 (WHP), 2008 WL 2156726 (S.D.N.Y. May 8, 2008) ..........................................8

Stephenson v Citco Group Ltd.,
    700 F Supp 2d 599 (S.D.N.Y. 2010).......................................................................................11

West Palm Beach Police Pension Fund v Collins Capital Low Volatility Performance
    Fund II, Ltd.,
    09-80846-CIV-MARRA, 2010 WL 2949856 (S.D. Fla July 26, 2010) ...................................11

## STATE CASES

Kimmell v. Schaefer,
    89 N.Y. 2d 257 (1996) ......................................................................................................................14

Kreutter v McFadden Oil Corp.,
    71 N.Y.2d 460 (1988) ..........................................................................................................................5

People v. Merkin,
    No. 450879/09, 2010 N.Y. Slip Op. 50430(u) (Sup. Ct. N.Y. County, Feb, 8, 2010) ................14

### FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

15 U.S.C. §§ 77p(b) ..................................................................................................................................3

Fed. R. Civ. P. Rule 8 ........................................................................................................................13, 14

Fed. R. Civ. P. Rule 9(b)...........................................................................................................8, 13, 14, 16

Fed. R. Civ. P. 12(b)(2)...............................................................................................................................1

Fed. R. Civ. P. 12(b)(6)..........................................................................................................................1, 7

### STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

C.P.L.R. § 302(a)(1) ..................................................................................................................................4

N.Y. Gen. Bus. Law § 352..........................................................................................................................3

Defendants Graham Cook ("Cook"), John Epps ("Epps"), Charles Sebah ("Sebah"), Christopher Wetherhill ("Wetherhill") and Michael Tannenbaum ("Tannenbaum") (the "Directors"), respectfully submit this Joint Reply Memorandum of Law in further support of their respective Motions to Dismiss Plaintiffs' Amended Consolidated Class Action Complaint.[1]

## PRELIMINARY STATEMENT

Plaintiffs no longer claim that the Court has general jurisdiction over Cook, Epps, Sebah or Wetherhill. (Plaintiffs' Consolidated Memorandum of Law in opposition to the Kingate Defendants' motions to dismiss ("Opp." or "Opposition"), 96-7, n. 71.) Additionally, Plaintiffs have abandoned any pretense that these foreign Directors of foreign funds with foreign investors committed any acts in, or directed into, New York that support this Court's exercise of specific personal jurisdiction over them. Plaintiffs' argument for jurisdiction now hinges entirely on an implausible and discredited theory that the Funds were these Directors' "agents" -- a theory based solely on their status as directors of the Funds. As in another Madoff feeder fund case that dismissed claims against similarly situated directors, however, the Complaint here "contains only threadbare assertions that lack any detail whatsoever, do not differentiate between the various 'Directors,' and do not specify any actions that the directors took that would alter the standard legal presumption that directors and officers are agents of the corporation, not the other way around." In re Banco Santander, 732 F. Supp. 2d 1305, 1326 (S.D. Fla. 2010).

Furthermore, the Directors' Rule 12(b)(6) motions to dismiss Plaintiffs' Complaint as against them should be granted. As stated in each Director's moving brief, Plaintiffs' 447-paragraph Complaint makes just one cursory mention of each. (AC ¶¶ 34-40.) And, Plaintiffs'

---

[1] Plaintiffs' Complaint is referred to as "AC" or "Complaint". Cook, Epps, Sebah, and Wetherhill were all directors of the Kingate Global Fund and Kingate Euro Fund (the "Funds") and all join in the arguments for dismissal for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Wetherhill was also a director of the Funds' manager, KML. Tannenbaum was solely a director of KML. All Directors join in the arguments for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

110-page Opposition hardly mentions any of the Directors except to identify them as directors of the Funds and/or Kingate Management Limited ("KML").   Plaintiffs attempt to gloss over the near-total absence of factual allegations concerning Cook, Epps, Sebah, Wetherhill and Tannenbaum by designating them as members of a heterogeneous group of fifteen individual and corporate defendants called the "Kingate Defendants." This group includes eight defendants who are parties to the various fraud claims in the Complaint, designated "Kingate **Fraud** Claim Defendants."  (AC, p. x; Opp., 1.) (Emphasis added.)   Critically, the Directors are not "Kingate Fraud Claim Defendants."   Indeed, Plaintiffs exclude them from their description of the "main culprits" who Plaintiffs say engaged in the "primary conduct" allegedly giving rise to this lawsuit (Opp., 5, 20), and from the list of so-called "Key Kingate Defendants" identified in the Complaint. (AC, ¶¶ 70-76.)  In trying to bolster their claims against their real targets, Plaintiffs even concede the immateriality of these Directors: Plaintiffs say that they are "bringing claims primarily against third parties, *not the Funds or the officers or directors of the Funds*."  (Opp., 21.) (Emphasis added.)   Plaintiffs also say that "[i]nvestment advisors, promoters and sponsors" owed them a "fiduciary duty" – again, excluding the Directors.  (Opp. 26.)

Faced with a significant body of case law dismissing Madoff-related claims such as those Plaintiffs assert here, Plaintiffs rely heavily on one of the few such cases in which *any* claims survived a motion to dismiss, Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 372 (SDNY 2010).  Plaintiffs' reliance on Anwar is misplaced, since the Court in Anwar dismissed common law claims such as breach of fiduciary duty and negligent misrepresentation against certain individual defendants who, like the Directors, were not accused of fraud.[2]

In order to avoid unnecessary duplication of arguments, the Directors incorporate by

---

[2] In Anwar, no directors or corporate officers of the Fairfield Funds were named as defendants based on their alleged duties as directors or officers, unlike this case. Id., p. 399.

reference the arguments in KML's Reply Memorandum of Law ("KML Reply") concerning the disclaimers in the Funds' Information Memoranda and concerning Anwar. The Directors also incorporate by reference the arguments concerning the applicability of British Virgin Islands ("BVI") or Bermuda law[3] to Plaintiffs' claims, Plaintiffs' lack of standing, and preclusion under the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. §§ 77p(b) and the Martin Act (New York's "blue sky" law), N.Y. Gen. Bus. Law § 352 et seq., set forth in Defendants' Joint Reply Memorandum of Law in further support of their respective motions to dismiss ("Joint Reply"). For these and the other reasons set forth in their respective moving papers, the Directors' respective motions to dismiss should be granted, and Plaintiffs' claims against them dismissed with prejudice.

## ARGUMENT

### I.   THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER COOK, EPPS, SEBAH AND WETHERHILL

#### A.   PLAINTIFFS FAIL TO MAKE A PRIMA FACIE CASE FOR PERSONAL JURISDICTION

Plaintiffs admit that they bear the burden of establishing a *prima facie* case for this Court's exercise of personal jurisdiction over Cook, Epps and Sebah and Wetherhill. (Opp., 94.) Plaintiffs have failed to make any such showing.

*First*, Plaintiffs have abandoned their allegation of general personal jurisdiction entirely, relegating their response on this point to a footnote, in which they state that Plaintiffs do not seek to establish general jurisdiction. (Opp., 96, n. 71.)

*Second*, Plaintiffs have tacitly admitted that these Directors lacked personal contacts with

---

[3] See section III below; see also Joint Reply, pp. 10-11; Reply Declaration of Narinder K. Hargun ("Hargun Reply"). The internal affairs doctrine dictates that BVI law governs their claims against the Funds' Directors, and that Bermuda law governs claims against KML's directors. As Bermuda and BVI law follow the English common law, (Affidavit of David Chivers, QC, Docket No. 108 ("Chivers Aff."), ¶ 2), all references to "BVI law" also refer to Bermuda law, as applicable, unless otherwise specified.

New York sufficient for specific personal jurisdiction under New York's long-arm statute. Plaintiffs do not dispute that these Defendants never spoke with or met Bernard Madoff, or conducted any business of the Funds in New York. (Cook Dec. ¶¶ 11-18; Epps Dec., ¶¶10, 12-18; Sebah Declaration, ¶¶ 11, 13-19; Wetherill Dec., ¶¶ 5-6, 8-10.) In fact, Plaintiffs do not mention *any* of the Directors in discussing the New York-based conduct purportedly giving rise to their claims. (Opp. Mem., 20.) The allegations Plaintiffs' point to as supporting jurisdiction (Opp., 97) simply do not establish that any individual Director had any relevant contacts with New York:

- All of Plaintiffs' allegations are directed at a group of "Individual Defendants" defined in the Complaint to include several "Kingate Fraud Defendants" (AC, p. ix) who Plaintiffs contend were "operating at the ground level of this fraud," and say nothing particular about the activities of any of the Directors. (Opp., 108.)

- Paragraph 25(c) of the Complaint alleges only conduct by KML, the corporate entity, and does not support Plaintiffs' conclusory statement that these Directors "regularly and systematically communicated with BMIS regarding the status, investments and maintenance of the Funds." (Opp., 97.)

- Paragraphs 225 and 226 are in a section of the Complaint addressing subject matter jurisdiction over Plaintiffs' Exchange Act claims, which do not pertain to any Directors, and do not support Plaintiffs' argument that these Directors transacted business in New York within the meaning of C.P.L.R. § 302(a)(1) by "creating Funds whose sole objective was investment in securities in New York."[4]

- Paragraphs 67 and 68 of the Complaint merely provide an overview of the Funds' investments with Madoff, and provide no support for Plaintiffs' argument that the Directors "had a relationship with BMIS, transferred money to BMIS and conducted due diligence and oversight of Madoff."

*Third*, lacking any allegation of any individual's contact with New York, Plaintiffs rely entirely on the theory that the Funds were the Directors' "agents", and that the Funds' contacts with New York should therefore be imputed to these Directors. (Opp., 98.) Plaintiffs provide no factual allegations in support of this theory:

---

[4] Moreover, allegations that these outside directors created the Funds are facially false, at least as to Cook and Epps, who were not even directors of the Funds until years after their formation. (Epps Dec., ¶ 2; Cook Dec., ¶ 2.)

- Plaintiffs have not alleged that the Funds' activities in the U.S. were conducted for these Directors' benefit. See Duravest, Inc. v. Viscardi, A.G., 581 F. Supp. 2d 628, 634-35 (S.D.N.Y. 2008);

- Plaintiffs have not alleged that the Directors were "primary actors". See Karabu Corp. v. Gitner, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998) ("At the heart of [the agency] inquiry is whether the out-of-state corporate officers were 'primary actor[s] in the transaction in New York' that gave rise to the litigation, and not merely 'some corporate employee[s] ... who played no part in' it." (quoting Retail Software Serv., Inc. v. Lashlee, 854 F.2d 18, 22 (2d Cir. 1988)).

- Plaintiffs have not alleged that the Directors exercised control over the tortious and fraudulent actions the Funds allegedly committed in New York. See Karabu Corp., 16 F. Supp. 2d at 324 ("To make a prima facie showing of 'control,' a plaintiff's allegations must sufficiently detail the defendant's conduct so as to persuade a court that the defendant was a 'primary actor' in the specific matter in question; control cannot be shown based merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation"); Ontel Prods., Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1148 (S.D.N.Y.1995) (personal jurisdiction cannot be based solely on defendant's position).

In a similar case against a host of defendants concerning a Madoff feeder fund, In re Banco Santander, 732 F. Supp. 2d, the court soundly rejected this same "agency" theory, which was raised by some of the same plaintiffs' attorneys as in this case. Applying New York law, the court found that the plaintiffs' "threadbare assertions" that did not distinguish between directors or specify any actions the directors took could not "alter the standard legal presumption that directors and officers are agents of the corporation, not the other way around." Id. at 1326. Plaintiffs' "agency" allegations here are similarly deficient and cannot serve to patch the gaping hole in their argument for personal jurisdiction – the absence of any conduct by these Directors in New York from which any of Plaintiffs' claims arise.[5]

---

[5] Plaintiffs incorrectly argue that Cooks, Epps, Sebah and Wetherhill are trying to use their status as directors as a "fiduciary shield" to disclaim jurisdiction over them. (See Opp., 98.) See, generally, Kreutter v McFadden Oil Corp., 71 N.Y.2d 460, 467-68 (1988) (fiduciary shield doctrine is "the notion that it is unfair to subject a corporate employee personally to suit in a foreign jurisdiction when his only contacts with that jurisdiction have been undertaken on behalf of his corporate employer.") These defendants do not argue that they should be shielded from this action because they acted in New York on behalf of the Funds, but rather, that they committed no jurisdictional acts in New York whatsoever, whether in their personal or corporate capacities.

## B.   PLAINTIFFS FAIL TO ESTABLISH THAT THE EXERCISE OF PERSONAL JURISDICTION OVER THESE DIRECTORS WOULD BE CONSTITUTIONAL

Plaintiffs fail to meet Directors' arguments that the exercise of jurisdiction would be unconstitutional for failing to comply with "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945). Again, Plaintiffs conflate activities of the Fund with those of the Directors, arguing that all of the so-called "Individual Defendants" should reasonably have expected to be haled into New York courts because they "entered into a business relationship and maintained an ongoing securities account with BMIS, a New York-based investment advisor." (Opp., 101.)   And they conflate their allegations against KML with allegations against the Directors when they say that the Directors "agreed to conduct due diligence of Madoff." Plaintiffs provide no authority for their proposition that a party's failure to conduct due diligence in a forum state provides a constitutionally sound basis for personal jurisdiction in an action based on that alleged failure. Finally, Plaintiffs do not dispute the facts alleged in these Directors' Declarations that none of them ever spoke with or met Bernard Madoff, or conducted any business of the Funds in New York.

## C.   JURISDICTIONAL DISCOVERY IS UNWARRANTED

Plaintiffs make no showing that they are entitled to conduct jurisdictional discovery. (See Opp., pp. 101-02.) Plaintiffs here simply "request leave to take jurisdictional discovery" if the Court determines that Plaintiffs have not properly alleged personal jurisdiction.

To be entitled to such discovery, a plaintiff must at the very least make "a threshold showing that there is some basis for the assertion of jurisdiction." The Royalty Network, Inc. v. Dishant.com, LLC, 638 F. Supp. 2d 410, 425 (S.D.N.Y. 2009) (denying request where plaintiff did not "identify any particular facts it would seek to adduce through such discovery or suggest how discovery could aid in [the] Court's jurisdictional inquiry."). Plaintiffs never specify the type or scope of jurisdictional discovery they seek, or how that discovery could develop facts

6

supporting this Court's exercise of personal jurisdiction over these Directors.  In fact, nothing Plaintiffs could hope to obtain through discovery would change the facts that Cook, Epps, Sebah and Wetherhill were foreign directors of foreign funds who, as sworn to in their Declarations, personally took no actions in or directed to New York giving rise to the claims by Plaintiffs, all foreign investors.  Thus, Plaintiffs' vague and unsupported discovery request should be denied.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST ANY OF THE DIRECTORS UNDER EITHER BVI OR NEW YORK LAW

Plaintiffs concede that the "internal affairs" doctrine applies to their claims against the Directors, arguing that the internal affairs doctrine is not implicated "with the exception of the claims asserted against the Directors". (Opp., 40.)  Nevertheless, Plaintiffs argue that New York law should be applied to their claims.  This is incorrect for the reasons set forth in the Directors' respective opening briefs and those set forth in the Defendants' Joint Reply.  But whether New York, or BVI/Bermuda law applies, Plaintiffs have failed to plead all of the required elements of their common law claims against these Directors, and most of Plaintiffs' claims fail for lack of standing.[6]  Accordingly, dismissal is mandated under Fed. R. Civ. P. 12(b)(6).

### A.    PLAINTIFFS CANNOT MEET THEIR BURDEN WITH GROUP ALLEGATIONS AGAINST A LARGE GROUP OF DIVERSE DEFENDANTS

Plaintiffs lump together fifteen defendants, most filling different corporate roles within six different entities and during different time periods, and named under different causes of action, under the single label "Kingate Defendants."  By way of specifics, Plaintiffs allege only that each Director was a director of the Funds and/or KML.  (AC, ¶¶34-40.)  Lacking any allegation that any of the Directors made any representation to or had any relationship with the Plaintiffs, Plaintiffs improperly rely on the group pleading doctrine to fill glaring holes in their Complaint.

---

[6]  In fact, in their argument concerning standing, Plaintiffs forgot that they sued any of the Funds' or KML's directors, stating that "this case pits investors *against the promoters, managers, sponsors and other third party vendors* of the Kingate Funds." (Opp., 25.)  The Directors are clearly absent from this list.

The group pleading doctrine is an extremely narrow exception to Fed. R. Civ. P. Rule 9(b)'s heightened pleading requirements for fraud claims. Its only application is to create a "presumption that statements in prospectuses, registration statements, annual reports, press releases, or other group-published information, are the collective work of those individuals with direct involvement in the everyday business of the company," for the limited purpose of permitting plaintiffs to satisfy the stringent pleading requirements for fraud when the alleged fraudulent statement is not attributed on its face to any particular individual at the company. In re BISYS Sec. Litig., 397 F. Supp. 2d 430, 438 (S.D.N.Y. 2005); Polar Int'l Brokerage Corp v. Reeve, 108 F. Supp. 2d 225, 237 (S.D.N.Y. 2000) ("[T]he group pleading doctrine is extremely limited in scope."). It does not apply in this case, for three reasons:

*First*, the group pleading doctrine only applies to fraud claims, as Plaintiffs tacitly acknowledge,[7] and there are no fraud claims against the Directors. See Steinberg v. Sherman, 07-Civ-1001 (WHP), 2008 WL 2156726, at *5 (S.D.N.Y. May 8, 2008) (group pleading doctrine not permitted for breach of fiduciary duty).

*Second*, group pleading cannot substitute for factual allegations against particular defendants. The vague allegation that *all* Kingate Defendants "drafted, reviewed, authorized *or* otherwise participated in the preparation and dissemination of the Information Memoranda provided to prospective and current investors in the Funds" is insufficient. (AC, ¶84) (emphasis added). Claims based on "review" or unspecified "participation" are patently baseless. See In re Alstom SA Sec. Litig., 406 F. Supp. 2d 433, 448-50 (S.D.N.Y. 2005) (group pleading doctrine not applicable to allegations that "Officer Defendants were responsible for creating, reviewing and/or approving [false and misleading] statements before they were disseminated").

---

[7] Plaintiffs note that Judge Marrero applied the group pleading doctrine *to fraud claims* – not negligent misrepresentation or other common law claims -- in Anwar, 728 F. Supp. 2d at 399, n. 7 (Opp., 65).

*Third*, the group pleading doctrine only applies to persons specifically alleged to be "a corporate insider, with direct involvement in day-to-day affairs." In re BISYS Sec. Litig., 397 F. Supp. 2d at 449. Plaintiffs' allegations fall far short of establishing the requisite "insider" status for any of the Directors. Even in Anwar, 728 F. Supp. 2d 406, the case on which Plaintiffs rely the most, the court rejected the group pleading doctrine for certain individuals where there were *no specific factual allegations* showing a special relationship or that these *individuals* played a relevant role in the alleged misrepresentations. Indeed, this court has specifically noted the inapplicability of the group pleading doctrine to outside directors based solely on their director role. See Dresner v. Utility.com, Inc., 371 F. Supp. 2d 476, 494 (S.D.N.Y 2005) (no presumption that non-insider defendants participated in preparation of corporate publications); In re Independent Energy Holdings PLC Sec. Litig., 154 F. Supp. 2d 741, 768 (S.D.N.Y. 2001) (outside directors "almost by definition are excluded from the day-to-day management of a corporation").

Plaintiffs fail to allege that any of the Directors were involved in the daily affairs of the Funds, and it is clear from the exhibits to the Complaint that they were not. Each Information Memorandum states only that the Directors of the Funds "meet periodically to assist the Manager in reviewing the investment and administrative affairs of the Fund[s]"[8] and that "[a]ll decisions with respect to the general management of the Fund are made by the Manager" and that the Manager, in turn, has delegated investment management duties to the Investment Advisor. (See, e.g., AC Ex. 1, pp. 4-5). The Information Memoranda do not describe any duties or responsibilities of KML's directors. Thus, even if the Complaint included factual allegations that these Directors were involved in the daily affairs of the Funds, which it does not, these allegations would be fatally undermined by the Complaint's exhibits.

---

[8] Identical language concerning the Directors' limited responsibilities appears in all of the Information Memoranda attached as exhibits to the Complaint: Ex. 1, p. 12; Ex. 2, p. 13; Ex. 3, p. 12; Ex. 4, p. 12; Ex. 5, p. 13; Ex. 6, p. 13.

**B.   PLAINTIFFS' CLAIMS ALL FAIL FOR LACK OF THE REQUISITE
RELATIONSHIP BETWEEN PLAINTIFFS AND THESE DEFENDANTS**

Plaintiffs predicate their claims against these Directors entirely on their status as directors

of the Funds and/or KML.   Plaintiffs had a contractual relationship with the Funds, but no

relationship with the Funds' directors, Cook, Epps, Sebah and Wetherhill, or with Tannenbaum, a

director only of KML, which did not contract with Plaintiffs.   There are simply no factual

allegations in the Complaint that support the existence of any relationship between the Plaintiffs

and any of the Directors.  In arguing that Plaintiffs had some sort of special relationship with all of

the "Kingate Defendants," Plaintiffs cite only to paragraphs 92-98 of the Complaint.  However,

these paragraphs concern the Funds' manager, KML, and do not mention the Funds' or KML's

directors. (Opp., 78.)  Plaintiffs incorrectly claim that Judge Marrero's decision in Anwar, 728 F.

Supp. 2d 372, a putative class action concerning the Fairfield group of feeder funds for which

Madoff also acted as investment adviser, supports their common law claims against all of the

"Kingate Defendants" including the Directors.   On the contrary, Judge Marrero dismissed

common law claims such as breach of fiduciary duty and negligent misrepresentation against

individual defendants and directors who, like the Directors, were not defendants on plaintiffs'

fraud claims, and had no contact with the plaintiffs.  Id., at 440.

### 1.   The Directors Owed No Fiduciary Duty to Plaintiffs

New York courts apply the law of the state of incorporation – here, the BVI [9] – to

determine whether a corporation's officer breached a fiduciary duty.  BBS Norwalk One, Inc. v.

Raccolta, Inc., 60 F. Supp. 2d 123, 129 (S.D.N.Y. 1999), aff'd, 205 F. 3d 1321 (2d Cir. 2000).

Even Plaintiffs' expert in BVI law agrees that directors "do not generally owe fiduciary duties to

individual shareholders" by virtue of their status as directors and "without more." (Declaration of

---

[9] See note 3 above.  Cook, Epps, Sebah and Wetherhill were directors of the Funds, incorporated in the BVI, and
Wetherhill and Tannenbaum were directors of KML, incorporated in Bermuda.

Anthony George Bompas, QC ("Bompas Dec."), Docket No. 135, ¶ 130.)  Neither Plaintiffs nor

their experts have identified any allegations in the Complaint that would support a finding of that

something "more" against any of the Directors.  (see Reply Affidavit of David Chivers QC,

submitted by KML ("Chivers Reply"), ¶¶27-31.)  Notably, Plaintiffs' experts carefully avoid

opining on the adequacy of Plaintiffs' allegations against the Directors under BVI or Bermuda

law.  Plaintiffs' BVI law expert says only that Directors could conceivably assume fiduciary duties

to investors under special circumstances, but he never says that Plaintiffs plead those

circumstances here.  Id., ¶ 9-12 (discussing Bompas Dec., ¶ 62).  Plaintiffs' Bermuda law expert

does not specifically address liability of directors of KML on such a claim.  (Declaration of Mark

C. Diel ("Diel Dec."), Docket No. 48, ¶¶ 14-23).

       Under New York law, Plaintiffs lack standing to sue for breach of fiduciary duty, as this

claim is derivative in nature.[10]  Plaintiffs mischaracterize Judge Marrero's decision in Anwar as

holding that "the equivalent of the Kingate Defendants owed fiduciary duties to the investors of

[the Fairfield] Madoff feeder fund."  In truth, Anwar dismissed Plaintiffs' claims for breach of

fiduciary duty against several individual defendants like the Directors, explaining:

> Plaintiffs fail to allege a fiduciary duty …. In essence, Plaintiffs' theory is
> that the Individual Defendants are liable by the principles of the transitive
> property: because the Individual Defendants owed a fiduciary duty to
> FGBL, and FGBL owed a fiduciary duty to Plaintiffs as investors and
> limited partners, therefore the Individual Defendants must owe a fiduciary
> duty to the Plaintiffs. *A complaint must allege more to state a plausible
> claim for liability.*

---

[10] See Druck Corp. v. Macro Fund Ltd., 290 Fed. App'x. 441, 443 (2d Cir. 2008) (no claim for breach of fiduciary duty under  Caymans or New York law where plaintiff alleged a failure to execute the investment strategy outlined in the Offering Memorandum); W. Palm Beach Police Pension Fund v Collins Capital Low Volatility Performance Fund II, Ltd., 09-80846-CIV-MARRA, 2010 WL 2949856, at *3 (S.D. Fla July 26, 2010) (claim based on allegation that defendant failed to conduct necessary due diligence to discover the Madoff Ponzi scheme dismissed as derivative); Stephenson v Citco Group Ltd., 700 F Supp 2d 599, 610 (S.D.N.Y. 2010) ("Even if plaintiff's breach of fiduciary duty claims were not pre-empted … the Court would dismiss them because they are derivative"); Bank of Am. Corp. v. Lemgruber, 385 F. Supp. 2d 200, 225 (S.D.N.Y. 2005) (breach of fiduciary duty claim dismissed as derivative).  The Directors also note that the only party that does have standing relating to the claims asserted here – the Kingate Funds' Liquidators – has commenced proceedings on these claims in Bermuda and has *not* named the Directors as defendants in that action.  (See Declaration of Dwyer in Support of Defendants' Motions to Dismiss, filed herewith, ¶ 3.)

Id. at \*50 (emphasis added) (quoting Bank of Am. Corp., 385 F. Supp. 2d 224 ("A corporate officer or director generally owes a fiduciary duty only to the corporation over which he exercises management authority…"). Given the absence of any allegation that any of the Directors had any contact with the Plaintiffs, conclusory allegations that they "fail[ed] to supervise the Funds' managers and investments that were entrusted to Madoff and in failing to pursue red flags that should have alerted them to the presence of unlawful activity" provide an "insufficient basis…for this Court to infer a fiduciary duty." Id. at \*52.

### 2. Plaintiffs Had No Relationship With The Directors That Would Support Their Negligent Misrepresentation Claims

Plaintiffs' negligent misrepresentation claims also fail under BVI and New York law for lack of the requisite "special relationship" between the Plaintiffs and the Directors. (Chivers Aff, ¶¶ 75 ff.; Chivers Reply Aff., ¶ 12.) In fact, the presence of the disclaimers in the information memoranda shows that no such "special relationship" existed – or indeed, any relationship at all. (Chivers Aff., ¶¶ 85-92; Chivers Reply, ¶¶ 13-15; KML Reply, pp. 7-12.) Moreover, Plaintiffs' negligent misrepresentation claims fail under New York law because Plaintiffs have not and cannot plead a misrepresentation communicated to them by any of the Directors.

Even in Anwar, which Plaintiffs cite throughout their Opposition, the Court dismissed negligent misrepresentation claims against defendants who, like the Directors, were not also "Fraud Defendants":

> [T]hose defendants who are not also Fraud Defendants - e.g. FHC, Landsberger, Smith and Murphy - are not alleged to have any particular contact with Plaintiffs, *nor is it fair to infer, as in connection with the Fraud Defendants based on their executive positions, that these individual defendants played any specific role in preparing information for Plaintiffs' consumption.* Landsberger, Smith, and Murphy's mere employment at FGG does not suffice to create a special relationship with Plaintiffs. Consequently, the negligent misrepresentation claims against them are dismissed.

12

Id. at *30. (Emphasis added.)  Here, Plaintiffs broadly allege that all Kingate Defendants "drafted, reviewed, authorized or otherwise participated in the preparation and dissemination" of alleged "misrepresentations and material omissions" contained in the Information Memoranda.  (AC ¶¶ 84-85.)  Critically, Plaintiffs do not identify a single alleged misrepresentation communicated to them by any of the Directors.  (See generally AC ¶¶ 84-101.)  Thus, as in Anwar, it is not fair to infer that any of the Directors "played any specific role in preparing information for Plaintiffs' consumption."  Id.

In a vain effort to identify to tie any alleged misrepresentation to the KML Directors (of whom only Wetherhill and Tannenbaum are included in the Complaint), Plaintiffs argue that "every one of the Information Memoranda had the Manager's or Co-Manager's names and FIM's name on the front cover, and referred investors with questions about the Information Memoranda to the Manager or Co-Managers.  Likewise, monthly performance reports issued during the Class Period proclaimed that they were 'prepared by Kingate Management Limited[.]'"  (Opp., 62).  Simply identifying KML as the manager on the cover of the Information Memoranda does not make KML's directors responsible for each statement those Memoranda contained.  Nor is KML's authorship of performance reports relevant to whether any of the Directors themselves made any misrepresentations to Plaintiffs.

The Second Circuit has not yet determined whether negligent misrepresentation claims are governed by the pleading standards in Rule 8 or Rule 9(b) of the Federal Rules of Civil Procedure, and declined to reach the issue in Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168 (2d Cir. 2004) (dismissing negligent misrepresentation claims that did not even satisfy Rule 8).  However, recent cases support the application of the more stringent Rule 9(b) standard.  In Arnold Chevrolet LLC v Tribune Co., 35 Media L. Rep. 2460 at *6 (E.D.N.Y. Sept. 17, 2007), the court noted the split in this circuit but applied Rule 9(b) and dismissed

13

negligent misrepresentation claims where they were based upon the same set of facts as the plaintiffs' fraud claim.  See also Ebusinessware, Inc. v. Tech. Services Group Wealth Mgmt. Solutions, LLC, No. 08 Civ. 09101 (PKC), 2009 WL 5179535, at *13 (S.D.N.Y. Dec. 29, 2009) (applying Rule 9(b) and dismissing negligent misrepresentation counterclaim where defendant failed to identify "specific statement or omission").  In any event, Plaintiffs' undifferentiated allegations against all fifteen "Kingate Defendants" do not satisfy Plaintiffs' burden of pleading plausible, non-conclusory allegations supporting a claim for negligent misrepresentation under Rule 8, let alone Rule 9(b).

### 3.    *Plaintiffs' Negligence Claims Fail For Lack of A Duty Of Care*

Plaintiffs' gross negligence and negligence claims fail under both BVI and New York law because none of the Directors owed Plaintiffs any duty of care.  Plaintiffs' argument to the contrary is predicated on their conclusory allegation that all of these defendants held themselves out as possessing "unique or specialized expertise," thereby placing themselves "in a position of trust with respect to plaintiffs."  Plaintiffs allege no facts in their Complaint from which it could be inferred that the Directors had such expertise,[11] and nowhere in their opposition brief do Plaintiffs provide any authority for their argument that such expertise gives rise to a general duty of care under either BVI law[12] or New York law[13].

---

[11] Plaintiffs do not identify any expertise that these Directors had.  Moreover, each investor in the Funds was required to certify, as part of the Subscription Agreement, that it "(i) has the knowledge, expertise and experience in financial matters to evaluate the risks of investing in the Fund…" See AC Ex. 1, p. S-8.

[12] See Chivers Aff. ¶ 79 (expertise alone does not create a "special relationship"); Chivers Reply ¶¶ 20-26.

[13] Plaintiffs' cited cases are inapposite as to the Directors.  In Kimmell v. Schaefer, 89 N.Y. 2d 257 (1996), unlike here, the director defendant personally spoke with plaintiffs and shared an analysis he created.  Plaintiffs' other cases do not even concern liability of directors.  In Anwar, 728 F. Supp. 2d 400, 417, unlike this case, "[n]o directors of the Funds or other nominally corporate officers of the Funds are named as Defendants based on their duties as directors" and, in any event, the Court dismissed claims for negligent misrepresentation against individual defendants who were not also fraud claim defendants. Century Pac., Inc. v. Hilton Hotels Corp., 528 F. Supp. 2d 206 (S.D.N.Y. 2007) and Muller-Paisner v TIAA, 289 Fed. App'x. 461, 466 (2d Cir. 2008) involved corporate defendants, not their individual directors.  Here, Plaintiffs did not sue the Funds.  And, in People v. Merkin, No. 450879/09, 2010 N.Y. Slip Op. 50430(u) (Sup. Ct. N.Y. County, Feb, 8, 2010), the "relationship" the Court referred to as creating a duty of care was Merkin's personal duties as investment advisor and manager for plaintiffs, duties which the Directors here did not have to Plaintiffs.

Plaintiffs' gross negligence claim fails under BVI law for the additional reason that the BVI does not recognize any such claim. (See Chivers Aff., ¶ 94; Chivers Reply ¶ 26.)   And, Plaintiffs have insufficiently pled the elements of this claim under New York law.  As explained recently in another Madoff-related action, gross negligence "is conduct that evinces reckless disregard for the rights of others or 'smacks' of intentional wrongdoing…that represents an extreme departure from the standards of ordinary care."  Saltz v. First Frontier, LP, 10 CIV 964 LBS, 2010 WL 5298225, at *8 (S.D.N.Y. Dec. 23, 2010) (dismissing gross negligence claims in Madoff-related case).   Allegations that a defendant failed to discover or act on red flags are insufficient to establish such an "extreme departure."  Id.

### 4.   *Plaintiffs Fail to State a Claim for Unjust Enrichment*

Plaintiffs' unjust enrichment claim fails under both New York and BVI law.  First, it is based on allegations that do not apply to these Directors.  Plaintiffs argue that all of the defendants collected "hundreds of millions of dollars" in "commissions and performance fees" based on the "fictitious profits" of the Funds (Opp., 91) – yet Plaintiffs have known all along that the Funds' outside directors never received any such fees.  And, Plaintiffs have never alleged any facts or provided any exhibits showing KML's outside directors were paid based on "fictitious profits" of the Funds.[14]   Second, under both New York and BVI law, Plaintiffs lack standing to assert this claim.  (See Joint Reply, pp. 12-17.)  Plaintiffs' unjust enrichment claim seeks to recover fees paid to the Directors by the Funds.  (AC ¶¶ 4, 396.)   If any claim exists against the Directors for the modest fees they were paid as directors of the Funds and/or KML, the claims belong to the Funds

---

[14] The Information Memoranda clearly state that the Directors of the Funds were paid a flat annual fee.  See, e.g., AC, Ex. 1, p. 6, stating that the Directors received a "flat annual fee".  Additionally, Cook, Epps, Sebah and Wetherhill each submitted Declarations setting forth the minimal compensation they received from the Funds in connection with their Directorships. (Cook Dec., ¶14; Epps Dec., ¶14; Sebah Dec., ¶15; Wetherhill Dec., ¶7.)  The allegation that any of the Funds' or KML's directors collected fees based on the "fictitious profits" of the Funds  is unsupported by the Complaint's exhibits, which Plaintiffs try to gloss over with group allegations against all Kingate Defendants, some of which did receive fees based on calculations of the Funds' assets.

and/or KML and cannot be asserted directly by the Plaintiffs.  Chivers Aff. ¶ 122; ABF Capital Mgmt. v. Askin Capital Mgmt., L.P., 957 F. Supp. 1308, 1334 (S.D.N.Y. 1997) (unjust enrichment claim against fund managers and brokers dismissed as derivative).

### 5.  *Plaintiffs Have No Viable Claim For Constructive Fraud*

Plaintiffs' constructive fraud claim is not cognizable under BVI or Bermuda law. (Chivers Aff., ¶ 99.) Tellingly, Plaintiffs' experts in BVI and Bermuda law do not address the existence of "constructive fraud" as a cause of action in their respective Declarations.  In any event, given that it is based on allegations of mismanagement by the Directors in their roles as outside directors of the Funds or KML, any constructive fraud claim against them would belong to the Funds or KML if it existed. (Chivers Aff., ¶ 31.)

This claim also fails under New York law.  First, Plaintiffs have made no effort to state the elements of this claim with particularity as Rule 9(b) requires.  Plaintiffs have made no allegations concerning fraudulent statements by the Directors.  @Wireless Enterprises, Inc. v. AI Consulting, LLC, No. 05-CV-6176 CJS(P), 2006 WL 3370696, at *10 (W.D.N.Y. Oct. 30, 2006) (constructive fraud claim dismissed under Rule 9(b) where complaint failed to identify any fraudulent statements made by defendant).  The "group" allegations against these Directors are clearly insufficient as a matter of law.  See Ellington Mgmt. Group, LLC v. Ameriquest Mortg. Co., No. 09 Civ. 0416 (JSR), 2009 WL 3170102, at *1 n.3 (S.D.N.Y. Sept. 29, 2009) (factual allegations that fail to differentiate between groups of defendants do not comport with Rule 9(b)).  Finally, Plaintiffs' constructive fraud claim fails, like their claim for breach of fiduciary duty, for lack of the requisite relationship. E*TRADE Financial Corp. v. Deutsche Bank AG, 631 F. Supp. 2d 313, 387 (S.D.N.Y. 2009) (dismissing constructive fraud claim where fiduciary or confidential relationship insufficiently pled).

### 6.    *Plaintiffs Are Not Entitled to a Constructive Trust*

A constructive trust is not a cause of action but rather an equitable remedy, and should "not be imposed unless it is demonstrated that a legal remedy is inadequate." In re First Cent. Fin. Corp., 377 F.3d 209, 215 (2d Cir. 2004) (citation omitted); Anwar, 728 F. Supp. 2d 419-420 (dismissing constructive trust claim and noting that it is a remedy, not a cause of action). Here, Plaintiffs have not alleged that they lack an adequate remedy at law. Moreover, a special or fiduciary relationship and unjust enrichment are essential elements of a constructive trust claim under BVI and New York law, (see In re First Cent. Fin. Corp., 377 F.3d at 212) which Plaintiffs have insufficiently pled against these defendants. See subsections 1, 4; Chivers Aff. ¶ 106.

### 7.    *Plaintiffs Abandoned Their Mutual Mistake Claim*

Plaintiffs do not mention their mutual mistake claim anywhere in their opposition papers. This claim should be deemed abandoned and, therefore, dismissed. Hanig v Yorktown Cent. School Dist., 384 F. Supp. 2d 710, 723-24 (S.D.N.Y. 2005) (claim deemed abandoned where not addressed in opposition to motion to dismiss) (collecting cases). Moreover, a mutual mistake claim cannot survive where, as here, Plaintiffs allege no direct contractual relationship with the Directors. Anwar, 728 F. Supp. 2d at 420 (dismissing mutual mistake claim as against other non-contracting parties).

## III.    PLAINTIFFS' CLAIMS ARE TIME-BARRED

Plaintiffs concede that, in their Subscription Agreements, they agreed to a six-month statute of limitations for bringing any claim against the Funds and/or their directors. (Opp., 105.) As to KML and its directors, Plaintiffs' argument that the Subscription Agreements do not expressly refer to them is unavailing, as the Information Memoranda clearly do provide for a shortened limitations period for their claims against these defendants. Finally, contrary to Plaintiffs' argument, there is no "discovery" rule in the relevant provisions. As discussed in the

17

Directors' and KML's opening briefs, all operative facts in the Complaint occurred more than six months before Plaintiffs first filed suit on June 9, 2009.

## CONCLUSION

For these reasons, and the reasons set forth in their Memorandum of Law, the Directors respectfully submit that their Motions to Dismiss the Complaint should be granted in their entirety, and Plaintiffs' claims against them should be dismissed with prejudice.

Dated:     New York, New York
           February 10, 2011

Respectfully submitted,

DAVIS & GILBERT LLP

By:   /s/ Howard J. Rubin
    Howard J. Rubin (hrubin@dglaw.com)
    Bruce M. Ginsberg (bginsberg@dglaw.com)
    Cheryl M. Plambeck (cplambeck@dglaw.com)
1740 Broadway
New York, New York 10019
(212) 468-4800
*Attorneys for Defendants Graham Cook,*
*John Epps and Charles Sebah*

CHAFFETZ LINDSEY LLP

By:   /s/ Peter R. Chaffetz
    Peter R. Chaffetz
    (Peter.Chaffetz@chaffetzlindsey.com)
    Charles J. Scibetta
    (Charles.Scibetta@chaffetzlindsey.com)
    Erin Valentine
    (Erin.Valentine@chaffetzlindsey.com)
1350 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 257-6960
*Attorneys for Defendants Christopher Wetherhill and*
*Kingate Management Limited*

COOLEY LLP

By:    /s/ Laura Grossfield Birger
    Laura Grossfield Birger (lbirger@cooley.com)
    Karen Won (kwon@cooley.com)

1114 Avenue of the Americas
New York, NY  10036
Telephone:  (212) 479-6000
*Attorneys for Defendant Michael Tannenbaum*